UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CMT USA, INC. and CMT UTENSILI S.P.A., <br><br> Plaintiffs, <br><br> -against- <br><br> APEX TOOL GROUP LLC and APEX BRANDS, INC., <br><br> Defendants. | No. 1:23-cv-07507 (JLR) <br><br> **MEMORANDUM OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

CMT USA, Inc. and CMT Utensili S.p.A. (collectively, "Plaintiffs") bring this action against Apex Tool Group LLC and Apex Brands, Inc. (collectively, "Defendants") for trademark infringement, trademark dilution, and unfair competition. ECF No. 37 (the "Second Amended Complaint" or "SAC"). Defendants move to transfer venue to the Western District of North Carolina, Charlotte Division. ECF No. 39 ("Br."). For the following reasons, the Court GRANTS Defendants' motion to transfer.

## BACKGROUND

Plaintiffs filed this action on August 24, 2023. ECF No. 1. Plaintiffs filed an amended complaint on August 29, 2023. ECF No. 10. Defendants filed a motion for more definite statement on October 2, 2023. ECF No. 24. The Court denied the motion for more definite statement on December 13, 2023, but granted Plaintiffs leave to amend their complaint. *CMT USA, Inc. v. Apex Tool Grp. LLC*, No. 23-cv-07507 (JLR), 2023 WL 8622400, at *4 (S.D.N.Y. Dec. 13, 2023). Plaintiffs filed a second amended complaint on December 20, 2023. SAC. Defendants answered the Second Amended Complaint and asserted counterclaims against Plaintiffs on January 3, 2024. ECF No. 38. On the same day, Defendants filed this motion to transfer venue. Br. Plaintiffs opposed the motion to transfer

venue on January 17, 2024. ECF No. 40 ("Opp.").[1] Defendants filed an amended answer with counterclaims on January 23, 2024. ECF No. 42 ("Am. Ans." or the "Amended Answer"). Defendants filed a reply in support of their motion to transfer on January 24, 2024. ECF No. 43 ("Reply"). Plaintiffs have not yet responded to Defendants' counterclaims asserted in the Amended Answer.

Plaintiffs' Second Amended Complaint alleges seven causes of action, including both federal and New York state law claims. SAC ¶¶ 62-97. As alleged in the Second Amended Complaint, Plaintiffs offer woodworking tools, including circular woodworking-saw blades in an orange color. *Id.* ¶¶ 11-16. In addition to common-law trademark and trade-dress rights, Plaintiffs own several trademark registrations for the color orange as applied to woodworking-saw blades and related tool accessories. *Id.* ¶¶ 20-28. Plaintiffs allege that Defendants sell circular woodworking-saw blades bearing an orange color that is confusing similar, if not identical, to Plaintiffs' protected marks and/or trade dress. *Id.* ¶¶ 32-39. Plaintiffs allege that Defendants began to offer their allegedly infringing products in Menards, a home improvement store, in May 2023, *id.* ¶¶ 43-45, and that as a result, Plaintiffs have lost sales of their own orange circular woodworking-saw blades, *id.* ¶ 48.

Defendants assert four causes of action as counterclaims, all under federal law. Am. Ans. at 22-25. Defendants allege that Plaintiffs' marks should be cancelled on the grounds of functionality, fraud on the United States Patent and Trademark Office (the "USPTO"), genericness, and abandonment. *See id.*

---

[1] Plaintiffs requested oral argument on the motion to transfer by notation on their brief. *See* Opp. The Court declines to hold oral argument because the parties' briefing was sufficient and oral argument would not materially assist the Court. *See Dotson v. Griesa*, 398 F.3d 156, 159 (2d Cir. 2005) (A "district court acts well within its discretion in deciding . . . motions on the parties' written submissions without oral argument.").

## LEGAL STANDARD

Under the federal venue statute, a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For venue purposes, a "natural person" resides in the judicial district where the person is domiciled. *Id.* § 1391(c)(1). An "entity with the capacity to sue and be sued in its common name . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2).

