UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| CMT USA, INC. and CMT UTENSILI S.P.A., | |
| Plaintiffs, | Case No. 3:24-CV-00137-RJC-DCK |
| v. | |
| APEX TOOL GROUP LLC and APEX BRANDS, INC., | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL PLAINTIFFS TO SUPPLEMENT RESPONSES
TO DEFENDANTS' FIRST SET OF INTERROGATORIES**

Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A. (collectively, "CMT") oppose Defendants Apex Tool Group LLC's and Apex Brands, Inc.'s (collectively, "Apex") motion to compel CMT to supplement its responses to Apex's discovery requests. Dkt. 73, 74. Apex's motion has two primary arguments. First, Apex seeks to compel CMT to answer "contention" interrogatories prematurely, despite the widely accepted practice of addressing such interrogatories at the end of discovery. CMT has not refused to answer, but rather it has committed to responding after substantial discovery is complete (to date the parties have not even taken any depositions). Second, Apex demands discovery on third-party use of the color orange on saw blades and, more broadly, power tools and power tool accessories. This request is irrelevant and overbroad as CMT's trademark pertains specifically to the color orange as applied to circular blades for power saws for cutting wood. Apex's request for CMT to catalogue every instance of orange use on any

saw blade, power tool, and power tool accessory is excessive and beyond the scope of permissible discovery. Apex's motion seeks untimely and overreaching discovery, and it should be denied. CMT attempted to resolve this dispute amicably through extensive correspondence and discussions, but was unsuccessful.

## I. Apex's Contention Interrogatories are Premature

### A. Apex Mischaracterizes the Parties' Dispute Regarding Contention Interrogatories

Apex violated S.D.N.Y. Local Civil Rule 33.3(c) when it issued its contention interrogatories[1] on December 14, 2023. CMT's initial objections to Apex's premature contention interrogatories were justified under the Southern District's rules. Far from being "peculiar" (Dkt. 74 at 4), the Southern District's rules reflect a broad trend among courts that contention interrogatories are better addressed at the end of discovery. Indeed, this principle is baked into the Federal Rules themselves. *See* FED. R. CIV. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, ***but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time***." (emphasis added)).

On April 5, Apex alleged that CMT should answer Apex's contention interrogatories simply because the Southern District's rules no longer applied as the case had been transferred to this Court. Dkt. 74-3, § I.b. In its April 19 response, CMT clarified that while the Southern District rules no longer apply, the underlying principle still holds. Dkt. 74-4, § I.B. During an April 26 meet and confer, Apex failed to provide case law for its position in light of the support CMT provided in its April 19 letter. Apex attempted to distinguish the two cases CMT cited from this

---

[1] This Court has defined "contention interrogatories" as "those interrogatories that seek information regarding a party's opinions or contentions that relate to facts or the application of law to facts." *Capacchione v. Charlotte-Mecklenburg Sch.*, 182 F.R.D. 486, 489 (W.D.N.C. 1998).

- 2 -
Case 3:24-cv-00137-RJC-DCK    Document 76    Filed 06/24/24    Page 2 of 12

Court, as either too old or related to a patent, instead of a trademark case. Unpersuaded by Apex's position, CMT supplemented its responses on May 3, reasserting its objections under this Court's law that Apex's contention interrogatories were premature. *See* Dkt. 74-6.

Apex's argument that there is "no rule against interrogatories that request the claims and contentions of the opposing party," misses the point. Dkt. 74 at 4. CMT does not object to Apex's contention interrogatories on the basis that they ***are*** contention interrogatories, but rather that they are ***premature***. Further, Apex contests that the interrogatories at issue "are 'contention interrogatories' at all," and that "the Court can resolve this Motion by simply noting that this objection is improper in and irrelevant to this Court." Dkt. 74 at 4. But just two paragraphs down Apex quotes authority from this Court listing "[e]xamples of proper contention interrogatories," (Dkt. 74 at 5 (quoting *Capacchione v. Charlotte-Mecklenburg Schs.*, 182 F.R.D. 486, 489 (W.D.N.C. 1998))), and then later states that the interrogatories at issue "are 'proper contention interrogatories' under *Capacchione*" (Dkt. 74 at 6). In light of Apex's clear admission that its interrogatories at issue are indeed contention interrogatories, the only issue for the Court to decide is if they were prematurely issued.

