UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:24-CV-00137-RJC-DCK

| | |
|---|---|
| CMT USA, Inc. and CMT Utensili S.p.A.,<br><br>Plaintiffs,<br><br>v.<br><br>Apex Tool Group LLC and Apex Brands, Inc.,<br><br>Defendants. | **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL PLAINTIFFS TO SUPPLEMENT DISCOVERY RESPONSES** |

Defendants Apex Tool Group LLC and Apex Brands, Inc. (collectively, "Apex") hereby submit this Reply in support of their Motion to Compel Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A. (collectively, "CMT") to remedy the deficiencies in CMT's responses to Apex's First Set of Interrogatories and First Set of Requests For Production.

CMT's Opposition brief does not refute any of the claims made in Apex's Memorandum in Support of Apex's Motion (ECF No. 74, hereinafter the "Memorandum"). It either ignores Apex's arguments entirely or cites distinguishable case law from outside courts. Therefore, it remains clear that (1) CMT cannot unilaterally refuse to respond to the "contention" interrogatories until a time of its choosing, and (2) Apex's discovery requests seeking specific information and documents relating to saw blades, power tools, and power tool accessories are both relevant to the claims in this case and well within the broad scope of discovery under the Federal Rules. The weaknesses in CMT's arguments show that it is unfortunate CMT made this motion necessary through its refusal to respond to these discovery requests even after multiple emails, multiple letters, and multiple meet-and-confer calls. CMT's refusal to respond to Apex's discovery wastes the court's and the parties' time on motion practice relating to straightforward discovery requests to which CMT should have properly responded months ago.

Importantly, because it is CMT who is resisting responding to the discovery requests, it is CMT

who has the burden of persuasion. *MC1 Healthcare LLC v. Mountainside Solutions, Inc.*, 2021 WL 1846583, at *2 (W.D.N.C. Apr. 21, 2021). CMT has utterly failed to meet this burden, and this Court should order CMT to fully respond to all of its insufficient responses.[1]

**I.      None of the cases cited by CMT support its argument that it should be able to unilaterally refuse to answer contention interrogatories until it believes the time is right.**

In its opposition, CMT concedes that Apex's contention interrogatories are valid requests and there is no rule in this Court that prohibits them. (Opp., p. 2-3). While this should be the end of the inquiry, CMT further complains that the interrogatories "are premature" and seeks permission to respond to them at an unspecified date in the future (CMT suggests both "after a substantial amount of discovery" or "the end of fact discovery" as times when it may respond to these interrogatories without providing any certainty.) (Opp., p. 3,5).

But none of the cases cited by CMT in its Opposition support CMT's position, particularly considering that the parties have collectively exchanged 17,471 pages of documents and CMT's own counsel claimed in an email to Apex that its document production has been "completed." (Declaration of Aaron D. Johnson ("Johnson Decl."), ¶ 3). Instead, CMT's citations and quotes are either out of context or for cases with substantially different facts.

For example, the court in *Global Locating Systems, LLC v. ShadowTrack 247, LLC* considered a motion to compel contention interrogatory responses where "the parties [were] in the middle of claim construction," which "ha[d] the potential of narrowing the issues and claims involved in this case." 2020 WL 3432714, at *2 (W.D.N.C. June 23, 2020). The court denied the motion to compel explaining that "the contentions underlying Interrogatory No. 5 may change following claim construction." This is vastly different than the current case, a non-patent case in which the claims and issues have not changed since Apex filed its Amended Answer and Counterclaims on January 23, 2024

---

[1] As detailed in Defendants' Memorandum, there are at least 36 responses at issue (with some overlap): 5 contention interrogatories to which CMT has not responded (Nos. 2, 4, 6, 15, and 21), 9 interrogatories where CMT refused to provide information relating to saw blades, power tools, and/or power tool accessories (Nos. 1, 2, 4, 6, 10, 11, 12, 15, and 21) and 27 requests for production where CMT refused to produce documents relating to saw blades, power tools, and/or power tool accessories (Nos. 1, 2, 3, 4, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 30, 31, 32, 33, and 35).

125258781.4

DEFENDANTS' REPLY ISO
MOTION TO COMPEL
3:24-CV-00137-RJC-DCK

(over five months ago).

