IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:24-CV-137-RJC-DCK

| CMT USA, INC., and | ) | |
|---|---|---|
| CMT UTENSILI S.P.A., | ) | |
| | ) | **ORDER** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APEX TOOL GROUP LLC, and | ) | |
| APEX BRANDS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion To Compel Plaintiffs To Supplement Responses To Defendants' First Set Of Interrogatories" (Document No. 73). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and immediate review is appropriate. Having carefully considered the motion and the record, the undersigned will grant the motion in part and deny the motion in part.

## BACKGROUND

CMT USA, Inc., and CMT Utensili S.p.A. (together "Plaintiffs" or "CMT") initiated this action with the filing of a "Complaint" (Document No. 1) in the United States District Court for the Southern District Of New York ("S.D.N.Y.") on August 24, 2023. Plaintiff then filed an "Amended Complaint" (Document No. 10) on August 29, 2023.

The S.D.N.Y. issued a "Civil Case Management Plan And Scheduling Order" (Document No. 33) on November 30, 2023. The "...Scheduling Order" included the following deadlines: initial disclosures – November 21, 2023; fact discovery completion – March 29, 2024; and all **discovery completion – May 13, 2024**. (Document No. 33) (emphasis added).

Plaintiffs filed a "Second Amended Complaint" (Document No. 37) (the "Complaint") on December 20, 2023. The Complaint alleges that Apex Tool Group LLC ("Apex Tool Group") and Apex Brands, Inc. ("Apex Brands") (together "Defendants") are liable for "infringement of CMT's registered mark for the color orange in connection with woodworking circular blades (U.S. Registration No. 3,038,625)." (Document No. 37, p. 1); see also (Document No. 37-1, p. 2).

Plaintiffs allege that Defendants "have commenced the sale of woodworking saw blades bearing an orange color that is identical and/or confusingly similar to CMT's Orange Color Marks (the 'Infringing Orange Circular Saws') . . . under its 'Crescent' brand of woodworking tools." (Document No. 37, pp. 6-7). "CMT sent cease and desist letters to Defendants Apex Tool Group and Apex Brands on November 5, 2021, November 19, 2021, and December 22, 2021." (Document No. 37, p. 8). Plaintiffs contend that Defendants "refused to cease any of their infringing activities" and " have elected to continue marketing Infringing Orange Circular Saws in a deliberate attempt to create confusion amongst consumers who will assume that Defendants' infringing products are affiliated with, authorized by, or endorsed by CMT, when they are not." Id.

The Complaint specifically asserts claims for: (1) Infringement of Registered Trademarks Under 15 U.S.C. § 1114); (2) Trademark Infringement Under Common Law; (3) Trademark Infringement Under 15 U.S.C. § 1125(a); (4) Unfair Competition Under 15 U.S.C. § 1125(a); (5) Unfair Competition Under New York Common Law; (6) Trademark Dilution Under 15 U.S.C. § 1125(c); and (7) Trademark Dilution Under N.Y. Gen. Bus. L. § 360-1. (Document No. 37, pp. 12-18). All of Plaintiffs' claims and requests for relief are directly related to the alleged infringement of Plaintiffs' trademark rights in "the color orange on circular woodworking blades." (Document No. 37).

"Defendants' Answer And Counterclaims" (Document No. 38) was filed on January 3, 2024.  Defendants contend that Plaintiffs' claims "are based on a fraudulently obtained, invalid trademark" and that "CMT's attempt to monopolize the use of orange is unsupported by law, defies common sense and would unduly restrict the design options available to competitors in this market." (Document No. 38, p. 11).  Defendants' counterclaims seek the cancellation of Plaintiffs' trademark under 15 U.S.C. §§ 119, 1064(3) due to functionality, fraud on the USPTO, genericness, and abandonment.  (Document No. 38, pp. 21-24).

