| | |
|---|---|
| CMT USA, Inc. and CMT Utensili S.p.A., <br><br> Plaintiffs, <br><br> v. <br><br> Apex Tool Group LLC and Apex Brands, Inc., <br><br> Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO PREVENT THE DEPOSITION OF JAMES ROBERTS** |

In support of its Motion for Protective Order to Prevent the Deposition of James Roberts, Defendants Apex Tool Group LLC and Apex Brands, Inc. (collectively, "Apex") submit the following Memorandum of Law.

1. **Statement of the Dispute**

Apex moves pursuant to Fed. R. Civ. P. 36(c) for a protective order preventing Plaintiffs from taking the deposition of its CEO, James Roberts. Mr. Roberts is the CEO of Defendant Apex Tool Group LLC, a company with over 7,500 employees and factories across four continents. He does not have any specific or unique knowledge pertinent to the claims and issues relevant to this action. And he was not involved in any of the decisions underlying the claims and issues relative to this action. Apex did not identify Mr. Roberts in its initial disclosures and has no plans to call him as a witness.

Nevertheless, Plaintiffs served a Notice of Deposition for Mr. Roberts, seeking to depose him on September 4, 2024, before Plaintiffs will depose the individuals Apex did include in its initial disclosures, and even before Plaintiffs depose Apex's 30(b)(6) representative. *See* Plaintiff's Notice of Deposition of James Roberts, attached as Exhibit 1. During the meet and confer process for this motion, Plaintiffs agreed to stay that deposition pending the outcome of this motion. Declaration of David A. Jackson, Exhibit 2 ("Jackson Decl."), ¶ 3. Plaintiffs' sole motivation for this deposition is

to harass Mr. Roberts and Apex, as the only justifications they have made for taking his deposition are a few statements from earlier depositions showing that Mr. Roberts attended high level meetings discussing various business units, and gave general business instructions to those units.

The facts show that Mr. Roberts is unessential to this matter, and that he merely acted in the typical capacity of a CEO of a one-billion-dollar and 7,500 employee company: making broad, overarching decisions as to all of the company's product lines and business units. But as Plaintiffs have argued and this Court has already made clear, only one product line is at issue in this matter: saw blades for power tools.  Order re Apex's Motion to Compel (August 9, 2024, ECF No. 85).  Plaintiffs have not shown—and cannot show—that Mr. Roberts has any unique or specific knowledge relating to those products.  Plaintiffs have not shown—and cannot show—that Mr. Roberts had any direct involvement in the design, engineering, fabrication or sale of those products.  And Plaintiffs have not shown—and cannot show—that Mr. Roberts has any knowledge of this matter that is not more readily accessible through the depositions Plaintiffs have already taken or will take, including Plaintiffs' 30(b)(6) deposition of Apex.

With no legitimate need to depose Mr. Roberts, the only remaining explanation is that Plaintiffs hope to harass and disrupt Apex by noticing Mr. Roberts' deposition. As courts in the Fourth Circuit have recognized, "an effective way to harass and abuse a large multinational corporation in litigation is to notice the deposition of one of its high-level executives." *In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2014 WL 12703776, at *4 (S.D.W. Va. June 30, 2014).  The Court should not permit this gamesmanship.

Apex therefore urges the Court to reject this "effective way to harass" and grant Apex's Protective Order.  Apex also respectfully requests the Court order fees and costs to Apex in connection with this Motion, due to the baselessness of Plaintiffs' claims.

## 2. Rule 37(a)(1) Certification

Pursuant to Fed. R. Civ. P. 37(a)(1) and LCvR 7.1(b), Apex's undersigned counsel hereby certifies that they conferred in good faith with Plaintiffs concerning the subject matter of this motion in an effort to resolve their dispute without court action. In response to the August 26, 2024 direction from the Court, the parties held an additional meet-and-confer via video conference on August 28, 2024 in an attempt to see if any middle ground was possible. During that meet-and-confer, Plaintiffs refused Apex's proposal to table the discussion of whether a deposition of Mr. Roberts was needed until after the 30(b)(6) deposition, and counsel for both parties admitted that they are at an impasse on the issues below and that a decision from the court is required.

