UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

|  |  |
|---|---|
| CMT USA, INC. and CMT UTENSILI S.P.A., <br><br> Plaintiffs, <br><br> v. <br><br> APEX TOOL GROUP LLC and APEX BRANDS, INC. <br><br> Defendants. | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO PREVENT THE DEPOSITION OF JAMES ROBERTS** <br><br> **ORAL ARGUMENT REQUESTED** <br><br> Case No. 3:24-CV-00137-RJC-DCK |

Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A. (collectively, "CMT") file this response in opposition to the Motion for Protective Order to Prevent the Deposition of James Roberts filed by Defendants Apex Tool Group LLC and Apex Brands, Inc. (collectively, "Apex").

I.  **INTRODUCTION**

This is a trademark-infringement case focused on the use of the color orange as applied to circular woodworking saw blades. For over 20 years, CMT has held federally registered trademark rights in this color. In 2017, Apex began rebranding some of its product lines, choosing a shade of orange it describes as "Rawhide" for its Crescent-brand tools. In 2021, Apex began applying rawhide orange to its circular woodworking saw blades, infringing CMT's long-held trademark rights. Apex's CEO, James Roberts, played a direct role and is intimately familiar with many aspects of Apex's conduct related to this suit, including:

(i). Apex's rebranding that resulted in choosing the infringing color for its circular woodworking saw blades,

(ii). ███████████████████████████████████████

(iii). ███████████████

Throughout this case, rather than fulfill its obligations, Apex has repeatedly obstructed the discovery process. Most recently, Apex has refused to make Mr. Roberts available for a deposition, dismissing CMT's request as "baseless[]." Dkt. 88 at 2. Apex claims that Mr. Roberts "was not involved in *any of the decisions* underlying the claims and issues relative to this action" (Dkt. 88 at 1-2 (emphasis added)). But the truth, as demonstrated below, is that Mr. Roberts has specific and unique knowledge, material to CMT's case. Despite his unique knowledge, Apex has accused CMT, without evidence, of attempting to "harass" the company simply because CMT noticed the deposition of the CEO after learning he has personal and unique knowledge relating to this case. Dkt. 88 at 2. That accusation is unfounded and Apex's motion should be denied.

## II.     BACKGROUND OF DISPUTE

This dispute has its roots in Apex's failure to produce sufficient documents in response to CMT's document requests. After more than two months of delays, Apex claimed on August 1, 2024, that it had "conducted a reasonable and good faith search of responsive documents, including emails, of relevant personnel" and that its production was complete. Ex. A (8/1/24 D. Jackson Email). At that time, however, Apex had only produced 1,366 documents, totaling 5,354 pages, which included only *8 emails*, clearly insufficient despite Apex's assurances. With no choice but to rely on Apex's representation, CMT proceeded to schedule depositions of three Rule 30(b)(1) witnesses and one Rule 30(b)(6) witness. The Rule 30(b)(1) witnesses had been identified by Apex in its initial disclosures and interrogatory responses. Initially, CMT did not intend to depose Mr. Roberts.

CMT first deposed 30(b)(1) witnesses Curt Weber and Ray Smith, both Vice Presidents of marketing, and Ryan Kropfelder, a Senior Product Manager. Each was asked about missing

responsive documents, and their testimony revealed a plethora of specific responsive documents that Apex seemingly failed to search for. During these depositions, Mr. Roberts' name was repeatedly raised by the deponents, unprompted, highlighting his involvement in decisions central to CMT's infringement claims. *See e.g.*, Ex. B (Smith Tr.) at 96:7-20; Ex. C (Weber Tr.) at 24:1-11. Following these depositions, CMT had to postpone the scheduled 30(b)(6) deposition and demanded production of responsive documents that were revealed by Messrs. Weber, Smith, and Kropfelder as having been withheld. On August 30, 2024, Apex supplemented its production with 2,679 additional documents (nearly double the original production), totaling 18,728 pages (over triple the original production). This substantial production occurred after depositions started and nearly a month after Apex represented that its production was complete.

