UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:24-CV-00137-RJC-DCK

| | |
|---|---|
| CMT USA, INC. and CMT UTENSILI S.P.A., <br><br> Plaintiffs, <br><br> v. <br><br> APEX TOOL GROUP LLC and APEX BRANDS, INC. <br><br> Defendants. | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PRODUCE THIRD-PARTY COMMUNICATIONS** |

**I.      Introduction**

Pursuant to Local Rule 7.1, Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A (collectively "CMT" or "Plaintiffs") submit this Memorandum in support of their Motion to Compel Defendants to Produce Third-Party Communications (the "Motion"), filed contemporaneously herewith.

CMT seeks an order under Federal Rules of Civil Procedure 26(b)(1), 33, and 37(a), requiring Defendants Apex Tool Group LLC and Apex Brands, Inc. (collectively "Apex" or "Defendants") to produce (i) communications between Apex's law firm of record in this case, Lewis Roca Rothgerber Christie LLP ("Lewis Roca"), and third-party Marksmen Brand Protection Services ("Marksmen"), along with related documents, and (ii) communications between Apex and/or Lewis Roca and third-party saw blade manufacturers, also with related documents. As explained more below, an "Investigative Report" authored by Marksmen has already been produced from Lewis Roca's internal litigation file, which waived any work-product protection that may have applied to the Report and Lewis Roca's communications with Marksmen. Similarly, any work-product protection that may have applied to communications with third-party

manufacturers would have been waived because Apex had no reason to expect that those third parties would keep the communications confidential. Indeed, CMT already has Apex's communications with one such third-party manufacturer. In spite of the clear waivers, Apex and Lewis Roca continue to refuse to produce the documents sought by this motion.

Pursuant to Federal Rule of Civil Procedure 37(a)(1), CMT's counsel certifies that they have conferred in good faith with Apex and Lewis Roca, through emails, letters, and videoconferences, in an attempt to resolve this dispute. The parties remain at an impasse on the issues, requiring the Court's intervention.[1]

## II.     Background

This case involves trademark rights over orange-colored circular woodworking saw blades. Apex represented that its document production was complete on August 1, 2024, yet on September 20, 2024, Apex produced a 225-page "Investigative Report" ("Marksmen Report") dated July 20, 2024, prepared by Marksmen, which details Marksmen's efforts to procure thirty-five (35) different saw blades for Apex (Exhibit A). The Report is comprehensive; was late produced; was commissioned by Apex's counsel, Lewis Roca; and is marked "Privileged and Confidential." The Report details an extensive global search for orange-colored saw blades and includes records of interactions with sales representatives, the purchase and collection of numerous saw blades, and describes the processes by which these blades were acquired. The acquired blades were ultimately tested by an Apex employee and the Report offers insight into Marksmen's and Apex's

---

[1] CMT previously submitted email correspondence to the Court regarding, among other things, Apex's failure to produce the communications between Lewis Roca and Marksmen that CMT now seeks through this motion. (Exhibit B). Apex responded shortly after. (Exhibit C). Following the Court's subsequent directive, the parties further discussed in good faith the relevant issues and further narrowed the dispute. Apex and Lewis Roca, however, continue to refuse to produce the requested third-party communications and documents.

identification and analysis of the blades.

One business day after receiving the Marksmen Report, on September 23, 2024, CMT deposed Apex's fact witness, Scott Bublitz, who testified to testing saw blades, but he had no knowledge that they were purchased by Marksmen for Apex. Similarly, on September 24, 2024, Apex's Rule 30(b)(6) witness, Brendan Walsh, testified that he had no knowledge of the Marksmen Report, despite being designated for topics that would embrace such a Report.

