| | |
|---|---|
| CMT USA, INC. and <br> CMT UTENSILI S.P.A., <br><br> Plaintiffs, <br><br> v. <br><br> APEX TOOL GROUP LLC and <br> APEX BRANDS, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) **ORDER** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion For Protective Order To Prevent The Deposition Of James Roberts" (Document No. 87) filed August 28, 2024. This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and immediate review is appropriate. Having carefully considered the motion and the record, the undersigned will <u>grant</u> the motion.

## STANDARD OF REVIEW

Rule 26 of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1). The rules of discovery are to be accorded broad and liberal construction. <u>See</u> <u>Herbert v. Lando</u>, 441 U.S. 153, 177 (1979); and <u>Hickman v. Taylor</u>, 329 U.S. 495, 507

(1945). However, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed.R.Civ.P. 26(c)(1).

## DISCUSSION

Defendants Apex Tool Group LLC and Apex Brands, Inc. (together, "Defendants" or "Apex") seek a protective order preventing the deposition of James Roberts ("Roberts"). (Document No. 87, p. 1). Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A (together, "Plaintiffs" or "CMT") served a "...Notice Of Deposition Of James Roberts" (Document No. 88-1) on or about August 15, 2024, seeking to depose Roberts on September 4, 2024.

Defendants assert that:

> Mr. Roberts is the CEO of Defendant Apex Tool Group LLC, a company with over 7,500 employees and factories across four continents. He does not have any specific or unique knowledge pertinent to the claims and issues relevant to this action. And he was not involved in any of the decisions underlying the claims and issues relative to this action. Apex did not identify Mr. Roberts in its initial disclosures and has no plans to call him as a witness.

(Document No. 88, p. 1).

Defendants note that there is only one product line at issue in this case – saw blades for power tools – and argue that Mr. Roberts has not "had any direct involvement in the design, engineering, fabrication or sale of those products." (Document No. 88, p. 2). Moreover, "Plaintiffs have not shown—and cannot show—that Mr. Roberts has any knowledge of this matter that is not more readily accessible through the depositions Plaintiffs have already taken or will take, including Plaintiffs' 30(b)(6) deposition of Apex." Id. Based on the foregoing, Defendants conclude that "Plaintiffs hope to harass and disrupt Apex by noticing Mr. Roberts' deposition." Id.

Defendants further note that the depositions already taken by Plaintiffs "only mentioned Mr. Roberts in passing, and none described any situation where Mr. Roberts would have unique or specialized knowledge relating to the products at issue." (Document No. 88, p. 5).

In support of their request for a protective order, Defendants provide the following discussion of the "Apex Doctrine."

> Many courts around the country have adopted the so-called "Apex Doctrine" when deciding whether to permit the deposition of CEOs and other high-ranking executives. The Apex Doctrine states that "before a plaintiff may depose a corporate defendant's high ranking officer, the plaintiff must show "(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted." *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, 2014 WL 547078, at *1 (E.D.N.C. Feb. 10, 2014) (quotation omitted).
>
> The Fourth Circuit has "neither adopted, nor rejected, the [A]pex [D]octrine." *Cunagin as Next friend of J.C. v. Cabell Huntington, Hosp., Inc.*, 2021 WL 1518877, at *4 (S.D.W. Va. Apr. 16, 2021). However, Fourth Circuit courts apply a similar standard through the plain language of Federal Rule of Civil Procedure 26, under which the Court retains an obligation to "limit the frequency or extent of discovery … if it determines that … the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i); *see also Trustees of Purdue Univ. v. Wolfspeed, Inc.*, 2023 WL 4564558, at *4 (M.D.N.C. July 17, 2023).

(Document No. 88, pp. 8-9).

Defendants argue that Plaintiffs cannot show that Roberts "has direct or specialized knowledge of the facts relevant to this case, let alone that such knowledge cannot be obtained through the numerous other depositions Plaintiffs have already taken or noticed." (Document No. 88, p. 11). According to Defendants, the depositions already taken

> show that Mr. Roberts did not approve the appearance, design, manufacturing, or sale of the products at issue, but was instead merely kept abreast of the product line at regularly scheduled

>meetings. And when Mr. Roberts did make decisions affecting the saw blades at issue, such decisions were made on a general business basis, affecting a large number of product lines, and based on general business metrics such as profitability of the business as a whole.
>
>**None** of these decisions are relevant to this dispute.

(Document No. 88, p. 11).

