UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:24-CV-00137-RJC-DCK

| | |
|---|---|
| CMT USA, Inc. and CMT Utensili S.p.A., <br><br> Plaintiffs, <br><br> v. <br><br> Apex Tool Group LLC and Apex Brands, Inc., <br><br> Defendants. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL ATTORNEY COMMUNICATIONS** |

Defendants Apex Tool Group LLC and Apex Brands, Inc. (collectively, "Apex") hereby submit this Opposition and Response to Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A.'s (collectively, "Plaintiffs") Motion to Compel Defendants to Produce Third-Party Communications (the "Motion").

I.  **Introduction**

Plaintiffs seek to compel Apex to produce two groups of documents, both consisting entirely of Apex's litigation counsel's communications: first, communications between Apex's counsel and an external investigator hired for this litigation; and second, communications between Apex's counsel and third party saw blade manufacturers contacted by Apex's counsel as part of investigating facts supporting Apex's defenses. To be clear, Plaintiffs are not requesting documents in the possession of the defendants – Apex. Instead, this entire Motion is to demand defense counsel to turn over – or have logged – its own communications with an investigator and third parties.

It is disappointing that Plaintiffs chose to bring this Motion, as it is a waste of the Court's time. The subject documents either (a) were already produced prior to Plaintiffs filing the Motion, or (b) are not required to be produced because they are not responsive to any proper document request and even if they were responsive they are protected as attorney work product. If Plaintiffs truly thought the

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL ATTORNEY COMMUNICATIONS
3:24-CV-00137-RJC-DCK
126667500.5
Case 3:24-cv-00137-RJC-DCK    Document 127    Filed 11/14/24    Page 1 of 20

documents sought in this Motion were relevant to their claims, they could have served Requests for Production asking for the documents during any of the nine months that fact discovery was open in this litigation. They did not, and instead are now trying to obtain Apex's counsel's own communications through burdensome motion practice.

Additionally, given that half of the documents were produced prior to the filing of the Motion, and the other half clearly are not responsive to any document request and Plaintiffs did not provide any explanation for why they have a "substantial need" to overcome work-product protection, as Rule 26(b)(5) requires, the Motion's claims are so weak as to be meritless. As a result, the Motion doesn't meet the "substantially justified" standard used by the Fourth Circuit to determine if the movant should pay the costs of fees of the party responding to the motion. Apex therefore requests the Court award it all fees and costs incurred in responding to this Motion, as well as any other sanctions deemed necessary by this Court.

## II. Factual Background

This case arises from Plaintiffs' claim that the design of Apex's saw blades infringes Plaintiffs' alleged trademark rights in the design of Plaintiffs' saw blades. As a result, a key issue in the litigation is the strength of Plaintiffs' alleged trademark rights, and if those alleged rights are so weak that they no longer exist.

The cornerstone of Plaintiffs' case is their claim that the "color orange" on saw blades is owned by Plaintiffs and can be used only by Plaintiffs, to the exclusion of others. *See* Plaintiffs' Second Amended Complaint, ECF No. 37, ¶ 21. Yet Plaintiffs' orange-colored saw blades exist in a sea of similar third-party uses of the color orange on saw blades. This frequent and common use of orange on saw blades has therefore been a topic of investigation and analysis by Apex from the very beginning. For example, Apex's First Amended Answer and Counterclaims on January 23, 2024 states that "[t]he widespread and ubiquitous third-party use of the color orange on saw blades" eliminated any trademark rights that might have existed in the color. (ECF No. 42). And Apex's initial disclosures, served November 21, 2023, list as a likely category of things that will be used by Apex to

support its defenses, "Documents pertaining to the use of the color orange on saw blades offered by other third parties." **Exhibit A**, Declaration of Aaron D. Johnson ("Johnson Decl."), ¶ 3. Therefore, for nearly a year Apex has made known that it was investigating the use of orange on third party saw blades, and that it would use such third-party use at trial.

Apex's investigation into these third-party uses of orange, and the widespread use of that color within the saw blade industry, has taken a number of forms. These include hiring an outside investigator to determine what orange saw blades could be purchased in the United States, and communicating with other saw blade manufacturers about their use of orange on saw blades. Johnson Decl., ¶ 4. It turns out, not surprisingly, there are a lot of orange blades!

