UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:24-CV-00137-RJC-DCK

CMT USA, Inc. and CMT Utensili S.p.A.,

        Plaintiffs,

v.

Apex Tool Group LLC and Apex Brands, Inc.,

        Defendants.

**MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE OPINION AND TESTIMONY OF THOMAS MARONICK**

Pursuant to Federal Rule of Evidence 702, Defendants Apex Tool Group LLC and Apex Brands, Inc. (collectively, "Apex") move this Court for an order excluding the expert opinion and testimony of Plaintiffs' expert witness Thomas Maronick. Maronick provided two reports in this case, an "Expert Report of Thomas J. Maronick, DBA, JD" served on November 22, 2024 and attached as **Exhibit 1** to the Declaration of Aaron D. Johnson, **Exhibit A** ("Johnson Decl.") (the "Maronick Report"), and a "Rebuttal Expert Report of Thomas J. Maronick, DBA, JD" served on December 20, 2024 and attached as **Exhibit 2** to the Johnson Decl. (the "Maronick Rebuttal Report").

Due to significant methodological errors and the lack of reliable methods for the survey within the Maronick Report, and the lack of specialized knowledge that will help the trier of fact within the Maronick Rebuttal Report, the Court should exclude in full the Maronick Report, the Maronick Rebuttal Report, and any related testimony.

## I.    <u>INTRODUCTION</u>

Federal courts play the essential role of "gatekeeper" when it comes to the decision of whether to admit an expert report and the expert's associated testimony. *Pugh v. Louisville Ladder, Inc.*, 361 F. App'x 448, 451 (4th Cir. 2010). The Fourth Circuit courts have held that the importance of this role "cannot be overstated" and that courts should only permit the introduction of expert

reports and expert testimony that is "reliable." *Seamster v. Taylor*, 2022 WL 2165545, at *6 (W.D. Va. June 15, 2022).

The Maronick Report is fundamentally unreliable and flawed in five ways, as explained in detail below. Each of these errors by itself is significant enough to invalidate the Maronick Report and the survey described within it (the "Maronick Survey"), as well as justify his exclusion as an expert. Together, they result in a survey and report so unreliable and so far from accepted survey design that it cannot provide any assistance to the trier of fact. As a result, under *Daubert,* Fourth Circuit precedent and Federal Rule of Evidence 702, the Maronick Report should be excluded in its entirety.

First, the Maronick Survey used doctored images of the products such that the images shown to participants did not reflect any products sold in the market or marketplace conditions. This is a significant error which survey experts and legal case law unanimously renounce as improper methodology. Second, the Maronick Survey used the wrong universe of respondents. Third, the Maronick Survey used an improper control. Fourth, the Maronick Survey improperly used product images in the second room that do not replicate products sold in the same channels. And fifth, the Maronick Survey contained other improper methodology designed to lead respondents towards findings favorable to Plaintiffs, including using leading questions.

Each of these errors by itself would be significant enough to invalidate the results of the Maronick Survey and justify his exclusion as an expert. Together, they require the Maronick Report and all related testimony be excluded in its entirety.

The Maronick Rebuttal Report should also be excluded because it offers critiques solely on the bases of the flawed and unreliable Maronick Survey, incorrect statements of survey methodology, and unsupported assertions. Accordingly, the Maronick Rebuttal Report amounts to nothing more than an extra lawyer making speculations for Plaintiffs' side. The Court should therefore also exclude the Maronick Rebuttal Report.

MOTION TO EXCLUDE OPINION AND
TESTIMONY OF THOMAS MARONICK
3:24-CV-00137-RJC-DCK

## II.    FACTUAL BACKGROUND

This is a trademark infringement case in which Plaintiffs contend that their alleged trademark rights in an all-orange trade dress for circular saw blades (the "CMT Orange Trade Dress") has been infringed by Apex's sale of circular saw blades in a design that contains black, white, and a reddish-orange color known as "Rawhide" (the "Crescent Trade Dress").



[1] *Squirtco v. Seven-up Co.*, 628 F.2d 1086 (8th Cir. 1980).

127329825.7

MOTION TO EXCLUDE OPINION AND
TESTIMONY OF THOMAS MARONICK
3:24-CV-00137-RJC-DCK

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████ Without any scholarship or case law to support those critiques, these criticisms are unreliable and insufficient, and should be disregarded. ████████████████████████████████████████

█████████████████ but without any basis other than the claims that their opinions were not

127329825.7

MOTION TO EXCLUDE OPINION AND
TESTIMONY OF THOMAS MARONICK
3:24-CV-00137-RJC-DCK

supported and they contradicted the flawed Maronick Survey. As a result, the Maronick Rebuttal Report does not provide any assistance to the Court and should be excluded.

