UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:24-CV-00137-RJC-DCK

| | |
|---|---|
| CMT USA, INC. and CMT UTENSILI S.p.A., <br><br> Plaintiffs, <br><br> v. <br><br> APEX TOOL GROUP LLC and APEX BRANDS, INC. <br><br> Defendants. | **CMT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO SANCTION APEX'S FAILURE TO COMPLETE AND CORRECT ITS INCOMPLETE AND ERRONEOUS RESPONSE TO INTERROGATORY NO. 6** |

I.   **Introduction**

In accordance with Federal Rule of Civil Procedure 37(c)(1), Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A. (collectively "CMT") respectfully move for sanctions against Defendants Apex Tool Group LLC and Apex Brands, Inc. (collectively "Apex") for refusing to supplement a demonstrably inaccurate and incomplete interrogatory response, in violation of Rule 26(e).

This is primarily a trademark-infringement case. *See* Dkt. 37 (2d Amend. Compl.). During discovery, CMT requested information about Apex's advertising expenditures for the products that are accused of infringing CMT's mark.[1] In responding, Apex claimed it ▇▇▇▇ marketing the accused products in 2023. But that assertion is contradicted by Apex's documented marketing activities for saw blades throughout 2023, including deploying a 25-person promotional team, attending numerous trade shows as an exhibitor, creating or authorizing staged marketing images or videos for no fewer than 40 social media posts, conducting a full email campaign to distribute

---

[1] Apex's advertising expenditures directly contribute to CMT's calculation of remedial advertising damages. *See* Dkt. 151-5 (Winer Report) ¶¶ 93-99.

free promotional saw blades, and publishing 2 product catalogs. When confronted with this evidence, rather than correct its erroneous interrogatory response, as the Rules require, Apex doubled down on having ▮▮▮ marketing accused products in 2023. As explained below, it cannot be true that Apex ▮▮▮ on advertising in 2023 and casts doubts on whether Apex accurately reported its marketing spend for 2021 or 2022.

The events that give rise to this motion are just the latest chapter in Apex's recurring efforts to avoid discovery in this case. To date, Apex has, among other things, claimed to have completed its document production despite producing almost no emails (*see* Dkt. 94 at 2-3), belatedly produced key documents (*see* Dkt. 115 at 2-3 (discussing the Marksmen Report); Ex. H (discussing Apex's production of Mr. Bublitz's report *after* his deposition)), and withheld documents on pretextual work-product grounds (*see* Dkt. 115 at 10-12).

## II. Background

The mark at issue in this case is the color orange as applied to "[c]ircular blades for power saws for cutting wood" ("CMT's Orange Mark"). Dkt. 150-9 at 94 (Registration certificate for CMT's Orange Mark). CMT's Orange Mark is federally registered as U.S. Trademark Registration No. 3,038,625 and is incontestable. *See* Dkt. 159 (CMT's brief in support of motion for summary judgment) at 5. In 1997, CMT began applying the color orange to its circular woodworking saw blades and has exclusively done so ever since. Apex became aware of CMT's Orange Mark in 2017, appropriated the Mark for its own circular woodworking saw blades ("Accused Products") in 2021, and after CMT demanded the infringement stop, Apex expanded its infringement in 2023 ▮▮▮▮▮▮▮. *See* Dkt. 159 at 6-8. CMT filed suit shortly thereafter, asserting Lanham Act and common law infringement claims, among others.

During discovery, CMT served Interrogatory No. 5, asking Apex to "[s]tate all channels in which Defendants market or advertise . . . each of the Accused [Products]." Ex. E at 5. Apex

responded, in pertinent part, that it "advertises its CRESCENT® brand saw blades" through (i) "its website at crescenttool.com," (ii) "Apex's social media accounts such as Facebook, Instagram, YouTube, X (formerly Twitter) and TikTok," and (iii) "trade shows," "product catalogs, and email campaigns." Ex. E at 5.

