| | |
|---|---|
| CMT USA, Inc. and CMT Utensili S.p.A.,<br><br>Plaintiffs,<br><br>v.<br><br>Apex Tool Group LLC and Apex Brands, Inc.,<br><br>Defendants. | **DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO DESIGNATE A SUBSTITUTE EXPERT** |

Pursuant to Local Rule 7.1, Defendants Apex Tool Group LLC and Apex Brands, Inc. (collectively, "Apex" or "Defendants") hereby provide this Memorandum in support of its Motion for Leave to Designate a Substitute Expert (the "Motion").

Defendants bring this Motion under Federal Rule of Civil Procedure 37(c) to move this Court for an Order granting Defendants leave to disclose a new color expert due to the recent and sudden death of Defendants' color expert, Professor Steven Bleicher. Additionally, Defendants request the Court set a new schedule for the disclosure of the substitute expert, which Defendants propose as: 14 days from the issuance of the Court's order to find, retain, and identify the substitute expert; 28 days for the substitute expert to review all relevant documents and issue their report; 21 days for Plaintiffs' expert to issue a rebuttal report; and 28 days for the parties to take any additional expert depositions necessary.

Under the *Southern States* factors, there is more than sufficient justification to grant Defendants' request: both parties were surprised to hear about Professor Bleicher's passing and Defendants quickly passed the information to opposing counsel. Additionally, the current trial date is still months away, there is no district judge currently assigned to this case, Defendants have filed a motion to continue and/or stay the trial date, and expert testimony about the relevant colors, which

was to be provided by Professor Bleicher at trial, is important to Defendants' defenses and rebutting the testimony of Plaintiffs' own color expert. Finally, Defendants have also agreed that the substitute expert's report and opinions would be limited to the same topics as Professor Bleicher's report.

Weighing these factors supports a grant of substitution, and an allotment of time to find and disclose a new color expert, and then for the parties to conduct the relevant discovery surrounding the substitute expert's opinions.

While Defendants tried obtaining Plaintiffs' consent for the substitution through multiple rounds of proposals and a meet and confer videoconference, Plaintiffs have continued to refuse their consent. Therefore, Defendants have filed the Motion and this supporting Memorandum.

## I. BACKGROUND

This case focuses on the claims from Plaintiffs CMT USA, Inc., and CMT Utensili S.p.A.'s ("Plaintiffs") that their alleged trademark rights in a trade dress that consists in part of the color orange as applied to circular saw blades (the "CMT Orange Trade Dress") was allegedly infringed by Defendants' use of a white/black/Rawhide trade dress (the "Crescent Trade Dress") on their saw blades. Dkt. No. 37 ¶ 1. Defendants obtained a color expert, Professor Steven Bleicher, to review and provide his analysis of Plaintiffs' choice and use of color for their products, as well as the large number of third party circular saw blades that use orange on their trade dress. Declaration of Aaron Johnson ("Johnson Decl."), ¶ 3.

Defendants disclosed Professor Bleicher and his initial report in a timely manner, on November 22, 2024, and timely served his rebuttal report on December 20, 2024 (collectively, the "Bleicher Reports"). *Id.*, ¶ 4. Professor Bleicher was timely deposed by Plaintiffs on February 28, 2025. *Id.* Defendants moved for partial summary judgment on April 2, 2025, relying in part on Professor Bleicher's reports and testimony. *See* Dkt. No. 158 (filed under seal).

On Friday, April 25, 2025, Defendants were informed by the organization that handled

payment for Professor Bleicher that he had unexpectedly passed away. *Id.*, ¶ 5. Defendants' counsel spent the next few business days confirming his death with his employer. *Id.* On May 5, 2025, counsel for Defendants informed Plaintiffs' counsel of Professor Bleicher's death, and let them know that Defendants were "discussing options for how to replace his testimony." *Id.*, ¶ 6. The following week, Defendants' counsel informed Plaintiffs' counsel that they "plan[ned] to replace his testimony by designating an alternative color expert." *Id.* After some back-and-forth, the parties agreed to meet and confer on the issues surrounding Professor Bleicher's death on May 22, 2025. *Id.*

During the May 22 meet and confer videoconference, Plaintiffs' counsel said that they needed more time to decide whether they would consent to a motion for the designation of an alternative color expert. *Id.*, ¶ 7. After the call, both parties sent confirming emails summarizing the points discussed on the call, with Defendants reiterating that the substitute expert for Professor Bleicher (1) will be a color expert, just like Professor Bleicher; (2) will cover the same general topics as Professor Bleicher's report; (3) will not comment on legal theories; and (4) will be made available for depositions after the initial report and rebuttal report. *Id.* at ¶ 8.