A district court may transfer a case to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." *Id.* § 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a)." *Corley v. United States*, 11 F.4th 79, 89 (2d Cir. 2021) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)). In determining whether to transfer a case, courts consider, among other things, "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *Id.* (quoting *D.H. Blair & Co.*, 462 F.3d at 106-07). "[I]n deciding a motion to transfer venue, the Court may consider factual submissions, including declarations, by defendants, who have the burden to justify a change of venue." *Everlast*

3

Case 3:24-cv-00137-RJC-DCK    Document 44    Filed 01/30/24    Page 3 of 11

*World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 737 n.1 (S.D.N.Y. 2013).

## DISCUSSION

The parties do not dispute that the action could have been brought originally in the Western District of North Carolina. *See* Opp. at 3 ("CMT does not dispute the fact that this action ostensibly could have been brought in a District Court of any state in which Apex's [alleged] infringement occurred. Thus, this motion[] turns on whether transfer is an appropriate exercise of the Court's discretion." (citation omitted)); Br. at 3. Therefore, the Court turns to the factors to be considered when deciding whether to exercise its discretion to transfer the case.

I. **Plaintiffs' Choice of Forum**

"There is ordinarily a strong presumption in favor of a plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 229 (S.D.N.Y. 2013). However, courts in this Circuit give a plaintiff's choice of forum less weight where the plaintiff chooses to file a case in a forum other than his or her residence. *See, e.g., Paulson v. Guardian Life Ins. Co. of Am.*, 614 F. Supp. 3d 1, 7 (S.D.N.Y. 2022) ("Here, [the plaintiff's] choice of forum is not entitled to great weight because this District is not her home, nor are the operative facts tied to this District."). Indeed, "[i]n 'the absence of factual proffers indicating that relevant evidence is likely to be located' in the chosen district, the choice of a non-home district may indicate forum shopping." *Lewis-Gursky v. Citigroup, Inc.*, No. 15-cv-03213 (LTS), 2015 WL 8675449, at *2 (S.D.N.Y. Dec. 11, 2015) (quoting *Hix v. Morgan Stanley & Co. LLC*, No. 15-cv-00217 (LTS), 2015 WL 1726548, at *2 (S.D.N.Y. Apr. 15, 2015)).

Here, no Plaintiff resides in the Southern District of New York. CMT USA, Inc. is a "corporation organized and existing under the laws of North Carolina with its principal place of business located [in] . . . Greensboro, North Carolina." SAC ¶ 2. CMT Utensili S.p.A. is a "corporation organized and existing under the laws of Italy, with its principal place of business located [in] . . . Pesaro, Italy." *Id.* ¶ 3. Plaintiffs' choice of forum in the Southern District of New York is therefore afforded less weight. *See Zepherin v. Greyhound Lines, Inc.*, 415 F. Supp. 2d 409, 411 (S.D.N.Y. 2006). Accordingly, the Court gives some, but not significant, deference to the fact that Plaintiffs chose to bring their claims in this District.

## II. Convenience of Witnesses

"The convenience of witnesses is an important consideration, and has often been described as the single most important § 1404(a) factor." *Everlast*, 928 F. Supp. 2d at 743; *accord Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 396 (S.D.N.Y. 2006) ("The convenience of the forum for witnesses is probably considered the single most important factor in the analysis of whether a transfer should be granted." (quotation marks and citation omitted)). "The Court must consider the convenience of both party and non-party witnesses." *Martignago v. Merrill Lynch & Co.*, No. 11-cv-03923 (PGG), 2012 WL 112246, at *5 (S.D.N.Y. Jan. 12, 2012).

Defendants have demonstrated that numerous pertinent witnesses are based in North Carolina. For example, Defendants' vice president of product development (Ian Cunningham), Defendants' senior industrial design manager (Scott Bublitz), Defendants' customer service team lead (Jewel Poole), and Defendants' global quality director (Jay Lu) are all located in North Carolina. *See* ECF Nos. 39-2 ¶ 8, 39-3 ¶ 8, 39-1 ¶ 8; Br. at 5. All of these witnesses are likely to have key factual information regarding the design, marketing, and sale

of Defendants' allegedly infringing blades.  For these witnesses, the Court finds that venue in North Carolina is the more convenient forum.