### B. Contention Interrogatories are Better Addressed at the End of Discovery

Case law, including from the Fourth Circuit, supports the notion that contention interrogatories are better addressed after substantial discovery. Apex's suggestion that CMT's objections are "unfounded" overlooks the case law to the contrary. In *Capacchione v. Charlotte-Mecklenburg Schools*, the Court held that "[d]ue to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted—typically, at the end of the discovery period." 182 F.R.D. 486, 489 (W.D.N.C. 1998). In *Global Locating Systems, LLC v. ShadowTrack 247, LLC*, the Court noted that "[c]ourts generally disfavor contention interrogatories before substantial discovery has taken place," and held that "[t]he parties

have not yet exchanged expert reports or engaged in significant discovery in this case, making the Defendant's present motion premature at this time." 2020 WL 3432714, at *2 (W.D.N.C. June 23, 2020) (internal quotations omitted). Moreover, Apex fails to address the other case law CMT cited to it from within the Fourth Circuit. *See* Dkt. 74-4 at 3; *Mountain Valley Pipeline, LLC v. 6.5 Acres of Land Owned by Sizemore Inc. of Virginia*, 2019 WL 8918904, at *2 (W.D. Va. Apr. 5, 2019) ("Contention interrogatories . . . can be of limited use before substantial documentary or testimonial discovery has been completed if the parties have not yet been able to narrow the dispute or collect key facts." (internal quotations omitted)); *Taylor v Wallace Auto Parts and Servs., Inc.*, 2019 WL 13096506, at *5 (N.D.W. Va. 2019) ("While 'near the end' is not solidly defined, courts have held that contention interrogatories would best be served by use of these interrogatories at the end of the discovery period." (internal quotations omitted)); *Taggart v. Damon Motor Coach*, 2007 WL 152101, at *8 (N.D.W. Va. Jan. 17, 2007) ("Where significant discovery has not occurred, a motion to compel contention interrogatories should be denied without prejudice."). Further, aside from this Court, and other courts within the Fourth Circuit, courts around the country recognize premature contention interrogatories as problematic. *See e.g.*, *In re eBay Seller Antitrust Litig.*, 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008) ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before discovery is undertaken."); *In re Facebook, Inc.*, 2016 WL 5080152, at *3 (S.D.N.Y. July 7, 2016) ("If premature, that is, if served before prior discovery has established a reasonable factual predicate, [contention] interrogatories may do more harm than good. In keeping with this purpose, courts are reluctant to allow a party to fish for issues (and delay the litigation) by holding a hearing on a motion to compel and subsequently ordering the opposing party to summarize their potential trial via a contention interrogatory response. Contention interrogatories are more appropriately reserved for after

discovery so that they may narrow issues already known, thus saving both the parties and the court from inefficiency and unnecessary delay." (internal citations and quotations omitted)).

Apex failed to provide a compelling reason to deviate from the established principle that contention interrogatories are more appropriately addressed at the end of fact discovery. To be clear, CMT is not refusing to answer Apex's contention interrogatories, rather CMT has committed to responding once substantial discovery has been completed by both parties. As of this filing, depositions have yet to occur, and Apex has made what CMT believes to be a meager production of documents. For these reasons, Apex's motion to compel on this issue is premature and should be denied.

Finally, Apex's claim of an alleged "irony" regarding CMT issuing its own contention interrogatories is misplaced. Pursuant to the Protective Order, fact discovery was set to end on June 21. Dkt. 68, § I.G. As the Federal Rules provide a 30-day response period for interrogatories (FED. R. CIV. P. 33(b)(2)), CMT issued its contention interrogatories on May 17 to ensure sufficient time for Apex to respond. *See* Dkt. 68, § I.G ("Counsel are directed to initiate discovery requests and notice or subpoena depositions sufficiently in advance of the discovery completion deadline so as to comply with this Order."). CMT notes that the parties have mutually agreed to extend the completion of fact discovery until July 19 and have agreed to seek a further extension from the Court. CMT takes no issue with Apex waiting until the end of fact discovery to respond to CMT's contention interrogatories. In fact, CMT proposed a date for the mutual exchange of contention interrogatory answers during a June 7 meet and confer conference. Apex refused CMT's proposal, intent on filing this unnecessary motion.