In *Mountain Valley Pipeline, LLC v. 6.5 Acres of Land Owned by Sizemore Inc. of Virginia*, the court merely said that contention interrogatories might be "of limited use" in the event "the parties have not yet been able to narrow the dispute or collect key facts." 2019 WL 8918904, at *2 (W.D. Va. Apr. 5, 2019). The Virginia court found that the interrogatory at issue was ***not*** a contention interrogatory, but even if it had been a contention interrogatory, the court was only commenting on the "usefulness" of an interrogatory (not whether a party had to respond to it). *Id.* The court also agreed that contention interrogatories ***are*** useful and permitted where, as here, the issues in dispute are not going to be narrowed and the key facts have been collected. *Id.*

In *Taylor v Wallace Auto Parts and Servs., Inc.*, the West Virginia federal court denied a motion to compel for a contention interrogatory that was filed "a mere two months into discovery." 2019 WL 13096506, at *5 (N.D.W. Va. 2019). These facts are substantially different from the case at hand, where initial disclosures were exchanged in November 2023 and the issues have not changed for months.

And while CMT quotes *Taggart v. Damon Motor Coach* as stating that a motion to compel contention interrogatories should not be filed "where significant discovery has not occurred," the court in that decision actually ***ordered a response to the contention interrogatory*** because the litigation was "clearly well into the discovery phase." 2007 WL 152101, at *1 (N.D.W. Va. Jan. 17, 2007). Just as in that case, here the case is well into the discovery phrase, if not nearing the end. Initial disclosures were exchanged in November 2023 (over seven months ago), and CMT claims its document production is complete. (Johnson Decl., ¶ 3). As a result, the *Taggart* holding supports Apex's position that CMT should be ordered to respond to the interrogatories.

Therefore, even the cases cited by CMT have only allowed delayed responses to contention interrogatories when gathering the necessary materials would be substantially burdensome, or when other factors (such as a pending order or a substantial amount of additional discovery) might cause the issues in the litigation to become narrower. But that is not the case here. CMT entirely fails to explain how further discovery could narrow the dispute or produce key facts that are not already known to

125258781.4

CMT. CMT does not explain what type of documents or facts it expects to uncover during further discovery. And CMT does not explain how these types of documents or facts will clarify the issues or narrow the scope of litigation such that CMT's responses to the contention interrogatories would be affected. Ultimately, CMT did not offer any such explanation for its delay in answering the interrogatories because it cannot do so—as further discovery is unlikely to narrow the scope of litigation or clarify any issues in this case.

Moreover, even when courts have allowed a party to refuse to answer a contention interrogatory, most have held that the party must still respond to a contention interrogatory where it has the information to do so. *See, e.g., Mills v. Cabell Cnty. Bd. of Educ.*, 2023 WL 4378179, at *4 (S.D.W. Va. July 6, 2023) ("[T]o the extent that the party can respond to contention interrogatories based on currently available information, it should do so.") (citing *Capacchione v. Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 488 (W.D.N.C. 1998)); and *Pauley v. CNE Poured Walls, Inc.*, No. 3:18-CV-01508, 2019 WL 3226996, at *2 (S.D.W. Va. July 17, 2019) ("to the extent CNE can presently respond to Plaintiffs' contention interrogatories, CNE should do so.").

There is no doubt here that CMT has much, if not all, of the information necessary to respond to Apex's "contention" interrogatories—only CMT knows the range of colors that CMT believes are likely to cause confusion with CMT when used on saw blades (Interrogatory No. 2) and what percentage of the color orange used on saw blades CMT believes is likely to cause confusion with CMT's products (Interrogatory No. 6). Furthermore, unless CMT's claims were entirely baseless when it filed its Complaint, CMT possesses facts and documents relevant to its claims that the color orange on saw blades is non-functional (Interrogatory No. 15), and that consumers in the United States associate the color orange on saw blades exclusively with CMT (Interrogatory No. 6).

## II.    CMT ignores Apex's right to question CMT on its interrogatory responses and the fact that interrogatories can be supplemented.

Having failed to cite any case law that supports its argument that it should be able to delay responding to Apex's contention interrogatories until a time of its choosing, CMT next tries to allege that it would instead be "appropriate" for it to be able to choose when to respond to those requests:

125258781.4

"Apex failed to provide a compelling reason to deviate from the established principle that contention interrogatories are more appropriately addressed at the end of fact discovery." (Opp., p. 5).