Also on January 3, 2024, Defendants filed a "...Motion To Transfer..." this case to the Western District of North Carolina.  (Document No. 39).  The S.D.N.Y. granted Defendants' "...Motion To Transfer..." on January 30, 2024.  The case was then transferred to this Court on February 6, 2024, and assigned to the Honorable Robert J. Conrad, Jr. and the undersigned Magistrate Judge.  (Document No. 46).  On April 9, 2024, this Court issued a "Pretrial Order And Case Management Plan" (Document No. 68) that included the following deadlines:  **fact discovery completion – June 21, 2024**;  expert discovery completion – September 6, 2024;  dispositive motions – September 27, 2024;  and trial – March 3, 2025.  (Emphasis added).

The pending "Defendants' Motion To Compel Plaintiffs To Supplement Responses To Defendants' First Set Of Interrogatories" (Document No. 73) was filed on June 10, 2024.  Defendants state that their motion raises two issues:  "(1) whether CMT can refuse to respond to properly served interrogatories that it claims are 'contention interrogatories,' and (2) whether CMT can refuse to provide information and documents related to saw blades and other power tool accessories that Apex believes are relevant to its claims and defenses but are not expressly covered by the precise language within CMT's trademark registration."   (Document No. 73, p. 1). Defendants seek an order compelling Plaintiffs to supplement the following discovery responses:

3

"Interrogatories 1, 2, 4, 6, 10, 11, 12, 15, and 21; and RFP Nos. 1, 2, 3, 4, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 30, 31, 32, 33, and 35." Id.

At the parties' joint request, the case deadlines have been recently further revised as follows: fact discovery completion – **September 13, 2024**; opening expert reports – **October 4, 2024**; rebuttal expert reports – **November 1, 2024**; dispositive motions – **November 26, 2024**; and trial – **May 5, 2025**. See (Document Nos. 79 and 80).

The pending motion to compel is now ripe for review and disposition.

## STANDARD OF REVIEW

Rule 26 of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1). The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1945). However, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed.R.Civ.P. 26(c)(1).

Whether to grant or deny a motion to compel is generally left within a district court's broad discretion. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (denial of motions to compel reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting District Court's substantial

4

discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

**DISCUSSION**

By the instant motion, Defendants contend that Plaintiffs should be compelled to remedy deficiencies in both their responses to Defendants' First Set of Interrogatories and their responses to the Defendants' First Set of Requests for Production. (Document No. 73, p. 1); see also (Document Nos. 74-9 and 77-2). As noted above, Defendants assert that there are two main issues before the Court: (1) whether Plaintiffs can refuse to respond to "contention interrogatories"; and (2) whether Plaintiffs can refuse to provide information and documents related to products other than "circular blades for power saws for cutting wood," such as other kinds of saw blades, power tools, and power tool accessories. The Court will address these issues separately below.

**A. "Contention Interrogatories"**

Defendants propounded their First Set of Interrogatories on Plaintiffs on December 14, 2023, and Plaintiffs responded on January 22, 2024. (Document No. 74, p. 2) (citing Exhibit A (Document No. 74-1), and Exhibit B (Document Nos. 74-2 and 77-1)). Plaintiffs originally objected to certain interrogatories as premature "contention interrogatories," and relying on the S.D.N.Y.'s local rules, refused to provide full responses until the conclusion of discovery. (Document No. 74, p. 4) (citing S.D.N.Y. Local Civil Rule 33.3(c)); see also (Document No. 77-2). Since the case was transferred to this Court, Plaintiffs still decline to fully respond to Interrogatories 2, 4, 6, 15, and 21, and state that they will answer "at the end of fact discovery" and may supplement, amend, or modify any response "at the conclusion of expert discovery." (Document No. 74, p. 4; Document No. 77-2, pp. 4-5, 7, 10-11, 19, and 26).