## 3. Factual Background

This case is about CRESCENT brand woodworking saw blades manufactured and sold by Apex. Plaintiffs claim these saw blades have a design that is too similar to Plaintiffs' own saw blades, and as a result consumers are likely to be confused. While Apex strongly disagrees with these claims, there is no dispute between the parties as to the goods at issue: saw blades.

Apex is a large manufacturer of hand tools, power tools, and accessories under a number of different brands, including WELLER, SATA, CAMPBELL, CLECO, GEARWRENCH, APEX, XCELITE, EREM, JACOBS CHUCK, and CRESCENT. Declaration of Curt Weber, attached as Exhibit 3 ("Weber Decl."), ¶ 3. Apex has around 7,500 employees and locations (including offices and factories) on four continents in order to operate its numerous brands and manage its diverse product offerings. *Id.*, ¶ 5. To account for the large number of product lines within Apex, employees work under strategic business units ("SBUs") based on product lines. SBUs ensure that a small, core group of employees are focused on specific product lines. *Id.*, ¶ 6.

Mr. Roberts is the CEO of Apex Tool Group and manages and provides the business direction and strategy for the company. *Id.*, ¶ 9. Due to the large number of employees, brands, and product

lines under his management, he is ordinarily not involved in the day-to-day decision making for a product line, and instead provides overall business guidance to the business units and company as a whole. *Id.*, ¶ 10.

Just one of the Apex brands—CRESCENT—is relevant to this lawsuit. And even within CRESCENT, only one SBU (known as "Power Tool Accessories" or "PTA") is relevant to this lawsuit. *Id.*, ¶ 6. Apex's saw blades account for only 31 products out of the over 2,600 products sold under the CRESCENT brand (about 1.2% of the CRESCENT products). *Id.*, ¶ 3. And out of the over 60,000 products sold by the entire Apex company, those saw blades account for less than 0.6% of the products available for sale. *Id.*, ¶ 4. The saw blades don't even make up the entirety of the PTA SBU, which also designs, manufactures, and sells drill bits, extractors, bit holders, socket adapters, and related accessories. *Id.*, ¶ 6.

Throughout this litigation, Apex has been transparent and forthcoming about the individuals who were responsible for the design, manufacturing, and sale of the saw blades. Apex's initial disclosures listed the three most involved individuals. Apex has made every effort to make these individuals available for depositions, including arranging the depositions of individuals who are no longer employed by Apex. As a result, Plaintiffs have taken or scheduled the depositions of six current or former employees of Apex, in addition to a scheduled deposition of Apex's 30(b)(6) representative. Jackson Decl., ¶ 4. These six employees include all the individuals within Apex's initial disclosures, as well as other individuals who were involved with the design, sale, and/or marketing of the products. *Id*.

Specifically, Plaintiffs have taken the following depositions:

- Curt Weber, former Vice President of Marketing for the CRESCENT brand;
- Ray Smith, Managing Director of Apex Brands, Inc. and Vice President of Marketing for Apex Tool Group LLC; and
- Ryan Kropfelder, Senior Product Manager for Apex Tool Group LLC;

Plaintiffs have noticed and worked with Apex to schedule the following depositions:

- Brendan Walsh, Senior Director of Marketing for Apex Tool Group LLC, as Apex's 30(b)(6) representative;
- Scott Bublitz, Senior Manager of Industrial Design for Apex Tool Group LLC;
- Ian Cunningham; Vice President of Design for Apex Tool Group LLC; and
- Michael Preus, a former employee of Apex Tool Group LLC.

Jackson Decl., ¶¶ 5-6.

Despite Plaintiffs having taken three depositions and scheduled four more (including the 30(b)(6) deposition), Plaintiffs now argue that the Weber, Smith, and Kropfelder depositions opened the door to deposing Mr. Roberts. But those depositions only mentioned Mr. Roberts in passing, and none described any situation where Mr. Roberts would have unique or specialized knowledge relating to the products at issue. Plaintiffs have cited no other justification beyond those three depositions for deposing Mr. Roberts.