The testimony of Messrs. Weber and Smith, along with these numerous new documents, indisputably confirm that Mr. Roberts has relevant knowledge to which CMT is entitled. Only after discovering Mr. Roberts' role with respect to CMT's infringement claims did CMT notice Mr. Roberts for a deposition.[1] *See* Dkt. 88-1. CMT, recognizing Mr. Roberts' position as CEO, even offered to limit Mr. Roberts' deposition to four hours. Ex. D (8/22/24 R. Colletti Email). Apex refused and proposed delaying further discussion until after CMT had deposed Apex's Rule 30(b)(6) witness. Ex. D (8/23/24 D. Jackson Email). CMT could not agree to this delay because Apex gave no assurance that it would ultimately make Mr. Roberts available, only that it would revisit the matter.[2]

---

[1] *See also* Ex. K (initial exchange between counsel regarding deposition of Mr. Roberts).

[2] Apex also claims that CMT "agreed to stay" Mr. Roberts' deposition "pending the outcome of this motion." Dkt. 88 at 1. But that is not true. CMT twice told Apex that it did not agree to stay the deposition, but rather saw no reason to incur the substantial cost of its counsel appearing for Mr. Roberts' noticed deposition if he was not going to bother showing up. *See* Ex. D (8/28/24 J. Durham and E. Haug Emails).

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 26 "provides for broad discovery." *Nallapati v. Justh Holdings, LLC*, 2022 WL 274405, at *2 (E.D.N.C. Jan. 28, 2020); *accord* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."). However, a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). But in light of the broad scope of discovery, the "standard for issuance of a protective order is high." *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 124 (D. Md. 2009).

Accordingly, Apex must make "a particularized showing of why discovery should be denied, and conclusory or generalized statements in the motion fail to meet this burden." *Artis v. Murphy-Brown LLC*, 2018 WL 3352639, at *2 (E.D.N.C. July 9, 2018). Apex bears an especially "heavy burden" here "because protective orders which totally prohibit a deposition should be rarely granted absent extraordinary circumstances." *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001) (internal quotations omitted); *accord Minter*, 258 F.R.D. at 124 ("A motion seeking to prevent the taking of a deposition is regarded unfavorably by the courts[.]").

Apex relies heavily on the apex doctrine.[3] *See generally* Dkt. 88 at 8-15. But the Fourth Circuit has never adopted the apex doctrine. *Duke Energy Carolinas, LLC v. NTE Caroinas II, LLC*, 2021 WL 5826786, at *3 (W.D.N.C. Dec. 8, 2021); *see also E. I. Du Pont D Nemours & Co. v. Agfa NV*, 2019 WL 13443217, at *13 (E.D. Va. June 25, 2019) (noting the "advisory nature of

---

[3] CMT notes that the "apex doctrine" has nothing to do with Defendants, whose corporate names coincidentally include "Apex."

the apex doctrine"). Regardless, the apex doctrine is "aimed to prevent the high level official deposition that is sought simply because he is the CEO not because of any special knowledge of, or involvement in, the matter in dispute." *Duke Energy*, 2021 WL 5826786 at *3 (internal quotations omitted). Importantly, it is "bottomed on the apex executive lacking ***any knowledge*** of the relevant facts," and "***does not prohibit*** the deposition of executives ***who have personal knowledge*** relevant to the parties' claims and defenses." *Id.* (internal quotations omitted) (emphasis added). Courts within the Fourth Circuit, including this Court, have allowed the deposition of corporate executives even after considering the apex doctrine. *See id.*; *Hollis v. Valley Proteins Inc.*, 2021 WL 4849517, at *1 (W.D.N.C. Oct. 15, 2021); *Reid v. Dalco Nonwovens, LLC*, 2015 WL 13841582, at *3 (W.D.N.C. Apr. 24, 2015); *see also E. I. Du Pont*, 2019 WL 13443217, at *12-13; *JTH Tax, Inc. v. Aime*, 2016 WL 9223926, at *5 (E.D. Va. Dec. 13, 2016); *Minter*, 258 F.R.D. at 127.