On September 27, 2024, CMT notified Apex, in writing, of deficiencies in Apex's discovery responses with respect to the Marksmen Report. (Exhibit D). Specifically, communications between Apex (or Lewis Roca) and Marksmen and between Apex (or Lewis Roca) and third-party saw-blade manufacturers, were missing. Lewis Roca has since confirmed that it has communicated with Marksmen and third-party manufacturers, but that Apex has not communicated with Marksmen. Lewis Roca refused to provide those communications and related documents, however, asserting work-product protection. Lewis Roca also refused to provide a privilege log, asserting that "[b]ecause our firm's litigation file is outside the scope of discovery, no log is required." (*see* Exhibit E).

**III. Argument**

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Relevance is "broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Fulmore v. UPS, Inc.*, No. 7:11-CV-18-F, 2013 U.S. Dist. LEXIS 1188, at *2 (E.D.N.C. Jan. 3, 2013). District courts have broad discretion in determining relevance for discovery purposes. *Watson v. Lowcounty Red Cross,* 974 F.2d 482, 489 (4th Cir. 1992).

"Over the course of more than four decades, district judges and magistrate judges in the

Fourth Circuit … have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Kinetic Concepts, Inc. v. ConvaTec Inc.,* 268 F.R.D. 226, 243 (M.D.N.C. 2010). To meet this burden, the resisting party must make a particularized showing of why the discovery should not be compelled. *See Mainstreet Collection, Inc. v. Kirklands, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. Oct. 6, 2010) ("[C]onclusory or generalized statements fail to satisfy this burden as a matter of law."). Absent this particularized showing, courts in the Fourth Circuit will grant motions to compel so long as the requested discovery is relevant to any party's claim or defense and proportional to the needs of the case. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995); *Mondragon v. Scott Farms, Inc.*, 329 F.R.D 533, 537 (E.D.N.C. Jan. 5, 2019).

      **A.**    **Lewis Roca's Communications With Marksmen Must Be Produced Because They Are Relevant, Responsive, and Not Work-Product Protected.**

Apex represented that it has no communications with Marksmen and, thus, there are "no documents in Apex's possession to produce and no documents to log." (Exhibit F). Apex's counsel even went so far as to "confirm" that "Apex has ***no knowledge*** of the Marksmen [R]eport," "because . . . Marksmen was hired by Lewis Roca." (Exhibit F (emphasis added)). CMT has accepted those representations and, accordingly, agreed to forgo a Rule 30(b)(6) deposition about the Marksmen Report. (Exhibit G). Having "no knowledge" of the Report necessarily means that Apex has never possessed the Report and could not have provided it to CMT. Apex's "no knowledge" further means that Lewis Roca must have received the Report from Marksmen and provided the Report to CMT from its litigation file. For that reason, CMT has repeatedly requested a privilege log from Lewis Roca. But Lewis Roca has declined each request, alleging that "no log is required" "[b]ecause our firm's litigation file is outside the scope of discovery." (*see* Exhibit E).

For the reasons set out below, the Court should compel Lewis Roca to produce its

communications with Marksmen, as well as related documents, because Lewis Roca has refused to establish that they are, in fact, work product, and because Lewis Roca has waived any protection that may have existed.

i. **The Documents CMT Is Seeking Are Relevant and Responsive.**

The requested documents are directly responsive to at least CMT's Request for Production (RFP) numbers 30 and 25. RFP No. 30 seeks:

> All documents, communications, and things concerning any polls, surveys, market research, focus groups, consumer research, or other research, whether formal or informal, concerning Plaintiffs, Plaintiffs' products, or Plaintiffs' registered Trademark, U.S. Registration No. 3,038,625.

RFP No. 25 seeks:

> All documents, communications, and things concerning Plaintiff, Plaintiffs' products, or Plaintiffs' registered Trademark, U.S. Registration No. 3,038,625.

Apex did not object to RFP No. 30 and raised only boilerplate objections to RFP No. 25. (Exhibit H). For each RFP, Apex agreed to "conduct a reasonably diligent search" and to "produce any non-privileged documents responsive to this request." (Exhibit H).