Defendants contend that "courts in the Fourth Circuit have consistently precluded the depositions of high-level executives who lack unique personal knowledge of pertinent facts." (Document No. 88, p. 11). "This prevents the noticing party from using a requested deposition as 'a litigation tactic to create undue leverage by harassing the opposition or inflating its discovery costs.'" (Document No. 88, pp. 11-12) (quoting Smithfield Bus. Park, LLC v. SLR Int'l Corp., 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014) (citing Performance Sales & Mktg. LLC v. Lowe's Companies, Inc., 5:07-CV-140-RLV, 2012 WL 4061680, at *3-4 (W.D.N.C. Sept. 14, 2012)).

Defendants further suggest that Plaintiffs have still not exhausted opportunities to depose other witnesses who are more likely to have the information they seek, including Defendants' 30(b)(6) designee. (Document No. 88, pp. 13, 15-16). Defendants contend that "[e]ven in cases where apex depositions have been permitted, such depositions take place *only after* a Rule 30(b)(6) deposition has occurred." (Document No. 88, p. 15).

"Plaintiffs' Opposition..." asserts that Roberts "played a direct role and is intimately familiar with many aspects of Apex's conduct related to this suit," and "has specific and unique knowledge, material to CMT's case." (Document No. 94, p. 2). Plaintiffs contend that they "did not intend to depose Mr. Roberts," but his "name was repeatedly raised by the deponents, unprompted, highlighting his involvement in decisions central to CMT's infringement claims."

(Document No. 94, pp. 2-3). The deponents who raised Roberts' name include 30(b)(1) witnesses Curt Weber ("Weber"), Ray Smith ("Smith"), both Vice Presidents of marketing, and Ryan Kropfelder ("Kropfelder"), a Senior Product Manager. Id. Plaintiffs contend that their testimony, and/or "numerous documents" revealed by them, "indisputably confirm that Mr. Roberts has relevant knowledge to which CMT is entitled." Id. Recognizing Mr. Roberts' position as CEO, Plaintiffs have offered to limit his deposition to four (4) hours. (Document No. 94, p. 3).

In further support of their opposition, Plaintiffs argue that Roberts "was directly involved in, and instrumental to," Apex's consolidation "of its tool lines into its Crescent brand and undertook a rebranding effort, selecting a new primary color for the brand." (Document No. 94, pp. 7-8) (citing Document Nos. 94-2, 94-3, 94-5, 94-6, and 94-7). Plaintiffs note that "[n]o other witness can testify as to why Mr. Roberts approved the color." (Document No. 94, p. 8).

Plaintiffs also argue that Mr. Roberts made specific decisions regarding saw blades and that he insisted on keeping Apex in the business of selling saw blades. (Document No. 94, pp. 8-12) (citations omitted). According to Plaintiffs, Roberts' decisions regarding saw blades "are directly relevant to issues of damages and willful infringement." (Document No. 94, p. 9). Plaintiffs contend that Roberts has "personal knowledge of key events in this case" that support allowing his deposition. (Document No. 94, p. 10). Moreover, Plaintiffs are skeptical that a 30(b)(6) witness is an adequate substitute for Roberts' direct knowledge. (Document No. 94, p. 12).

"Defendants' Reply..." contends that the events identified by Plaintiffs "do not impute any 'unique' or 'specialized' knowledge onto Mr. Roberts and do not justify his deposition." (Document No. 98, p. 1). Defendants then re-assert that:

> the deposition of a high-ranking executive is usually prohibited unless the executive has "knowledge [that] is so special or unique or

5

> that [the party] cannot obtain the information it seeks by deposing . . . 30(b)(6) witnesses" (*Trustees of Purdue Univ. v. Wolfspeed, Inc.*, 2023 WL 4564558, at *4 (M.D.N.C. July 17, 2023) (prohibiting deposition of CEO)), or the executive has relevant information that "cannot be obtained from some other more convenient source" *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014) (prohibiting deposition of corporate officer).

(Document No. 98, p. 4). Defendants contend that the foregoing standard has not been met in this case and that a protective order barring Roberts' testimony is justified. Id.

Next, Defendants suggest that some of the events Plaintiffs point to involving Mr. Roberts are irrelevant because they occurred before Apex even decided to develop saw blades. (Document No. 98, pp.4-7). For example, "Apex consolidated five different brands under a CRESCENT brand and a uniform color palette that includes the color at issue in this case – 'Rawhide'" in 2017 and 2018, before Apex had even designed its saw blades. (Document No. 98, pp. 4-5). Defendants insist that what matters in this case is Apex's design and sale of saw blades. (Document No. 98, pp.4-7).