The outside investigator hired by Apex's counsel is Marksmen, Inc. ("Marksmen"), a company that specializes in providing trademark investigation and brand protection services. *Id.*, ¶ 5. Apex's counsel hired Marksmen to investigate which third-party saw blades using the color orange were available for purchase in the United States, and how long those orange-colored saw blades had been on the market in the United States. *Id.*, ¶ 6. As part of the discussions between Apex's counsel and Marksmen that determined the scope of Marksmen's investigation, the conversations naturally included Apex's counsel's thoughts, opinions, and strategies on the case, Apex's defenses, and the best form for an investigation that would assist with those. *Id.*, ¶ 7. Marksmen conducted the investigation for which it was hired, and put its findings in an "Investigative Report" detailing its research and investigation (the "Marksmen Report"). *Id.*, ¶ 8. Apex timely produced the Marksmen Report on September 20, 2024, before the close of discovery. *Id*. Notably, the Marksmen Report is not responsive to, and was not produced in response to, any discovery request directed to Apex. Instead, it was produced as a supplemental initial disclosure of material and witnesses Apex may introduce at trial. *Id.*, ¶ 9.

In the course of commissioning and reviewing the Marksmen Report, Apex's counsel sent and received a handful of emails with Marksmen (collectively, the "Marksmen Communications"). These Marksmen Communications were drafted by outside counsel in anticipation of trial, and they contain the opinions and mental impressions of counsel for Apex. *Id.*, ¶ 10. Because none of the Marksmen

Communications are responsive to any discovery request, and Apex is not planning on using its law firms' opinions and mental impressions at trial, they were not produced by Apex and were not required to be recorded in a privilege log because they were not "otherwise discoverable". *Id.*, ¶ 11; *see also* Fed. R. Civ. P. 26(b)(5) (requiring a party to expressly make a claim of privilege describe material withheld only when that material is "otherwise discoverable.").

Counsel for Apex's investigation and research into this case also included communicating with third-party saw blade manufacturers that use the color orange on their saw blades and their respective attorneys (these communications are referred to collectively as the "Third-Pary Manufacturer Communications"). *Id.*, ¶ 12. Within the Third-Pary Manufacturer Communications are discussions regarding the status and theories of the case and the opinions and mental impressions of Apex's counsel—and of course these were prepared and drafted in anticipation of trial. *Id.*, ¶ 13. Because none of the Third-Party Manufacturer Communications are responsive to any discovery request, and Apex is not planning on using counsel's communications with third-party manufacturers at trial, they were not produced and in accordance with Rule 26(b)(5) were not recorded in a privilege log. *Id.*, ¶ 14.

Despite knowing that Apex was investigating third party uses of the color orange on saw blades, in the nine months that fact discovery was open Plaintiffs never issued a discovery request to Apex for communications that Apex's counsel had with investigators looking into such uses of the color orange. *Id.*, ¶ 15. And Plaintiffs never issued a discovery request to Apex for communications between Apex's counsel and other saw blade manufacturers who use orange on their saw blades. *Id.*

After production of the Marksmen Report, Plaintiffs issued a subpoena to Marksmen for documents and a deposition. *Id.*, ¶ 16. As part of that subpoena, Plaintiffs for the first time requested the Marksmen Communications. *Id.* Therefore, the Marksmen Communications were produced by Marksmen to Plaintiffs on October 30, 2024. *Id.* Apex timely objected to that subpoena only to the extent that Marksmen's production would reveal work product of Apex, but otherwise permitted discovery of Marksmen as to its investigation and the facts underlying the Report. *Id.*, ¶ 17. The Marksmen Communications as produced contain minimal redactions covering only the opinions and

mental impressions of Apex's counsel (in total, about 5 paragraphs out of hundreds of pages). *Id.*, ¶ 18. Therefore, the Marksmen Communications were timely produced to Plaintiffs by Marksmen on October 30, 2024. *Id.*, ¶ 16. Notably, in an effort to avoid bringing this unnecessary dispute to the court, Apex offered to produce the Marksmen Communications <u>with no redactions</u> at all, if Plaintiffs would agree that producing the unredacted Marksmen Communications was not a broader waiver of work product protection. *Id.*, ¶ 19. Plaintiffs refused the offer. *Id.*

### III. Legal Standard

#### A. A motion to compel for documents can only be granted if the documents at issue were properly requested under the Federal Rules

Under the Federal Rules of Civil Procedure, a motion to compel cannot be filed simply because a party *wants* a document. Instead, a motion to compel can only be filed for one of two reasons: (1) to compel disclosure when "a party fails to make a disclosure required by Rule 26(a);" or (2) to compel disclosure if a deponent fails to answer a question, an entity fails to make a designation under Rule 30(b)(6) or 31(a)(4), a party fails to answer an interrogatory, or a party "fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—**as requested** under Rule 34." Fed. R. Civ. P. 37(a)(3) (emphasis added).