Apex has contemporaneously filed a Motion for Summary Judgment discussing, *inter alia*, CMT's failure to carry its burden of demonstrating a likelihood of confusion—the central element of trademark infringement. Accordingly, given the overlap between the issues raised by this Motion and those raised in the Motion for Summary Judgment, Apex submits this motion at this time in an effort to streamline issues for resolution of the Motion for Summary Judgment, trial, and trial preparation, including the extent to which Apex may seek other *in limine* relief.

## III.   ARGUMENT

### A.      Standard of Review

Under Rule 702 of the Federal Rules of Evidence, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:"

    (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b)    the testimony is based on sufficient facts or data;

    (c)    the testimony is the product of reliable principles and methods; and

    (d)    the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

F.R.E. 702(a)-(d). In applying the Rule, "trial judges act as gatekeepers 'to ensure that any and all scientific testimony ... is not only relevant, but reliable.'" *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). Thus, "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). The proponent of expert testimony therefore has the burden of establishing admissibility by a preponderance of proof. *Cooper*, 259 F.3d at 199.

MOTION TO EXCLUDE OPINION AND
TESTIMONY OF THOMAS MARONICK
3:24-CV-00137-RJC-DCK

In trademark cases, survey evidence is routinely used in litigating the "most important factor" of the trademark infringement inquiry: "actual confusion." *See, e.g., George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 398 (4th Cir. 2009) (noting that actual confusion is the most important factor and "can be demonstrated by both anecdotal and survey evidence"). "Importantly, however, an expert's survey and conclusions may be excluded under Rule 702 if the survey 'was fundamentally flawed' and suffers from 'fatal flaws,' as opposed to 'mere technical flaws.'" *Valador, Inc. v. HTC Corp.*, 242 F. Supp. 3d 448, 457 (E.D. Va. 2017), *aff'd*, 707 F. App'x 138 (4th Cir. 2017) (citing *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*,[2] 383 F.3d 110, 121 (3d Cir. 2004)). Courts routinely exclude survey experts when "the survey was not 'conducted according to accepted principles' and in 'a statistically correct manner.'" *Id.*; *see Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 280 (4th Cir. 2002) (reversing district court's reliance on survey evidence when the survey "elicited information about the consumer's reaction to an isolated part of the packaging, when the relevant issue in a false advertising case is the consumer's reaction to the advertisement as a whole and in context."); *The Learning Network, Inc. v. Discovery Communications, Inc.*, 153 F. Supp. 2d 785 (D. Md. 2001) ("Expert testimony concerning survey results may not be reliable if the survey format does not accurately gauge consumer confusion between the marks at issue."). In making this inquiry, the Fourth Circuit has relied on the "well-known treatise, *McCarthy on Trademarks*" (hereinafter "MCCARTHY"). *Valador,* 242 F. Supp. 3d at 457 (citation omitted).

> ### B.    The Maronick Report should be excluded because the Maronick Survey contained significant methodological errors that make it unreliable and unhelpful to the trier of fact.

The Court should exclude the Maronick Report in its entirety because "[Maronick's] survey—and his conclusions based on that survey—are "'so flawed as to be completely unhelpful

---

[2] *Citizens Financial Group* held that the district court properly excluded a likelihood of confusion survey that (1) used vague and imprecise language and (2) surveyed consumers outside of the relevant customer base. The Fourth Circuit has favorably cited this decision. *See PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 123 (4th Cir. 2011) (citing *Citizens Fin. Grp.*, 383 F.3d 110).

MOTION TO EXCLUDE OPINION AND
TESTIMONY OF THOMAS MARONICK
3:24-CV-00137-RJC-DCK

to the trier of fact and therefore inadmissible.'" *Id.* (quoting *PBM Prods.*, 639 F.3d at 123). The Maronick Survey used methods that survey experts and legal case law unanimously renounce as improper methodology. Specifically, the Maronick Survey (1) used doctored product images, which failed to replicate market conditions, (2) failed to evaluate the proper universe, (3) used an improper control, (4) chose other product images that did not replicate market conditions, but instead sought to influence the results, and (5) used leading questions and other "tricks" to funnel participants toward CMT's desired result.