CMT also served Interrogatory No. 6, asking Apex to "[s]tate by month . . . Defendants' expenditures for each advertising or promotional medium used to promote the Accused [Products]." Ex. E at 5-6. Apex responded that it would "produce records reflecting advertising expenditures for its CRESCENT® brand saw blades." Ex. E at 5-6. Apex did not invoke Rule 33(d) or identify any documents. Ex. E at 5-6. Apex eventually produced a document that it created for this litigation, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[2] Dkt. 151-18 at 17 (APEX00003387). That document provides ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dkt. 151-18 at 17. It also provides ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dkt. 151-18 at 17. Apex did not produce the documents or information from which it generated APEX00003387.

CMT later discovered that Apex participated in ▮▮▮▮▮▮▮ trade shows in 2023 as an exhibitor. *E.g.*, Ex. F at 4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. A (showing Crescent saw blades at the Specialty Tools & Fasteners Distributors Association (STAFDA) trade show in November 2023); Ex. B at 46 (showing Crescent saw blades at the Ace Hardware trade show in March 2023); Ex. B at 44-45 (showing Crescent saw blades at the Orgill Spring Dealer Market trade show in February 2023); *see also* Ex. F at 15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. D 313:6-317:3.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Apex also created or authorized staged marketing images and videos, and posted them (or authorized them to be posted through paid influencers) no fewer than 40 times in 2023, across various social media sites, including Facebook, Instagram, YouTube, X, and TikTok.[3] *E.g.*, Ex. B 1-4, 10-43, 68-78, 81-101; Ex. G at 10; *see also* Ex. F at 15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Apex conducted at least one email campaign in 2023, which pertained to a promotional program giving away "framing circular saw blades for free!" *E.g.*, Ex. G at 1-3, 4-5, 6, 7-9; *see also* Ex. F at 15▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ Apex also produced at least two 2024 product catalogs featuring the Accused Products (Dkt. 150-11 at 3-7 (Crescent 2024 Product Catalog); Ex. B at 55-60 (Crescent Power Tool Accessory Catalog)) and the Accused Products were featured on <crescenttool.com> in 2023 and still are today (Ex. B at 61-65; Dkt. 170-3 at 14-17).

Following the close of discovery, CMT raised with Apex the contradiction between its extensive marketing and advertising activities in 2023 and its reported ▮▮▮▮▮▮▮▮. Ex. I at 3-4. CMT provided Apex with some documentation of its advertising activities. CMT also pointed out that Apex seemed to be relying implicitly on Rule 33(d) and the contents of APEX00003387 for its response to Interrogatory 6. For those reasons, CMT demanded that Apex update its interrogatory responses under Rule 26(e). Ex. I at 3-4.

Over two weeks later, Apex "reviewed [CMT's] questions regarding APEX00003387 and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. I

---

[3] In late 2023, a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. F at 31-32. While ▮▮▮▮▮▮ (Ex. F at 30-31), it is unclear whether they were ever produced to CMT.

at 1-2. Apex maintained that APEX00003387 was ▮▮▮▮▮ Ex. I at 1-2. Apex also informally supplemented its response to Interrogatory No. 6, confirming that it was invoking Rule 33(d) and relying exclusively on the contents of APEX00003387. Ex. I at 1-2. With the clarification about Rule 33(d), CMT requested the source materials used to prepare the document. Ex. J.

During a subsequent videoconference, CMT asked Apex how it could have conducted the substantial marketing and advertising activities that CMT demonstrated were conducted in 2023 ▮▮▮▮▮▮▮▮▮▮. Apex declined to provide any further clarity, and refused to update APEX00003387 or provide any underlying data. CMT informed Apex that it would seek relief from the Court.