Plaintiffs' counsel sent an email on May 27, 2025, refusing to consent to Defendant's substitution proposal. *Id* at ¶ 9. In their email, Plaintiffs said they would only consent to a "one-for-one" replacement of Professor Bleicher, without providing any definition of what that would mean. *Id.* Defendants responded on May 28, 2025 with a compromise proposal that attempted to ensure no new theories or gamesmanship would be involved in the replacement expert for Professor Bleicher. *Id.*, ¶ 10. While pointing out the limited number of color experts with legal consulting experience, and the need for a testifying expert to provide testimony based on personal knowledge and experience, in the spirit of compromise Defendants proposed requiring the replacement color expert's report and testimony to be restricted to the five topics in the Bleicher Reports. *Id.* These restrictions would be beyond those previously instituted by the Fourth Circuit for the substitution of an expert due to an

DEFENDANTS' MEMO ISO
MOTION FOR LEAVE
3:24-CV-00137-RJC-DCK

expert's death. *Id.*

Despite these efforts by Defendants to reach a compromise, on May 29, 2025 Plaintiffs' counsel sent an email stating that they refused to consent to Defendants' proposal. *Id.*, ¶ 11. Therefore, due to the need to timely move forward with the designation of a substitute color expert, Defendants filed this motion requesting leave of the Court to designate a substitute color expert.

## II. ARGUMENT

### a. Standard for Designation of a Substitute Expert

Motions to designate a substitute expert witnesses after the disclosure and report deadlines have passed are typically handled under the late disclosure analysis of Federal Rule of Civil Procedure 37(c)(1), which states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 (4th Cir. 2003).

The Fourth Circuit applies a five-factor test to determine whether a late disclosure, such as a motion to substitute an alternative expert upon an expert's death, is permissible under Rule 37. *Id.* at 597. The Fourth Circuit has held that when determining whether an expert opinion should be allowed to be designated after the expert disclosure deadline, a court "should be guided by" the following factors: "(1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony." *Id.* Importantly, "[d]eath of an expert witness falls squarely within the category of circumstances that substantially justifies replacement, where the only question regarding justification is whether the party waited too long to notify the court of the need for a new expert." *Haney v.*

*Kavoukjian*, 2022 WL 1439041 at *4 (D.S.C. May 5, 2022).

When applying this five-factor test to a request to designate a substitute expert after the initial expert's death, the Eastern District of Virginia held that the request should be **granted** because (1) the surprise was equal to both parties; (2) any surprise was minimal because due to a stay of the deadlines there was no current trial date set; (3) there was no disruption to the trial because no trial date was set; (4) the failure to designate earlier was "not seriously contested" since the cause was an unexpected death; and (5) the testimony of the substituted expert was important since it was intended to rebut the testimony of the opposing party's expert. *Johnson v. Air & Liquid Sys., Corp.,* 2020 WL 13605308, at *2 (E.D. Va. Mar. 27, 2020). As a result, the court granted the motion for leave to designate a substitute expert and gave the parties 90 days from the date of the order for the expert to be designated, the expert report and rebuttal reports to be served, and any depositions be taken. *Id.* at *3.

Here, in circumstances substantially similar to *Johnson*, the five factors also support granting Defendants' motion for leave to designate a substitute expert. The surprise was unforeseeable to both parties; the surprise can be cured through rebuttal reports and deposition of the substitute expert; the substitute expert is important to rebut Plaintiffs' expert; and because there is no district court judge assigned and there are seven pending motions that will affect pre-trial preparations, it is unlikely the case will move forward with the current trial date. Indeed, Defendants have already filed a motion to continue and/or stay the trial date until a new District Judge is appointed and issues a ruling on the parties' summary judgment motions. *See* Dkt. 212.

b.   **Factor 1: Both Parties were Surprised by Professor Bleicher's Passing.**

The first factor weighs in favor of granting leave to designate a substitute expert because all parties were surprised by Professor Bleicher's sudden death. *See Johnson*, 2020 WL 13605308 at *2 ("[T]he surprise to [the Defendants] is significant, although certainly not any more so than the surprise to Plaintiffs."). This is not an instance where Defendants knew of Professor Bleicher's death and sat

on the information to gain some sort of advantage; similarly, it is not a situation where Defendants are attempting to "game the system" by getting a second bite at the apple with a new expert. Defendants simply did not know Professor Bleicher would suddenly become unavailable: he never mentioned any life-threatening health problems, and he lived independently and taught multiple classes at Coastal Carolina University. A social media post from his friends indicates that his passing was "unexpected[]" for them as well. Johnson Decl., ¶ 12. Additionally, Defendants did not delay in informing Plaintiffs of the unfortunate news, so the surprise was shared quickly and actually originated with Defendants. Consequently, this factor weighs in favor of substitution as both parties were surprised and Defendants did not hide the information to gain any advantage in this litigation but immediately consulted with opposing counsel.