One potential witness for Defendants is located in York, Pennsylvania and another is in Sparks, Maryland.  ECF No. 40-1 at 3.  Plaintiffs assert that two of their potential witnesses are located in Italy, and another is in Florida.  Opp. at 4.  The potential witnesses located in Pennsylvania, Maryland, Italy, and Florida will have to travel for trial regardless of whether venue is in the Southern District of New York or in the Western District of North Carolina.

The only witness that either party identifies as located in New York is the trademark attorney who prosecuted the Plaintiffs' asserted trademark registration, and who has retired as a partner from Plaintiffs' current counsel's firm.  *Id.* at 5.  The Court acknowledges that the convenience of a non-party witness such as CMT's former counsel is generally "accorded more weight than that of party witnesses." *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 617 (S.D.N.Y. 2016).  However, the Court finds in its discretion that Plaintiffs' former counsel's location in New York does not outweigh the inconvenience of a trial in the Southern District of New York for the numerous party witnesses and employees located in North Carolina.  Overall, this factor weighs towards transfer.

**III.    Convenience of Parties**

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." *Everlast*, 928 F. Supp. 2d at 744 (citation omitted).  When a defendant makes such a showing, this factor favors transfer.  *Id.*  Here, both parties have corporate offices located in North Carolina.  SAC ¶¶ 2, 6-7.  In contrast, neither party is incorporated in or has a principal place of business in New York.  *Id.* ¶¶ 2-3, 6-7.

In opposition, Plaintiffs argue that "[a]t best, this factor is neutral" because a transfer to North Carolina would mean that both parties would have to hire local counsel. Opp. at 6. However, the Court does not expect obtaining local counsel will be very burdensome for the parties, especially because both parties maintain corporate offices in North Carolina.

Defendants have shown that venue in the Southern District of New York is inconvenient for them, and that Plaintiffs would not be substantially inconvenienced by a transfer to the Western District of North Carolina. Therefore, this factor weighs in favor of transfer.

## IV. Location of Evidence

The location of evidence is not a "particularly significant [factor] given the technological age in which we live, with the widespread use of, among other things, electronic document production." *Farrior v. George Weston Bakeries Distrib., Inc.*, No. 08-cv-02705 (JFB), 2009 WL 113774, at *6 (E.D.N.Y. 2009). Nevertheless, Defendants' headquarters, industrial design center, and industrial design team are located in North Carolina. ECF No. 39-2 ¶ 3; SAC ¶¶ 6-7. "[I]t is more probable that the most relevant documents are located at [Defendants'] headquarters." *Steck v. Santander Consumer USA Holdings, Inc.*, No. 14-cv-06942 (JPO), 2015 WL 3767445, at *7 (S.D.N.Y. June 17, 2015).

Plaintiffs argue that additional documents and evidence are likely located in South Carolina, Pennsylvania, and Maryland. *See* Opp. at 7. However, Plaintiffs do not argue that any documents and evidence are located in the Southern District of New York. *See id.* at 7-8.

Overall, the Court finds that this factor, although not particularly significant, weighs in favor of transfer.

7

Case 3:24-cv-00137-RJC-DCK    Document 44    Filed 01/30/24    Page 7 of 11

## V. Locus of Operative Facts

"In the context of trademark and trade-dress cases, the locus of operative facts, which is a 'primary factor' when determining a transfer motion, is the location where infringing labels are affixed to the goods and the location where confusion of purchasers is likely to occur." *Sheree Cosms., LLC v. Kylie Cosms., LLC*, No. 18-cv-09673 (VEC), 2019 WL 3252752, at *3 (S.D.N.Y. July 19, 2019).

Plaintiffs argue that "the locus of operative facts is in New York as [Defendants] admit[] that [they] sell[] [their] infringing products in New York." Opp. at 8. Plaintiffs also argue that the allegedly infringing products were designed and developed in North Carolina, Maryland, and Pennsylvania, and that there will be documents pertaining to the selection of the trade dress in North Carolina, South Carolina, and Maryland. *Id.* at 8-9.