## II. Discovery Relating to Products Beyond Circular Woodworking Blades is Irrelevant and Overbroad

CMT's objects to Apex's discovery requests that seek information regarding products beyond circular woodworking blades on two grounds: (i) the lack of an articulated relevance, and (ii) the overbroad nature of certain discovery requests.

### A. Relevancy

Apex fails to demonstrate the relevance of third-party use of the color orange on other tools. First, Apex vaguely claims that "[t]rademark infringement claims by their nature involve questions over what products or services consumers believe are related." Dkt. 74 at 8. However, Apex does not specify how this assertion pertains to any specific claim or defense in this case, leaving CMT to speculate. Apex appears to argue that similar marks on similar goods are relevant to infringement. *See* Dkt. 74 at 8. However, CMT's asserted trademark is not the usual wordmark applied to a good or its packaging. Rather, it is a trade dress that specifically pertains to the color orange as applied to circular blades for power saws for cutting wood. *See Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 203 F. Supp. 2d 587, 596 n.5 (E.D. Va. 2002) (" 'Trade dress' is a technical term that refers to a product's 'total image and overall appearance,' including its 'size, shape, color or color combinations, texture, graphics, or even particular sales techniques.' Trade dress normally refers to the packaging or labeling of goods, but the design of the product itself may also constitute protectable trade dress." (internal citations omitted)). Thus, CMT's trademark includes not only the color orange, but the shape of the product itself: a circular blade for power saw blade for cutting wood. In light of this, Apex cannot assert that some other power tool, that uses some amount of orange, like a leaf blower, is using a "similar mark" on a "similar good."

Apex also asserts that such discovery is relevant to its defense of genericness, citing the Trademark Trial and Appeal Board's ("TTAB") decision in *Milwaukee Elec. Tool Corp. v. Freud*

- 6 -
Case 3:24-cv-00137-RJC-DCK   Document 76   Filed 06/24/24   Page 6 of 12

*Am., Inc. See* Dkt. 74 at 8-9. It is important to first address the standards for genericness in trademark law. Because generic terms "do not contain source-identifying significance," "the critical issue in genericness cases is whether members of the relevant public primarily use or understand the term sought to be protected to refer to the genus of goods or services in question." *Snyder's Lance, Inc. v. Frito-Lay N. Am., Inc.*, 542 F. Supp. 3d 371, 380-81 (W.D.N.C. 2021) (internal citations omitted). Put differently, the genericness inquiry asks, "would the mark be perceived by the purchasing public as merely a common name for the goods rather than a mark identifying the good's source?" *Id.* This is a two-step inquiry, which includes asking: "what is the genus (or class) of goods or services at issue?" and (ii) "is the term sought to be registered or retained on the register understood by the relevant public primarily to refer to that genus of goods or services?" *Id.* at 381-82. As to the first inquiry, defining the genus, "a proper genericness inquiry focuses on the description of [goods or] services set forth in the certificate of registration." *Magic Wand, Inc. v. RDB, Inc.*, 940 F.2d 638, 640 (Fed. Cir. 1991).

Despite the legal standard for genericness, Apex relies on the *Milwaukee* decision to argue that "information regarding the broader universe of saw blades, power tool accessories, and power tools" is "unquestionably" relevant to the parties' claims or defenses. Dkt. 74 at 9. But as Apex notes, the TTAB in *Milwaukee* was "confronted with **nearly** the exact same facts" at issue here. Dkt. 74 at 8 (emphasis added). Where the facts in *Milwaukee* differ is key to the parties' current dispute. At issue in *Milwaukee* were two of Freud's trademark registrations, one being for the color red as applied to "cutting tools for power woodworking machines, namely, shaper cutters, saw blades, router bits and forestner [sic] bits." *Milwaukee Elec. Tool Corp.*, 2019 WL 6522400, at *1 (T.T.A.B. Dec. 2, 2019). In defining the genus of goods to be considered in its genericness analysis, the TTAB stated:

> The '769 registration contains no limitation as to the saw blades except that they are 'cutting tools for power woodworking machines.' Accordingly, the genus 'cutting tools for power woodworking machines, namely . . . saw blades' is the correct genus and must be read to include any type of saw blade used with any power woodworking machines, such as circular saws, reciprocating saws, jigsaws, sabre saws, and drills. . . . This interpretation of the term 'saw blades' is consistent with the record.

*Id.* at *10. The TTAB relied on the '769 Registration's broad description of its goods to determine that other types of sawblades were relevant to its genericness inquiry.[2] In contrast, CMT's trademark is narrow. CMT defines its goods as the color orange as applied to "circular blades for power saws for cutting wood." Apex freely admits this critical difference. Dkt. 74 at 1-2 ("[S]aw blades and other power tool accessories . . . are not expressly covered by the precise language within CMT's trademark registration.").

Apex's attempt to seek discovery on goods beyond circular woodcutting blades captures products that are "unquestionably" irrelevant to any claim or defense in this case. Apex's broad request for information regarding saw blades generally would include piezoelectric saws used by dentists or bone saws used by hunters. Worse yet, Apex reaches far past the already distinguishable holding of *Milwaukee* and seeks discovery related to the broader categories of power tools and power tool accessories. A "power tool" can be defined as "a tool powered by an electric motor or a gasoline engine,"[3] and would include such tools as CNC routers and leaf blowers, to name a few. Apex cannot credibly claim that such a broad range of products is pertinent to this case.

---

[2] Of note is that Freud's mark is live to this day. *See* Ex. A. This is because Freud later filed a complaint in the District of Delaware to appeal this decision. The parties agreed to settle the case in the District of Delaware through an amendment of the identification of goods in the '769 Registration to "cutting tools for power woodworking machines, namely, shaper cutters, <u>circular</u> saw blades, router bits, and Forstner bits; <u>none of the foregoing cutting tools being diamond abrasive blades, diamond abrasive discs, or diamond abrasive wheels</u>" (amendments reflected in underline). *See Freud America, Inc. v. Milwaukee Elec. Tool Corp.*, Case No. 1:20-cv-00902-RGA (D. Del.), Dkt. No. 160 (Ex. B). Pursuant to the parties agreement, the District of Delaware vacated the TTAB's December 2, 2019 decision. *See Freud America, Inc. v. Milwaukee Elec. Tool Corp.*, Case No. 1:20-cv-00902-RGA (D. Del.), Dkt. No. 161 (Ex. C).
[3] https://www.dictionary.com/browse/power-tool (last accessed June 24, 2024).

### B. Breadth

While discovery rules are broad, they are not limitless. Discovery must be relevant and proportional to the needs of the case, considering the burden or expense relative to its likely benefit, a key provision of the Federal Rules that Apex gives short shrift. *See* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ***and proportional to the needs of the case***, considering," in part, "whether the burden or expense of the proposed discovery outweighs its likely benefit." (emphasis added)); *see also Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004) ("Even assuming that this information is relevant (in the broadest sense), the simple fact that requested information is discoverable under Rule 26(a) does not mean that discovery must be had.").

Apex's overreach is exemplified by its RFP Nos. 10 and 12[4] which seek all documents related to any third-party usage of any shade of orange on "saw blades," and "any type of power tool and power tool accessories." Corresponding IROG Nos. 10 and 12[5] ask CMT to identify all such third parties that use or have used the color orange on "any type of saw blades in the United States," and "any type of power tool and power tool accessories." In effect, Apex is demanding CMT catalog ***every*** saw blade, power tool, and power tool accessory that has used ***any amount*** of orange,[6] a task that is, at best, unduly burdensome, and, at worst, impossible.

---

[4] While the body of Apex's memorandum with regard to this dispute relates to use of similar marks on similar goods (*see* Dkt. 74 at 7-9), Apex asks the Court to compel CMT to supplement its responses to "RFP Nos. 1, 2, 3, 4, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 30, 31, 32, 33, and 35" (Dkt. 73; Dkt. 74 at 3). However, the majority of these RFPs do not relate to third-party use of the color orange. The only of Apex's RFPs that appear to relate to third-party use of the color orange are RFP Nos. 10-12. *See* Dkt. 74-8.

[5] Apex's RFP No. 11 and corresponding IROG No. 11 respectively sought: "[a]ll documents reflecting or referring to all third parties that use or have used any color orange on any type of tool" and asked CMT to "[i]dentify all third parties that use or have used the color orange on any type of tool." Likely realizing that these requests are beyond the pale, Apex now appears to no longer seek such discovery.

[6] Apex has offered to restrict these inquiries to third-party uses since 1995 in the United States. Such a search would only be marginally less overboard and unduly burdensome.

Courts have found similar document requests overbroad. In *Michael Kors, L.L.C. v. Su Yan Ye*, the defendant moved to compel, in part, plaintiff to produce documents responsive to her request for "[a]ll documents concerning any third parties manufacturing, importing, marketing, promoting, advertising, distributing, offering for sale or selling goods identical or similar to those sold by Plaintiff using a trade dress containing or comprising a repeating initial pattern." 2019 WL 1517552, at *6 (S.D.N.Y. Apr. 8, 2019). In denying this portion of the motion to compel, the court noted that this request was "wildly overboard" and that it was "unclear how Plaintiff would have the information sought as it seeks information concerning third parties' activities." *Id; see also Miller v. Pruneda*, 2004 WL 3927832, at *4 (N.D.W. Va. 2004) ("Interrogatories cannot require the responding party to make extensive investigations or conduct complex research."); *Lynn v. Monarch Recovery Mgmt, Inc.*, 285 F.R.D. 350, 357 (N.D. Md. 2012) (explaining that a party responding to an interrogatory must "provide relevant facts reasonably available to it but should not be required to enter upon independent research in order to acquire information merely to answer interrogatories" (internal quotations omitted)).

### III. Conclusion

For the foregoing reasons, CMT respectfully requests that the Court deny Apex's motion to compel in its entirety and award CMT its reasonable expenses, including attorneys' fees, incurred in opposing the motion, pursuant to Fed. R. Civ. P. 37(a)(5)(B). Apex also seeks attorneys' fees for bringing this motion. Dkt. 74 at 10. Even if the Court grants Apex's motion, it should not award fees given CMT's substantially justified objections to Apex's overbroad discovery requests and its good faith efforts to resolve the dispute without court intervention. *See* FED. R. CIV. P. 37(a)(5)(A) ("But the court must not order this payment if . . . (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."); *see also Morley v. Energy Serv. of Am. Corp.*, 2023 WL 5490189,

at *6 (S.D.W. Va. Aug. 24, 2023) (denying fees where there is a legitimate dispute concerning the requests at issue."); *Liu v. Eaton Corp.*, 2022 WL 135798, at *4 (E.D.N.C. Jan. 13, 2022) (denying fees where plaintiff responded to each correspondence by defendant, filed a response to defendant's motion to compel, and appeared in person at the hearing on the motion to compel).

Respectfully submitted,

/s/ Robert E. Colletti
Dated:  June 24, 2024

Ward Davis (NC Bar ID 27546)
Joshua B. Durham (NC Bar ID 25414)
BELL, DAVIS & PITT
227 W. Trade St., Suite 1800
Charlotte, NC 28202
(704) 227-0400
ward.davis@belldavispitt.com
jdurham@belldavispitt.com

Edgar H. Haug (*pro hac vice*)
Robert E. Colletti (*pro hac vice*)
Chinmay Bagwe (*pro hac vice*)
Patrick J. Lavery (*pro hac vice*)
HAUG PARTNERS LLP
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
ehaug@haugpartners.com
rcolletti@haugpartners.com
cbagwe@haugpartners.com
plavery@haugpartners.com

*Attorneys for Plaintiffs CMT USA, Inc.
and CMT Utensili S.p.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2024, I electronically filed the foregoing *Plaintiffs' Opposition to Defendants' Motion to Compel Plaintiffs to Supplement Responses to Defendants' First Set of Interrogatories* with the Clerk of Court using the CM/ECF System. Service of same on any counsel of record will be accomplished through the Court's electronic filing system in accordance with F.R.C.P. 5(b)(2)(E).

/s/ *Joshua B. Durham*