But CMT does not explain why the interrogatories are premature or why any response to them would be more "appropriate" at an unspecified future date, instead resting its hat on the bare statement that discovery has not yet sufficiently progressed to answer the interrogatories. But this statement cannot be supported. Apex fails to see how *any* type of additional discovery would affect CMT's response on which Pantone colors are likely to cause confusion with CMT's products (Interrogatory No. 2), or CMT's response on what percentage of the color orange used on saw blades is likely to cause confusion with CMT's products (Interrogatory No. 4). CMT's threadbare assertion that "depositions have yet to occur, and Apex has made what CMT believes to be a meager production of documents" is not sufficient to show that discovery could (much less *would*) narrow the issues or lead to additional key facts.

And the argument that the interrogatory responses would be more "appropriate" if served in a few months fails and should be rejected by this court for a number of reasons. First, substantial discovery has occurred in this case <u>and</u> fact discovery is "near the end"— CMT claimed that its document production is "completed" and the document production from both parties is over 17,000 pages, including internal emails, detailed financial statements, and documents on internal product development. Johnson Decl., ¶ 3.

Second, CMT's refusal to respond to the interrogatories would deny Apex the opportunity to question CMT's witnesses on those responses and the facts underlying them—denying Apex an important tool in discovery for finding out weaknesses in CMT's positions.

And finally, any claim that CMT should be able to refuse to respond to the interrogatories because it might learn some relevant information later in this case is not a proper defense, because CMT can always supplement its responses to the interrogatories if that occurs. Indeed, under Rule 26(e) CMT has the **<u>responsibility</u>** for supplementing a response to any interrogatory that it learns is materially incomplete or incorrect – contention interrogatory or not.

Accordingly, this Court should order CMT to provide full responses to Apex's contention

125258781.4

interrogatories. *Taggart v. Damon Motor Coach*, 2007 WL 152101, at *1 (N.D.W. Va. Jan. 17, 2007) (granting motion to compel response to contention interrogatory approximately six months after first discovery requests). CMT fails to justify its delay in answering the contention interrogatories, fails to explain how further discovery will clarify the issues or narrow the scope of litigation, and has failed to respond to interrogatories despite possessing the necessary information and despite fact discovery nearing its close. CMT has not established the legitimacy of its objections and should accordingly be compelled to answer the interrogatories.

**III.**     **CMT provides no argument for why the goods on which it refuses to provide information (saw blades, power tool accessories, and power tools) are not within the broad scope of discovery for defending against CMT's claims of confusion.**

Despite holding the burden of persuasion, CMT's Opposition provides no argument as to why the goods on which it refuses to provide information or documents (saw blades, power tool accessories, and power tools) are not relevant to this case. CMT likely realizes that its refusal to provide discovery responses relating to saw blades, power tools, and power tool accessories is egregious, and attempts to get around this by simply providing no argument. All the Opposition states is "CMT's trademark includes not only the color orange, but the shape of the product itself: a circular blade for power saw blade for cutting wood. In light of this, Apex cannot assert that some other power tool, that uses some amount of orange, like a leaf blower, is using a 'similar mark' on a 'similar good.'" (Opp., p.6).

This is incorrect. As Apex explained in the Memorandum, "[t]hese products are often sold on the same wall at a hardware store, and manufactured by the same company." (Memorandum, p. 8). And this explanation is supported by even a casual look at the relevant marketplace. Many manufacturers sell all three types of products under the same brand name. *See* Johnson Decl., ¶ 4, attaching examples of three manufacturers selling all three types of products under the same brand name. And many retailers sell all three types of products at the same store, and sometimes on the same shelf. *See* Johnson Decl., ¶ 4, attaching examples of three retailers selling all three types of products at the same store, including a photograph showing the different products sold in close proximity to each other. These show that Apex's explanation and argument is correct – that saw blades, power tool accessories, and power tools are directly relevant to the claims in this case.

125258781.4

And Apex's position is well supported by other tribunals. As the Trademark Trial and Appeal Board held in *Milwaukee*, "consumers are faced with an array of power tool saw blades, from which they must choose the one appropriate for their needs. . . . [M]ost of these saw blades travel in the same channels of trade and are purchased by the same consumers; **therefore, the entire universe of saw blades is relevant for determining consumer perception . . . .** That is, the range of available saw blade types affects consumer perception, even if a particular saw blade is not an exact match for a particular tool or a consumer's intended use." *Milwaukee Elec. Tool Corp. v. Freud Am., Inc.*, 2019 WL 6522400 at *3 (Trademark Tr. & App. Bd. Dec. 2, 2019).

While the Opposition claims that "Apex does not specify how this assertion pertains to any specific claim or defense in this case," this is incorrect. As CMT's experienced trademark counsel well know, when products are sold together and are sold by the same company they are relevant in trademark infringement cases because they affect (1) the strength of the mark, (2) consumers' perception of the mark, (3) relevant advertising, and (4) lost sales, among other factors. CMT has not responded at all to this explanation and has provided no argument as to why those three product categories are not relevant. *See, e.g.,* 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:24, 24:45 (5th ed.)

This is likely because CMT's own public statements have shown that it knows they are relevant. When CMT filed its original application for the trademark registration asserted in this litigation (U.S. Trademark Application, Serial No. 75714925), CMT originally filed to cover the goods "power tools, namely a power saw." Johnson Decl., ¶ 6. When the examining attorney objected to this description, CMT agreed to amend the goods in the identification to "Parts of power tools, namely, blades for power saws." Johnson Decl., ¶ 7. While CMT eventually revised the identification to its current "Circular blades for power saws for cutting wood," the fact that in earlier versions of **<u>the exact same application</u>** CMT wanted to cover "blades for power saws" (i.e., all saw blades), "power tools" and "parts of power tools," shows that those categories of products are unquestionably related and relevant to this case.

125258781.4

**IV.** **CMT cites the wrong standard when claiming that the goods on which it refuses to provide information (saw blades, power tool accessories, and power tools) are not within the broad scope of discovery for Apex's counterclaim for genericness.**

In an attempt to claim that the three additional product categories are not relevant to the claims in this case, CMT focuses on whether or not they are relevant to Apex's counterclaim to cancel CMT's registration on the basis of genericness. It is important to note that this is only one claim in the case, and these products would still be relevant to discovery for the other claims in this case (including Apex's defense of the trademark infringement claim).

But yet again, CMT both conflates the merits of the claims with the board standard for discovery, and misrepresents *Milwaukee Elec. Tool Corp. v. Freud Am., Inc.* in an attempt to apply a genericness test as a strict limitation on the breadth of discovery permitted by the Federal Rules. *Milwaukee*, however, flatly states the conclusion that CMT is desperate to avoid: saw blades in general are relevant, within the meaning of the Federal Rules, to both consumer perception and the genericness inquiry in the context of trademark registrations covering more specific types of saw blades.

In *Milwaukee*, the petitioner sought cancellation of two similar trademark registrations. First, the petitioner sought partial cancellation of respondent's trademark registration for the "color red as applied to substantially the entire surface of cutting tools" covering goods identified as "cutting tools for power woodworking machines, namely, shaper cutters, saw blades, router bits and forestner [sic] bits." *Milwaukee* at *1. This was a "partial cancellation" because petitioner sought cancellation only for the goods "cutting tools for power woodworking machines, namely, . . . "saw blades," rather than for the entire registration. *Id.* Second, petitioner sought cancellation of a trademark registration for "the color red as applied to the entire surface of the goods except the cutting edge and annular hub or shaft" covering goods identified as "blades for reciprocating power saws." *Id.*

The TTAB held that:
The record shows that consumers are faced with an array of power tool saw blades, from which they must choose the one appropriate for their needs. Some blades are general-purpose blades for cutting a variety of materials whereas other blades are more specialized for cutting only wood, metal, or concrete. Nevertheless, as discussed below, most of these saw blades travel in the same channels of trade and are purchased by the same consumers; **therefore, the entire universe of saw blades is relevant for determining consumer perception regarding Freud's marks**. That is, the range of available saw blade types affects consumer perception,

DEFENDANTS' REPLY ISO
MOTION TO COMPEL
3:24-CV-00137-RJC-DCK

125258781.4

even if a particular saw blade is not an exact match for a particular tool or a consumer's intended use.

*Id.* at 4 (emphasis added).

The TTAB did not, however, solely consider evidence of saw blades when analyzing genericness and consumer perception. Instead, the TTAB's view on relevancy was considerably (and properly) broader, and the TTAB took into consideration evidence of "saw blades [] for cutting wood, **laminate, plastic, or metal**." *Id.* at 14. Further, the TTAB *also* considered evidence of "manufacturers' use of color **on tools**," using examples of reciprocating saws, plunge routers, power drills, and bayonet saws. *Id.* at 11–12 (emphasis added). And finally, the TTAB also considered evidence of the use of color in connection with **store displays and catalogs** relating to saw blades and power tools. *Id.* at 10, 12–13. It is indisputable that these goods were not covered by the trademark registrations at issue in the cancellation, yet were nonetheless highly relevant in the TTAB's decision.

The parallels between *Milwaukee* and this case are remarkable. Just as in *Milwaukee*, the trademark registration at issue covers woodworking saw blades, and the trademark registrant seeks to exclude (or avoid producing) evidence relating to any other type of saw blade, power tool, and power tool accessory. Just as in *Milwaukee*, CMT "itself sells [orange] metal-cutting saw blades for use with the same woodworking power tools as its woodcutting saw blades." And just as in *Milwaukee*, power tools and power tool accessories "travel in the same channels of trade and are purchased by the same consumers" as the circular saw blades covered by CMT's trademark registration.

Accordingly, even for the genericness counterclaim alone, this Court should find that saw blades, power tool accessories, and power tools are "relevant for determining consumer perception regarding [CMT's] marks" and compel CMT to answer or supplement its discovery responses where CMT relied on an objection to "saw blades" as irrelevant or overbroad.

## V. CMT provides no argument on why the terms "power tools" and "saw blades" are vague or overbroad, because they are not and instead cover specific products very relevant to this case.

CMT appears to argue that several of Apex's discovery requests are overbroad (or possibly vague) due to the specific language used in the request. First, CMT alleges that "Apex's broad request

125258781.4

for information regarding saw blades generally would include piezoelectric saws used by dentists or bone saw used by hunters,"—although CMT does not specify which particular interrogatory request or request for production it is objecting to as overbroad. Second, CMT alleges that Apex "seeks discovery related to the broader categories of power tools and power tool accessories"—though again, CMT does not specify which particular interrogatory request or request for production it is objecting to as overbroad.

CMT is well aware of the specific information Apex is seeking with these terms. Indeed, CMT's allegations that "saw blades," "power tools," and "power tool accessories" are overbroad are contradicted by CMT's own use of the terms. When CMT filed its original application for the trademark registration asserted in this litigation, CMT originally filed to cover the goods "power tools, namely a power saw." Johnson Decl., ¶ 6. Did CMT not understand what "power tools" were at the time it filed the application? When the examining attorney objected to this description, CMT agreed to amend the goods in the identification to "Parts of power tools, namely, blades for power saws." Johnson Decl., ¶ 7. Did CMT not understand what "blades for power saws"—or in other words, **power saw blades**—were at the time it agreed to the amendment?

CMT's own use of identical and nearly identical terms in connection with the *very trademark registration at issue in this case* demonstrates both that CMT understands what these terms mean, and that they cover products relevant to the infringement claims made in this case. Instead, CMT's objections are likely for the purposes of causing Apex additional delay and expense. It also demonstrates that these types of goods are commercially related to those covered by CMT's asserted trademark registration and therefore are relevant and well within the scope of discovery.

**VI.  Apex's discovery requests at issue are not overboard, and the three cases cited by CMT to claim that they are distinguishable and inapposite.**

CMT attempts to claim that Apex's discovery requests at issue are overbroad, but all of the cases CMT sites in support are distinguishable and inapposite. CMT cites, without analysis or analogy, to a Southern District of New York case, *Michael Kors, L.L.C. v. Su Yan Ye*, in an attempt to glom on to a result that CMT wants but cannot demonstrate it deserves. In *Michael Kors*, the plaintiff

125258781.4

claimed trade dress rights in "rows of the repeating MK logo" as applied to a variety of products and alleged that the defendant sold identical products with a confusingly similar logo-based design. *Id.* at *1. The court held that a discovery request seeking "[a]ll documents concerning any third parties manufacturing, importing, marketing, promoting, advertising, distributing, offering for sale or selling goods identical or similar to those sold by Plaintiff using a trade dress containing or comprising a repeating initial pattern" was overly broad. *See* 2019 WL 1517552, at *6 (S.D.N.Y. Apr. 8, 2019).

It is not clear how or why CMT believes this decision proves Apex's requests are overbroad. The relevant RFP at issue in *Michael Kors* requested documents concerning: (1) a large number of various activities and parties ("any third parties manufacturing, importing, marketing, promoting, advertising, distributing, offering for sale or selling goods"); (2) a potentially indefinite number of products ("goods identical or similar to those sold by Plaintiff"); and (3) a product design feature that was far broader than the plaintiff's asserted trade dress rights (asking for any product "using a trade dress containing or comprising a repeating initial pattern" where Plaintiff claimed only rights in "rows of the repeating MK logo"). In contrast, Apex seeks documents and information relating to (1) third party use or CMT's own use; (2) of specific information of documents; (3) in connection with saw blades, power tools, and power tool accessories. These requests are specific and directly relevant to the strength of CMT's mark (and other factors), and are limited by a definite list of products. Apex's requests are far narrower than the RFP rejected in *Michael Kors*, and CMT hand-waving at a Southern District of New York case is not sufficient to show otherwise.

Finally, CMT argues that RFP Nos. 10 and 12, and corresponding ROG Nos. 10 and 12, are "overbroad."[2] These requests are reproduced below:

Request for Production No. 10: All documents reflecting or referring to all third parties that use or have used any color orange on saw blades.

Request for Production No. 12: All documents reflecting or referring to all third parties that

---

[2] Contrary to CMT's claims, Apex does not concede that it is "no longer" seeking discovery relating to ROG No. 11. Apex was clear in its supporting memorandum for its motion to compel that "[w]hile Apex believes a number of other aspects of CMT's document production are deficient, it is choosing to not bring those issues to the Court's attention at this time, with the goal of hopefully reaching a resolution with CMT."

- 11 -

DEFENDANTS' REPLY ISO
MOTION TO COMPEL
3:24-CV-00137-RJC-DCK
125258781.4
Case 3:24-cv-00137-RJC-DCK   Document 78   Filed 07/01/24   Page 11 of 16

use or have used any color orange on any type of power tool and power tool accessories.

Interrogatory No. 10: Identify all third parties that use or have used the color orange on any type of saw blades in the United States.

Interrogatory No. 12: Identify all third parties that use or have used the color orange on any type of power tool and power tool accessories.

CMT sums up these requests as follows: "Apex is demanding CMT catalog every saw blade, power tool, and power tool accessory that has used ***any amount*** of orange, a task that is, at best, unduly burdensome, and, at worst, impossible." (internal citations removed) (emphasis in original).  This is of course, not true.  If CMT has documents in its possession regarding third parties' use of orange on related products, or if CMT is aware of the identify of third parties' use of orange on related products, of course those are relevant to the claims in this case.

And to the extent that Apex is looking for third parties using "any amount" of orange, the fault lies with CMT. CMT has not defined the scope of its CMT Orange Trade Dress. It has not defined the percentage of color orange used in connection with circular saw blades that it claims rights in, or the percentage of orange that infringes its alleged rights—meaning that evidence of saw blades (and related goods like power tools and power tool accessories) using <u>any</u> amount of the color orange are relevant to consumer perception, the strength of CMT's mark, and other factors. CMT has also not defined the shade of color orange used in connection with circular saw blades that it claims rights in— meaning that evidence of saw blades (and related goods like power tools and power tool accessories) using any shade of the color orange are similarly relevant. If CMT wishes to potentially narrow the scope of these requests, it needs to (finally) answer the *very contention interrogatories* that it is also currently objecting to.

CMT's claims of overbreadth also ignore the context in which these requests were propounded. Apex's Requests for Interrogatories contain the instructions that "Each interrogatory is to be answered fully based on information in your possession, custody or control, or in the possession, custody or control of your representatives, agents or attorneys. . . . If answers to these interrogatories are supplied upon information and belief, so state, and specifically identify and describe all sources of such

125258781.4

DEFENDANTS' REPLY ISO
MOTION TO COMPEL
3:24-CV-00137-RJC-DCK

information and belief. . . . If you are unable to answer any interrogatory or portion thereof, either by actual knowledge or upon information and belief, so state, and describe in detail the efforts made to obtain such knowledge or information." These instructions do not require external research or investigation outside of what CMT and its representatives, agents, and attorneys already know. Similarly, Apex's requests for production are for documents possessed by CMT—not third-party documents that CMT would need to externally research, subpoena, or collect. If CMT has information or documents relating to these requests, it should provide them. If CMT does not have any such information or documents, it could expressly say so.

Therefore, Apex's discovery requests are not vague or overbroad, and instead are direct with particularity at information and documents relevant to the parties' claims and defenses in this case.

## VII. CONCLUSION

For the foregoing reasons, CMT's opposition brief either ignores arguments entirely or cites distinguishable case law from outside courts. It remains clear that (1) CMT cannot unilaterally chose to refuse to respond to the "contention" interrogatories until a time of its choosing, and (2) Apex's discovery requests seeking specific information and documents relating to saw blades, power tools, and power tool accessories are both relevant to the claims in this case and well within the broad scope of discovery under the Federal Rules.

As a result, and for the reasons included with Apex's memorandum in support of its motion to compel, Apex respectfully requests that the Court order CMT to withdraw its "contention interrogatory" objections, its objections relating to responding to discovery covering "saw blades," "power tools," and "power tool accessories," and compel CMT to supplement its Interrogatory Responses and RFP Responses accordingly pursuant to Rule 37(a)(3)(B). As explained above, this would require supplemental responses to at least Interrogatory Nos. 1, 2, 4, 6, 10, 11, 12, 15, and 21 and RFP Nos. 1, 2, 3, 4, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 30, 31, 32, 33, and 35.

DATED: July 1, 2024                    LEWIS ROCA ROTHGERBER CHRISTIE LLP

125258781.4

By: /s/Aaron D. Johnson

Michael McCue
Aaron D. Johnson
David A. Jackson
MMcCue@lewisroca.com
ADJohnson@lewisroca.com
DJackson@lewisroca.com
100 Pine Street, Suite 1750
San Francisco, CA  94111
Telephone:   650.391.1380
Facsimile:    650.391.1395

SNEED PLLC
Jason M. Sneed (NC Bar No. 29593)
Megan Sneed (NC Bar No. 38525)
JSneed@SneedLegal.com
MSneed@SneedLegal.com
Litigation@SneedLegal.com

45 South Main Street, Suite 400
Davidson, NC  28036
Tel:  844-763-3347

*Attorneys for Defendants*

## CERTIFICATE OF USE OF ARTIFICIAL INTELLIGENCE

Pursuant to this Court's order of June 13, 2024 regarding the use of artificial intelligence in court filings, Defendants Apex Tool Group LLC and Apex Brands, Inc. hereby certify:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexus, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Signed this July 1, 2024.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: */s/Aaron D. Johnson*
Michael McCue
Aaron D. Johnson
David A. Jackson
MMcCue@lewisroca.com
ADJohnson@lewisroca.com
DJackson@lewisroca.com
100 Pine Street, Suite 1750
San Francisco, CA 94111
Telephone: 650.391.1380
Facsimile: 650.391.1395

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 1st day of July, 2024, the foregoing *Defendants'*

*Reply in Support of Their Motion to Compel Plaintiffs to Supplement Discovery Responses* was

served via electronic means through CM/ECF on the following counsel of record:

Ward Davis (NC Bar ID 27546)
Joshua B. Durham (NC Bar ID 25414)
BELL, DAVIS & PITT
227 W. Trade St., Suite 1800
Charlotte, NC 28202
(704) 227-0400
ward.davis@belldavispitt.com
jdurham@belldavispitt.com

Edgar H. Haug (*pro hac vice*)
Robert E. Colletti (*pro hac vice*)
Jessica M. Stookey (*pro hac vice*)
Patrick J. Lavery (*pro hac vice*)
HAUG PARTNERS LLP
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
ehaug@haugpartners.com
rcolletti@haugpartners.com
jstookey@haugpartners.com
plavery@haugpartners.com

*Attorneys for Plaintiffs CMT USA, Inc.*
*and CMT Untensili S.p.A.*

/s/ *Aaron D. Johnson*

DEFENDANTS' REPLY ISO
MOTION TO COMPEL
3:24-CV-00137-RJC-DCK

125258781.4