Defendants argue that Plaintiffs' objection to these interrogatories "is improper and irrelevant to this Court." (Document No. 74, p. 4). Defendants note that this Court "has no rule against interrogatories that requests the claims and contentions of the opposing party." Id. In fact, Defendants assert that this Court and other courts in this Circuit have issued decisions that are supportive of contention interrogatories. (Document No. 74, pp. 4-5) (citations omitted). According to Defendants, the interrogatories at issue here are "exactly the type described as 'proper' by courts in this Circuit." (Document No. 74, p. 5). The disputed interrogatories include the following:

> Interrogatory 2: "Identify the full range of Pantone colors that CMT claims are likely to cause confusion with CMT when used on saw blades."
>
> Interrogatory 4: "Identify the percentage of the color orange (compared to any other color or no color) that CMT claims is likely to cause confusion when used on saw blades."
>
> Interrogatory 6: "State all facts and identify all documents relevant to CMT's contention that consumers in the United States associate the color orange on saw blades exclusively with CMT."
>
> Interrogatory 15: "State all facts and identify all documents relevant to CMT's contention that its use of the color orange on saw blades is non-functional."
>
> Interrogatory 21: "State all facts and identify all documents supporting CMT's claim that Apex's orange saw blades are of an inferior quality than CMT's orange saw blades."

Id.

Defendants note that these interrogatories were served in December 2023, and thus Plaintiffs have "had plenty of time to gather any information necessary to respond to interrogatories 1, 2, 4, 6, 15, and 21." (Document No. 74, p. 6).

In opposition to the pending motion, Plaintiffs first assert that they do not object to the interrogatories because they are contention interrogatories, but because they are premature.

(Document No. 76, pp. 2-3). Plaintiffs note that the Federal Rules address the timing of contention interrogatories: "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, **but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time**." (Document No. 76, p. 2) (quoting Fed.R.Civ.P. 33(a)(2)).

Based on the Federal Rule 33 and other legal authority, Plaintiffs conclude that contention interrogatories are "better addressed at the end of discovery." (Document No. 76, pp. 3-4) (citing <u>Cappachione v. Charlotte-Mecklenburg Schools</u>, 3:97-CV-482-RDP, 182 F.R.D. 486, 489 (W.D.N.C. 1998) ("[d]ue to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted—typically, at the end of the discovery period.").

Plaintiffs contend they are "committed to responding once substantial discovery has been completed by both parties" but note that at the time of its "filing, depositions have yet to occur, and Apex has made what CMT believes to be a meager production of documents." (Document No. 76, p. 5).

In reply, Defendants contend that the caselaw relied upon by Plaintiffs does not support delaying responses until "an unspecified date in the future." (Document No. 78, p. 2). Moreover, Defendants suggest that substantial discovery has been exchanged including "17,471 pages of documents[,] and CMT's own counsel claimed in an email to Apex that its document production has been 'completed.'" <u>Id.</u> Defendants note that in contrast to some of the cases cited by Plaintiffs, this "case is well into the discovery phase, if not nearing the end." (Document No. 78, p. 3).

In concluding its arguments on this issue, Defendants state:

> There is no doubt here that CMT has much, if not all, of the information necessary to respond to Apex's "contention"

7

> interrogatories—only CMT knows the range of colors that CMT believes are likely to cause confusion with CMT when used on saw blades (Interrogatory No. 2) and what percentage of the color orange used on saw blades CMT believes is likely to cause confusion with CMT's products (Interrogatory No. 6). Furthermore, unless CMT's claims were entirely baseless when it filed its Complaint, CMT possesses facts and documents relevant to its claims that the color orange on saw blades is non-functional (Interrogatory No. 15), and that consumers in the United States associate the color orange on saw blades exclusively with CMT (Interrogatory No. 6).

(Document No. 78, p. 4).

The undersigned finds that the parties generally agree, based on relevant legal authority, that responses to "contention interrogatories" are often provided during the later stages of discovery. Defendants, however, suggest that this case is at or near the stage of discovery where such responses are typically provided. Plaintiffs, meanwhile, have declined to commit to any date or other specific benchmark for when they will provide their responses. Plaintiffs' failure to even propose a deadline for their responses beyond "once substantial discovery has been completed by both parties" is not helpful.

As noted above, the discovery requests at issue were served in December 2023; if discovery is not substantially complete by now, it should be. At the time "Defendants' Motion To Compel..." was filed on June 10, 2024, the deadline for fact discovery was June 21, 2024. See (Document Nos. 68 and 74). Even after the Court allowed the parties' recent "Joint Motion To Modify The Scheduling Order," the fact discovery deadline remained looming – September 13, 2024. See (Document Nos. 79 and 80). In this instance, the undersigned finds that supplemental responses to Defendants' "contention interrogatories" is appropriate and in the best interests of efficient case management.

Based on the foregoing, the undersigned directs that Plaintiffs shall supplement their responses to Interrogatories Nos. 1, 2, 4, 6, 15, and 21, by **September 6, 2024**.

8

**B. Discoverable Products**

Next, Defendants seek to compel the production of "information and documents pertaining to products similar to the 'Circular blades for saws for cutting wood' covered by CMT's '62[5] Registration." (Document No. 74, p. 7); see also (Document No. 37-1, p. 2). "These similar products include other circular saw blades, other types of power tools, and other types of power tool accessories." Id. Specifically, Defendants demand supplemental responses to Interrogatory Nos. 10, 11, and 12 and Request For Production Nos. 1, 2, 3, 4, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 30, 31, 32, 33, and 35. (Document No. 73, p. 1; Document No. 78, p. 13).

According to Defendants, these three categories of products "are extremely relevant to not only CMT's claims but also Apex's counterclaims." (Document No. 74, p. 8). Defendants argue that trademark infringement claims "involve questions over what products or services consumers believe are related . . . [a]nd in this case an essential question will be whether consumers view circular saw blades that cut wood as distinct from circular saw blades that cut other materials, as well as other power tools and power tool accessories." Id.

Defendants rely on a decision by the Trademark Trial and Appeal Board ("TTAB"), Milwaukee Elec. Tool Corp. v. Freud Am., Inc., 2019 WL 6522400 (Trademark Tr. & App. Bd. Dec. 2, 2019), to support their position. (Document No. 74, pp. 8-9). In Milwaukee Elec. Tool Corp., the TTAB "had to decide whether the color red could be registered as a trademark for a certain subset of saw blades, and as part of that question, whether all types of saw blades were relevant to the decision." Id. "The Board held that all saw blades, without limitation, were 'directly relevant' to the case because most saw blades 'travel in the same channels of trade and are purchased by the same consumers; therefore, the entire universe of saw blades is relevant for

9

determining consumer perception ….'"  (Document No. 74, p. 9) (quoting Milwaukee Elec. Tool Corp., 2019 WL 6522400 at *3).  Defendants contend the TTAB decision is entitled to "great weight."  Id. at n. 2.

Defendants conclude that Plaintiffs' objections are improper and that "[p]roducts within the same product category are clearly relevant to Apex's claims and defenses," and therefore, the Court should require Plaintiffs to fully supplement discovery responses "for all requests involving 'saw blades,' 'power tools,' and 'power tool accessories.'"  (Document No. 74, pp. 9-10).

Plaintiffs' brief in opposition argues that discovery related to products other than circular woodworking blades is irrelevant and overbroad.  (Document No. 76, pp. 6-10).  First, Plaintiffs address the alleged lack of relevancy of other products.  (Document No. 76, pp. 6-8).

Plaintiffs contend that Defendants have not demonstrated the relevance of third-party use of the color orange on other tools.  (Document No. 76, p. 6).  Here, Plaintiffs note, the "asserted trademark is not the usual wordmark applied to a good or its packaging," but "is trade dress that specifically pertains to the color orange as applied to circular blades for power saws for cutting wood."  Id. (citing Superformance Int'l, Inc. v. Hartford Cas. Ins. Co., 203 F.Supp.2d 587, 596 n.5 (E.D.Va. 2002)).  Plaintiffs' trademark includes the color orange and "the shape of the product itself:  a circular blade....."  Id.  As such, "Apex cannot assert that some other power tool, that uses some amount of orange, like a leaf blower, is using a 'similar mark' on a 'similar good.'"  Id.

Plaintiffs also discuss Defendants' reliance on Milwaukee Elec. Tool Corp. and assert that where the facts here differ from Milwaukee Elec. Tool Corp. "is key to the parties current dispute." (Document No. 76, p. 7).  "At issue in *Milwaukee* were two of [Defendant]'s trademark registrations, one being for the color red as applied to 'cutting tools for power woodworking machines, namely, shaper cutters, saw blades, router bits and forestner [sic] bits.'"  Id. (quoting

Milwaukee Elec. Tool Corp., 2019 WL 6522400, at *1). In Milwaukee Elec. Tool Corp., the TTAB noted that the registration at issue contained "no limitation as to the saw blades except that they are 'cutting tools for power woodworking machines.'" (Document No. 76, p. 8) (quoting Milwaukee Elec. Tool Corp., 2019 WL 6522400, at *10). Plaintiffs contend that in Milwaukee Elec. Tool Corp., "[t]he TTAB relied on the '769 Registration's broad description of its goods to determine that other types of sawblades were relevant to the genericness inquiry." Id.

Plaintiffs argue that in contrast to that case, the trademark here is narrow; the goods are defined "as the color orange applied to 'circular blades for power saws for cutting wood.'" Id. Plaintiffs further argue that Defendants' attempt to seek discovery on goods beyond circular woodcutting blades is irrelevant to any claim or defense in this case. Id. By example, Plaintiffs contend that Defendants' view of discovery would include piezoelectric saws used by dentists, bone saws used by hunters, as well as broad categories of power tools and accessories such as leaf blowers – all of which are irrelevant to the claims and defenses in this case. Id.

In addition, Plaintiffs argue that Defendants' demand for discovery responses addressing allegedly similar products is overly broad. (Document No. 76, pp. 9-10). According to Plaintiffs, Defendants' discovery requests are "demanding CMT catalog every saw blade, power tool, and power tool accessory that has used any amount of orange, a task that is, at best, unduly burdensome, and, at worst, impossible." (Document No. 76, p. 9). Plaintiffs point to RFPs 10 and 12 and Interrogatories Nos. 10 and 12, which demand that they identify all third parties that use or have used the color orange on any type of saw blades, power tools, or power tool accessories. Id.; see also (Document No. 74-9, pp. 11-13 and Document No. 77-2, pp. 13-15, 16-18).

Plaintiffs further argue that other courts have found similar requests to be overbroad. (Document No. 76, p. 10) (citing Michael Kors, L.L.C. v. Su Yan Ye, 2019 WL 1517552, at *6

11

(S.D.N.Y. Apr. 8, 2019) ("unclear how Plaintiff would have the information sought as it seeks information concerning third parties' activities"); Miller v. Pruneda, 2004 WL 3927832, at *4 (N.D.W.Va. 2004) ("Interrogatories cannot require the responding party to make extensive investigations or conduct complex research"); and Lynn v. Monarch Recovery Mgmt., Inc., 285 F.R.D. 350, 357 (N.D.Md. 2012) (explaining that a party responding to an interrogatory must "provide relevant facts reasonably available to it but should not be required to enter upon independent research in order to acquire information merely to answer interrogatories")).

In reply, Defendants first argue that Plaintiffs have failed to explain why information related to saw blades, power tools, and power tool accessories are not relevant to this case. (Document No. 78, p. 6). Defendants contend that because some retailers sell all three types of products in the same store, and even on the same shelf, discovery on all these products is relevant. Id. Defendants again lean on the Milwaukee Elec. Tool Corp. case for the finding that "**the entire universe of saw blades is relevant for determining consumer perception**...." (Document No. 78, p. 7) (quoting Milwaukee Elec. Tool Corp., 2019 WL 6522400 at * 3).

Defendants further assert that:

> when products are sold together and are sold by the same company they are relevant in trademark infringement cases because they affect (1) the strength of the mark, (2) consumers' perception of the mark, (3) relevant advertising, and (4) lost sales, among other factors. CMT has not responded at all to this explanation and has provided no argument as to why those three product categories are not relevant. *See, e.g.*, 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:24, 24:45 (5th ed.)

Id.

Still relying on Milwaukee Elec. Tool Corp., Defendants further contend that the TTAB took into consideration saw blades that cut other types of materials than wood, other tools, and store displays and catalogs. (Document No. 78, p. 9). Defendants urge this Court to find that all

12

saw blades, power tools, and power tool accessories are relevant for determining consumer perception regarding Plaintiffs' trademark. Id. Moreover, Defendants contend that in contrast to cases cited by Plaintiffs, their "requests are specific and directly relevant to the strength of CMT's mark (and other factors), and are limited by a definite list of products." (Document No. 78, p. 11).

Regarding allegedly overbroad requests such as Interrogatory Nos. 10 and 12, Defendants argue that Plaintiffs are only expected to provide responses/documents that are in their possession, custody, or control – they are not required to do external research, investigation, or collection. (Document No. 78, pp. 12-13).

The undersigned first notes, as set forth above, that the Complaint clearly states that "[t]his action involves infringement of CMT's registered mark for the color orange in connection with woodworking circular blades." (Document No. 37, p. 1) (citing U.S. Registration No. 3,038,625). As such, demands that Plaintiff provide information and/or documents regarding any/all saw blades, power tools, and power tool accessories that use any amount of the color orange, do not appear to be relevant and/or proportional to the needs of this case.

In short, the undersigned is not persuaded by Defendants' arguments as to the relevance of those broad categories of products. See (Document No. 74, pp. 7-10). Although Defendants state that "[t]rademark infringement claims by their nature involve questions over what products or services consumers believe are related," they do not seem to disagree with Plaintiffs that their discovery requests could be construed to include products such as dental tools and leaf blowers. See (Document No. 78, p. 10). Defendants have not adequately explained how consumers might find orange circular saws for wood cutting confusingly similar to piezoelectric saws, leaf blowers, or other power tool accessories.

13

Also, Defendants' reliance on Milwaukee Elec. Tool Corp. seems to be misplaced. Apparently, the registration at issue in that case involved the color red as applied to the entire surface of the goods identified as "cutting tools for power woodworking machines, namely, shaper cutters, saw blades, router bits and forestner [sic] bits," in International Class 7." Milwaukee Elec. Tool Corp., 2019 WL 6522400 at *1; see also (Document No. 74, pp. 8-9). As noted by Defendants, the TTAB then found that "the entire universe of saw blades is relevant for determining consumer perception regarding Freud's marks." Id. at *3; (Document No. 74, p. 9).

The undersigned finds that the trademark registration at issue in Milwaukee Elec. Tool Corp. involved a significantly broader spectrum of products than the products covered by the registration at issue here, and yet, the TTAB limited discovery to saw blades. In the instant case, Defendants seek discovery not only as to saw blades but also power tools and power tool accessories.

Based on the parties' arguments and legal authority, including Milwaukee Elec. Tool Corp., the undersigned will direct that Plaintiffs supplement their responses to the requests in dispute to provide responsive information that addresses saw blades for power tools. As explained by Defendants, Plaintiffs responses/production do not require external research, investigation, subpoena, or collection. (Document No. 78, p. 13). Incorporating the foregoing limitations, Plaintiffs should supplement discovery responses to Interrogatory No. 10, and RFP Nos. 1, 2, 3, 4, 7, 8, 9, 10, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 30, 31, 32, and 35, on or before **September 6, 2024**.

**IT IS, THEREFORE, ORDERED** that "Defendants' Motion To Compel Plaintiffs To Supplement Responses To Defendants' First Set Of Interrogatories" (Document No. 73) is

**GRANTED in part** and **DENIED in part**, as described herein. Plaintiffs shall supplement their discovery responses on or before **September 6, 2024**.

**IT IS FURTHER ORDERED** that the case deadlines are revised as follows: fact discovery completion – **October 4, 2024**; opening expert reports – **October 18, 2024**; rebuttal expert reports – **November 1, 2024**.

**IT IS FURTHER ORDERED** that the parties' requests for costs and/or fees are **DENIED**.

**IT IS FURTHER ORDERED** "Defendants' Motion For Leave To File Sur-Reply…" (Document No. 81) is **DENIED**.

**SO ORDERED**.

Signed: August 9, 2024

David C. Keesler
United States Magistrate Judge