In the depositions, Mr. Roberts was mentioned regarding only three matters: (1) quarterly business review meetings, (2) his general instructions to move inventory, and (3) general brand guidance. Each is addressed below:

### A. Quarterly Business Reviews

Mr. Roberts meets quarterly with the heads of each business unit, to be updated on the status and forecast for that unit (known as "Quarterly Business Reviews"). Weber Decl., ¶ 11. During the depositions of Mr. Weber, Mr. Smith, and Mr. Kropfelder, the witnesses described these meetings, noting that at the meetings they simply "would let the CEO know what was going on." Deposition of Curt Weber, attached as Exhibit 4 ("Weber Dep.") at 24:3-12. These quarterly business reviews are typically attended by senior management and executives of various product lines across different brands, and generally consist of up to 25 people. Weber Decl., ¶ 11. The witnesses stated during the depositions that actual decisions regarding the design and sale of the products were not made at the meetings, and instead fell to "just really the three of us [referring to Mr. Weber, Mr. Smith, and Mr. Cunningham]." Weber Dep. at 24:3-4. *See also* Deposition of Ray Smith, attached at Exhibit 5, at


125882317.5 - 5 - MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER 3:24-CV-00137-RJC-DCK

Case 3:24-cv-00137-RJC-DCK   Document 88   Filed 08/28/24   Page 5 of 19

96:7-12; Deposition of Ryan Kropfelder, attached at Exhibit 6 at 252:10-20.

The testimony of each Apex witness is consistent in showing that at these meetings Mr. Roberts was informed of the status of the CRESCENT Power Tool Accessory SBU, including the relevant saw blades, but did not issue any instructions or decisions relevant to the case.

### B. Instructions to Move Inventory

In one of the quarterly business reviews, Mr. Roberts instructed Mr. Weber to get rid of "all inventory" within the Power Tool Accessory SBU. Weber Dep. at 181:6-11. As Mr. Weber made clear in his deposition, this instruction was not based on or specific to saw blades. Weber Decl., ¶ 14. Indeed, when Mr. Weber was specifically asked if Mr. Roberts' instructions were related "[s]pecifically [to] inventory of circular saw blades," Mr. Weber clearly responded that the instructions were related to "**All** inventory." Weber Dep. at 181:6-11 (emphasis added). Mr. Weber elaborated that the reasoning for moving inventory was that one metric on which the company was measured is "working capital, and they measure that in terms of inventory days. And that is why we were instructed to move the inventory so our working capital will also be met." Weber Dep. at 181:11, 184:2-10. Mr. Weber's testimony makes clear that any instructions from Mr. Roberts related to inventory were made at a high level and based on financial goals and metrics for Apex Tool Group as a whole. None of Mr. Roberts' instructions were specific to saw blades. Indeed, Plaintiffs explicitly asked Mr. Weber whether Mr. Roberts' instructions to move inventory "had to do with this lawsuit." Weber Dep. at 206:17. Mr. Weber responded, "No. The inventory was there before the lawsuit." Weber Dep. at 206:20-21.

Thus, the testimony regarding the instruction to move inventory is consistent in showing that Mr. Roberts provided general business guidance to the company and the SBUs (i.e., "meet your metrics"), but did not issue any instructions or decisions specific to saw blades or relevant to this case.

### 3. Brand guidance

During his deposition Mr. Weber stated that Mr. Roberts gave general direction as to placing certain product lines under the CRESCENT brand, and directed that Apex stay in the Power Tool Accessories business. Weber Dep. at 261:13-15, 317:17-319:4. These directions were general business directions for the PTA SBU and had nothing to do with the design or sale details of the saw blades. Weber Decl., ¶ 16. Everyone in the meetings where this guidance was given understood the guidance to be general business strategy for which the leaders of the PTA SBU (namely, Mr. Weber and Mr. Kropfelder) would decide how to implement. *Id.*

These sparse and attenuated references to Mr. Roberts show only that Mr. Roberts is a busy CEO of a large company, responsible for overseeing a variety of product lines, and only involved with the products at issue in this matter in the most cursory way and through high-level financial direction. Weber Decl., ¶ 15. These are exactly the type of discussions and meetings which the other participants in the meetings, or the corporate 30(b)(6) representative, could testify. Weber Decl., ¶ 13.

Therefore, the testimony regarding placing product lines under the CRESCENT brand, and remaining in the Power Tool Accessory business is consistent in showing that Mr. Roberts provided general business guidance to the company and the SBUs, but did not issue any instructions or decisions specific to saw blades or relevant to the claims in this case.

### 4. Analysis

#### a. **Standard of Review**

District courts have "broad discretion" in "resolution of discovery problems that arise in cases pending before [them]," including questions of whether a party should be permitted to take the deposition of a high-ranking executive. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993). And the Fourth Circuit has been clear that "the simple fact that requested information is discoverable under Rule 26(a) does not mean that discovery must be had." *Nicholas v. Wyndham Int'l,*

*Inc.*, 373 F.3d 537, 543 (4th Cir. 2004); *see also Performance Sales & Mktg. LLC v. Lowe's Companies, Inc.*, 2012 WL 4061680, at *3 (W.D.N.C. Sept. 14, 2012) ("**liberal discovery does not necessarily bestow upon a party the right to have his or her attorney depose a highly ranked corporate executive**") (emphasis added).

"In order to obtain a protective order, the [movant] must demonstrate good cause." *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 412 (M.D.N.C. 1991). Good cause includes "protect[ing] a party . . . from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). In seeking a protective order, "[t]he burden is on the party resisting discovery to explain specifically why its objections . . . are proper given the broad and liberal construction of federal discovery rules." *Desrosiers v. MAG Indus. Automation Sys., LLC*, 675 F. Supp. 2d 598, 601 (D. Md. 2009).

Many courts around the country have adopted the so-called "Apex Doctrine" when deciding whether to permit the deposition of CEOs and other high-ranking executives. The Apex Doctrine states that "before a plaintiff may depose a corporate defendant's high ranking officer, the plaintiff must show "(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted." *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, 2014 WL 547078, at *1 (E.D.N.C. Feb. 10, 2014) (quotation omitted).

The Fourth Circuit has "neither adopted, nor rejected, the [A]pex [D]octrine." *Cunagin as Next friend of J.C. v. Cabell Huntington, Hosp., Inc.*, 2021 WL 1518877, at *4 (S.D.W. Va. Apr. 16, 2021). However, Fourth Circuit courts apply a similar standard through the plain language of Federal Rule of Civil Procedure 26, under which the Court retains an obligation to "limit the frequency or extent of discovery … if it determines that … the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less

expensive." Fed. R. Civ. P. 26(b)(2)(C)(i); *see also Trustees of Purdue Univ. v. Wolfspeed, Inc.*, 2023 WL 4564558, at *4 (M.D.N.C. July 17, 2023).

In applying this standard, courts within the Fourth Circuit have prohibited the taking of depositions of high-level executive unless:

(a) the executive has "knowledge is so special or unique or that [the party] cannot obtain the information it seeks by deposing . . . 30(b)(6) witnesses." *Wolfspeed*, 2023 WL 4564558, at *4 (prohibiting deposition of CEO);

(b) the executive has "direct or specialized knowledge relevant to the elements of [the] claims" *Dixon v. Foot Locker Inc.*, 623 F. Appx. 594, 595 (4th Cir. 2015) (affirming trial court's prohibition of deposition of CEO); or

(c) the executive has relevant information that "cannot be obtained from some other more convenient source" *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014) (prohibiting deposition of corporate officer).

Here, none of those exceptions apply, and therefore Plaintiffs' attempts to take Mr. Roberts' deposition should be denied.

### b. Mr. Roberts does not have knowledge that cannot be obtained from a 30(b)(6) witness.

Fourth Circuit courts hold that where information could be obtained by deposing a 30(b)(6) witness, depositions of a high-ranking executive are improper because that executive's information is not "special or unique." *Cross by & Through Steele v. XPO Express, Inc.*, 2017 WL 10544634, at *2 (D.S.C. May 8, 2017) (denying the deposition of a party's CFO even where the CFO was in charge of risk management areas that related to the claims in the case, because the party attempting to take the deposition had not shown "that they cannot obtain the information they are seeking by deposing [the party's] 30(b)(6) witnesses.")

In *Wolfspeed*, the court denied the deposition of a party's CEO in a patent infringement lawsuit, even where the CEO was personally meeting with customers and making marketing and sales decisions, because there was no evidence that the CEO had specialized knowledge of the patent or infringement, and no evidence that the CEO encouraged customers to purchase the allegedly infringing product. *Wolfspeed*, 2023 WL 4564558, at *5.

Here, Mr. Roberts has even **less** special or unique information than the executives in *Cross By* and *Wolfspeed*, and any information he does have could easily be communicated by one of the other employees in the room or Apex's 30(b)(6) representative. As Apex's witnesses have testified, all relevant discussions with Mr. Roberts took place during large Quarterly Business Reviews that contained up to 25 people. And those discussions consisted of primarily of status updates, with only general, high-level business directions given. Much like the CFO in *XPO Express* or the CEO in *Wolfspeed*, these types of meetings and decisions that apply to many parts of the business as a whole are precisely the types of information that could be better obtained from a 30(b)(6) witness or a lower-ranked executive. Indeed, Apex has already included in its initial disclosures and made available a number of individuals who were in those meetings, and who made the decisions on how to interpret the general business guidance into specific instructions for the saw blade products.

Therefore, Mr. Roberts does not have knowledge that is so special or unique that it cannot be obtained from a 30(b)(6) witness, and as a result the attempt to take his deposition should be denied.

       **c.**       **Mr. Roberts does not have direct or specialized knowledge of facts relevant to the elements of the claims at issue.**

Whether applying the Apex Doctrine or not, Fourth Circuit courts consistently require that a party requesting a CEO deposition prove that the CEO has "direct or specialized knowledge relevant to the elements of [Plaintiffs] claims." *Dixon v. Foot Locker Inc.*, 623 Fed. Appx. 594, 595 (4th Cir. 2015); s*ee also E.E.O.C. v. Freeman,* No. 09-CV-2573, 2012 WL 2370122, at *2 (D. Md. June 21, 2012) (granting protective order to preclude deposition of defendant CEO without consideration of

Apex Doctrine); *Nicholas*, 373 F.3d at 543 (citing Fed. R. Civ. P. 26(b)(2)(C) and affirming district court's denial of corporate deposition of third-party company where defendant had already deposed plaintiff owners of company and company "ha[d] no more information about the facts of liability and damages than [p]laintiffs themselves had").

Plaintiffs cannot show that Mr. Roberts has direct or specialized knowledge of the facts relevant to this case, let alone that such knowledge cannot be obtained through the numerous other depositions Plaintiffs have already taken or noticed. The depositions show that Mr. Roberts did not approve the appearance, design, manufacturing, or sale of the products at issue, but was instead merely kept abreast of the product line at regularly scheduled meetings. And when Mr. Roberts *did* make decisions affecting the saw blades at issue, such decisions were made on a general business basis, affecting a large number of product lines, and based on general business metrics such as profitability of the business as a whole.

**None** of these decisions are relevant to this dispute. Plaintiffs know this, because when Plaintiffs specifically asked whether certain decisions related to this lawsuit, Mr. Weber made clear that those decisions had nothing to do with the lawsuit. Weber Dep. at 206:17-21. Plaintiffs' attempt to depose Mr. Roberts despite this testimony underscores that the real reason Plaintiffs want to depose Mr. Roberts is to harass him and invent a personal vendetta against Plaintiffs that simply does not exist. But Plaintiffs should not be able to depose Mr. Roberts for the sole purpose of fishing for a motive that does not exist and cannot be supported by a single shred of evidence.

Indeed, when dealing with similar facts, courts in the Fourth Circuit have consistently precluded the depositions of high-level executives who lack unique personal knowledge of pertinent facts, **even if those executives did make high-level decisions that happened to affect some of the facts.** This prevents the noticing party from using a requested deposition as "a litigation tactic to

create undue leverage by harassing the opposition or inflating its discovery costs." *Smithfield*, 2014 WL 547078, at *2 (citing *Performance Sales*, 2012 WL 4061680, at *3-4).

In *Performance Sales*, for example, the plaintiffs sought to depose the Chief Executive Officer, Chief Financial Officer, and Vice President of Business Development of defendant Lowes Corporation regarding allegations that the company had improperly eliminated vendor service groups. *See* 2012 WL 4061680, at *1. The magistrate judge issued a report and recommendation allowing the depositions to proceed, but the district court reversed for clear error. *Id*. at *10. The court explained that the plaintiffs had failed to come forward with evidence that the company's decision was "developed … by those at 'the very apex of Lowe's corporate structure,'" and that "there has been no demonstration that [the executives] had any relevant knowledge [of the underlying allegations]." *Id*. As a result, the depositions were "unduly burdensome and unwarranted" under Rule 26 and the apex doctrine. *Id*.

### d. Mr. Roberts does not have relevant information that cannot be obtained from some other more convenient source

In *Smithfield Bus. Park,* the court denied the deposition of a party's corporate officer, because the party attempting to take the deposition had only provided "undetailed assertions" that the officer had unique knowledge, and hadn't been able to prove why another witness wouldn't be able to provide the same knowledge. *Smithfield Bus. Park* at *2.

Similarly, in *RLI*, the plaintiff was a "large company with various lines of business," and the defendants sought to depose the plaintiff's corporate President and COO. *See* 2020 WL 2311668, at *3. According to the defendants, another witness in the case had testified during deposition that "[the COO] told him to stop issuing immigration bonds." *Id*. After reviewing that testimony, the court found it to be "uncorroborated," no more than "vague recollection," and—even if taken as true—insufficient to justify a deposition of a high-ranking executive. *Id*. The court noted that RLI had already represented

that the COO "does not have unique personal knowledge about the immigration bond program," and that others within the company had knowledge of the relevant facts." *Id.*

The Court should reach the same conclusion here. Just like in *RLI*, Plaintiffs seek to use vague and isolated deposition references of Mr. Roberts' presence in a meeting or general instructions to a business unit to drag Mr. Roberts into a deposition. But Mr. Roberts does not have unique knowledge regarding the facts at issue. And Plaintiffs have not established any facts that Mr. Roberts might have that are not available through alternative means, particularly since Mr. Roberts was not involved in any of the relevant decisions for the products at issue, and any discussion of high-level business decisions was made in large meetings with many other individuals present.

Rather, as the leading executive of Apex, Mr. Roberts focuses his attention on the overall strategic direction and operations of the company—job functions that have nothing to do with this litigation. Mr. Weber has already testified that Mr. Roberts' decisions had nothing to do with this lawsuit. Weber Dep. at 206:17-21. If Plaintiffs were to force Mr. Roberts to a deposition, his testimony would reflect that reality. Similarly, Mr. Roberts would testify that he attended quarterly business meetings and occasionally gave input as to overarching business metrics and business units. But each of these facts are already known to Plaintiffs, making a deposition of Mr. Roberts needlessly cumulative. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). And the disruption and burden that such a deposition would cause to Mr. Roberts—and consequently Apex, as a multinational company—would be significant. *See id.*

To the extent that Plaintiffs seek information on the topics set forth in Mr. Weber's deposition, they have had—and still have not exhausted—opportunities to depose other Apex witnesses about them. A deposition of Mr. Roberts is thus (1) unlikely to enlighten Plaintiffs to any information not readily available through other means, but (2) certain to disrupt and harass Apex's business operations. Thus, allowing the deposition to proceed would be unwarranted, unduly burdensome, and contrary to

the principles underlying Rule 26 and the apex doctrine. *See also Baine v. General Motors Corp.*, 141 F.R.D. 332, 335 (M.D. Ala. 1991) (issuing a protective order quashing subpoena of high-raking corporate executive where corporate deposition, which could satisfy plaintiff's discovery needs and aid in the development of refinement of questioning, had not yet been taken); and *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (endorsing district judge's use of discretion in adopting a "wait and see" approach to deposition of high-raking corporate executive until after lesser-ranking employees had been deposed).

### e. The cases cited by Plaintiffs do not support allowing Mr. Roberts' deposition.

In addition to having no factual basis by which to compel Mr. Roberts' deposition, Plaintiffs have brought forth no legal grounds by which to do so. Each case that Plaintiffs brought forth during the meet and confer process is factually distinguishable and inapposite to this matter.

*Duke Energy Carolinas, LLC v. NTE Carolinas II*, LLC, 2021 WL 5826786 (W.D.N.C. Dec. 8, 2021) involved a breach of contract claim, and the CEO at issue was an "active participant" in drafting and approving the terms for the contract at issue. *Id.* at *3. Conversely, here Mr. Roberts played no role in the design, appearance, manufacturing, or sale of the saw blades at issue.

In *JTH Tax, Inc. v. Aime*, 2016 WL 9223926 (E.D. Va. Dec. 13, 2016), the court permitted the deposition of the CEO, but only after the moving party attempted to obtain the information via interrogatories and document requests and did not receive any substantive responses. *Id.* at *4. Evidence also showed that the CEO issued a crucial instruction regarding the claims in the case. *Id.* at *5. Conversely, here Plaintiffs have not sought information regarding Mr. Roberts via written discovery, and Plaintiffs have not exhausted their depositions of Apex's designated witnesses, the other individuals at the quarterly business review meetings, or Apex's 30(b)(6) designee. And Plaintiffs have alleged no actions or instructions given by Mr. Roberts that affects the products at issue

or the claims at issue in this case, other than general business strategy affecting hundreds if not thousands of products.

In *Minter v. Wells Fargo Bank*, N.A., 258 F.R.D. 118, 127 (D. Md. 2009), the court permitted the deposition of a CEO when the CEO had an "active role" in the matter, was a "highly interested party," owned 50% of business, and the CEO himself asserted that he was not busy. *Id.* at 126. Once again this is very different from the case at hand, where Mr. Roberts has no active or unique role in the claims at issue, and Mr. Roberts is very busy managing a large company with thousands of employees and thousands of products of which over 99.4% are not involved in this litigation.

And in *Reid v. Dalco Nonwovens, LLC*, 2015 WL 13841582 (W.D.N.C. Apr. 24, 2015) (J. Keesler), the court permitted the deposition of the CEO where the company had only 63 employees, the CEO was once one of two managing members, and the case involved claims of corporate misdeeds, which necessarily would involve the CEO. *Id.* at *3. *Reid* is the precise opposite of this case. Apex is a huge corporation with thousands of employees and none of the claims focus on decisions made at the CEO level. The products at issue are less than 0.6% of the total products managed by Mr. Roberts. And Apex's witnesses have already testified with specificity as to the individuals who were responsible for the design, manufacturing, and sale of the products at issue, none of which were Mr. Roberts. Weber Decl., ¶¶ 7-8.

Even in cases where apex depositions have been permitted, Fourth Circuit courts have required that such depositions take place *only after* a Rule 30(b)(6) deposition has occurred, and only if that 30(b)(6) deposition left questions unanswered only the high-ranking executive could answer. *See Folwell v. Hernandez*, 210 F.R.D. 169, 175 (M.D.N.C. 2002) ("prior to taking her deposition, plaintiffs shall conduct a Rule 30(b)(6) deposition of Sara Lee. If plaintiffs include any of the Woltz topics in the Rule 30(b)(6) deposition, they shall be eliminated from the Woltz deposition, unless the topics were not answered"); *Smithfield*, 2014 WL 547078, at *2 (precluding apex deposition and noting "the

deposition of IRG's 30(b)(6) designee later this month may obviate [the apex] deposition altogether"); and *Hollis v. Valley Proteins Inc.*, 2021 WL 4849517, at *1 (W.D.N.C. Oct. 15, 2021) ("Plaintiffs are limited to questioning [the CFO] about the topics they have identified that necessitate his deposition."). While Apex proposed that the question of whether to take Mr. Roberts' deposition be tabled until after Plaintiffs took the deposition of Apex's 30(b)(6) designee, Plaintiffs refused. Jackson Decl., ¶ 7.

### f. Apex should recover reasonable fees and costs in bringing this motion.

Should the Court grant this Motion and preclude Mr. Roberts' deposition, Apex respectfully requests that the Court award reasonable fees and costs. Pursuant to the Federal Rules, if a motion for protective order is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees." Fed. R. Civ. P. 26(c)(3), 37(a)(5)(A). Fee shifting is appropriate except under three conditions—none of which are applicable here: (i) the movant filed the motion before attempting in good faith to resolve the dispute without court action; (ii) the opposing party's requested discovery was substantially justified; or (iii) other circumstances make an award of expenses unjust. Fed. R. Civ. P. 26(c)(3), 37(a)(5)(A).

Apex attempted in good faith to resolve the dispute with Plaintiffs without Court intervention and conferred with Plaintiffs via several email exchanges and a telephonic conference. Jackson Decl., ¶ 8. Apex's requests for Plaintiffs to provide case law and explanation as to how the vague references to Mr. Roberts' quarterly business reviews were sufficient to justify a deposition of the CEO were ignored other than citations to the above-mentioned cases that do not support Plaintiffs' claims. *Id.* Plaintiffs' request to depose Mr. Roberts is unjustified, because Plaintiffs have not identified a single topic relevant to the case in which Mr. Roberts has direct or specialized knowledge. *See Jean v. One W. Bank, N.A.*, 14-62846-CIV, 2015 WL 13777043 (S.D. Fla. July 16, 2015) (awarding expenses after

granting protective order precluding the deposition of defendant's CEO). And an award of fees and costs would not be unjust, particularly when Plaintiffs have conjured this deposition notice solely to attempt to disrupt Apex's business operations and force it to expend more attorneys' fees..

## 5. Conclusion

For the foregoing reasons, Apex respectfully requests that the Court issue a protective order precluding the deposition of Mr. James Roberts and award Apex reasonable fees and costs in connection with this Motion. Apex also requests that the Court issue an emergency stay of the deposition of Mr. Roberts until the Court has ruled on Apex's request for a protective order.

DATED: August 28, 2024                    LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: */s/ David A. Jackson*
Michael McCue
Aaron D. Johnson
David A. Jackson
MMcCue@lewisroca.com
ADJohnson@lewisroca.com
DJackson@lewisroca.com
100 Pine Street, Suite 1750
San Francisco, CA 94111
Telephone: 650.391.1380
Facsimile: 650.391.1395

SNEED PLLC
Jason M. Sneed (NC Bar No. 29593)
Megan Sneed (NC Bar No. 38525)
JSneed@SneedLegal.com
MSneed@SneedLegal.com
Litigation@SneedLegal.com

45 South Main Street, Suite 400
Davidson, NC 28036
Tel: 844-763-3347

*Attorneys for Defendants*

## CERTIFICATE OF USE OF ARTIFICIAL INTELLIGENCE

Pursuant to this Court's order of June 13, 2024 regarding the use of artificial intelligence in court filings, Defendants Apex Tool Group LLC and Apex Brands, Inc. hereby certify:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexus, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Signed August 28, 2024.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: */s/David A. Jackson*
Michael McCue
Aaron D. Johnson
David A. Jackson
MMcCue@lewisroca.com
ADJohnson@lewisroca.com
DJackson@lewisroca.com
100 Pine Street, Suite 1750
San Francisco, CA 94111
Telephone: 650.391.1380
Facsimile: 650.391.1395

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 28th day of August, 2024, the foregoing *Memorandum of Law in Support of Defendants' Motion for Protective Order* was served via electronic means through CM/ECF on the following counsel of record:

>Ward Davis (NC Bar ID 27546)
>Joshua B. Durham (NC Bar ID 25414)
>BELL, DAVIS & PITT
>227 W. Trade St., Suite 1800
>Charlotte, NC 28202
>(704) 227-0400
>ward.davis@belldavispitt.com
>jdurham@belldavispitt.com
>
>Edgar H. Haug (*pro hac vice*)
>Robert E. Colletti (*pro hac vice*)
>Jessica M. Stookey (*pro hac vice*)
>Patrick J. Lavery (*pro hac vice*)
>HAUG PARTNERS LLP
>745 Fifth Avenue
>New York, NY 10151
>(212) 588-0800
>ehaug@haugpartners.com
>rcolletti@haugpartners.com
>jstookey@haugpartners.com
>plavery@haugpartners.com
>
>*Attorneys for Plaintiffs CMT USA, Inc.*
>*and CMT Untensili S.p.A.*

/s/ *David A. Jackson*