### IV. ARGUMENT

Apex fails to demonstrate that deposing Mr. Roberts would cause "annoyance, embarrassment, oppression, or undue burden or expense," as required for a protective order. Instead, Apex offers only "conclusory or generalized statements" about its CEO's busy schedule, and emphasizing that Apex is a "one-billion-dollar" "multinational company." *See* Dkt. 88 at 13, 13-14. Apex also invokes the apex doctrine, claiming that Mr. Roberts lacks relevant personal or unique knowledge, and that the infringing saw blades make up only a small portion of its business, thereby suggesting that when Mr. Roberts provided direction to the pertinent business unit ("known as 'Power Tool Accessories' or 'PTA' "), it was limited to "general business strategy" and has "nothing to do with the design or sale details of the saw blades." Dkt. 88 at 4, 7. ███████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████

### A. Mr. Roberts Was Fully Involved in Apex's Consolidation and Rebranding Effort

Courts allow executive depositions based on relevant personal knowledge. *Duke Energy*, 2021 WL 5826786, at *3 (finding that representations of witness' "relevant knowledge and involvement [were] sufficient to support a good faith deposition" of executive witness); *see also Hollis*, 2021 WL 4849517, at *1 (permitting depositions of executive witnesses, but making no finding regarding their level of knowledge); *Reid*, 2015 WL 13841582, at *3 (same); *E. I. Du Pont*, 2019 WL 13443217, at *13 ("Even if [the apex witness'] knowledge overlaps with that of other deponents, his deposition will show his unique perspectives on the business transactions at issue."). Relevance is determined by the parties' claims and defenses. *See Marfork Coal Co. v. Smith*, 274 F.R.D. 193, 203 (S.D. W. Va. 2011) ("Relevant matters are therefore ones which relate to a party's claim or defense[.]"). In a trademark-infringement case, a plaintiff may seek discovery on, among other things,

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009). Additionally, CMT has pled willful infringement, so it may seek discovery on, among other things, Apex's continued use of its infringing mark after receiving notice of its infringement.[4] *See Field of Screams, LLC v. Olney Boys & Girls Cmty. Sports Ass'n*, 2011 WL 890501, at *7 n.10 (D. Md.

---

[4] Apex admits that it was on notice of its infringement when it received cease and desist letters from CMT in 2021. *See* Dkt. 42 (Third Affirmative Defense).

Mar. 14, 2011) ("Moreover, Defendant's continuing use of the mark after receipt of a cease and desist letter might support an inference of bad faith." (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 937 (4th Cir.1995))).

In 2017, Apex consolidated several of its tool lines into its Crescent brand and undertook a rebranding effort, selecting a new primary color for the brand. Mr. Roberts was directly involved in, and instrumental to, this effort. Ex. B (Smith Tr.) 87:14-88:8, 96:7-20 (stating that Mr. Roberts was involved in the consolidation of different brands into Crescent); Ex. C (Weber Tr.) 24:1-25:9 (stating that Mr. Roberts was involved in rebranding Crescent because there was no Chief Marketing Officer at the time). Mr. Roberts and the others settled on Rawhide orange as Crescent's new primary color. Ex. C (Weber Tr.) 29:5-10 (describing "Rawhide Orange" as Crescent's new "primary color"). Apex's consolidation under the Crescent brand and subsequent choice to use orange on its circular woodworking saw blades is central to CMT's infringement claim against Apex.

[text redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**B. Mr. Roberts Made Specific Decisions Regarding Saw Blades**

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]



Mr. Roberts' decisions regarding saw blades, including the Menards deal, are directly relevant to issues of damages and willful infringement, at the very least. Apex's claim that Mr.

---

[5] CMT notes that Apex relies heavily on new testimony from Mr. Weber in the form of a declaration attached to their memorandum. *See* Dkt. 88 at 6; Dkt. 88-3. Mr. Weber contradicts himself by in one sentence claiming that "Mr. Roberts was not involved in decisions regarding the manufacturing or sale of Apex's saw blades," and then in the next breath stating that "Mr. Roberts instructed the CRESCENT Power Tool Accessories SBU to get rid of 'all inventory' in order to meet certain business metrics." Dkt. 88-3, ¶¶ 13-14.

Roberts "was not involved in any of the decisions underlying the claims and issues relative to this action" is false. Dkt. 88 at 1.

### C. Mr. Roberts Overruled His Colleagues to Keep Apex in the Business of Selling Infringing Saw Blades

Apex argues that some courts require "unique" or "specialized" knowledge for an executive deposition (*see* Dkt. 88 at 9 (citing cases)), but as discussed above, courts within the Fourth Circuit have allowed depositions based on personal knowledge. It is undisputed that Mr. Roberts has personal knowledge of key events in this case. It is also true that Mr. Roberts possesses unique information unavailable from others.





claims, is directly relevant to, at a minimum, CMT's claims for damages and willful infringement. 15 U.S.C. § 1117(a). CMT is entitled to question Mr. Roberts, Apex's most-knowledgeable witness, particularly given his involvement in "multiple conversations" over "two years." Apex's attempt to restrict discovery to Mr. Weber's recollection alone is unjustified.

### D. A Rule 30(b)(6) Deposition Is No Substitute for Mr. Roberts' Direct Knowledge

Apex claims that "Fourth Circuit courts have required that [apex] depositions take place *only after* a Rule 30(b)(6) deposition has occurred, and only if that 30(b)(6) deposition left questions unanswered [that] only the high-ranking executive could answer." Dkt. 88 at 15 (emphasis original). But Apex's own case law reveals that there is no such "only after" rule. One of the cases cited by Apex is this Court's decision in *Hollis*, 2021 WL 4849517 (W.D.N.C. 2021). The *Hollis* court allowed the deposition of two executives, but did not require staging them after a Rule 30(b)(6) deposition, as Apex argues is required. Moreover, other courts have recognized that Apex's proposed "wait-and-see" approach (i.e., taking executive depositions only after Rule 30(b)(6) depositions) "may be appropriate," but generally "in a situation where there is no unique or personal knowledge." *Minter*, 258 F.R.D. at 127; *see also E. I. Du Pont*, 2019 WL 13443217, at *13.

Moreover, Apex has designated a single witness, Brendan Walsh, as the corporate representative testifying on each of CMT's 32 noticed deposition topics. Dkt. 88 at 5. According to Mr. Weber, Mr. Walsh "was the senior director of product management for the ***hand tools*** side of the business" and his responsibilities "did not include overseeing" the power-tool-accessory side of the business or saw-blade product lines. Ex. C (Weber Tr.) 87:1-88:1 (emphasis added). CMT should not be forced to obtain information regarding Mr. Roberts' decision making second-hand from a corporate representative who had no apparent involvement with the products at issue

in this case, when it can obtain the information directly from Mr. Roberts.

### E. Apex's Cases Are Distinguishable

Apex bends over backwards to distance itself from CMT's on-point case law that supports the deposition of Mr. Roberts, in favor of their own. But Apex's cases are distinguishable, as nearly all found that the noticed executive at issue did not have the requisite knowledge.[6]

For example, in *Performance Sales & Mktg. LLC v. Lowe's Companies, Inc.*, the Court did not permit the deposition of three high level Lowes executives because there was "no demonstration" that they "had any relevant personal knowledge" of relevant facts and where the "discovery deadline [had] passed, and the record [was] well developed." 2012 WL 4061680, at *10 (W.D.N.C. Sept. 14, 2012). The court in *Smithfield Bus. Park, LLC v. SLR Int'l Corp.* did not permit the deposition of plaintiff's and third-party defendant's corporate officer where the moving defendants provided only "undetailed assertions" that the noticed officer had "special knowledge of the facts of this case" and that an impending 30(b)(6) deposition "may [have] obviate[d]" the need for the deposition. 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014). The court in *RLI Ins. Co. v. Nexus Servs., Inc.* did not allow deposition of an executive where the defendant "failed to point to any piece of discovery, aside from [another witness'] vague recollection, that [the noticed witness had] unique personal knowledge of the issues in this case." 2020 WL 2311668, at *3 (W.D. Va. May 8, 2020). Further the court in *Cross by & Through Steele v. XPO Express, Inc.* found that the plaintiff had not "shown that [the apex witness] has any personal knowledge

---

[6] In *Dixon v. Foot Locker Inc.*, the Fourth Circuit found that the district court did not abuse its "broad discretion" to not compel the testimony of the CEOs of Nike and Footlocker in a products liability case brought by a pro se party where the appellant "failed to establish that the CEOs had any direct or specialized knowledge relevant to the elements of his claims," and where his "second motion to compel sought deposition testimony outside the discovery period, without providing any justification for the delay." 623 F. App'x 594, 595 (4th Cir. 2015).

concerning the" relevant event at issue. 2017 WL 10544634, at *2 (D.S.C. May 8, 2017).

Finally, Apex's reliance in *Trustees of Purdue Univ. v. Wolfspeed, Inc.* is also misplaced. There, the plaintiff cited general statements from defendant's CEO that he called customers as "relevant knowledge related to the induced [patent] infringement claim." 2023 WL 4564558, at *5 (M.D.N.C. July 17, 2023). The court noted that induced patent infringement requires knowledge of the asserted patent, and the CEO's statement about customer calls **predated** defendant's knowledge of the asserted patent. *See id.* Therefore, the court found that "those calls could not, **as a matter of law**, serve as evidence of Defendant's knowledge for purposes of the induced infringement claim here." *Id.* (emphasis added).

## V. CONCLUSION

For the foregoing reasons, the Court should deny Apex's motion for a protective order. Additionally, Apex's request for its attorneys' fees should be denied. *See* Dkt. 85 at 15 (denying without discussion Apex's request for attorney's fees for a discovery motion).

Respectfully submitted,

*/s/ Robert E. Colletti*
Dated: September 11, 2024

Ward Davis (NC Bar ID 27546)
Joshua B. Durham (NC Bar ID 25414)
**BELL, DAVIS & PITT**
227 W. Trade St., Suite 1800
Charlotte, NC 28202
(704) 227-0400
ward.davis@belldavispitt.com
jdurham@belldavispitt.com

Edgar H. Haug (*pro hac vice*)
Robert E. Colletti (*pro hac vice*)
Chinmay Bagwe (*pro hac vice*)
Patrick J. Lavery (*pro hac vice*)
**HAUG PARTNERS LLP**

745 Fifth Avenue
New York, NY 10151
(212) 588-0800
ehaug@haugpartners.com
rcolletti@haugpartners.com
cbagwe@haugpartners.com
plavery@haugpartners.com

*Attorneys for Plaintiffs CMT USA, Inc.
and CMT Utensili S.p.A.*

# CERTIFICATE OF USE OF ARTIFICIAL INTELLIGENCE

Pursuant to this Court's order of June 13, 2024 regarding the use of artificial intelligence in court filings, Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A., through their undersigned counsel, hereby certify:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Signed this 11th of September, 2024 in New York, NY.


*/s/ Robert E. Colletti*
Robert E. Colletti (*pro hac vice*)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
rcolletti@haugpartners.com
*Attorney for Plaintiffs CMT USA, Inc.*
*and CMT Utensili S.p.A.*

**CERTIFICATE OF SERVICE**

I certify that on September 11, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. Service of same on any counsel of record will be accomplished through the Court's electronic filing system in accordance with F.R.C.P. 5(b)(2)(E).

*/s/ Joshua B. Durham*