The Marksmen Report seems to be formal market research (or other research) conducted by Marksmen into "Orange Saw Blades." (Exhibit A at APEX00025075). The Marksmen Report explicitly mentions CMT's trademark as well as CMT's orange saw blades. (Exhibit A at APEX00025126, APEX00025232). Additionally, certain of the Marksmen blades were then analyzed by Apex itself and their colors were compared to the color of CMT's saw blades. (Exhibit I). The market research itself and the subsequent color analysis that was done to the blades squarely brings the Marksmen Report within RFP Nos. 30 and 25. Communications, documents, and other things relating to the Report are therefore relevant and responsive as well.

In its recent email to the Court, Apex argued that "[f]rom the time Apex filed its

counterclaims, Apex has asserted that the large number of third-party saw blades in the marketplace significantly weakens any rights CMT might have." (Exhibit C). Apex has also already produced the Marksmen Report. Accordingly, by Apex's own actions and admissions, the Marksmen Report, which analyzes third-party saw blades presently on the market, is relevant to its defenses and responsive to CMT's requests. Communications surrounding the Report would also be relevant and discoverable because they would be essential to understanding the creation, substance, and results of the Report. Apex cannot now credibly claim that the Report or related documents are non-responsive or irrelevant.

        ii.        **Apex Has Failed to Establish That Any Marksmen Document Is Protected Work Product.**

Asserting work-product protection is a two-step process: the withholding party needs to (i) "expressly make the claim" that the documents are immune from discovery, and (ii) "describe the nature of the documents, communications, or tangible things" its withholding. Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii). The second requirement is typically satisfied by producing a privilege log. *U.S. Tobacco Coop., Inc. v. Certain Underwriters*, No. 19-CV-00430-BO, 2021 U.S. Dist. LEXIS 69206, at *31 (E.D.N.C. Apr. 9, 2021). "The responding party must provide the requesting party with the privilege log at or near the time it withholds the otherwise responsive documents." *Id.* Failure to comply with the requirements of Rule 26(b)(5)(A), can constitute "a waiver of the privilege or protection." *Id.* at *33.

The Court should compel Lewis Roca to produce its communications (and related documents) with Marksmen because it has failed to "describe the nature of the documents" it is withholding whether through a privilege log or otherwise. *Id.* at *31. In *U.S. Tobacco Corp. v. Certain Underwriters*, the Court held that a party's failure to produce a timely privilege log, was not only a showing of bad faith by the party and their counsel, but constituted waiver of the work-

product protection they asserted. *Id.* at *34. Accordingly, the *U.S. Tobacco* court ordered that the party must "produce complete, unredacted copies of responsive documents that they have withheld, in whole or in part, based on … the work product doctrine, but do not appear on a privilege log." *Id.*; *see also Westchester Surplus Lines Ins. Co. v. Clancy & Theys Constr. Co.*, No. 12-CV-636-BO, 2013 U.S. Dist. LEXIS 162935, at *5 (E.D.N.C. Nov. 14, 2013) (finding a party had waived work-product protection for documents not included in the privilege log). Lewis Roca's argument that its "litigation file is outside the scope of discovery" is contradicted by its actions, namely by producing the Marksmen Report (*see also* footnote 3, on this page) from that litigation file.

### iii. Producing the Marksmen Report Waived Any Protection on All Related Non-Opinion Work Product.

The protection "derived from the work-product doctrine is not absolute" and it is only "a qualified protection subject to waiver."[2] *Nobles*, 422 U.S. at 239; *In re Martin Marietta Corp.*, 856 F.2d 619, 625 (4th Cir. 1988). Generally speaking, the "signal feature" of a work-product waiver is "the attempt to make testimonial use of work-product materials." *In re Martin Marietta,* 856 F.2d at 624. The party seeking protection bears the burden of establishing that privilege was not waived. *See Anderson v. Fluor Intercontinental,* 803 Fed. Appx. 697, 703 (4th Cir. 2020).

In producing the Marksmen Report,[3] Lewis Roca waived any work-product protection as to the Report itself as well as any "work-product [protection] as to all non-opinion work product

---

[2] This quote is from a criminal case, but the principals of work-product protection apply to civil cases too. *See United States v. Nobles*, 422 U.S. 225, 238 (1975).

[3] The day before this motion was filed—and more than a month after CMT first raised the waiver issue—Lewis Roca produced yet another document from its files concerning the Marksmen Report. This new document purports to be an "Evidence Chain of Custody Tracking Form" generated by Marksmen, listing "Aaron Johnson," Apex's counsel of record, as the "Client." (Exhibit J at APEX00026760).

on the same subject matter as that disclosed" in the Report. *In re Martin Marietta,* 856 F.2d at 625. In *In re Martin Marietta*, the Court relied on *Nobles* in reaching its ultimate conclusion that work-product protection is waived when there is an attempt to make testimonial use of otherwise work-product-protected materials. *Id.* (discussing *Nobles*, 422 U.S. at 238).

In *Nobles*, the defense counsel hired a private investigator who produced a written report that was not provided to prosecutors. 422 U.S. at 238. Defense counsel then called the investigator as a witness during trial to rebut the testimony of a prosecution witness. *Id.* at 239. The Supreme Court reasoned that "by electing to present the investigator as a witness," the defense counsel made testimonial use of the report and waived any work product protection the investigator's report may have had. *Id.* Importantly, waiver extended to any non-opinion work product in the whole report, not just the portions actually disclosed during investigator's testimony. *Id.*

Although Apex has not stated precisely how it plans to use the Marksmen Report, the fruits of the Report, or the freshly produced "Chain of Custody" form (*see* footnote 3, *supra*) at trial, it is clear that Lewis Roca/Apex produced those materials so they would be available at trial in some capacity. Apex's intended use aligns with the facts in *Nobles,* where a witness testifying at trial to segments of a report was sufficient for waiver. 422 U.S. at 238. Hence, the Court should find that Lewis Roca/Apex waived any work-product protection over all non-opinion work-product materials in Lewis Roca's possession related to the Marksmen Report.

Lewis Roca argues that **all communications** between it and Marksmen (and related documents) are **opinion** work product and, thus, any waiver would not include those documents. (*see* Exhibit C). The Fourth Circuit's definition of "opinion work product," however, requires the Court to reject Lewis Roca's *per se* argument. There are two types of work product: (i) "non-opinion work product," also called "fact work product," and (ii) "opinion work product." *See In*

*re Doe*, 662 F.2d 1073, 1076 n.2 (4th Cir. 1981). Opinion work product is a specific subcategory that includes only documents that "contain[] an attorney's mental impressions, conclusions, opinion or legal theories … concerning the litigation," whereas non-opinion work product would be everything else. *In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997). While "non-opinion work product necessarily will be reflective of a counsel's approach," it can nevertheless be discoverable once "pure mental impressions" are "sever[ed]." *In re Martin Marietta*, 856 F.2d at 625. Internal notes and memoranda, for example, are considered to be non-opinion work product—and subject to waiver—while statements clearly positing a legal opinion, such as "[t]his person does not appear to be credible; let's not call him as a witness if we have to go to trial on this one," would be opinion-work product and protected from waiver. *Id.* at 627, n.2. The non-opinion work product, even if found in the same document as opinion work product, can be "detached" and produced. *Id.*

Here, it is implausible that every document exchanged between Lewis Roca and Marksmen is opinion work product. To take one probable example,[4] any communication authored by or originating from Marksmen will not have an attorney's mental impressions because it is coming from Marksmen, a third-party investigator. As another example, the initial communication from Lewis Roca, before Marksmen was retained, likely also will not contain any opinion. Moreover, even if some of the correspondence does contain opinion work product, it can be "severed" or redacted from the non-opinion work product and produced. *Id.*

For those reasons, CMT respectfully requests that the Court compel Lewis Roca to produce to CMT all of its communications with Marksmen, as well as all related documents, without any redactions. In the alternative, CMT respectfully requests that Lewis Roca provide all of the

---

[4] As mentioned above, Lewis Roca has refused to provide a privilege log of the documents it is withholding.

challenged documents to the Court for an in-camera review to determine which, if any, contain opinion work product. Courts have conducted in-camera reviews for this exact reason. *See, e.g., In re Doe*, 662 F.2d at 1076; *In re Martin Marietta*, 856 F.2d at 621; *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 418 (D. Md. June 23, 2005). After the Court's review, an appropriate order could be entered that would require Lewis Roca to produce all documents within the scope of the waiver, while withholding or redacting only opinion work product.

### B. Lewis Roca's Communications With Third-Party Manufacturers Must Be Produced Because They Are Relevant, Responsive, and Not Work-Product Protected.

Lewis Roca has stated that it "will not be producing any documents regarding our firm's investigation and communications with other third party saw blade manufacturers," asserting that the documents are "not responsive to any RFP" and "protected as work product." (Exhibit E). Because of the allegations of work product, CMT requested a privilege log pertaining to these communications. But Lewis Roca again declined, again alleging that "no log is required" "[b]ecause our firm's litigation file is outside the scope of discovery." (Exhibit E).

For the reasons set out below, the Court should compel Apex and Lewis Roca to produce its communications with third-party manufacturers because again they have refused to establish they are, in fact, work product, and because they waived any protection that may have existed.

The requested documents are directly responsive to CMT's RFP numbers 38, 32 and 34. RFP No. 38 seeks:

> All documents concerning any lawsuit, action, claim, charge, assertion, allegation, or arbitration proceeding brought against Defendants involving claims for copyright infringement, trademark infringement, trademark counterfeiting, unfair competition, false advertising, or domain name misappropriation/infringement.

Apex raised boilerplate objections to RFP No. 38 and an objection on relevance grounds because

it "seeks documents not relating to the use of the color orange." (Exhibit H). Nevertheless, Apex apparently conducted a search and "[did] not identif[y] any documents responsive to this request." (Exhibit H). Apex has since confirmed that there are documents responsive to this request.

RFP No. 32 seeks:

> All documents, communications, and things concerning this action, including without limitation all documents that Defendants sent to or received from any person concerning this action.

RFP No. 34 seeks:

> All documents, communications, and things concerning any allegation set forth in Defendants' Answer to Plaintiffs' Complaint, including without limitation all documents that support any defenses or counterclaims alleged in Defendant's Answer.

Apex raised only boilerplate objections to RFP Nos. 32 and 34 and, while not committing to produce responsive documents, did not state it would withhold any. (Exhibit H). Communications between Apex/Lewis Roca and third-party saw blade manufacturers are relevant because (as explained below), Apex solicited those manufacturers for participation in this case. The content of those communications are highly relevant to the claims and defenses in this case.

As with the Marksmen documents (*see* Part II(A)(ii), *supra*), Lewis Roca has not substantiated its claim that work-product protection exists over communications with other saw blade manufacturers. Apex/Lewis Roca has not provided a privilege log or otherwise described the nature of the withheld documents. The Court should therefore find that Apex/Lewis Roca waived any work-product protection to these documents and should compel Apex to produce them. *See, U.S. Tobacco Corp.,* 2021 U.S. Dist. LEXIS 69206, at *33.

Work-product protection is also waived when otherwise protected information is disclosed to potential adversaries. *In re Doe*, 662 F.2d at 1081. "When an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to

his or those of the client, knowingly increasing the possibility that an opponent will obtain and use the material, he may be deemed to have waived work-product protection." *Id.* Third-party saw-blade manufacturers are not only competitors to CMT, but to Apex as well. Therefore, Apex's communications are with its (potential) adversaries and, thus, any work-product protection is waived.

Relatedly, work-product protection is waived when there is a disclosure "of otherwise protected material without an intent to limit its future disposition . . . regardless of the relationship between the attorney and the recipient of the material." *Id.* Here, Apex subpoenaed third-party saw blade manufacture Evolution Power Tools ("Evolution") and CMT issued a companion subpoena. Evolution in response produced an email between Lewis Roca and Evolution, in which Lewis Roca discusses this litigation and states that "CMT is considering filing lawsuits against other saw blade manufacturers," in an apparent effort to get Evolution to join forces against CMT. (Exhibit K). Importantly, the Evolution document was not designated "Confidential" under the Court's protective order. This shows a clear lack of "intent to limit" the "future disposition" of the alleged work product. The Court should therefore find waiver for this reason as well. *Id.*

### IV. Conclusion

For the foregoing reasons, CMT respectfully requests that the Court compel Apex and Lewis Roca to produce all correspondence between Lewis Roca and Marksmen (and all related documents), as well all correspondence between Apex and/or Lewis Roca and third-party saw blade manufacturers (and all related documents).

DATED: October 31, 2024

Respectfully submitted,

/s/ *Robert E. Colletti*

Ward Davis (NC Bar ID 27546)
Joshua B. Durham (NC Bar ID 25414)
BELL, DAVIS & PITT
227 W. Trade St., Suite 1800
Charlotte, NC 28202
(704) 227-0400
ward.davis@belldavispitt.com
jdurham@belldavispitt.com

Edgar H. Haug (admitted pro hac)
Robert E. Colletti (admitted pro hac)
Mark Basanta (admitted pro hac)
HAUG PARTNERS LLP
745 Fifth Avenue
New York, NY 10151
Tel: (212) 588-0800
ehaug@haugpartners.com
rcolletti@haugpartners.com
mbasanta@haugpartners.com

Attorneys for Plaintiffs
CMT USA, Inc. and CMT Utensili S.p.A.

**CERTIFICATE OF CONSULTATION PURSUANT TO LOCAL RULE 7.1(b)**

The undersigned counsel hereby certifies, pursuant to L.R. 7.1(b), that counsel has conferred and attempted to resolve areas of disagreement described herein, as set forth in more detail in this Memorandum at Section I.

DATED: October 31, 2024

HAUG PARTNERS, LLP

/s/ *Robert E. Colletti*

Ward Davis (NC Bar ID 27546)
Joshua B. Durham (NC Bar ID 25414)
BELL, DAVIS & PITT
227 W. Trade St., Suite 1800
Charlotte, NC 28202
(704) 227-0400
ward.davis@belldavispitt.com
jdurham@belldavispitt.com

Edgar H. Haug (admitted pro hac)
Robert E. Colletti (admitted pro hac)
Mark Basanta (admitted pro hac)
HAUG PARTNERS LLP
745 Fifth Avenue
New York, NY 10151
Tel: (212) 588-0800
ehaug@haugpartners.com
rcolletti@haugpartners.com
mbasanta@haugpartners.com

Attorneys for Plaintiffs
CMT USA, Inc. and CMT Utensili S.p.A.

# CERTIFICATE OF USE OF ARTIFICIAL INTELLIGENCE

Pursuant to this Court's order of June 13, 2024 regarding the use of artificial intelligence in court filings, Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A., through their undersigned counsel, hereby certify:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Signed this 31st of October, 2024 in New York, NY.


*/s/ Robert E. Colletti*
Robert E. Colletti (admitted pro hac)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
rcolletti@haugpartners.com
*Attorney for Plaintiffs CMT USA, Inc.*
*and CMT Utensili S.p.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2024, I electronically filed the foregoing Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Compel Defendants to Produce Communications with Third-Parties with the Clerk of Court using the CM/ECF System. Service of same on any counsel of record will be accomplished through the Court's electronic filing system in accordance with F.R.C.P. 5(b)(2)(E).

/s/ *Joshua B. Durham*