Defendants also note that Plaintiffs have not adequately alleged that "Roberts has 'unique' or 'specialized' knowledge relating to the 2023 selloff of excess inventory"; rather, "Plaintiffs only state that he 'remained actively involved.'" (Document No. 98, p. 8). Similarly, Defendants argue that Robert's decision for Apex to stay in the saw blade business has no bearing on the issues in this case. (Document No. 98, pp. 9-10). "A CEO's decision to maintain the current business is not relevant to the earlier design decisions regarding those products, the earlier marketing decisions regarding those products, and the earlier sales decisions regarding those products." Id.

Defendants contend that Roberts, "as the CEO of a large company, merely made overarching business decisions." (Document No. 98, p. 10). It was the heads of the business units who implemented the instructions from the CEO "and it is those individuals who have the relevant

6

knowledge regarding the design, marketing, and sale of the saw blades at issue." (Document No. 98, p. 10). Defendants note that these individuals with the relevant knowledge have been deposed, or will be soon. Id.

Defendants conclude that Plaintiffs have failed to show that Apex's CEO, James Roberts, has any unique or specialized knowledge regarding the issues in this case. (Document No. 98, p. 11).

The undersigned finds Defendants' arguments most persuasive. It appears that Plaintiffs' deposition notice to CEO Roberts was unnecessary and not proportional to the needs of the case. At a minimum, the demand for Roberts' testimony was premature. Defendants make a compelling argument that other employees of Apex who have been deposed, or will be deposed, are more likely to have knowledge about the issues in this case – and that Plaintiffs should first seek testimony from those individuals.

The undersigned also found the deposition testimony identified by Plaintiffs to be helpful, but not as Plaintiffs intended. See (Document No. 94, pp. 7-11) (citations omitted). Instead of showing that "Mr. Roberts was directly involved in, and instrumental to" decisions related to the issues in this case, the testimony mostly showed that Roberts was informed about what was going on in the company, but that other employees had greater knowledge.

For example, Plaintiffs identify the following exchange during the deposition of Curtis Weber as evidence that "Mr. Roberts was directly involved in, and instrumental to," Apex's effort to rebrand and select "a new primary color for the brand":

```
1     Q. Was there an approval process for this new
2     brand identity?
3     A. If the three of liked it, we went, yeah.
4     So it was just really the three of us.
5     Q. Did anybody have to approve it?
6     A. Well, we would let the CEO know what was
```

>     7   **going on**.  We didn't have a CMO at the time.  So we
>     8   talked to the CEO and we would let the division
>     9   presidents know and **just part of like an update with**
>     10  **our quarterly meeting with the CEO or something like**
>     11  **that**.
>         . . .
>     2   Q.  Okay.  And other than the brand
>     3   guidelines, there was no formal approval process.
>     4   **There wasn't a document that the CEO needed to sign**
>     5   **to say I agree**?
>     6   A.  **No, no**.
>     7   Q.  Okay.  **So he would be kept informed with**
>     8   **these quarterly meetings**?
>     9   A.  Yes.

(Document No. 94-3, p. 3)(emphasis added);  <u>see also</u> (Document No. 94, p. 7).

This testimony cited by Plaintiffs does not show that Roberts had unique or specialized knowledge, or that he is better suited to testify in this case than other employees.  Rather, the foregoing testimony indicates that CEO Roberts was "kept informed" at quarterly meetings about what was "going on," but that was he was *not* directly involved.  As such, it seems that other sources that are more convenient, less burdensome, and/or less expensive can provide most, if not all, the information Plaintiffs seek.

Based on the foregoing, the undersigned will direct that Defendants' motion be granted. However, by granting this Order, the Court intends to prohibit James Roberts' testimony until all the other depositions have been completed.  *If*, after the completion of the other discovery, Plaintiffs contend that Roberts has unique and/or specialized knowledge that is relevant and proportional to the needs of this case – that they could not explore with other deponents – counsel for the parties shall meet and confer in a good faith attempt to agree to terms for a *limited* deposition of Roberts.

**IT IS, THEREFORE, ORDERED** that "Defendants' Motion For Protective Order To Prevent The Deposition Of James Roberts" (Document No. 87) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' request for an award of reasonable fees and costs is **DENIED WITHOUT PREJUDICE**. After all discovery is complete, if the parties cannot reach an agreement on a reasonable award, Defendants may file a motion seeking relief.

**SO ORDERED**.

Signed: November 1, 2024

David C. Keesler
United States Magistrate Judge