Therefore, it is improper for a party to file, and a court should not grant, any motion to compel covering documents that were not "requested under Rule 34."

Ultimately, the decision to grant or to deny a motion to compel production rests within the broad discretion of the trial court. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion."). The party resisting discovery bears the burden of persuasion. *See Earthkind, LC v. Lebermuth Co. Inc.*, 2021 WL 183413, at *2 (W.D.N.C. Jan. 19, 2021); *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016) ("[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." (quoting *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010))).

B.  **The work-product doctrine products documents and information created by an attorney in anticipation of litigation.**

Even if documents are properly requested during the course of discovery, the work-product doctrine protects documents and information within those documents from disclosure if they are prepared by or at the direction of an attorney in anticipation of litigation. *Solis v. Food Emps. Lab. Rels. Ass'n*, 644 F.3d 221, 231 (4th Cir. 2011); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). "[S]imply stated, an attorney is not required to divulge, by discovery or otherwise, facts developed by his efforts in preparation of the case or opinions he has formed about any phase of the litigation, even if they have been reduced to writing." *In re Doe*, 662 F.2d 1073, 1077 (4th Cir. 1981). The work product doctrine "serves to provide a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 292 (4th Cir. 2004) (quotation marks omitted).

The work product doctrine protects both the opinions and mental impressions of counsel (opinion work product) as well as "factual information prepared by an attorney in anticipation of litigation" (fact work product). *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 292–93 (4th Cir. 2004); *In re Grand Jury Proceedings*, 33 F.3d at 348. "Fact work product is discoverable only upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *Smith v. Scottsdale Ins. Co.*, 621 F. App'x 743, 746 (4th Cir. 2015) (citing *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999)). On the other hand, **"[o]pinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances."** *Id*. (emphasis added). *See also Nat. Union Fire Ins. Co. of Pittsburgh, Pa.*, 967 F.2d at 984 ("As a philosophical extension of the attorney–client privilege, . . . the pure work product of an attorney insofar as it involves 'mental impressions, conclusions, opinions, or legal theories . . . concerning the litigation' is immune to the same extent as an attorney–client communication."). The need to protect opinion work product is of such importance that even in cases where a party waives its fact work product privilege, that waiver "does not apply" to opinion work product. *In re Martin Marietta Corp.*, 856 F.2d 619, 625 (4th Cir. 1988) ("While certainly actual

disclosure of pure mental impressions may be deemed waiver, and while conceivably there may be indirect waiver in extreme circumstances, we think generally such work product is not subject to discovery.").

This doctrine is enforced by Federal Rule of Civil Procedure 26(b)(3)(A), which prohibits a party from obtaining discovery for documents prepared in anticipation of litigation or for trial except under specific circumstances. Specifically, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). These materials are discoverable only if: "(i) they are otherwise discoverable under Rule 26(b)(1); **and** (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i–ii) (emphasis added). Even if discoverable under this Rule, the "disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" are still not discoverable. Fed. R. Civ. P. 26(b)(3)(B).

IV. **Argument**

    A. **The section of the Motion covering the Marksmen Communications is moot because they have already been produced, with minimal redactions.**

The Marksmen Communications demanded by Plaintiffs have already been produced—indeed, they were produced on October 30, 2024, the day <u>before</u> Plaintiffs filed the Motion. Johnson Decl., ¶ 16. As produced, the Marksmen Communications have minimal redactions covering only the opinions and mental impressions of Apex's counsel (in total, about 5 paragraphs out of hundreds of pages), each of which were properly placed in a privilege log and claim opinion work product as they include the opinions and mental impressions of Apex's counsel. *Id.*, ¶ 18. Therefore, the part of the Motion seeking those documents is moot and a waste of the Court's and the parties' time and resources.

    B. **The Marksmen Communications are not responsive to any RFP served by Plaintiffs.**

Even if the Marksmen Communications had not already been produced prior to the filing of the Motion (which they were), the Motion should still be denied because the Marksmen

Communications are not responsive to any of Plaintiffs' Requests for Production. As explained above, a motion to compel can only be filed for documents properly "requested under Rule 34." Fed. R. Civ. P. 37(a)(3). Where there was no such request, as here, then no motion to compel can be filed. Plaintiffs implausibly claim that the Marksmen Communications—which again are communications between Apex's counsel and an investigation company regarding the purchase of <u>third-party</u> saw blades—are responsive to Plaintiffs' Requests for Production Numbers 30 and 25. But a review of both of those RFPs shows it is clearly not the case. Request for Production Numbers 25 and 30 are shown below:

**Request for Production No. 25**
All documents, communications, and things concerning any polls, surveys, market research, focus groups, consumer research, or other research, whether formal or informal, concerning Plaintiffs, Plaintiffs' products, or Plaintiffs' registered Trademark, U.S. Registration No. 3,038,625.

**Request for Production No. 30**
All documents, communications, and things concerning Plaintiff, Plaintiffs' products, or Plaintiffs' registered Trademark, U.S. Registration No. 3,038,625.

These Requests for Production do <u>not</u> ask for documents concerning third parties. And they do not ask for documents concerning investigations about third parties. Instead, they both ask for documents "concerning Plaintiffs, Plaintiffs' products, or Plaintiffs' registered Trademark."

Realizing that none of the Marksmen Communications concern Plaintiffs, Plaintiffs pivot to an argument that communications are responsive because the Marksmen <u>Report</u> is responsive to these Requests based on the three allegations: (1) "it explicitly mentions CMT's trademark as well as CMT's orange saw blades;" (2) Apex subsequently conducted color analyses on the physical saw blades purchased by Marksmen; and (3) Apex produced the Marksmen Report. Contrary to Plaintiffs' assertions, none of these three these purported facts show that the Marksmen Communications are responsive to its requests for production.

First, the two "explicit mentions" of "CMT" do not make the Marksmen Report to be concerning "Plaintiffs, Plaintiffs' products, or Plaintiffs' registered Trademark." Both instances are from verbatim transcripts of discussions Marksmen had with third-party saw blade brands. Plaintiffs' allegation—that these two references, by third parties, in an over two hundred page report, means that the report is "concerning Plaintiffs, Plaintiffs' products, or Plaintiffs' registered Trademark"—is

absurd. The Marksmen Report clearly concerns *third-party* saw blades, and two references to "CMT" by customer support agents *from other companies* does not make it so. Indeed, Marksmen's deposition testimony about the report makes it clear that Marksmen was not engaged for and did not perform any research concerning Plaintiffs, their products, or their trademarks:

```
14    Q.  As part of its investigation, did Marksmen
15        contact CMT Utensili?
16    A.  No.
17    Q.  As part of its investigation, did Marksmen
18        contact CMT USA?
19    A.  No.
20    Q.  As part of its investigation, did Marksmen
21        procure or purchase any CMT blades?
22    A.  No.
```

Johnson Decl., ¶ 20.

Second, Apex's subsequent testing of some of the saw blades purchased by Marksmen does not retroactively make the Marksmen Report—let alone the Marksmen Communications -- "concerning Plaintiff, Plaintiff's products, or Plaintiff's registered Trademark." The Marksmen Communications were regarding the purchase of third party saw blades. What Apex later did with those saw blades does not change the subject matter of the report or communications.

And finally, Apex's voluntary disclosure of the Marksmen Report, done because Apex plans to introduce the fact of third-party uses of orange at trial, similarly does not retroactively mean that communications about the Marksmen Report were "concerning Plaintiff, Plaintiff's products, or Plaintiff's registered Trademark."

What is clear is that the Marksmen Communications are entirely communications between Apex's litigation counsel and a hired investigator regarding the purchase of third party saw blades. None of the purchases involved or concerned Plaintiffs and their saw blades, and therefore the communications are clearly not responsive to either RFP 25 or 30.

**C.    The redactions within the Marksmen Communications properly cover opinion work product.**

If the section of the Motion covering the Marksmen Communications is construed as a motion to remove the handful of redactions in those documents, it should be denied.

126667500.5 - 9 -

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL ATTORNEY COMMUNICATIONS
3:24-CV-00137-RJC-DCK

Case 3:24-cv-00137-RJC-DCK    Document 127    Filed 11/14/24    Page 9 of 20

First, Apex previously offered to produce the Marksmen Communications unredacted to Plaintiffs if the Plaintiffs would agree that the absence of redactions was not a waiver of work product production. Johnson Decl., ¶ 19. Plaintiffs refused this offer, and therefore the Marksmen Communications were produced with minimal redactions covering only the opinions and mental impressions of Apex's counsel (in total, about 5 paragraphs out of hundreds of pages). *Id.*, ¶ 18. It is important to note that Apex allowed Marksmen to produce and be deposed on the instructions Apex's counsel gave to Marksmen in the course of its work, and all work and communications done by Marksmen. *Id.*, ¶ 21. But given Plaintiffs' broader threats that Apex had waived privilege and work product – Apex had to draw the line at protecting its counsel's own opinion work product. The fact that Plaintiffs refused an offer to have the Marksmen Communications produced without redactions supports the Court denying a motion to have those redactions removed.

Second, the redacted sections of the Marksmen Communications meet the standard of opinion work product. The communications were inarguably prepared "in anticipation of trial"—they were sent from Apex's counsel to its agents, and they were prepared in anticipation of trial "by or for" Apex's attorneys. Accordingly, these documents squarely fall within the Fed. R. Civ. P. 26(b)(3)(A) limitation on discoverable materials. *See* Notes of Advisory Committee on Rules—1970 Amendment ("Subdivision (b)(3) reflects the trend of the cases by requiring a special showing, not merely as to materials prepared by an attorney, but also as to materials prepared in anticipation of litigation or preparation for trial by or for a party or any representative acting on his behalf.").

Despite this straightforward application of the Federal Rules, Plaintiffs do not even reference Fed. R. Civ. P. 26(b)(3)(A) in their Motion. To have overcome this limitation on discovery, Plaintiffs must show they have a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *See* Fed. R. Civ. P. 26(b)(3)(A)(i–ii). As Plaintiffs do not mention, let alone prove, in the Motion that they have such a "substantial need," the Motion is facially inadequate and should be denied.

### 1. Producing the Marksmen Report did not waive work-product protections for Apex's counsel's thoughts and impressions.

Producing the Marksmen Report—a report that is the result of counsel and its hired

investigator's factual and legal work—did not waive the opinion work-product immunity for the handful of redactions within the Marksmen Communications.

Plaintiffs' cited cases plainly do not support its position. First, both *In re Martin Marietta*, 856 F.2d 619 (4th Cir. 1988) and *United States v. Nobles*, 422 U.S. 225 (1975) are criminal, not civil cases, and they are not controlling (or even particularly relevant) here. Second, the court in both *Nobles* and *In re Martin Marietta* found that actual testimonial use was an implied waiver of the work-product privilege. In contrast, Plaintiffs here *assume* some future testimonial use of the Report. In other words, Plaintiffs argue that the work-product doctrine was waived <u>for one group of documents</u> (the Marksmen Communications) because Apex *might* make testimonial use of a different document - the Marksmen Report. This argument is illogical on its face.

### D. The Third-Party Manufacturer Communications are not responsive to any valid document request.

Like the Marksmen Communications, the Third-Party Manufacturer Communications also are not responsive to any RFP served by Plaintiffs, and therefore not only was Apex not required to produce them, but Plaintiffs are unable to move to compel their production. *See* Fed. R. Civ. P. 37(a)(3). As explained above, the Third-Party Manufacturer Communications sought in this Motion consist entirely of communications between Apex's outside counsel and third party companies.

As any competent litigation counsel would do, Apex's counsel conducted its own research and investigation throughout the course of this litigation, including research into third-party saw blade manufacturers. Johnson Decl., ¶ 22. Part of this research included the Third-Party Manufacturer Communications in which counsel for Apex communicated with various third-party saw blade manufacturers. *Id.* Plaintiffs now ask this Court to compel the disclosure of those investigation communications from Apex's counsel. To be clear, these are not documents created by or in the possession of Apex itself. Instead, after learning during the deposition of one third party that Apex's counsel had conducted an investigation, Plaintiffs turned their sights to Apex's lawyers and are asking defense counsel to log or produce their own litigation file. Requiring lawyers in litigation to log or produce their own internal investigation conducted for the purpose of that same litigation would eviscerate the opinion work product protection. Moreover, the asserted Requests for Production

numbers 32, 38, and 34 cited by Plaintiffs in support are facially overbroad and irrelevant. Apex (and its counsel) therefore has no obligation to produce any documents in response.

Because Plaintiffs know that they never served a Request for Production asking for communications between Apex and its counsel and third party saw blade manufacturers, in this Motion Plaintiffs claim that those documents are covered by Plaintiffs' Requests for Production Nos. 32, 38, and 34. Those requests seek "all documents" "relating to" Plaintiffs' entire litigation against Apex. While such requests are objectionable on their face, Apex objected to each request as overly broad, and Plaintiffs did not challenge those objections. Johnson Decl., ¶ 23. Plaintiffs' Requests for Production Nos. 32, 38, and 34 are shown below:

> **Production Request No. 32:**
> All documents, communications, and things concerning this action, including without limitation all documents that Defendants sent to or received from any person concerning this action.
>
> **Production Request No. 34:**
> All documents, communications, and things concerning any allegation set forth in Defendants' Answer to Plaintiffs' Complaint, including without limitation all documents that support any defenses or counterclaims alleged in Defendants' Answer.
>
> **Production Request No. 38:**
> All documents concerning any lawsuit, action, claim, charge, assertion, allegation, or arbitration proceeding brought against Defendants involving claims for copyright infringement, trademark infringement, trademark counterfeiting, unfair competition, false advertising, or domain name misappropriation/infringement.

*Id.*

Courts within the Fourth Circuit have consistently held that "documents requests seeking 'any and all' documents 'relating to' are overly broad." *Donnelly v. Arringdon Dev., Inc*, No. 1:04CV889, 2005 WL 8167556, at *1–2 (M.D.N.C. Nov. 8, 2005). Moreover, this prohibition on overly broad discovery requests is particularly relevant where a request seeks documents that are simply "concerning the events and happening alleged in the complaint." *Food Lion, LLC v. Dairy Farmers of Am., Inc.*, No. 1:20-CV-442, 2020 WL 6949004, at *2–3 (M.D.N.C. Oct. 6, 2020). "In other words, for a request to meet Rule 34's mandate, it must not be 'so open-ended as to call simply for documents related to a claim or defense in this action.'" *Id.* (citing Fed. R. Civ. P. 34(b)(1)(A)); *see also Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 412 (M.D.N.C. 1992)) ("Broad and undirected requests for

all documents which relate in any way to the complaint are regularly stricken as too ambiguous.").

Requests for Production Nos. 32 and 34 facially "call simply for documents related to a claim or defense in this action"—indeed, they go beyond that and call for documents related to any claim or defense in this action. *See Food Lion, LLC*, 2020 WL 6949004, at *2–3 (M.D.N.C. Oct. 6, 2020). Request for Production No. 38 goes even further than simply encompassing all documents relating to this action, as it calls for "all documents" "relating to" *any* copyright or trademark action brought against Apex—which necessarily includes the case brought by Plaintiffs. As each of these requests are facially overbroad, Apex is not required to produce documents in response. *See Preferred Carolinas Realty, Inc. v. Am. Home Realty Network, Inc.*, No. 1:13CV181, 2014 WL 1320133, at *3–4 (M.D.N.C. Mar. 28, 2014) (finding request for "[a]ny and all documents that [Plaintiff] contend[s] support any of [Plaintiff's] claims against [Defendant] or are relevant to any of [Defendant's] defenses as set forth in its Answer" as failing the requirements of Rule 34. Protective order granted.). To hold otherwise would require a party and its counsel to routinely produce, or log, each and every note, summary, timeline, draft, and any other document prepared by their lawyer during litigation because all such documents could conceivably "concern" or "relate to" the lawsuit at issue. This is not the law.

Due to the overbreadth of these requests, and Apex's previous objections to them, communications from Apex's counsel during the course of its investigation cannot be considered responsive. Otherwise, Apex (and every future party in a litigation) would be required to produce and/or log every single email or document they create and sent out during the course of a litigation.

### E. The Third-Party Manufacturer Communications are opinion work-product and therefore immune from discovery.

Even if the Third-Party Manufacturer Communications were responsive to a valid discovery request, which they are not, they are immune from production because they are opinion work-product.

To be considered attorney work product, a document must have been "prepared by an attorney in contemplation of litigation which set[s] forth the attorney's theory of the case and his litigation strategy." *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 292 (4th Cir. 2004). "The exemption serves to provide a ''zone of privacy' within which to think, plan, weigh facts and evidence, candidly

evaluate a client's case, and prepare legal theories.'" *Id.* Moreover, "the attorney work product exemption includes factual information prepared by an attorney in anticipation of litigation." *Id.*

The Third-Party Manufacturer Communications are the precise type of documents that the work-product doctrine seeks to protect. The Third-Party Manufacturer Communications include opinions and discussion, by counsel, in communications with third-party saw blade manufacturers for the purpose of investigating Apex's defenses—again, inarguably in anticipation of trial. Tellingly, Plaintiffs do not even argue or assert that the Marksmen Communications and Third-Party Manufacturer Communications are not presumptively work-product. Instead, Plaintiffs argue that the work-product doctrine has been waived due (1) to the production of <u>other</u> documents; and (2) counsel's "disclosure" of its communication with third parties to those very same third parties.

This is incorrect.

### 1. Work-product protection for communications is not waived by its communication to a third party.

Work-product protection for the Third-Party Manufacturer Communications was not automatically waived by dint of *making the communications in question*. Plaintiffs argue that because the third-party saw blade manufacturers to whom the communications were sent are "adverse" to Apex and because Plaintiffs were able to discover a communication between Lewis Roca third-party saw blade manufacturer Evolution Power Tools, Apex waived its work-product protection for *any* communications between Lewis Roca and *any* party saw blade manufacturer. To be clear here, Plaintiffs are asserting that a law firm communicating with a third-party business that competes with its client has automatically waived any work-product privilege relating to that communication. This contention is completely antithetical to the entire purpose of the work-product doctrine.

"The purpose of the work–product rule is not to protect the evidence from disclosure to the outside world but rather to protect it only from the knowledge of opposing counsel and his client, thereby preventing its use against the lawyer gathering the materials." § 2024 The Work–Product Rule—Matters Protected by the Work–Product Rule, 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.) (citing Gardner, Agency Problems in the Law of Attorney–Client Privilege: Privilege and "Work Product" under Open Discovery (Part II), 42 U.Det.L.J. 253, 290 (1965)). The Third-Party Manufacturer

126667500.5

- 14 -

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL ATTORNEY COMMUNICATIONS
3:24-CV-00137-RJC-DCK

Case 3:24-cv-00137-RJC-DCK   Document 127   Filed 11/14/24   Page 14 of 20

Communications are exactly the type of documents for which the work product doctrine protects from "use against the lawyer gathering the materials." Counsel for Apex communicated with third-party saw blade manufacturers for a number of reasons related to this case—reasons that, despite Plaintiffs' best efforts, are attorney opinion work-product that are not discoverable by opposing counsel.

Plaintiffs even go so far as to distort the Fourth Circuit's holdings in *In re Doe*. It is true that if "documents otherwise protected by the work–product rule have been disclosed to others with an actual intention that an opposing party may see the documents, the party who made the disclosure should not subsequently be able to claim protection for the documents as work product." § 2024 The Work–Product Rule—Matters Protected by the Work–Product Rule, 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.). However, "[d]isclosure to a person with an interest common to that of the attorney or the client normally is not inconsistent with an intent to invoke the work product doctrine's protection and would not amount to such a waiver." *In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981).

Here, the Third Party Manufacturer Communications are communications from Apex's counsel to third-party saw blade manufacturers who are not parties to this case, do not have any claims or positions in this case, and—importantly—are not "adverse" to Apex. They discuss Apex counsel's thoughts and strategies for the case, and seek information that Apex was investigating. They are therefore the precise type of documents that the work-product doctrine was designed to product. As a result, even if the communications were responsive to any proper RFP (which they aren't), they are protected by the work-product doctrine and this Court should deny the Motion to compel their production.

V. **Apex Should be Awarded Fees Because Plaintiffs' Motion was not Substantially Justified**

Pursuant to Fed. R. Civ. P. 37(a)(5)(B), Apex requests the Court grant its costs and reasonable expenses and attorneys' fees incurred by opposing Plaintiffs' Motion to Compel. Per Rule 37(a)(5)(B), "If the motion is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. . . . [unless] the motion

was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5). A motion is substantially justified if "a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Hare v. Comcast Cable Commc'ns Mgmt., LLC*, 564 F. App'x 23, 24–25 (4th Cir. 2014) (citing *Pierce v. Underwood*, 487 U.S. 552, 565–66 n. 2, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)). Here, Plaintiffs' Motion to Compel does not have a reasonable basis in law or fact, was not substantially justified, and there is no other circumstance making an award of expenses unjust.

Indeed, Plaintiffs' Motion flatly misrepresents the production status of the Marksmen Communications, stretches the interpretation of its Requests for Production well beyond reasonability, and seeks what is clearly attorney work product without any attempt to justify its position under the applicable Federal Rules. Plaintiffs' misuse of the Federal Rules provides a straightforward justification for awarding Apex its costs and reasonable expenses and attorneys' fees. *See* Fed. R. Civ. P. 26, Advisory Committee's Notes (1983 Amendments) ("[T]he spirit of the [R]ules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues . . .").

First, Plaintiffs move to compel the production of the Marksmen Communications. As detailed above, *these were produced before Plaintiffs filed their Motion*. And yet Plaintiffs did not even mention this in the Motion. There was not even an amendment or update to the Motion to let the Court know that the section on the Marksmen Communications was moot. Instead, Plaintiffs forced Apex to respond to a plainly unjustified Motion, and are forcing this Court to review and rule on the Motion, wasting valuable time and resources. Plaintiffs have no reasonable basis for failing to include this information in the Motion.

Second, Plaintiffs' position that both the Marksmen Communications and the Third-Party Manufacturer Communications are responsive to their Requests for Production is not credible. Plaintiffs asserts that the Marksmen Communications are responsive to requests for documents "concerning Plaintiffs, Plaintiffs' products, or Plaintiff's registered Trademark." However, the Marksmen Communications are plainly communications between counsel for Apex and an

investigation services company detailing an investigation into *third-party* sales blade manufacturers. Plaintiffs also assert that the Third-Party Manufacturer Communications are responsive to requests for production *that are per se overly broad* in the Fourth Circuit. Neither of these positions is reasonable, and Plaintiffs never attempted to distinguish the facts of this motion from earlier Fourth Circuit precedent.

Finally, it must be emphasized that this Motion is entirely focused on gaining access to opposing counsel's communications with third parties, and opposing counsel's thoughts and strategies contained within those communications. These communications and documents are the *core* type of document that the work-product doctrine protects against disclosure, and Plaintiffs' argument that the work-product doctrine was waived by disclosure of the communications *to their intended recipients* is not reasonable. As the Supreme Court put it in 1975:

> [T]he [work product] doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*U.S. v. Nobles*, 422 U.S. 225, 239 (1975).

Despite the enormity of Plaintiffs' demand—for opposing counsel to open their litigation file and produce communications with third parties—Plaintiffs have not even provided the basic justification of "substantial need" required by Fed. R. Civ. P. 26(b)(3)(A).

As a result, Plaintiffs' Motion is facially unreasonable, meritless, and unsupported by fact or law. It is the very picture of attorneys abusing discovery to merely prolong discovery, increase costs, and cause delay. The Motion is not substantially justified, and Apex accordingly requests the Court grant Apex its reasonable expenses and attorneys' fee incurred in opposing the Motion.

## VI. Conclusion

For the foregoing reasons, Apex respectfully requests that the Court deny Plaintiffs' Motion to Compel. Apex further requests that the Court order Plaintiffs or their attorneys to pay Apex's reasonable expenses and attorneys' fees incurred in opposing their motion pursuant to Fed. R. Civ. P.

37(a)(5)(B).

DATED: November 14, 2024

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: */s/Aaron D. Johnson*
Michael McCue
Aaron D. Johnson
David A. Jackson
MMcCue@lewisroca.com
ADJohnson@lewisroca.com
DJackson@lewisroca.com
100 Pine Street, Suite 1750
San Francisco, CA 94111
Telephone: 650.391.1380
Facsimile: 650.391.1395

SNEED PLLC
Jason M. Sneed (NC Bar No. 29593)
Megan Sneed (NC Bar No. 38525)
JSneed@SneedLegal.com
MSneed@SneedLegal.com
Litigation@SneedLegal.com

445 South Main Street, Suite 400
Davidson, NC 28036
Tel: 844-763-3347

*Attorneys for Defendants*

# CERTIFICATE OF USE OF ARTIFICIAL INTELLIGENCE

Pursuant to this Court's order of June 13, 2024 regarding the use of artificial intelligence in court filings, Defendants Apex Tool Group LLC and Apex Brands, Inc. hereby certify:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;
2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Signed this November 14, 2024.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: */s/Aaron D. Johnson*
Michael McCue
Aaron D. Johnson
David A. Jackson
MMcCue@lewisroca.com
ADJohnson@lewisroca.com
DJackson@lewisroca.com
100 Pine Street, Suite 1750
San Francisco, CA 94111
Telephone: 650.391.1380
Facsimile: 650.391.1395

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 14th day of November, 2024, the foregoing *Defendants' Opposition and Response to Plaintiffs' Motion to Compel* was served via electronic means through CM/ECF on the following counsel of record:

> Ward Davis (NC Bar ID 27546)
> Joshua B. Durham (NC Bar ID 25414)
> BELL, DAVIS & PITT
> 227 W. Trade St., Suite 1800
> Charlotte, NC 28202
> (704) 227-0400
> ward.davis@belldavispitt.com
> jdurham@belldavispitt.com
>
> Edgar H. Haug (*pro hac vice*)
> Robert E. Colletti (*pro hac vice*)
> Mark Basanta (admitted *pro hac vice*)
> HAUG PARTNERS LLP
> 745 Fifth Avenue
> New York, NY 10151
> (212) 588-0800
> ehaug@haugpartners.com
> rcolletti@haugpartners.com
> mbasanta@haugpartners.com
> *Attorneys for Plaintiffs CMT USA, Inc.*
> *and CMT Untensili S.p.A.*

/s/ *Aaron D. Johnson*