Each error in the Maronick Survey is significant enough to warrant exclusion on its own— but the cumulative effect of these errors underscores that the survey is unreliable. *See, e.g.*, *THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 219 (S.D.N.Y. 2010) ("Exclusion may be justified, however, where a single error or the cumulative errors are so serious that the survey is unreliable or insufficiently probative.").

          i.        *The Maronick Survey is unreliable because it used doctored product images as stimuli, which do not replicate market conditions.*

The most foundational part of a likelihood of confusion survey is that it should attempt to replicate, as closely as possible, the conditions that a consumer will encounter in the marketplace. *Combe Inc. v. Dr. August Wolff GmBH & Co. KG Arzneimittel*, 382 F. Supp. 3d 429, 463 (E.D. Va. 2019), *aff'd*, 851 F. App'x 357 (4th Cir. 2021) ("a likelihood of confusion survey must replicate market conditions"). As a result, product images used as stimuli in the survey should match as closely as possible the products and packaging in the marketplace. Surveys that do not use images that reflect the marketplace are unreliable and frequently excluded by courts within the Fourth Circuit and around the country. *See, e.g.*, *Valador*, 242 F. Supp. 3d at 463 (granting a motion to exclude the expert when the expert "deliberately altered defendants' mark to make it appear more similar to plaintiff's before asking questions about the marks' likelihood of confusion" and noting "[t]hat approach is antithetical to trademark infringement analysis." (footnote omitted)).

Trademark infringement does not occur in the abstract—it requires that a defendant's "*actual practice* is likely to produce confusion in the minds of consumers about the origin of the goods." *Valador*, 242 F. Supp. 3d at 462 (quotation omitted). Courts routinely exclude surveys that fail to replicate market conditions, including surveys "showing interviewees images which are not true representations of the product as actually sold," or "devoid of associated packaging and house marks." 5 MCCARTHY § 32:171 (collecting cases including *Valador*, 242 F.Supp. 3d at 448, and *Scotts Co.,* 315 F.3d at 264).

The Maronick Survey does not even attempt to "replicate market conditions." *Combe*, 382 F. Supp. 3d at 463. Instead, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████. The problem for Maronick is that CMT did not offer him as a color expert, and he is not qualified as a color expert. And a likelihood of confusion survey needs to test the full allegedly-infringing trade dress—not a single element of that trade dress. ████████████████████████████████████████████████████████████████████████████████████████████████████████████

██████████████████████

127329825.7

MOTION TO EXCLUDE OPINION AND
TESTIMONY OF THOMAS MARONICK
3:24-CV-00137-RJC-DCK

Courts routinely exclude survey opinions premised on such "doctored" trade dresses. *See, e.g.*, *Water Pik*, 726 F.3d at 1147 (upholding exclusion of a likelihood of trademark confusion survey that did not show the parties' marks as they actually appeared on packaging in the marketplace); *Valador*, 242 F. Supp. 3d at 463 (granting a motion to exclude the expert when the expert "deliberately altered defendants' mark to make it appear more similar to plaintiff's before asking questions about the marks' likelihood of confusion" and noting "[t]hat approach is antithetical to trademark infringement analysis." (footnote omitted)).

The Maronick Survey is no different than the surveys excluded in *Water Pik* or *Valador*, which modified images to tip the scales in favor of the expert's desired conclusion. By modifying the product images to omit the prominent brand names of each saw blade, Maronick tested vastly different conditions than those in which consumers encounter the products in the marketplace. *Cf. Valador,* 242 F. Supp. 3d at 462 ("Notwithstanding the fact that the HTC Vive mark typically appears in commerce accompanied by a triangular symbol, blue coloring, and a stylized "HTC" logo, Bonney excluded those images and font. In this respect, Bonney's deposition reveals that he consciously chose not to represent the parties' marks accurately in the survey."); *Water Pik*, 726 F.3d at 1147 (affirming a trial court's decision to discount the relevance of a purported confusion survey because the survey expert "fail[ed] to include the 'waterpik' house mark next to the SinuSense product mark."). Maronick did so in an attempt to "exaggerate[] the similarities between the two marks, likely increasing the confusion of the respondents." *Water Pik*, 726 F.3d at 1147. But this doctoring of the images completely eviscerates any evidentiary value his survey may have otherwise had, and correspondingly cannot be shown to create a genuine issue of material fact as to the lack of actual confusion. *See id.*

Maronick tested an imaginary market of nameless, brandless saw blades. No consumer will ever encounter such a market, nor products which look like the images Maronick used in his report. Accordingly, the Maronick Survey does not replicate market conditions, and thus is unreliable and should be excluded.

MOTION TO EXCLUDE OPINION AND
TESTIMONY OF THOMAS MARONICK
3:24-CV-00137-RJC-DCK

"The first step in designing a survey is to determine the 'universe' to be studied." 5 MᴄCᴀʀᴛʜʏ § 32:159. "Selection of the proper universe is a crucial step, for even if the proper questions are asked in a proper manner, if the wrong persons are asked, the results are likely to be irrelevant." *Id.*; *see also Valador*, 242 F. Supp. 3d at 459. "A survey universe is an important factor is assessing the validity of a survey because survey respondents must adequately represent the opinions which are relevant to the litigation." *Water Pik, Inc. v. Med-Sys., Inc.*, 2012 WL 2153162, at *4 (D. Colo. June 13, 2012). Accordingly, a "survey of the wrong 'universe' will be of little probative value in litigation." McCarthy § 32:159. Surveys that do not use the proper universe are unreliable and frequently excluded or discounted by courts within the Fourth Circuit and around the country. *See* 5 MᴄCᴀʀᴛʜʏ § 32:161 (collecting cases); *IDV N. Am., Inc. v. S & M Brands, Inc.*, 26 F. Supp. 2d 815, 830 (E.D. Va. 1998) (finding a survey of "limited probative value in determining the likelihood of confusion issue" and noting that the survey's "failure to include in the survey persons who are in the market for both products rather seriously undercuts the credibility of the survey").

The proper universe for a confusion survey is past and prospective purchasers of the defendant's accused products. *See Valador*, 242 F. Supp. 3d at 460; Shari Seidman Diamond, *Reference Guide on Survey Research* (Federal Judicial Center 3d. ed. 2011), at 377 ("The definition of the relevant population is crucial because there may be systematic differences in the responses of members of the population and nonmembers. For example, consumers who are prospective purchasers may know more about the product category than consumers who are not considering making a purchase."). Here, Apex's Accused Products consist of circular saw blades for cutting wood that can be used for a variety of tasks, including woodworking, but also framing, demolition, and other construction tasks. Declaration of Ryan Kropfelder, **Exhibit 4** ("Kropfelder Depo."), ¶ 5.

But the Maronick Survey did not sample past and prospective purchasers of these Accused Products. Instead,  Each of these three aspects reflects an improper universe.

First, "past purchasers" are a poor substitute for "prospective purchasers," because past purchasers may not re-enter the market for saw blades. Therefore, widely accept likelihood of confusion survey methodology requires that both past and prospective purchased be included in a universe. *See, e.g.,* Shari Seidman Diamond, *Reference Guide on Survey Research* (Federal Judicial Center 3d. ed. 2011), at 377 ("consumers who are prospective purchasers may know more about the product category than consumers who are not considering making a purchase."). And Maronick himself admitted that he "usually" includes prospective purchasers in the universe for surveys, and not including prospective purchasers in this survey was "an oversight." *Id.* at p. 131.

Second, limiting the survey to purchasers of "carpentry or woodworking tools" fails to capture consumers who use Apex's products which are not used for carpentry or woodworking, but nonetheless Plaintiffs claim are infringing. Kropfelder Depo., ¶ 5. This is a huge error and makes the Maronick survey unreliable because the proper universe is purchasers of the defendant's accused products. *See Valador*, 242 F. Supp. 3d at 460. By limiting the universe to only purchasers of "carpentry or woodworking tools," as opposed to consumers who purchase Apex's Accused Products for other, non-carpentry and non-woodworking purposes, the Maronick Survey is not accurately reflecting the population. To make it worse, at his deposition Maronick stated ████

████████████████████████████████████████████████

█████████████████████████████████

MOTION TO EXCLUDE OPINION AND
TESTIMONY OF THOMAS MARONICK

127329825.7

3:24-CV-00137-RJC-DCK

Third, the Maronick Survey's universe included a compound market: not only purchasers of saw blades (at issue in this matter), but also purchasers of saws (not at issue in this matter). To make matters worse, Maronick framed the universe-establishing questions in such a way that it is impossible to determine which respondents, if any, were actual purchasers of saw blades. In other words, ██████████████████████████████████████████████████████

██████████████████████████████████████. ██████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████ *Cf. Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp.2d 305, 322 (S.D.N.Y. 2000) ("First, the universe was defined as persons who had purchased fragrances in the preceding twelve months rather than persons who intended to purchase fragrances in the future. Thus, the survey improperly excluded prospective purchasers." (footnote omitted)).

All three of these errors mean that the universe within the Maronick Survey was wrong. Thus, the Maronick Survey is unreliable and unhelpful for determining whether there is a likelihood of confusion as to those products, and should be excluded. *See., e.g., Water Pik, Inc. v. Med-Sys., Inc.,* 2012 WL 2153162, at *11 (D. Colo. June 13, 2012) (upholding the exclusion of a likelihood of confusion survey because it had "an overinclusive survey universe, an unrepresentative sample, replicates unrepresentative market conditions, and contains suggestive questions"). Even Maronick admitted that a survey with the wrong universe would be ██████████ ██████████████████.

        *iii.     The Maronick Survey is unreliable because it used an improper control.*

"A properly constructed likelihood of trademark confusion survey will isolate confusion arising specifically from the contested mark by substituting for the contested mark a control mark

127329825.7

MOTION TO EXCLUDE OPINION AND
TESTIMONY OF THOMAS MARONICK
3:24-CV-00137-RJC-DCK

that shares as many characteristics with the contested mark as possible, with the key exception of the characteristic whose influence is being assessed." *Valador*, 242 F. Supp. 3d at 463 (E.D. Va.) (cleaned up). Surveys that do not use a proper control are unreliable and frequently excluded by courts within the Fourth Circuit and around the country. *See* 5 McCarthy § 32:187 (collecting cases, including *Valador*, 242 F.Supp. 3d 448, *aff'd*, 707 Fed Appx. 138).

Thus, in this case, the control image should have been as close to Apex's Crescent Trade Dress as possible. The control should have included features such as the Crescent name and logo, because CMT does not contend that the Crescent name and logo are infringing. *Cf. Gov't Employees Ins. Co. v. Google, Inc.*, 2005 WL 1903128, at *5 (E.D. Va. Aug. 8, 2005) ("As the survey expert admitted, an effective control should have removed from the page viewed by the test group the allegedly infringing elements for which GEICO wanted to measure confusion … while keeping the other elements as constant as possible.").

But this is not what the Maronick Survey did. ████████████████████████ ████████████ By choosing this control, Maronick could not isolate the color of Apex's blade as the source of any alleged confusion. Instead, there were significant differences between the control and Apex's Crescent blade:



MOTION TO EXCLUDE OPINION AND TESTIMONY OF THOMAS MARONICK

127329825.7

3:24-CV-00137-RJC-DCK

Each of these distinguishing features reduced the survey's ability to isolate the purported confusion; in the aggregate, they render Maronick's control useless. *See Valador*, 242 F. Supp. 3d at 464 (noting that without a proper control, "it is impossible to gauge and correct for the significant potential error rate").

Additionally, and inexplicably, the Maronick Survey █████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████

Accordingly, Maronick's improper control is yet another independent grounds by which the Court should exclude his opinions and testimony.

> iv.    *The Maronick Survey is unreliable because it included third party saw blades that did not reflect the marketplace and were instead specifically chosen to achieve a specific result.*

Within the second room of the survey, █████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████    For example, █████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ By contrast, Evolution sells orange-colored woodcutting sawblades and offers those products at Menard's, but Maronick did not include an Evolution blade.

By omitting the Evolution blade and instead cherry-picking blades from different retailers such that the only blades on the orange spectrum were the parties', Maronick was able to lead respondents into a color-matching exercise and avoid testing any real marketplace sentiment. The Maronick Survey's ██████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ █████████████████████████████████    *Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997 (N.D. Ill. 2010), aff'd, 412 F. App'x 304 (Fed. Cir. 2011) (excluding a likelihood of

MOTION TO EXCLUDE OPINION AND
TESTIMONY OF THOMAS MARONICK
3:24-CV-00137-RJC-DCK

confusion survey where the respondents where shown calculators but the only two purple calculators were the parties'); *see Brighton Collectables, Inc., v. RK Tex. Leather*, 923 F. Supp. 2d 1246, 1257-59 (S.D. Ca. 2013) ("the survey does not prove actual consumer confusion…but instead tested the ability of participants to pick the most obvious match").

> v.    *Maronick's survey had numerous other issues designed to lead respondents towards a finding of confusion.*

The deficiencies set forth above were not the only diversions Maronick took from the accepted principles of trademark survey design. █████████████████████████████████████████████████████████████████████████████████████████████████████████████████

First, the Maronick Survey failed to properly separate the "rooms" of images from the survey respondents and failed to include an interlude "distractor" question, such that respondents immediately juxtaposed the product images. This is improper. *See* Jerre B. Swann, *Eveready and Squirt-Cognitively Updated*, 106 Trademark Rep. 727, 739-40 (2016) ("Rather than on an immediate juxtaposition of the junior and senior brands, [a two room *Squirt*-style survey] relies on a sequential, aided brand display to make the allegedly infringed brand mentally accessible for comparison."); Cynthia R. Cohen & Erica J. Van Loon, *SURVEY SAYS: Best Practices on Trademark Consumer Survey Admissibility*, DRI For the Defense, August 2019, at 10, 15 ("A court is more likely to admit a Squirt survey that incorporates proper distracter questions, includes a proper control group, and that uses a follow-up 'why' question for coding responses.").

Second, Maronick presented images to respondents at such a small size that details, such as text, were difficult to distinguish. ████████████████████████████████████████████████████████████████████████████ By contrast, a

---

[3]There are two common methods for surveying trademark likelihood of confusion—*Eveready* and *Squirt* surveys. *See Valador*, 242 F. Supp. 3d at 464 (citing [5] MCCARTHY § 32:173.50). "Importantly, however, in both survey methodologies the respondent is shown the entire mark *as used in the marketplace*." *Id.*

MOTION TO EXCLUDE OPINION AND
TESTIMONY OF THOMAS MARONICK
3:24-CV-00137-RJC-DCK

consumer interacting with the products in real marketplace conditions would be able to see the entirety of the trade dresses clearly, including the details and text on the products.

And third, the Maronick Survey improperly used a leading question designed to elicit a response indicating confusion. ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████ This question <u>presumed</u> that at least two of the saw blades were from the same company; Maronick should have first asked respondents to answer "<u>whether</u>" any of the saw blades from the "second room" were connected with Plaintiffs. But by omitting this question, Maronick led respondents "along the garden path" towards Plaintiffs' desired outcome. *See* 5 MCCARTHY § 32:172. Maronick's survey was designed such that "even an individual who before had never heard of either company could easily 'feel' there was 'some' relationship between the two after having been asked the previous questions." *Penta Hotels Ltd. v. Penta Tours*, B-86-089 (JAC), 1988 WL 384940, at *38 (D. Conn. Sept. 30, 1988) (giving the survey little weight).

Thus, Maronick Survey's design was also impermissibly leading. "Survey questions which beg their answers cannot be a true indicator of the likelihood of consumer confusion, and cannot be relied on to create an issue of fact so as to make summary judgment improper." *Sunbeam Corp. v. Equity Indus. Corp.*, 635 F. Supp. 625, 630 (E.D. Va. 1986) (quotation marks omitted); *see* MCCARTHY § 32:172. "Furthermore, questions which lead to, or suggest, an association provide 'fuel for the next question as to who owns or sponsors' a particular mark, and therefore the presence of such questions in a survey render its results doubtful." *IDV N. Am., Inc. v. S & M Brands, Inc.*, 26 F. Supp. 2d 815, 830 (E.D. Va. 1998). "Thus, a question which asks survey participants whether they believe that there is a connection between the plaintiff's and defendant's goods and services has been rejected as an improper leading question which lacks probative value and which prejudices the reliability of the survey." *Id.*

MOTION TO EXCLUDE OPINION AND
TESTIMONY OF THOMAS MARONICK
3:24-CV-00137-RJC-DCK

The Maronick Survey's impermissibly leading survey design serves only to see if respondents can match colors. It does not test whether respondents are confused as to the source of two products as they appear in a marketplace. Therefore, the Court should exclude the Maronick Survey and the associated Maronick Report.

vi.   *Conclusion as to the Maronick Report and Maronick Survey*

As set forth above, the Maronick Report and Maronick Survey contain a constellation of flaws that would each by themselves be sufficient for the Court to exclude the Maronick Report and Survey. The cumulative effect of these flaws—including, but not limited to, doctored images that don't reflect the marketplace, an improper universe, an improper control, leading questions, and improper survey design—is so great as to render the Maronick Survey completely unhelpful and unreliable to the finder of fact. Accordingly, the Court should exclude the Maronick Survey pursuant to Federal Rules of Evidence 702.

████████████████████████████████████████████████

███████████████████████ Therefore, because the Maronick Survey should be excluded due to the numerous errors described above, the Maronick Report should also be completely excluded and Mr. Maronick prohibited from offering testimony related to it.

**C.    The Court should exclude the Maronick Rebuttal Report as pure subjective belief.**

The Maronick Rebuttal Report should be excluded because it is not based on any authority other than Maronick's bare assertions. Maronick generally offered no methodology by which to support his refutations. And when he did offer references to authority, those references were for fame surveys for dilution, which are irrelevant to this matter.

"A reliable expert's opinion **must** be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inference **must** be derived using scientific or other valid methods." *Free v. Bondo-Mar-Hyde Corp.*, 25 F. App'x 170, 172 (4th Cir. 2002) (emphasis added). "[K]nowledge connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. The gatekeeping function of the district court "requires more than simply taking

- 17 -

the expert's word for it." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 290 (4th Cir. 2021) (quoting Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendments). "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 137 (1997). These standards apply not only to primary expert reports, but also to expert rebuttal reports.

The Maronick Rebuttal Report must be excluded as set forth below because the report provides no support for the majority of his conclusions—he simply wants the Court to "take his word for it." And when Maronick *does* provide purport to provide supporting citations, those citations in fact concern unrelated and irrelevant issues and do not support the propositions for which he cites them. With the irrelevant citations properly disregarded, the rest of Maronick's conclusions fail as further requests that the Court "take his word for it."

i. *Maronick's rebuttals should be excluded because they are merely his subjective belief.*

Maronick suggests, ███████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

MOTION TO EXCLUDE OPINION AND
TESTIMONY OF THOMAS MARONICK
3:24-CV-00137-RJC-DCK



█████████████████████████████████████████████████████████

████████████████████████████████████ In other words, Maronick wants the Court to "take his word for it" based on nothing more than his subjective belief. *See Sardis v. Overhead Door Corp.*, 10 F.4th at 281. This is improper and the Court should exclude this testimony and critique as unreliable.

████████████████████████████████████████████████████

Similarly, ███████████████████████████████████

And Maronick ████████████████████████████████████

████████████████████████████ But as set forth above, a survey <u>must</u> show the products as they appear in the marketplace, making this complaint unfounded. Again, Maronick wants the Court to "take his word for it" based on nothing more than his subjective belief. *See Sardis v. Overhead*

---

[4] Maronick provided no support for this complaint because there is none. The phrasing Franklyn used in formulating this question is standard language in confusion surveys. 5 MCCARTHY § 32:175 (noting the language: "What company do you think makes this product?").

127329825.7

MOTION TO EXCLUDE OPINION AND
TESTIMONY OF THOMAS MARONICK
3:24-CV-00137-RJC-DCK

*Door Corporation*, 10 F.4th at 281. This is improper and the Court should exclude his testimony as unreliable.

> ii.   *Maronick's claim that* Eveready *surveys require 75% general consumer awareness is wrong and based on an irrelevant treatise.*

Next, Maronick ███████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████ (citing Swann, Jerre B. "Dilution Surveys Under the Trademark Dilution Revision Act" in Diamond and Swann (2012) Trademark and Deceptive Advertising Surveys: Law, Science, and Design American Bar Association Pg. 148). Maronick's "75%" number relates to the standard for establishing a "famous mark" for dilution claims under the Trademark Dilution Revision Act ("TDRA").

Trademark dilution is a separate claim from trademark infringement with differing elements. *See generally, CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263 (4th Cir. 2006). A claim for trademark dilution—unlike trademark infringement—requires the Plaintiff prove that its mark is "famous" to the general consuming public. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 168 (4th Cir. 2012). Trademark infringement has no fame requirement and Franklyn was not offered as an expert to test whether Plaintiffs' mark is famous. Accordingly, Maronick ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████ This is false.[5] MCCARTHY only

---

[5]  Besides misrepresenting McCarthy, Maronick is also incorrect about the applicability of *Eveready* surveys. *See Survey Formats—The Eveready format for testing the likelihood of confusion issue,* 5 MCCARTHY § 32:174 (quoting Poret, *An Empirical Assessment of the Eveready Survey's Ability to Detect Significant Confusion in Cases of Senior Marks That Are Not Top-of-Mind*, 109 Trademark Rptr. 935, 954 (2019)); *Limited v. Macy's Merchandising Grp. Inc.*, No. 15-

MOTION TO EXCLUDE OPINION AND
TESTIMONY OF THOMAS MARONICK
3:24-CV-00137-RJC-DCK

127329825.7

mentions the 75 percent figure once—in a section on dilution claims. *See* 3 MCCARTHY § 24:106. MCCARTHY does not discuss the *Eveready* format anywhere in the section. *See id.* Further, the section of the Swann treatise that Maronick relies on for this claim in his report is about dilution, not trademark infringement. *See Swann, Jerre B.* "Dilution Surveys Under the Trademark Dilution Revision Act" in Diamond and Swann (2012) Trademark and Deceptive Advertising Surveys: Law, Science, and Design American Bar Association pg. 148. When confronted about where the 75 percent figure comes from at his deposition, Maronick ████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████

The Maronick Rebuttal Report ███████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████ As a result, these simple statements that certain experts' statements do not have sufficient "supporting evidence" does not provide any assistance to the Court and those sections of the Maronick Rebuttal Report should be excluded.

These opinion fares no better than Maronick's other unsupported opinions discussed above. Again, Maronick thinks the Court should just "take his word for it." *See Sardis v. Overhead Door Corp.*, 10 F.4th at 281. But the Court need not take the bait. *See Gen. Elec. Co.*, 522 U.S. at 137 ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). The Court should therefore exclude Maronick's rebuttal as set forth herein.

## IV.    <u>CONCLUSION</u>

The Maronick Survey employed the wrong universe and the wrong control, failed to replicate market conditions, and was littered with leading questions and suggestive presentation. Any one of these defects would render his survey irrelevant and/or unreliable and prejudicial;

---

CV-3645 KMW, 2016 WL 4094913, *10 (S.D.N.Y. Aug. 2, 2016), *aff'd*, 695 F. App'x 633 (2d Cir. 2017).

MOTION TO EXCLUDE OPINION AND
TESTIMONY OF THOMAS MARONICK
3:24-CV-00137-RJC-DCK

127329825.7

cumulatively, there can be no doubt that his survey, along with his opinions and reports based upon it, must be excluded. For the foregoing reasons, Apex respectfully requests that the Court exclude the Maronick Report and any related opinions, testimony, or evidence. And because Maronick's rebuttal report provides no critiques of Professor Franklyn, Prof. Bleicher, or Mr. Banduch beyond bare speculation, Apex requests that the Court exclude Maronick Rebuttal Report and any related opinions, testimony, or evidence.

DATED: April 2, 2025

/s/ *Aaron D. Johnson*
Jason M. Sneed (NC Bar ID 29593)
Megan E. Sneed (NC Bar ID 38525)
SNEED PLLC
445 S. Main St., Suite 400
Davidson, North Carolina 28036
(844) 763-3347
JSneed@sneedlegal.com
MSneed@sneedlegal.com

Michael J. McCue
Aaron D. Johnson
David A. Jackson
Joy Tacy Allen Woller
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2750
San Francisco, California 94111
(650) 687-8426
Michael.McCue@wbd-us.com
Aaron.Johnson@wbd-us.com
David.Jackson@wbd-us.com
Joy.Woller@wbd-us.com

*Attorneys for Defendants/Counter-Plaintiffs*
*Apex Tool Group LLC and Apex Brands, Inc*

127329825.7

## <u>CERTIFICATE OF USE OF ARTIFICIAL INTELLIGENCE</u>

Pursuant to this Court's order of June 13, 2024 regarding the use of artificial intelligence in court filings, Defendants Apex Tool Group LLC and Apex Brands, Inc. hereby certify:

1.     No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexus, FastCase, and Bloomberg;

2.     Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Signed April 2, 2025.

WOMBLE BOND DICKINSON (US) LLP


/s/ *Aaron D. Johnson*
Jason M. Sneed (NC Bar ID 29593)
Megan E. Sneed (NC Bar ID 38525)
SNEED PLLC
445 S. Main St., Suite 400
Davidson, North Carolina 28036
JSneed@sneedlegal.com
MSneed@sneedlegal.com

Michael J. McCue
Aaron D. Johnson
David A. Jackson
Joy Tacy Allen Woller
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2750
San Francisco, California 94111
Michael.McCue@wbd-us.com
Aaron.Johnson@wbd-us.com
David.Jackson@wbd-us.com
Joy.Woller@wbd-us.com

*Attorneys for Defendants/Counter-Plaintiffs*
*Apex Tool Group LLC and Apex Brands, Inc*

MOTION TO EXCLUDE OPINION AND
TESTIMONY OF THOMAS MARONICK
3:24-CV-00137-RJC-DCK

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on this the 2nd day of April, 2025, the foregoing

Motion to Exclude Opinion and Testimony of Plaintiffs' Expert Thomas Maronick was served via

electronic means through CM/ECF on the following counsel of record:

> Ward Davis (NC Bar ID 27546)
> Joshua B. Durham (NC Bar ID 25414)
> BELL, DAVIS & PITT
> 227 W. Trade St., Suite 1800
> Charlotte, NC 28202
> (704) 227-0400
> ward.davis@belldavispitt.com
> jdurham@belldavispitt.com
>
> Edgar H. Haug (*pro hac vice*)
> Robert E. Colletti (*pro hac vice*)
> Jessica M. Stookey (*pro hac vice*)
> Patrick J. Lavery (*pro hac vice*)
> HAUG PARTNERS LLP
> 745 Fifth Avenue
> New York, NY 10151
> (212) 588-0800
> ehaug@haugpartners.com
> rcolletti@haugpartners.com
> jstookey@haugpartners.com
> plavery@haugpartners.com
>
> *Attorneys for Plaintiffs/Counter-Defendants CMT USA, Inc.*
> *and CMT Untensili S.p.A.*

> /s/ *Aaron D. Johnson*

MOTION TO EXCLUDE OPINION AND
TESTIMONY OF THOMAS MARONICK

127329825.7

3:24-CV-00137-RJC-DCK