### III. Argument

#### A. Apex Has A Duty to Supplement Its Discovery Responses

Under Rule 26(e)(1), a party must supplement an interrogatory response "in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). "The duty to supplement continues beyond the close of discovery." *Covil Corp. v. United States Fid. & Guar. Co.*, 544 F. Supp. 3d 588, 595 (M.D.N.C. 2021); *see also S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 594 (4th Cir. 2003) (upholding Rule 37(c)(1) sanctions for a discovery violation revealed "for the first time" during trial); *Morgan v. Tincher*, 2024 WL 3898106, at *5 (S.D.W. Va. Aug. 21, 2024) (awarding Rule 37(c)(1) sanctions for a discovery violation that "initially came up in the middle of trial"). Apex generally recognizes that its "obligation[] to supplement . . . discovery" continues beyond the close of discovery. *See* Ex. I at 1-2.

If a party fails to supplement as required, the court may impose "appropriate sanctions" (Fed. R. Civ. P. 37(c)(1)(C)), including "order[ing] payment of the reasonable expenses, including attorney's fees," "inform[ing] the jury of the party's failure," "directing that . . . designated facts

– 5 –
Case 3:24-cv-00137-RJC-DCK    Document 203    Filed 05/28/25    Page 5 of 15

be taken as established," "prohibiting the disobedient party from supporting or opposing designated claims or defenses" (Fed. R. Civ. P. 37(b)(2)(A)(i)–(ii), 37(c)(1)(A)–(C)). *Bailey v. Christian Broad. Network*, 483 F. App'x 808, 810-11 (4th Cir. 2012). The non-moving party has the burden of showing that its failure to comply with Rule 26(e) was harmless or substantially justified, and the district court has "broad discretion" in determining whether the non-moving party has met that burden. *Id.*

Apex has failed to meet its obligation. Despite overwhelming evidence of significant 2023 marketing activity, Apex has continued to maintain that its advertising spend for the year ███

### B. Apex Exhibited the Accused Products at Numerous Trade Shows in 2023

Apex was an exhibitor at ███ U.S. trade shows in 2023 (*see* Ex. F at 4) and even confirmed that ███████████████████ (Ex. C 237:21-239:20). In fact, Apex's Vice President of the Crescent brand in 2023 (Ex. D 9:12-11:12) testified that ███

███████████████████████████

███ (Ex. D 284:9-285:6). Apex attended, for instance, the 2023 STAFDA convention and trade show, where it exhibited saw blades. Ex A. Apex also exhibited its saw blades at the 2023 Orgill Spring Market and the 2023 Spring Ace Hardware show, as other examples. Ex. B at 45, 46. Trade shows are expensive undertakings. The costs associated with them include booth space rental and team registration fees, booth design and construction, travel and lodging, shipping, marketing collateral, technology and audio-visual services, and show services, among other possible expenses. Apex's failure to account for these costs in its interrogatory response renders the response incorrect and incomplete.

### C. Apex Formed and Deployed a 25-Person "IMPACT" Marketing Team to Promote the Accused Products in 2023

In February 2023, Crescent Tools announced the launch of its "IMPACT team." Ex. B

at 79-80. The team consisted of twenty-five "job site tool specialists" for the purpose of "covert[ing] end users and bring[ing] awareness to the Crescent brand and its full line-up of professional tools," including "trade favorites such as the NailSlicer Framing Saw Blade." Ex. B at 79-80. Apex undoubtedly incurred substantial costs for ████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████ Ex. D 148:6-149:21 (Q: ████████████████████

████████████████████████████████ A: ████████████ Apex ████████

████████████████████████. Ex. D 180:5-185:14. And, because the IMPACT team performs "in-store and customer demonstrations" in "4 states in the southeastern [U.S.]" (Ex. B at 79-80), Apex likely incurred significant salary and lodging expenses, in operating a traveling team of tool specialists bringing awareness to Apex's saw blades. Apex also had "plans for further team expansion in the future." Ex. B at 79-80. These expenditures should have been disclosed in response to Interrogatory No. 6.

    **D.**     **Apex Heavily Advertised Through Social Media Platforms, Its Website, Product Catalogs, and an Email Campaign**

Apex admits that it markets or advertises the Accused Products on its website and through Facebook, Instagram, YouTube, X, and TikTok. *See* Part II, *supra*. For example, throughout 2023, Apex produced over two dozen video- or photo-based advertisements featuring saw blades, which it posted across various Crescent Tools social-media accounts. *See e.g.*, Ex. B at 1-4, 10-40, 43, 68-76, 92-101. A few are reproduced below. Expenses for this social-media advertising would include video/photo production costs (scripting, filming, editing, etc.), creative services (copyrighting, graphic design, etc.), social media management (publishing, monitoring, analyzing, etc., posts and other community management activities), licensing fees (music, trademarks, etc.), and influencer fees (see below), among other possible expenses. Those expenses would be

- 7 -

incurred, of course, whether the work was done in-house or outsourced to a third party.

  

Ex. B at 10 (image cropped).    Dkt. 150-9 at 16 (image cropped).    Ex. B at 98 (image cropped).

One third party that Apex is known to have employed is the digital marketing agency Ringofire. In April 2023, Ringofire posted to its own social media account a behind-the-scenes video of a photoshoot of Apex products, including the Accused Products. *See* Ex. B at 84. Still images from that Ringofire video are reproduced below. In years past, Apex paid Ringofire ███████████████████████████████████████████████████████████████████  Ex. F at 1-2. Apex likely incurred similar or even higher costs in 2023.

 

Ex. B at 87 (image cropped).    Ex. B at 84 (image cropped).

In addition, Apex ███████████████████████ influencers, who advertised Crescent blades on their own social media accounts throughout 2023. *See e.g.*, Ex. B 41-42, 77-78, 81-83, 85. ███████████████████████████████████████████████████████ with at least three regularly promoting the Accused Products through posted demonstrations. Ex. F at 57.



Ex. B at 42 (image cropped).    Ex. B at 80 (image cropped).    Ex. B at 85 (image cropped).

Beyond social media, Apex also advertised the Accused Products on its website in 2023 (Ex. B at 61-65) and conducted at least one email campaign specifically promoting and distributing free NailSlicer blades (Ex. G at 1-9). Expenses for advertising through websites and emails would include video/photo production costs, creative services and licensing fees, as above, as well as platform expenses (email marketing services, web hosting services, etc.), data management expenses (acquiring and maintaining contact lists, etc.), and campaign management expenses (testing and analyzing emails, etc.), among other possible expenses. Moreover, before mid-February 2024, Apex published a full 350-page product catalog featuring its Accused Products. Dkt. 150-11. At some point in 2024, Apex published a second catalog of just power-tool accessories, including saw blades. Ex. B at 55-60. Expenses for digital and/or physical catalogs would include project management, design, editing, photography and graphics, printing (for physical catalogs), digital hosting (for digital catalogs), and distribution (for physical catalogs). Given the size of the undertaking, it is very likely that at least some of the costs for the catalogs were incurred in 2023.

Catalog page                           Email excerpt

                   

Dkt. 150-11 at 4.                      Ex. G at 8 (image cropped).

E.  **Apex's Marketing Spend Does Not Include ▮▮▮▮ Expenses**

Apex's claim that its marketing spend ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as a marketing expense. This is particularly notable for 2023 given that Crescent launched its "IMPACT team" in February that year. Ex. B at 79-80. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The cost to Apex of employing the persons in ▮▮▮▮▮▮ (estimated below) results in several hundred thousand dollars in additional costs:

|  | ▮ | ▮ | ▮ |
|---|---|---|---|
| ▮▮▮▮ |  |  |  |
| Estimated cost per employee[5] | 138,960 | 138,960 | 138,960 |
| ▮▮▮▮ | ▮ | ▮ | ▮ |

---

[4] There is another good reason to question the accuracy of Apex's 2021 and 2022 marketing spend numbers. One of Apex's executives testified under oath that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. D 319:7-17 (emphasis added). Contrary to that testimony, Apex represented that ▮▮▮▮

[5] This estimate is for full-time employees. In "[g]oods-producing industries," the average cost to employ white-collar personnel, including wages, salaries, and benefits, is $69.48 per hour or more. *See* Ex. K (U.S. Bureau of Labor Statistics, *Table 4. Private Industry Workers by Occupational and Industry Group* (last visited May 12, 2025)).

### F. Apex's Marketing Spend in 2023 Could Not Have Been ▮

Apex's marketing spend is a critical issue in this case; it flows through directly to one of CMT's damages calculations. CMT's branding and marketing expert has opined that Apex's marketing spend directly informs CMT's remedial advertising damages. Dkt. 151-5 at Figs. 17-18. Apex's erroneous data distort the analysis. If Apex had provided complete and accurate data, the resulting range of damages would be significantly higher than those currently on record. Factoring in the missing ▮ costs and the missing ▮ costs results in the following expenditures for ▮:



In all likelihood, Apex's actual advertising spend on saw blades exceeds even these adjusted figures. There is no question that Apex marketed its Accused Products throughout 2023, and further continued to do so throughout 2024.[6]

As demonstrated above, Apex's documents and other readily available public documents confirm that Apex engaged in advertising, promotional, and marketing activities in 2023 for the Accused Products. Needless to say, Apex necessarily incurred costs for each of those activities, contradicting its representation that it ▮ marketing saw blades ▮. There is no reason to believe that Apex spent any less on marketing ▮, especially given Apex's expectation that ▮. In particular, Apex expected that ▮

---

[6] From public documents alone, it is clear that Apex has continued to market the Accused Products at least through trade shows, influencer partnerships, and social media advertisements. Ex. B at 5-9, 47-48.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Ex. F at 13. And Apex planned ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓. *E.g.*, Ex. F at 15 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ 33-55 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ 54 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

There is no plausible case to make that Apex's response to Interrogatory 6 is accurate or that it does not need to be corrected. There is also no plausible case that Apex's response to Interrogatory 6 is complete without having produced the data underlying APEX00003387. *See* Fed. R. Evid. 1006(b). Apex has refused to supplement its response to Interrogatory 6, so sanctions are in order.

## IV. Conclusion

For the foregoing reasons, CMT respectfully requests that the Court (i) order that, for purposes of this case, it is established that Apex's advertising expenditures for saw blades was ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; (ii) award CMT its expenses incurred investigating this matter and bringing this motion, including attorney's fees; and (iii) inform the jury that the Court found that Apex wrongly underreported its marketing and advertising expenses to CMT and, as a consequence, the Court had to correct those expense figures.

Dated: May 21, 2025

Respectfully submitted,

/s/ Joshua B. Durham
Ward Davis (NC Bar ID 27546)
Joshua B. Durham (NC Bar ID 25414)
**BELL, DAVIS & PITT**
227 W. Trade Street, Suite 1800
Charlotte, NC 28202
(704) 227-0400
ward.davis@belldavispitt.com
jdurham@belldavispitt.com

/s/ Robert E. Colletti
Edgar H. Haug (*pro hac vice*)

Robert E. Colletti (*pro hac vice*)
Mark Basanta (*pro hac vice*)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
ehaug@haugpartners.com
rcolletti@haugpartners.com
mbasanta@haugpartners.com

*Attorneys for Plaintiffs*
*CMT USA, Inc. and CMT Utensili S.p.A.*

# CERTIFICATE OF USE OF ARTIFICIAL INTELLIGENCE

Pursuant to this Court's order of June 13, 2024 regarding the use of artificial intelligence in court filings, Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A., through their undersigned counsel, hereby certify:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Signed this 21st of May, 2025 in New York, NY.


/s/ Robert E. Colletti
Robert E. Colletti (*pro hac vice*)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
rcolletti@haugpartners.com

*Attorney for Plaintiffs CMT USA, Inc.*
*and CMT Utensili S.p.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF System. Service of same on any counsel of record will be accomplished through the Court's electronic filing system in accordance with Federal Rule of Civil Procedure 5(b)(2)(E).

/s/ Joshua B. Durham
Joshua B. Durham (NC Bar ID 25414)
**BELL, DAVIS & PITT**
227 W. Trade St., Suite 1800
Charlotte, NC 28202
(704) 227-0400
jdurham@belldavispitt.com