c.      **Factor 2: Any Surprise can be Cured Through Standard Expert Discovery.**

The second factor weighs in favor of granting leave to designate a substitute expert because any surprise can be cured through standard expert discovery—namely, serving reports and taking the substitute expert's deposition. Defendants did their best to cure the surprise by immediately reaching out to opposing counsel to plan next steps. "Death of an expert witness falls squarely within the category of circumstances that require a late disclosure," especially in cases like this one in which the death was unexpected. *Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17, 20 (D.P.R. 2009). Defendants' request to substitute is not due to negligence or unreasonable delay on the part of Defendants' counsel. The parties have complied with all of the expert disclosure deadlines set by this Court, and it is only because of Professor Bleicher's unexpected death that Defendants are now in the position of having to seek leave to designate a substitute expert.

Defendants have attempted to further limit any surprise by agreeing that any substitute expert would be a color expert, just as Professor Bleicher was, and that the substitute would testify on the same limited number of topics covered by the Bleicher Reports. Defendants' goal is to maintain the

status quo, as if Professor Bleicher were able to testify at trial—not posture for some new advantage. Even though finding an expert in such a niche field as color limits Defendants' options, they intend to find a substitute that can replicate Professor Bleicher's expertise to the greatest extent possible. Defendants are not using this unfortunate scenario to obtain any "windfall advantage." *Fid. Nat'l Fin., Inc. v. Nat'l Union Fire Ins. Co.*, 308 F.R.D. 649, 655 (S.D. Cal. 2015). In *Fid. Nat'l*, the substitution of an expert was refused when the proffering party waited 10 months, and a decision on summary judgment motions, to inform the opposing party and the court of the expert's medical unavailability, although the court noted that if the party had "timely notified" the court, it "likely would have granted" the motion. *Id*. at 654.

Plaintiffs would not be prejudiced in deposing or responding to a substitute expert here because the new expert will only provide opinions on the same limited number of topics as provided by Professor Bleicher. Plaintiffs' experts have already responded to those opinions, and if the substitute expert offers substantially different opinions, which Plaintiffs apparently fear, Plaintiffs could challenge the opinions at that time. *Johnson*, 2020 WL 13605308, at *2. In other words, there are safeguards to prevent Plaintiffs' concerns from materializing, and "[a]t this juncture . . . such fear is merely speculative, and remedies are available should [Plaintiffs'] fears come to fruition." *Id*.

Moreover, any remaining surprise can be cured through the standard expert discovery process. Trial is still months away (with a potential for it to be moved), and with no assigned district court judge and a number of pending motions, there is sufficient time for the new expert to issue a report, have Plaintiffs' expert issue a rebuttal report, and then take the substitute expert's deposition. This discovery process would remove any and all effect of any potential surprise, and therefore this factor weighs in favor of substitution.

### d. Factor 3: Designation of a Substitute Expert Would Not Disrupt Trial.

The third factor weighs in favor of granting leave because, while trial is currently set for

September 2025, there is no district court judge assigned to the case, and there are seven pending motions (five fully-briefed and two more in the process of being briefed) that are likely to affect pre-trial preparations. In *Johnson*, the court granted leave for substitution of expert witness when the original witness had died and summary judgement motions had not yet been ruled on, citing judicial economy and efficiency as a reason to allow substitution of expert while dispositive motions remained pending. *See Johnson*, 2020 WL 13605308 at *2 (holding that denying the request to substitute experts before a summary judgment ruling "would only further delay proceedings in this case," and by granting the motion beforehand, a new expert may be "secured and report provided before the dispositive motions are resolved," thus using time efficiently to prepare for the outcome, whatever it would be). Because the trial date is likely to be moved, and should be continued to allow the court time to designate a judge and rule on the pending motions, allowing substitution of an expert in this instance will not disrupt this trial. Therefore, this factor weighs in favor of substitution.

    e.    **Factor 4: Defendants' Need for the Substitute Expert is Only Because of the Unexpected Death of their Timely-Disclosed Expert.**

The fourth factor weighs in favor of granting leave because the need for the substitute expert is only due to the unexpected death of Defendants' initial color expert. There can be no dispute that Professor Bleicher's initial report, rebuttal report, and deposition testimony were timely. It is only because of his death that Defendants now seek leave to designate a substitute expert. Therefore, just as in *Johnson*, the explanation for Defendants' failure to name a substitute expert before trial is not seriously contested in light of Professor Bleicher's death before trial. This factor weighs in favor of substitution.

    f.    **Factor 5: Color Testimony is Important to Defendants' Defenses.**

Finally, the fifth factor also weighs in favor of granting leave because the testimony of a color expert is crucial to Defendants' ability to rebut Plaintiffs' claims and the testimony of Plaintiffs' own

color expert. The trade dress that is alleged to be infringed in this case consists of a single color as applied to circular saw blades, among other elements. Defendants have alleged both that the asserted trade dress is generic and that there is no likelihood of confusion in part based on the large number of third party saw blades that use similar colors, and the large differences in color between Plaintiffs' saw blades and Defendants' saw blades. *See, generally,* Dkt. No. 158 at 9-27 (filed under seal). As a result, color testimony is important to this case. In *Haney,* the Court granted the motion for leave to designate a substitute expert witness in part because they found that the expert was "a critical expert witness." *Haney,* 22 WL 1439041 at *2. Because of the importance of Professor Bleicher's testimony, just as in *Haney*, this factor likewise favors granting leave to substitute.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion, and provide a schedule for Defendants to find and disclose a competent substitute color expert, have the expert serve a report, have Plaintiffs' experts provide a rebuttal report, if necessary, and conduct depositions, if necessary.

DATED:  May 30, 2025                          WOMBLE BOND DICKINSON (US) LLP


By: */s/Aaron D. Johnson*
Michael McCue
Aaron D. Johnson
David A. Jackson
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Ste. 2750
San Francisco, CA 94111
(415) 433-1900
Michael.McCue@wbd-us.com
Aaron.Johnson@wbd-us.com
David.Jackson@wbd-us.com


SNEED PLLC
Jason M. Sneed (NC Bar No. 29593)

DEFENDANTS' MEMO ISO
MOTION FOR LEAVE
3:24-CV-00137-RJC-DCK

Megan Sneed (NC Bar No. 38525)
JSneed@SneedLegal.com
MSneed@SneedLegal.com
Litigation@SneedLegal.com

45 South Main Street, Suite 400
Davidson, NC  28036
Tel:  844-763-3347

*Attorneys for Defendants*

DEFENDANTS' MEMO ISO
MOTION FOR LEAVE
3:24-CV-00137-RJC-DCK

## <u>CERTIFICATE OF USE OF ARTIFICIAL INTELLIGENCE</u>

Pursuant to this Court's order of June 13, 2024 regarding the use of artificial intelligence in court filings, Defendants Apex Tool Group LLC and Apex Brands, Inc. hereby certify:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexus, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Signed May 30, 2025.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Aaron D. Johnson
Jason M. Sneed (NC Bar ID 29593)
Megan E. Sneed (NC Bar ID 38525)
SNEED PLLC
445 S. Main St., Suite 400
Davidson, North Carolina 28036
JSneed@sneedlegal.com
MSneed@sneedlegal.com

Michael J. McCue
Aaron D. Johnson
David A. Jackson
Joy Tacy Allen Woller
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2750
San Francisco, California 94111
Michael.McCue@wbd-us.com
Aaron.Johnson@wbd-us.com
David.Jackson@wbd-us.com
Joy.Woller@wbd-us.com

*Attorneys for Defendants/Counter-Plaintiffs*
*Apex Tool Group LLC and Apex Brands, Inc*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on this 30th day of May 2025, the foregoing DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO DESIGNATE A SUBSTITUTE EXPERT was served via electronic means through CM/ECF on the following counsel of record:

> Ward Davis (NC Bar ID 27546)
> Joshua B. Durham (NC Bar ID 25414)
> BELL, DAVIS & PITT
> 227 W. Trade St., Suite 1800
> Charlotte, NC 28202
> (704) 227-0400
> ward.davis@belldavispitt.com
> jdurham@belldavispitt.com
>
> Edgar H. Haug (*pro hac vice*)
> Robert E. Colletti (*pro hac vice*)
> Mark Basanta (*pro hac vice)*
> HAUG PARTNERS LLP
> 745 Fifth Avenue
> New York, NY 10151
> (212) 588-0800
> ehaug@haugpartners.com
> rcolletti@haugpartners.com
> mbasanta@haugpartners.com
>
> *Attorneys for Plaintiffs CMT USA, Inc.*
> *and CMT Untensili S.p.A.*

/s/  Aaron D. Johnson