Although it is undisputed that Defendants sell their allegedly infringing products in New York, the Court notes that the products are sold throughout the United States. *See* SAC ¶¶ 43-44 (alleging that Defendants sell their allegedly infringing products in Menards, "a home improvement store with 300 locations throughout a 15-state region in the Midwest."). Thus, New York is not a unique "locus" of operative facts. There is no indication that there was any more actual confusion or labeling of the allegedly infringing products in New York than in any other forum where Defendants sell their products. Consumers are just as likely to be confused in North Carolina, and at least some of the design and labeling decisions are likely to have occurred in North Carolina. The Court finds that this factor weighs in favor of transfer.

## VI. The Availability of Process to Compel the Attendance of Unwilling Witnesses

The only third-party witness that either party has identified is Plaintiffs' former trademark-prosecution counsel. Opp. at 10. Plaintiffs assert that their former counsel is a key

witness to rebut Defendants' counterclaim that Plaintiffs "knowingly made false statements to deceive the USPTO and thereby obtain" their trademark. *Id.* at 5. Plaintiffs assert that this individual is retired but resides in New York, and that therefore, this Court could compel his attendance at trial while the Western District of North Carolina could not. *Id.* at 10.

Where a party "fail[s] to provide any evidence that any [non-party witness] is unwilling to testify," many courts exclude this factor from the analysis. *Mazuma Holding Cop. v. Bethke*, 1 F. Supp. 3d 6, 31 (E.D.N.Y. 2014); *accord Steck*, 2015 WL 367445, at *8. Plaintiffs do not argue that their former attorney, who is a retired partner of Plaintiffs' current counsel's firm, would be unwilling to travel to North Carolina to testify at trial. The Court therefore finds this factor to be neutral.

## VII. Relative Means of the Parties

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994). The parties do not dispute that there "is no disparity in relative means of the corporate parties in this case." Opp. at 10; Br. at 8. Therefore, this factor is neutral.

## VIII. Other Factors

The Court does not find that there are significant efficiencies to be gained by maintaining the suit in this District. The case is still in its very early stages. Plaintiffs filed their Second Amended Complaint on December 20, 2023, *see* SAC, and Defendants filed their Amended Answer on January 23, 2024, *see* Am. Ans. Plaintiffs have not yet answered the counterclaims asserted in Defendants' Amended Answer.

9

Case 3:24-cv-00137-RJC-DCK     Document 44     Filed 01/30/24     Page 9 of 11

The Court acknowledges Plaintiffs' argument that transfer will require an administrative process including reassignment to a Western District of North Carolina judge, hiring local counsel, and negotiating a new scheduling order. Opp. at 12. The Court also acknowledges that Defendants could have moved to transfer venue earlier, given that Defendants first appeared in this case on September 20, 2023. ECF No. 16. However, on balance, given that the case is in its early stages, the Court finds that there are no significant efficiencies to be gained by maintaining suit in this District.

Plaintiffs also argue that the Southern District of New York is a more appropriate forum because two of their causes of action are brought under New York state law, with which the Southern District of New York has familiarity. Opp. at 11. The Court notes that the other five causes of action brought by Plaintiffs, *see* SAC, and all four counterclaims brought by Defendants, *see* Am. Ans., are federal law claims. The Western District of North Carolina is just as capable as the Southern District of New York to adjudicate the nine federal law claims, and to handle state law causes of action. Overall, the Court finds that this District's familiarity with New York state law does not weigh heavily against transfer.

## CONCLUSION

For the reasons stated above, the Court finds that the balance of factors weighs in favor of transferring this action to the Western District of North Carolina, and that such a transfer is in the interests of justice and convenience of the parties and witnesses. *See* 28 U.S.C. § 1404(a).

The Court respectfully directs the Clerk of Court to transfer this action to the United States District Court for the Western District of North Carolina, Charlotte Division.

Dated: January 30, 2024
       New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge