UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:24-cv- 137-TMR-DCK

| | |
|---|---|
| CMT USA, INC. and CMT UTENSILI S.P.A.,<br><br>Plaintiffs,<br><br>v.<br><br>APEX TOOL GROUP LLC and APEX BRANDS, INC.,<br><br>Defendants. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS** |

Once again, Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A. ("CMT") have submitted a motion that **cites to not a single case that supports granting its requested remedy**. Just as in their motion to exclude the testimony of Professor Franklyn, despite not a single case excluding an expert's testimony due to any of the alleged errors mentioned in the supporting memorandum, here CMT requests an extraordinary remedy—making up out of whole cloth new figures for what Defendants spent on advertising for the accused products because CMT doesn't understand the figures in Defendants' produced documents—without citing a single case that has granted such a remedy on that basis.

But while questioning parties about their produced documents in an important part of the litigation process, the time for asking those questions is during fact discovery, and CMT had ample opportunity to do so: a full day deposition with Defendants' Vice President of Marketing; a full day 30(b)(6) deposition where one of the topics was "[d]efendants' expenditures for each advertising, marketing, distribution, or promotional medium used to advertise, market, distribute, or promote the Accused Blades in U.S. commerce," and over five months between the production of the relevant documents and the end of fact discovery. Just because CMT didn't ask its

questions about the documents then and still doesn't understand those documents, or more likely, doesn't like what they say, does not result in it being able to make up completely fabricated numbers for advertising.

CMT cites to no court that imposed discovery sanctions where an alleged failure to supplement was "shown" through the adverse party disagreeing with a document's numbers or based on inferences and conjecture. CMT cites to no court that has imposed discovery sanctions for an alleged failure to supplement where the moving party had all the relevant documents and information nearly a full year before filing its motion. And CMT cites to no court imposing the drastic sanctions that CMT requests—namely, fabricating the numbers it would prefer to use, as opposed to the actual, reality-based numbers.

Therefore, Defendants Apex Tool Group LLC and Apex Brands, Inc. ("Apex") hereby submit this Opposition to CMT's Motion for Sanctions (the "Motion", Dkt. No. 2 4) and its supporting Memorandum (the "Memorandum," Dkt. No. 205).

## I. INTRODUCTION

CMT moves for sanctions regarding a financial document (the "Advertising Expenditures Document") produced by Apex over a year ago in response to CMT's Interrogatory No. 6 ("Interrogatory 6"). That Advertising Expenditures Document was produced on May 17, 2 24, well before the close of fact discovery, and CMT had ample opportunity to conduct additional discovery, depose witnesses, and submit expert opinions regarding the document and the numbers contained within. CMT even specifically asked two Apex witnesses about the Advertising Expenditures Document during depositions (including the author of the document), but during those depositions never asked specifics about the numbers, never questioned the veracity of the numbers, and never discussed the inferences and allegations underlying this Motion–despite

having the same information and discovery at its disposal that it now asserts in this Motion. Moreover, CMT's own expert witness reviewed Apex's Advertising Expenditures Document and adopted those numbers without question or challenge and authored a report based on those numbers.

Despite having all relevant documents and information available well before the close of fact discovery in November 2024, CMT never moved to compel additional discovery as relates to Interrogatory 6 or the Advertising Expenditures Document. And yet now, over a full year after Apex produced the Advertising Expenditures Document, CMT moves for drastic sanctions for a purported failure to "supplement"—with the alleged failure supported solely by CMT's conjecture and guesses as to how Apex must have funded certain online and sales activity. CMT raises no new or recently revealed information that would contradict or otherwise cast doubt on Apex's response, and indeed, the "evidence" it does raise in the Memorandum was publicly available or produced to CMT by September 2 24. CMT is merely attempting to reopen fact discovery by alleging a discovery dispute that it never raised during discovery, and CMT should not be permitted to do so now.

CMT's Motion is not supported by precedent or fact and should accordingly be denied. And as CMT's motion is entirely baseless, Apex should be awarded its reasonable attorneys' fees and costs incurred in responding to the Motion.

## II. BACKGROUND

This case is about whether Apex's use of a trade dress consisting of white, black, and a red-orange "Rawhide" color on circular saw blades (the "Crescent Trade Dress") infringes CMT's alleged rights in an all-orange trade dress on circular saw blades (the "CMT Orange Trade Dress"), where the parties' use of color is not identical, the trade dresses contain significant

differences, and there are many third-party uses of orange on saw blades. *See* Dkt. 164 (Apex's Memorandum in support of Motion for Summary Judgment).

The Motion at hand focuses solely on Apex's response to CMT's Interrogatory 6. That interrogatory requested:

> State by month (if available, or, if not, for each separate period reflected in Defendants' records) Defendants' expenditures for each advertising or promotional medium used to promote the Accused Blades.

**Exhibit 1**, Declaration of Aaron D. Johnson (the "Johnson Decl."), ¶ 3 and Exhibit A.

In January 2 24, Apex responded to Interrogatory No. 6 as follows:

> Apex maintains records reflecting its advertising expenditures for its CRESCENT® brand saw blades. However, Apex sells a number of different saw blades that are used for purposes other than cutting wood, and its records are not necessarily broken down in a manner that would isolate saw blades that would fall within CMT's definition of "Accused Blades." Nonetheless, Apex will produce records reflecting advertising expenditures for its CRESCENT® brand saw blades, which encompass (but are not necessarily limited to) circular blades for power saws for cutting wood.

Johnson Decl., ¶ 4 and Exhibit B.

While the production of documents was delayed due to the parties' negotiation over a protective order, on May 17, 2 24, consistent with its written interrogatory response that it would produce records reflecting advertising expenditures for its CRESCENT brand saw blades and pursuant to Rule 33(d), Apex produced the Advertising Expenditures Document. *Id.*, ¶ 5 and Exhibit C. The Advertising Expenditures Document, prepared as a business summary by Mr. Curtis Weber, Apex's Vice President of Marketing for the CRESCENT brand at that time, contains among other items the advertising expenses incurred in 2 21, 2 22, and 2 23 for CRESCENT-brand saw blades. *Id.* (showing [redacted] for 2 21, [redacted] for 2022, and [redacted] for 2 23). Also on May 17, 2 24, Apex produced the documents cited in CMT's Motion showing Apex's attendance at trade shows in 2023 (APEX 36 2); Apex's use of email campaigns in

2 23 (APEX0 3263-3265; APEX 0003268); and Apex's pre-2 23 influencer campaigns through third-party advertising firm Ringo Fire (APEX0 2115-2116). *Id.*, ¶ 6 and Exhibit D.

For the rest of fact discovery (which ended 5 months and 15 days later on November 1, 2 24), CMT did not object to Apex's response to Interrogatory 6 or its production of the Advertising Expenditures Document, and CMT filed no motions relating to Interrogatory 6 or the Advertising Expenditures Document. *Id.*, ¶ 7.

On August 9, 2 24, CMT took the deposition of Mr. Curtis Weber, Vice President of Marketing for Apex's CRESCENT brand from August 2021 through May 2024. *Id.*, ¶ 8. During that deposition, CMT directly questioned Mr. Weber about the Advertising Expenditures Document. *Id.*, ¶ 9 and Exhibit E. During that questioning, Mr. Weber confirmed that he created the document, confirmed who asked him to create the document, and confirmed that the document related to "saw blade sales." *Id.* CMT asked a single question to confirm the Advertising Expenditures Document indicated a [redacted] spend in 2 21 but never asked any other questions about the document, including the [redacted] spent in 2 23. *Id.* CMT did not ask Mr. Weber any other questions regarding advertising expenses. *Id.*, ¶ 10. CMT did not ask Mr. Weber any questions regarding expenses for email marketing, influencers, social media marketing, or trade shows. *Id.*

On September 24, 2 24, CMT took the 3 (b)(6) deposition of Apex, who was represented by Brendan Walsh. *Id,* ¶ 11. One of the topics on which Mr. Walsh was prepared was "Defendants' expenditures for each advertising, marketing, distribution, or promotional medium used to advertise, market, distribute, or promote the Accused Blades in U.S. commerce." *Id.* During that deposition, CMT did not ask about the Advertising Expenditures Document. *Id.*

During that deposition, CMT did not ask about specific numbers for advertising expenses, nor expenses for email marketing, influencers, social media marketing, or trade shows. *Id.*

On November 1, 2 24, fact discovery closed. *Id.*, ¶ 12.

On November 22, 2024, CMT served the expert report of Dr. Russell Winer ("Winer Report") in which Dr. Winer proposed using Apex's provided advertising expenditures as a proxy for CMT's alleged remedial advertising damages. *Id.*, ¶ 13. Dr. Winer adopted Apex's provided advertising expenditures without dispute and without critique. *Id.* Because the provided advertising expenditures included saw blade products that CMT does not allege are infringing, Dr. Winer utilized Apex's saw blades sales data "to determine the percentage of Accused Products to total saw blades;" Dr. Winer "then apportioned the saw blade marketing spending to estimate the total marketing spend on the Accused Products." *Id.* Based on the adopted figures ([redacted] in 2 21; [redacted] in 2 22; [redacted]n 2023), Dr. Winer found that Apex's total marketing spend on woodworking circular saw blades as [redacted] in 2021, [redacted] in 2 22, and [redacted] in 2 23. *Id.*

On February 26, 2025, over three months after the close of fact discovery and over nine months after the relevant documents were produced, CMT sent an email to Apex's counsel that raised, for the first time, its questions about Apex's [redacted] in advertising expenditures for 2 23. *Id.* ¶ 14 and Exhibit F. In response to that email, Apex committed to supplementing the advertising expenditures information for the 2 24 year at the same time as CMT supplemented its financial information for 2 24, and confirmed that the Advertising Expenditures Document was correct. *Id.*, ¶ 15.

On March 17, 2025, CMT's counsel sent a letter to Apex's counsel that requested a conference to discuss dropping claims ahead of the summary judgment deadline and that Apex "correct" the Advertising Expenditures Document and provide "the underlying source materials."

*Id.*, ¶ 16 and Exhibit G. There was no mention in the letter of a request for sanctions, or that CMT would seek to create its own advertising numbers for Apex. *Id.*

On March 2 , the parties held a conference on the claims in the letter, including both the potential for dropping claims and CMT's request that the Advertising Expenditures Document be changed or additional documents provided. *Id.*, ¶ 17. Apex reiterated that the document did not need to be corrected, and that if CMT had questions about the numbers in the document it should have addressed those questions during the many hours of deposition time it had with Apex's fact witnesses. *Id.* The parties did not discuss any motion for sanctions during the call or anything related to CMT seeking to create its own advertising numbers for Apex. *Id.*

CMT did not further raise its questions about the Advertising Expenditures Document, or the numbers contained within, until two months later on May 21, 2 25, when it reached out to Apex's counsel to seek consent for filing under seal "a discovery motion today related to Apex's response to Interrogatory 6 and APEX 3387." *Id.*, ¶ 18 and Exhibit H. Unclear what motion CMT's counsel was referring to, Apex's counsel responded with "Are you requesting a meet and confer for this motion? Can we discuss the excerpts you are referring to below at that time?" *Id.* CMT refused to meet and confer and filed its motion without Apex's consent.

## III. ARGUMENT

CMT's Motion is no more than an untimely attempt to ask questions about documents it doesn't understand but didn't sufficiently ask about during fact discovery, exclude Apex's actual advertising expenditures, and establish a portion of CMT's alleged damages based solely on its own conjecture and inference. While styled as a motion for sanctions due to a "refusal to supplement," it's actually an untimely motion to compel and should be denied.

The Motion fails on multiple grounds. First, sanctions under Rule 37(c) are not granted when parties have disagreements about timely-produced information. Second, Apex did not violate Rule 26(e) because there is no additional information responsive to CMT's request. Third, CMT cannot show that Apex's alleged failure is not harmless or substantially justified where CMT waited nearly a year to raise a factual dispute with a document produced in May 2 24. Fourth, CMT's requested sanctions are not supported by any empirical evidence, are not supported by the record, and go far beyond any sanctions CMT could be entitled to. And finally, CMT did not properly meet and confer pursuant to Local Rule 7.1(b).

### A. Motions for Sanctions Under Rule 37(c) Are Not Granted because the Moving Party Disagrees with the Contents of a Timely Produced Discovery Response

Sanctions pursuant to Rule 26(e) and Rule 37(c) are used to prohibit a party from offering evidence at trial where the party was required to provide that evidence during discovery and did not. They are not to give a party a "second bite at the apple" to request discovery they didn't request during fact discovery or to "create never ending discovery obligations." *See Downing v. Calton & Assocs., Inc.*, 2 24 WL 4729755, at *4 (W.D. Okla. Nov. 8, 2 24) and *Avalyn Pharma, Inc. v. Vincent*, 2 23 WL 1196 618, at *3 (S.D. Cal. Oct. 2 , 2 23). The only allegation within the Motion is that CMT does not like or believe the numbers on a timely-produced document showing Apex's advertising expenditures for its CRESCENT brand saw blades—that is not a "supplementation" issue, and consequently not an issue to be resolved through sanctions under Rule 37(c).

For example, the Fourth Circuit in *S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.* upheld using Rule 37(b) to exclude an expert opinion that was not disclosed until trial. 318 F.3d 592, 598 (4th Cir. 2 3). Similarly, in *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, the Fourth Circuit excluded testimony relating to damages that were not disclosed until during trial.

284 F.3d 5 5, 512 n.1 (4th Cir. 2 2); *see also* ***Sharkey*** *v.* ***Fortress Sys. Int'l, Inc.***, No. 318CV 19FDWDCK, 2 2 WL 222 188, at *3 (W.D.N.C. May 7, 2 20), aff'd, No. 2 -1533, 2 22 WL 2156 77 (4th Cir. June 15, 2022) (excluding evidence and witness raised "[f]or the first time at trial."). In other circumstances, courts have also used Rule 37(c) to exclude evidence relating to entirely new theories or claims raised for the first time near the end of the discovery period. *See Gomez v.* ***Haystax*** Tech., Inc., 761 F. App'x 22 , 23 (4th Cir. 2 19) (affirming exclusion of evidence showing the existence of an entirely new claim, raised for the first time four days before the close of discovery). In each case, the party at fault entirely failed to produce or disclose evidence in a timely manner, resulting in significant surprise to the moving party that could only be cured through exclusion.

This is not the case here, and consequently CMT does not meet the standard for sanctions under Rule 37(c). There is no dispute that Apex timely produced the Advertising Expenditures Document in response to Interrogatory 6. There is no dispute that CMT had sufficient time to contest Apex's response to Interrogatory 6 and ask Apex's witnesses about the response to Interrogatory 6 during the more than 5 remaining months before the close of fact discovery. And there is no dispute that CMT did not file any motion during fact discovery seeking additional documents or information relating to Interrogatory 6. Instead, CMT simply disagrees with the information found in Apex's Advertising Expenditures Document and seeks sanctions based solely on its own disagreement, relying on conjecture and inference to "prove" its case.

Entirely ignoring the merits of CMT's claims—which are meritless—a motion to compel is the far more appropriate request for CMT's claims, not a motion for sanctions. *See W.C. Eng., Inc. v. Rummel, Klepper & Kahl, LLP*, 2 20 WL 534532, at *12 (W.D. Va. Feb. 3, 202 ) ("Defendants should have challenged this asserted privilege through a motion to compel during

discovery pursuant to Rule 37(a)(1), rather than ask the Court now to impose the more draconian remedy of a discovery sanction pursuant to Rule 37(c)."). CMT did not so move because it would apparently rather have this Court establish its own fictitious advertising expenditures as fact in lieu of pursuing evidence it believes exists. CMT should not be permitted to game the Federal Rules as an end-run around discovery.

Finally, a disagreement about the facts within a discovery response does not equate to a party's failing to supplement its discovery responses. Courts require a clear and obvious failure to supplement before imposing sanctions, and in cases finding sanctions appropriate, courts are presented with unambiguous evidence that the nonmoving party failed to adequately supplement a discovery response. *See, e.g.*, *Covil Corp. by & through Protopapas v. United States Fid. & Guar. Co.*, 544 F. Supp. 3d 588, 597–98 (M.D.N.C. 2 21) (compelling supplementation where both parties acknowledged the responsive document existed); *Morgan v. Tincher*, 9 F.4th 172, 179 (4th Cir. 2 24) (concluding that defendant violated Rule 26(e) where interrogatories and requests for production sought the "disclosure of any lawsuit in which [defendant] was a named party" and defendant failed to provide any information whatsoever about an ongoing, responsive lawsuit). No such evidence exists in this case or is presented within CMT's Motion.

**B. Apex Did Not Violate Rule 26(e)**

Apex fully answered CMT's Interrogatory 6, and there is no additional information responsive to CMT's request. The creator of the Advertising Expenditures Document continues to believe that it is accurate. **Exhibit 2**, Declaration of Curtis Weber ("Weber Decl."), ¶ 7. Therefore, there is nothing to "supplement."

CMT cannot rely on conjecture to "prove" the document is false, and the purely factual dispute on this issue should be presented at trial, not disposed by a Motion for Sanctions that is

wholly unsupported by precedent or actual evidence. In addition, CMT asserts that Interrogatory 6 is relevant because it supports their claim for remedial advertising damages—which CMT is not entitled to as a matter of law.

### 1. Apex Fully Answered Interrogatory 6 and No Supplementation Is Required

Rule 37(c)(1) permits sanctions only where a party "fails to provide information or identify a witness as required by Rule 26(a) or (e)." Apex, asked to provide information on "expenditures for each advertising or promotional medium used to promote the Accused Blades," agreed to provide information "reflecting its advertising expenditures for its CRESCENT® brand saw blades" and did so by producing the Advertising Expenditures Document. The Advertising Expenditures Document provides the amount of Apex's expenditures for its Crescent saw blade advertising expenses in 2 21, 2 22, and 2 23. During his deposition, Apex's then-Vice President of Marketing for the CRESCENT brand confirmed he created the document. Johnson Decl., ¶ 9. And he continues to agree that the document is accurate. Weber Decl., ¶ 7.

CMT does not allege that Apex has failed to provide information in response to Interrogatory 6. Instead, CMT claims that Apex has provided incorrect information that it believes is contradicted by alleged evidence. That purportedly contradictory evidence includes Apex's marketing on its own social media platforms and website, Apex's attendance at trade shows, influencer campaigns, and the number of individuals working on Apex's marketing team. This evidence fails to show any contradiction in Apex's response or position, both because CMT's cited "evidence" does not relate to Interrogatory No. 6 and because even if it did, CMT relies on an invalid conclusion that ignores the reality of the advertising field.

First, CMT pretends as though Interrogatory 6 requested information as to any Apex expenditures that would have put the Crescent brand saw blades in front of consumers. This is

facially untrue. Interrogatory 6 asked for Apex's "expenditures for each advertising or promotional medium used to promote the Accused Blades." Despite being vague and unclear, "expenditures for each advertising or promotional medium" would definitionally not include employee headcounts, posting on Apex's own social media accounts, or third parties running their own promotions. Apex agreed to provide numbers showing its "advertising expenditures for its CRESCENT® brand saw blades" and it did so accurately and timely. While CMT may have hoped that Apex's advertising expenditures were different, that doesn't mean Apex's discovery needs to be <u>supplemented</u>. And it certainly doesn't show any Rule 26(e) discovery violation. CMT had ample opportunity to question Apex's many witnesses about those numbers, but it chose not to. That is not a failure to supplement.

Second, CMT's position entirely relies on its conclusion that advertising and marketing that is seen by consumers in 2 23 necessarily means there are requisite costs in 2 23. This is not a valid inference, and there are a host of justifications and reasons that could explain this purported "contradiction"—for example, paying up front for advertising and promotions that are conducted later or over time is commonplace. Indeed, Apex's pre-2 23 Ringo Fire marketing costs are all lump sum payments. *See* Memorandum at 8.

Importantly, CMT cites to no court that imposed sanctions for a failure to supplement where the parties dispute the facts in contention and there is no facially contradictory evidence that has been made of record.

Accordingly, CMT has not proved that Apex failed to adequately answer Interrogatory 6, much less that subsequent information necessitated a supplemental response. As Apex has not violated Rule 26(e), there is no basis for awarding CMT sanctions under Rule 37(c).

### 2. CMT Is Not Entitled to Apex's Marketing Figures under Rule 26

CMT identifies a single basis for why Interrogatory 6 is relevant: "Apex's advertising expenditures directly contribute to CMT's calculation of remedial advertising damages." This basis fails as CMT is not entitled to remedial advertising damages as a matter of law, and Interrogatory 6 is accordingly irrelevant.[1]

Plaintiffs such as CMT bear a heavy burden in demonstrating a need for an award for remedial advertising damages. First, the plaintiff must "seek that remedy in its complaint." *PBM Prod., LLC v. Mead Johnson & Co.*, No. 3: 9-CV-269, 2 1 WL 957756, at *5 (E.D. Va. Mar. 12, 201 ), *aff'd*, 639 F.3d 111 (4th Cir. 2 11). Second, the plaintiff must have performed "prospective corrective advertising of its own" prior to requesting remedial advertising damages. *Id.* And third, corrective or remedial advertising "is a remedy designed to 'counteract the public confusion' resulting from trademark infringement," and therefore requires "evidence of actual confusion by the public." *Irwin Indus. Tool Co. v. Worthington Cylinders Wisconsin, LLC*, 747 F. Supp. 2d 568, 583 (W.D.N.C. 2010).

CMT's claim for remedial advertising damages fails to meet any of these requisite elements. It is undisputed that CMT did not seek remedial advertising damages in its Complaint. Dkt. 10 at p. 15. There is also no claim that CMT has performed any "prospective corrective advertising of its own." Based on this alone, CMT cannot claim remedial advertising damages. *See PBM Prod., LLC*, 2 10 WL 957756, at *5. And CMT can hardly claim that it required discovery or additional disclosures before it could assert a demand for remedial advertising damages, as CMT directly admitted its knowledge that Apex advertises and markets its Crescent

[1] In answering CMT's interrogatories, Apex "reserve[d] all objections as to relevance and materiality." Johnson Decl., ¶ 4.

Trade Dress. *See* Dkt. 10, ¶ 35. Finally, CMT has not produced any "evidence of actual confusion by the public" in the form of any purchase made under confusion. *See* Dkt. 164 at pp. 24–26; Dkt. 189 at 21–23.

Accordingly, CMT cannot claim a right to remedial advertising damages, and first raising the issue long after it filed suit against Apex establishes that CMT is not seeking recovery for actual damages—it's looking for an undeserved payday.

**C. Apex's Purported Failure Was Substantially Justified and Harmless**

Because Apex has not failed to supplement its response to Interrogatory 6, this Court need not address whether Apex's failure was substantially justified or harmless before denying CMT's Motion. *See Mission Toxicology, LLC v. UnitedHealthcare Ins. Co.*, 499 F. Supp. 3d 338, 344 (W.D. Tex. 2 20) ("Absent a failure to disclose or supplement, there is no basis to address whether the alleged failure was substantially justified or harmless.").

However, even if Apex had failed to supplement Interrogatory 6, that purported failure was substantially justified and harmless. And importantly, CMT cites to no case imposing sanctions under Rule 37(c) where the moving party was not surprised by new evidence, delayed raising an issue with the evidence for nearly a year, had multiple depositions to ask about any disputed numbers, and where the parties genuinely dispute the relevance and truth of the challenged evidence.

"When a party fails to make a disclosure as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Gomez v. Haystax Tech., Inc.*, 761 F. App'x 22 , 229–3  (4th Cir. 2 19) (citing Fed. R. Civ. P. 37(c)(1)). In determining whether a failure to supplement was substantially justified or harmless, courts consider: "(1) the

surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." *Id.* (citing *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 n.2 (4th Cir. 2003)). "The first four factors ... relate primarily to the harmlessness exception, while the last factor, addressing the party's explanation for its nondisclosure, relates mainly to the substantial justification exception." *Id.* (citing *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 19 (4th Cir. 2017)). Here, all factors weigh in favor of finding Apex's purported failure as substantially justified and harmless.

First, there is no surprise to CMT. The Advertising Expenditures Document and the alleged "contradictory" evidence were in large part disclosed to CMT at least a year ago in May 2 24. Apex's attendance at trade shows, its employee headcount, and Apex's email campaigns were all produced in May 2 24, with some additional materials produced in September 2024, well before the close of discovery on November 1, 2 24. The public materials from 2 23 relied on by CMT were, of course, publicly available in 2 23. CMT has had all the information contained in its Memorandum since before the close of fact discovery, and CMT's delay and failure to act are not a "surprise." Courts frequently hold that a party who was aware of the information and documents applicable to their dispute well before filing their motion cannot claim surprise and should be held accountable for their own delay. *See Carotek, Inc. v. Textron Fastening Sys., Inc.*, 2 8 WL 1777829, at *3 (W.D.N.C. Apr. 16, 20 8) ("Defendant makes a persuasive argument that Plaintiff was aware of the suit and that much of the information and documents applicable to this case were at its disposal. To the extent Plaintiff was unaware or surprised, it could have availed itself of discovery mechanisms to cure that surprise in a more timely fashion.").

Second, CMT has itself proved that this is a factual dispute that it can "cure" at trial. CMT believes it can calculate Apex's advertising spend and has requested the court adopt those calculations as the truth. CMT accordingly has provided the very remedy for a factual dispute as to Apex's advertising and marketing costs—CMT can present its estimations at trial and can cross examine Apex's witnesses as to the veracity of the produced advertising expenditures and allow the jury to make an informed decision based on all evidence and testimony presented to it.

Third, there would be no disruption to trial because as CMT's own Memorandum makes clear it already has all the evidence at its disposal to make its case to the jury. Moreover, the Court has stayed the proceedings and discharged the trial date, stating it "will set a new trial date as necessary" pending entry of an order resolving the parties' summary judgment motions. Dkt. 228. Accordingly, there is no possibility that trial will be disrupted as there is currently no trial date, and there may never be a trial depending on the Court's ruling on the parties' summary judgment motions.

Fourth, the evidence sought is not important. Per CMT, the relevance of the information at issue relates solely to a portion of the damages that CMT is seeking. Memorandum at 11. CMT does not allege that this information is relevant to liability on any its claims, and "one of CMT's damages calculations" is not a "critical issue." Indeed, if there is no liability, as Apex contends, then there would be no damages. Moreover, as discussed *supra*, CMT cannot seek remedial advertising damages as a matter of law. Accordingly, the information sought by CMT is of little importance, supporting that Apex's alleged failure is harmless.

Finally, Apex's explanation for its purported "failure" is that there is no failure. Apex fully answered Interrogatory 6 and has no information with which it could supplement Interrogatory 6, other than to provide numbers for 2024, which Apex already agreed to do at a

later time that both parties agreed upon. Apex stated that it would produce a document showing its "advertising expenditures for its CRESCENT® brand saw blades" and that is exactly what it did, accurately and timely. And the author of the Advertising Expenditures Document continues to stand by it as correct. Weber Decl., ¶ 7.

Therefore, as all relevant factors weigh in Apex's favor, even if there were a "failure" to supplement, which Apex denies, that purported failure was both harmless and substantially justified. Accordingly, sanctions under Rule 37(c) are not available, and CMT's motion should be denied.

### D. CMT's Requested Sanctions Are Unreasonable and Unsupported by Precedent

Rule 37(c) provides that if a party fails to provide information as required by Rule 26(e), the Court can order the exclusion of that information, order payment of reasonable expenses caused by the failure, inform the jury of the failure, and impose other appropriate sanctions, including any listed in Rule 37(b)(2)(A)(i)–(vi). *See* Fed. R. Civ. P. 37(c)(1). CMT believes it is entitled to all these remedies, despite relying on mere conjecture and assumptions to provide a wholly made-up figure for Apex's advertising spend in 2 21, 2022, and 2 23.

CMT assumes that Apex must have had [redacted] without even the slightest amount of direct evidence of actual spending, despite their own expert adopting Apex's accounting, and despite CMT adopting Apex's accounting in its dispositive motions. CMT assumes that Apex's employees relate to advertising expenditures without the slightest amount of evidence as to their actual salaries or roles. And CMT takes this wobbling tower of conjecture, calculates an unsupported spend based thereon, and then requests the Court adopt it wholesale—despite CMT's own expert providing different figures and despite Apex's claims to the contrary.

CMT does not cite to a single case imposing such sanctions on a party for failing to supplement an interrogatory on the basis that a provided numeric figure was alleged to be wrong. Even if Apex had violated Rule 26(e), and even if that failure were neither harmless nor substantially justified, CMT's requested sanctions are an unreasonable, draconian remedy that is wholly unsupported by the record or precedent.

First, CMT's conjecture as to Apex's "headcount" expenses are not supported by expert opinion, by citation to precedent, or by reference to any evidence of record. CMT first assumes that Apex's marketing headcount is entirely dedicated to its circular woodworking saw blades (the "Accused Products"). There is simply no evidence of record to support this assumption. CMT then takes that assumption and builds another on top of it, using U.S. Bureau of Labor–derived average "white-collar" salaries in "[g]oods producing industries" to come up with an estimate total "headcount" spend. As before, there is simply no evidence of record to support this assumption, and CMT never sought this information during discovery.

Second, CMT's conjecture as to Apex's total advertising spend from 2021–2 23 is yet more guesswork, this time incorporating CMT's "headcount" conjecture and assuming a [redacted] that did not occur. CMT takes Apex's provided spend for 2 21 and 2 22, duplicates it to 2 23, and then adds its own "headcount" conjecture on top. CMT does so despite CMT's own expert damages report using a different calculation with a different result. Indeed, CMT fails to apportion the numbers as performed in its own expert Winer Report—while Apex spent [redacted] in advertising on saw blades in 2 21 and 2 22, only a portion of its saw blades are saw blades at issue in this case, and thus the Winer Report concludes that the marketing spend on the Accused Products is necessarily lower than the total overall marketing spend. CMT similarly fails to apportion costs as to its "headcount" conjecture.

Finally, even if sanctions were warranted, CMT's request to substitute its own guesswork for Apex's actual advertising expenditures is not reasonable or equitable. CMT delayed raising an issue with Apex's response to Interrogatory 6 for nearly a full year, did not file a motion to compel during the discovery period, did not raise the issue when CMT deposed Apex's witnesses, and did not file a motion for sanctions until a full year after the relevant documents were produced. In such circumstances, courts have found even exclusion to be a "draconian remedy," much less the wholesale adoption of the plaintiff's desired damages. *See Carotek, Inc. v. Textron Fastening Sys., Inc.*, 2 8 WL 1777829, at *3 (W.D.N.C. Apr. 16, 2008); *Lomangino v. Polaris Indus. Inc.*, No. 2:21-CV-005 1, 2 23 WL 3931414, at *9 (S.D.W. Va. Mar. 16, 2 23), report and recommendation adopted, No. 2:21-CV- 0501, 2 23 WL 373711 (S.D.W. Va. May 31, 2 23) (finding requested sanction that "certain facts be deemed established for purposes of this action" was a "draconian" measure unwarranted even where defendant refused to produce information "clearly responsive to the Plaintiffs' discovery" and that defendant has also provided its own expert) (vacated on other grounds).

### E. CMT Did Not Meet and Confer Pursuant to L.R. 7.1(b)

Under Local Rule 7.1(b), "[c]ivil motions must show that counsel have conferred and attempted in good faith to resolve areas of disagreement, or describe the timely attempts of the movant to confer with opposing counsel." "A motion that fails to show that the parties have properly conferred or attempted to confer may be summarily denied." *Id.* Courts in the Western District of North Carolina routinely deny motions for sanctions that do not comply with this rule. *See, e.g.*, *Worley Claims Servs., LLC v. Jefferies*, 2 19 WL 5 85 52, at *2 (W.D.N.C. Oct. 1 , 2 19) (denying a motion for sanctions, in part because the movant "didn't give [opposing party] notice of their intent to file the motion").

The parties never met and conferred such that Apex was on notice that CMT intended to file a motion for sanctions or challenge the 2 21 and 2022 numbers set forth in the Advertising Expenditures Document. On March 2 , 2 25, following written correspondences, the parties engaged in a meet and confer to discuss the factual dispute regarding Apex's response to Interrogatory 6, at which time CMT advised it intended to file a motion to compel. During that call, the 2 21 and 2022 numbers were not mentioned. The parties did not discuss the matter afterwards, and Apex assumed the matter was moot after the motion deadline passed, given that CMT did not contest Apex's advertising expenditures in CMT's motion for summary judgment, reply in support of its motion for summary judgement, or opposition to Apex's motion for summary judgment. *See* Dkt. 158; Dkt. 176; Dkt. 185. Indeed, CMT *adopted* the advertising figures from Apex's Advertising Expenditures Document in its motion for summary judgment. *See* Dkt. 158 at p. 1 . Moreover, when CMT reached out to Apex's counsel to seek consent for filing under seal "a discovery motion today related to Apex's response to Interrogatory 6 and APEX000 3387," it was unclear what motion CMT's counsel was referring to, and Apex's counsel responded with "Are you requesting a meet and confer for this motion? Can we discuss the excerpts you are referring to below at that time?" Johnson Decl., ¶ 18. CMT refused to meet and confer and filed the Motion without Apex's consent.

Based on CMT's delay in bringing this motion, CMT's failure to inform Apex that it would file a motion for sanctions, CMT's failure to advise Apex it was challenging the 2 21 and 2 22 numbers in the Advertising Expenditures Document, CMT's failure to object to Apex's Advertising Expenditures Document in any of its dispositive motions, and CMT's adoption of Apex's Advertising Expenditures Document in CMT's motion for summary judgment, Apex understandably believed the factual dispute between the parties as to Interrogatory 6 was

resolved. Apex was accordingly not on notice that CMT intended to file the Motion, and the March "meet and confer" cannot support CMT filing a motion for sanctions over two months later and well after the dispositive motion deadline.

CMT's Motion therefore violates Local Rule 7.1(b) and should be summarily denied.

DATED: June 4, 2 25

**WOMBLE BOND DICKINSON (US) LLP**


By: <u>/s/ Aaron D. Johnson</u>
Jason M. Sneed (NC Bar ID 29593)
Megan E. Sneed (NC Bar ID 38525)
SNEED PLLC
445 S. Main St., Suite 400
Davidson, North Carolina 28 36
(844) 763-3347
Jsneed@Sneedlegal.com
Msneed@Sneedlegal.com

Michael J. McCue
Aaron D. Johnson
David A. Jackson
Joy Tacy Allen Woller
WOMBLE BOND DICKINSON (US) LLP
5 California Street, Suite. 275
San Francisco, California 94111
(65 ) 687-8426
Michael.McCue@wbd-us.com
Aaron.Johnson@wbd-us.com
David.Jackson@wbd-us.com
Joy.Woller@wbd-us.com

Attorneys for Defendants
Apex *Tool Group LLC and Apex Brands, Inc*

## CERTIFICATE OF USE OF ARTIFICIAL INTELLIGENCE

Pursuant to this Court's order of June 13, 2 24 regarding the use of artificial intelligence in court filings, Defendants Apex Tool Group LLC and Apex Brands, Inc. hereby certify:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexus, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Signed June 4, 2 25.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Aaron D. Johnson
Jason M. Sneed (NC Bar ID 29593)
Megan E. Sneed (NC Bar ID 38525)
SNEED PLLC
445 S. Main St., Suite 400
Davidson, North Carolina 28036
JSneed@sneedlegal.com
MSneed@sneedlegal.com

Michael J. McCue
Aaron D. Johnson
David A. Jackson
Joy Tacy Allen Woller
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2750
San Francisco, California 94111
Michael.McCue@wbd-us.com
Aaron.Johnson@wbd-us.com
David.Jackson@wbd-us.com
Joy.Woller@wbd-us.com

*Attorneys for Defendants/Counter-Plaintiffs Apex Tool Group LLC and Apex Brands, Inc*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 4th day of June, 2 25, the foregoing DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS was served via electronic means through CM/ECF on the following counsel of record:

Ward Davis (NC Bar ID 27546)
Joshua B. Durham (NC Bar ID 25414)
BELL, DAVIS & PITT
227 W. Trade St., Suite 18
Charlotte, NC 28202
(7 4) 227- 4
ward.davis@belldavispitt.com
jdurham@belldavispitt.com

Edgar H. Haug (*pro hac vice*)
Robert E. Colletti (*pro hac vice*)
Mark Basanta (*pro hac vice*)
HAUG PARTNERS LLP
745 Fifth Avenue
New York, NY 10151
(212) 588- 8
ehaug@haugpartners.com
rcolletti@haugpartners.com
mbasanta@haugpartners.com

*Attorneys for Plaintiffs CMT USA, Inc. and CMT Untensili S.p.A.*

/s/ Aaron D. Johnson

# Exhibit 1

Exhibit 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:24-cv-00137-TMR-DCK

| | |
|---|---|
| CMT USA, Inc. and CMT Utensili S.p.A.,<br><br>Plaintiffs,<br><br>v.<br><br>Apex Tool Group LLC and Apex Brands, Inc.,<br><br>Defendants. | |

**DECLARATION OF AARON D. JOHNSON**

I, Aaron D. Johnson, affirm under penalty of perjury under the laws of the United States as follows:

1. I am a partner at the law firm of Womble Bond Dickinson (US) LLP, counsel for Defendants in this proceeding.

2. I am over the age of 18, have personal knowledge as to the statements that follow, and would be competent to testify on all matters stated herein.

3. Attached as **Exhibit A** is a true and correct copy of Plaintiffs' Interrogatory No. 6, which was served on Defendants on December 11, 2023.

4. Attached as **Exhibit B** is a true and correct copy of Defendants' response to Plaintiffs' Interrogatory No. 6, timely served on Plaintiffs on January 17, 2024.

5. Attached as **Exhibit C** is a true and correct copy of the document produced by Defendants as APEX00003387, produced to Plaintiffs on May 17, 2024 (the "Advertising Expenditures Document").

6. Attached as **Exhibit D** is a true and correct copy of the documents produced by Defendants as APEX00003602, APEX00003263-3265, APEX00003268, and APEX00002115-2116. All of those documents were produced to Plaintiffs on May 17, 2024.

7. After the production of the documents referenced in Exhibits C and D, for the rest of fact discovery CMT did not object to Apex's response to Interrogatory 6 or its production of the Advertising Expenditures Document, and CMT filed no motions relating to Interrogatory 6 or the Advertising Expenditures Document.

8. On August 9, 2024, CMT took the deposition of Mr. Curtis Weber, Vice President of Marketing for Apex's CRESCENT brand from August 2021 through May 2024.

9. Attached as **Exhibit E** is a true and correct copy of select pages from the deposition of Mr. Curtis Weber, taken on August 9, 2024, containing all the questions that CMT asked Mr. Weber about the Advertising Expenditures Document and the numbers within.

10. During Mr. Weber's deposition, other than confirming authorship of the Advertising Expenditures Document, CMT asked a single question to confirm the Advertising Expenditures Document indicated a [redacted] spend in 2021 but never asked any other questions about the document, including the [redacted] spent in 2023. CMT did not ask Mr. Weber any questions regarding expenses for email marketing, influencers, social media marketing, or trade shows.

11. On September 24, 2024, CMT took the 30(b)(6) deposition of Apex, who was represented by Brendan Walsh. One the topics on which Mr. Walsh was prepared was "Defendants' expenditures for each advertising, marketing, distribution, or promotional medium used to advertise, market, distribute, or promote the Accused Blades in U.S. commerce." During that deposition, CMT did not ask about the Advertising Expenditures Document. During that deposition, CMT did not ask about specific numbers for advertising expenses, nor expenses for email marketing, influencers, social media marketing, or trade shows.

12. On November 1, 2024, fact discovery closed.

13. On November 22, 2024, CMT served the expert report of Dr. Russell Winer. Dr. Winer adopted Apex's provided advertising expenditures without dispute and without critique. Dr. Winer utilized Apex's saw blades sales data "to determine the percentage of Accused Products to total saw blades;" Dr. Winer "then apportioned the saw blade marketing spending to estimate the total marketing spend on the Accused Products." Based on Apex's figures for CRESCENT saw blades as a whole [redacted] in 2021; [redacted] in 2022; [redacted] in 2023), Dr. Winer found that Apex's total marketing spend on woodworking circular saw blades as [redacted] in 2021, [redacted] in 2022, and [redacted] in 2023.

14. On February 26, 2025, CMT's counsel sent an email to Apex's counsel that raised, for the first time, CMT's questions about Apex's [redacted] in advertising expenditures for 2023. A true and correct copy of that email is attached as **Exhibit F**.

15. On March 13, 2025, Apex's counsel responding to CMT's counsel, and committed to supplementing the advertising expenditures information for the 2024 year at the same time as CMT supplemented its financial information for 2024, and confirmed that the Advertising Expenditures Document was correct. *See* Exhibit F.

16. On March 17, 2025, CMT's counsel sent a letter to Apex's counsel that requested a conference to discuss dropping claims ahead of the summary judgment deadline and that Apex "correct" the Advertising Expenditures Document and provide "the underlying source materials." A true and correct copy of that letter is attached as **Exhibit G**.

17. On March 20, the parties held a conference on the claims in the letter, including both the potential for dropping claims and CMT's request that the Advertising Expenditures Document be changed or additional documents provided. Apex reiterated that the document did not need to be corrected, and that if CMT had questions about the numbers in the document, it

should have addressed those questions during the many hours of deposition time it had with Apex's fact witnesses. The parties did not discuss any motion for sanctions during the call.

18. CMT did not further raise its questions about the Advertising Expenditures Document, or the numbers contained within, until two months later on May 21, 2025, when it reached out Apex's counsel to seek consent for filing "a discovery motion today related to Apex's response to Interrogatory 6 and APEX00003387." A true and correct copy of that email is attached at **Exhibit H**. Unclear what motion CMT's counsel was referring to, Apex's counsel responded with "Are you requesting a meet and confer for this motion? Can we discuss the excerpts you are referring to below at that time?" *See* Exhibit H.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: June 4, 2025 /s/ Aaron D. Johnson
Declarant

# Exhibit C

# Exhibit C

**Saw blade information for CMT Case**

**Confidential Document: ATG**

**January 12, 2024**

1. Saw blade sales by year:
    a. 2021: [redacted]
    b. 2022:
    c. 2023:

2. Saw blades marketing spend by year:
    a. 2021: [redacted]
    b. 2022:
    c. 2023:

3. Saw blades headcount by year:
    a. 2021: [redacted]
    b. 2022:
    c. 2023:

# Exhibit D

# Exhibit D

| Show Name | Channel (auto, hdwr, ind, retail) | Start Date | End Date | Booth or Table Top | Booth Size | Selling Show Y or N | Sales Lead | Channel Lead | Show Location City/State | Brands Displayed | Booth Design (booth fixtures, demos, hauler, show car, signage) | Show Registration Complete | List Attendees | Additional Show Events (meeting, party, banquet, etc) | Hotel Room Link or Hotel Room Block | Customer Dinners Y or N | Holt Exhibits Support Y or N | Holt Preshow Booth Set Y or N | After Show Inventory Back to Holt Y or N | LY Spend (Booth, Attendee Registration, Skyline only - No T&E) | TY Budget Ask |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [redacted] | | | | | | | | | | | | | | | | | | | | | |

| Show Name | SCM or Channel Lead Event | Type | Booth or Table Top | Selling Show (Y or N) | Sales Lead | Channel Lead | Planning Team (who is doing what?) | City, State | Start Date | End Date | Virtual or In Person | Gameplan / Booth Design | HT Support | PT Support | PTA Support | Weller Support | Jobox Support | Registration Complete | Attendees | Party | Donations | Hotels | Booth/Display | Customer Dinners | Marketing Vehicle | SKYLINE Support | SKYLINE Preshow Visit (Booth Setup) | After Show SKYLINE Inventory |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

[redacted]

| Show Name | Type | Selling Show (Y or N) | Sales Lead | City, State | Start Date | End Date | Virtual or In Person | Gameplan | HT Support | PT Support | Weller Support | Jobox Support | Registration Complete | Attendees | Party | Donations | Hotels | Booth/Display | Customer Dinners | Marketing Vehicle | After Show SKYLINE Inventory |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [redacted] | | | | | | | | | | | | | | | | | | | | | |

| Show Name | Type | Selling Show (Y or N) | Sales Lead | City, State | Start Date | End Date | Show Status - COVID-19 Update | Owned up | RF Support | IT Support | Wallet Support | Yahoo Support | Registration Complete | Attendees | Party | Donations | Hotels | Booth/Trailer | Customers/Owners | Marketing Vehicle | After Show [illegible] Inventory |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

[redacted]

| Show Name | Type | Selling Show (Y or N) | Sales Lead | City, State | Start Date | End Date | Gameplan | RF Support | PT Support | Apex/Weller Support | Jobox Support | Registration Complete | Attendees | Party | Donations | Hotels | Booth/Display | Customer Dinners | After Show SKYLINE Inventory |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [redacted] | | | | | | | | | | | | | | | | | | | |

**From:** Marketing Email Preview Send <noreply@hubspot.com>
**To:** "Mandelkorn, Michele" <michele.mandelkorn@apextoolgroup.com>
**Subject:** Preview - Still interested in a free saw blade?
**Date:** Wed, 27 Dec 2023 15:20:51 +0000
**Importance:** Normal

---

**Use Caution:** This email is from an external organization.

CRESCENT®

Hi there,

Guess what! We have additional Crescent NailSlicer™ framing blades, and you are next on our list to receive a free one! If you're still interested in receiving a free circular saw blade, please provide your mailing address by using the link below. Before you know it, your free Crescent NailSlicer™ blade will be on the way!

Your Crescent Team

Get Your Saw Blade!

---

Apex Tool Group, LLC, 910 Ridgebrook Road, Suite 200, Sparks, MD 21152
Unsubscribe Manage preferences

**From:** [redacted]
**To:** [redacted]
**Subject:** [redacted]
**Date:** [redacted]
**Importance:** [redacted]
**Inline-Images:** [redacted]

---

[redacted]

[redacted]

# Exhibit E


# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CMT USA, INC., ET AL.,
Plaintiffs, Case No.
vs. 3:24-CV-137
APEX TOOL GROUP, LLC, ET AL.,
Defendants.
________________________________/

Pursuant to Notice, the videotaped deposition of CURTIS WEBER was taken on Friday, August 9, 2024, commencing at 9:01 a.m., at the offices of Veritext Legal Solutions, 36 S. Charles Street, Suite 2002, Baltimore, Maryland before David C. Corbin, a Registered Professional Reporter and Notary Public.

REPORTED BY: David Corbin, RPR

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFFS:

ROBERT COLLETTI, ESQUIRE
PATRICK LAVERY, ESQUIRE
Haug Partners
745 5th Avenue, 10th Floor
New York, New York 10151
rcolletti@haugpartners.com

ON BEHALF OF THE DEFENDANTS:

JOY WOLLER, ESQUIRE
DAVID JACKSON, ESQUIRE
Lewis Roca
1601 19th Street, Suite 1000
Denver, Colorado 80202
jwoller@lewisroca.com

ALSO PRESENT: Bryce Rufener, Esquire, Apex Tool Group Inhouse Counsel

VIDEOGRAPHER: Brian Mackey

# I N D E X

Name of Witness

Curtis Weber

| Examination: | Page |
|---|---|
| By Mr. Colletti | 6 |

## E X H I B I T S


| | |
|---|---|
| Exhibit 42 Crescent brand guidelines | 52 |
| Exhibit 43 News announcement | 85 |
| Exhibit 44 Training module | 91 |
| Exhibit 45 News announcement | 93 |
| Exhibit 46 News announcement | 95 |
| Exhibit 47 News announcement | 142 |
| Exhibit 48 Apex Corporate Summary Report | 150 |
| Exhibit 49 Linked In page | 152 |
| Exhibit 50 Apex Bates 3515-3532 | 161 |
| Exhibit 51 Apex Bates 3300-3306 | 176 |
| Exhibit 52 Tested HQ report | 220 |
| Exhibit 53 Tested HQ report | 230 |
| Exhibit 54 Tested HQ PowerPoint | 236 |
| Exhibit 55 Apex Bates 2122-2138 | 239 |

| | |
|---|---|
| Exhibit 56 E-mail | 242 |
| Exhibit 57 E-mail | 244 |
| Exhibit 58 E-mail | 248 |
| Exhibit 59 E-mail | 248 |
| Exhibit 60 Apex Bates 3392-3440 | 250 |
| Exhibit 61 Power tool division document | 255 |
| Exhibit 62 Apex Bates 3632 | 265 |
| Exhibit 63 CMT trademark registration | 300 |
| Exhibit 64 Letter from Lowe's | 322 |
| Exhibit 65 Apex Bates 3317-3323 | 331 |


(Exhibits retained by Mr. Colletti.)

| HIGHLY CONFIDENTIAL EXCERPTS: | Begin/End |
|---|---|
| | 52/83 |
| | 128/152 |
| | 177/ |

IT IS HEREBY STIPULATED AND AGREED that the reading and signing of this deposition are not waived.

VIDEOGRAPHER: We're going on the record at 9:01 a.m. on August 9th, 2024. This is media unit one in the deposition of Curt Weber in the matter of CMT USA, Incorporated, et al, versus Apex Tool Group, LLC, et al. In the United States District Court for the Western District of North Carolina, Charlotte Division. Case number 3:24-CV-137-RJCDCK. This deposition is taking place at 36 South Charles Street, Baltimore, Maryland. My name is Brian Mackey from Veritext and I'm the videographer. The court reporter today is Dave Corbin from Veritext. Would counsel please state their appearances and affiliations for the record.

MR. COLLETTI: My name is Rob Colletti. I'm with Haug Partners. I represent the plaintiffs CMT Utensili and CMT USA.

MR. LAVERY: Patrick Lavery also with Haug

Partners representing the plaintiffs CMT Utensili and CMT USA.

MR. JACKSON: David Jackson with Lewis Roca representing the defendants Apex Tool Group and Apex Brands, Inc.

MS. WOLLER: Joy Woller with Lewis Roca representing Apex Tool Group and Apex Brands, Inc.

MR. RUFENER: Bryce Rufener. I'm inhouse counsel for Apex Tool Group.

VIDEOGRAPHER: Will the reporter please swear in the witness.

CURTIS WEBER,

duly been sworn/affirmed to tell the truth, the whole truth, and nothing but the truth, testifies as follows:

E X A M I N A T I O N

BY MR. COLLETTI:

Q. Good morning, Mr. Weber. Can you state your full name for the record?

A. Curtis Joseph Weber.

(Off the record.)

VIDEOGRAPHER: We're back on the record. The time is 4:33 p.m. This is media number six.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

STATE OF MARYLAND

I, David Corbin, a Notary Public in and for the State of Maryland, do hereby certify that the within named, CURTIS WEBER, personally appeared before me at the time and place herein set according to law, was interrogated by counsel.

I further certify that the examination was recorded stenographically by me and then transcribed from my stenographic notes to the within printed matter by means of computer-assisted transcription in a true and accurate manner.

I further certify that the stipulations contained herein were entered into by counsel in my presence.

I further certify that I am not of counsel to any of the parties, not an employee of counsel, nor related to any of the parties, nor in any way interested in the outcome of this action.

AS WITNESS my hand and Notarial Seal this 15th day of August, 2024, at Centerville, Maryland

David C. Corbin
Notary Public

My commission expires November 13, 2027

JOY WOLLER, ESQ.

jwoller@lewisroca.com

August 20, 2024

RE: CMT USA, INC., ET AL. v. APEX TOOL GROUP, LLC, ET AL.

8/9/2024, Curtis Weber (#6788727)

The above-referenced transcript is available for review.

Within the applicable timeframe, the witness should read the testimony to verify its accuracy. If there are any changes, the witness should note those with the reason, on the attached Errata Sheet.

The witness should sign the Acknowledgment of Deponent and Errata and return to the deposing attorney. Copies should be sent to all counsel, and to Veritext at cs-ny@veritext.com.

Return completed errata within 30 days from receipt of testimony.

If the witness fails to do so within the time allotted, the transcript may be used as if signed.

Yours,

Veritext Legal Solutions

# E R R A T A   S H E E T

CMT USA, INC., ET AL. v. APEX TOOL GROUP, LLC, ET AL.

8/9/2024 - Curtis Weber (#6788727)

PAGE LINE CORRECTION AND REASON

____ ____ ______________________________

____ ____ ______________________________

____ ____ ______________________________

____ ____ ______________________________

____ ____ ______________________________

____ ____ ______________________________

____ ____ ______________________________

____ ____ ______________________________

____ ____ ______________________________

____ ____ ______________________________

____ ____ ______________________________

____ ____ ______________________________

____ ____ ______________________________

____ ____ ______________________________

____ ____ ______________________________

______________________________ ______________

Curtis Weber Date

CMT USA, INC., ET AL. v. APEX TOOL GROUP, LLC, ET AL.

8/9/2024 - Curtis Weber (#6788727)

ACKNOWLEDGEMENT OF DEPONENT

I, Curtis Weber, do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted above to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.

______________________________ _______________

Curtis Weber Date

*If notary is required

SUBSCRIBED AND SWORN TO BEFORE ME THIS

______ DAY OF ________________, 20___.

__________________________

NOTARY PUBLIC

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

# Exhibit F

# Exhibit F

# Wildman, Karen

**From:** Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>
**Sent:** Thursday, March 13, 2025 2:18 PM
**To:** Basanta, Mark; Johnson, Aaron D.; Woller, Joy
**Cc:** Colletti, Robert; Ruggeri, Malorie; DeBonis, Caroline; Joshua B. Durham; Jackson, David A.; Wildman, Karen
**Subject:** RE: K Holt Errata

Dear Mark,

Regarding the issues from your email:

1. Supplementation for 2024

Apex agrees to supplement its discovery responses for the 2024 calendar year, as applicable. Since both parties have obligations to supplement their discovery and neither party has supplemented for the complete 2024 year, we propose that the parties agree on a date to mutually exchange documents with the supplemental information. Our proposal is for that date to be two months before the start of trial, to enable both sides' experts sufficient time to review and analyze the supplemental information.

As part of this, we'd expect that CMT would supplement the following documents through the end of 2024:

- Sales, with revenue and cost information (update to CMT0014539 and CMT0012993 with all the same columns as in the "All Sales" and "Foglio1" tabs)
- Both Plaintiffs' Income Statements and P&L Statements for 2024, in the same format as CMT0013431

And Apex would agree to supplement the following documents through the end of 2024:

- Marketing spend and headcount (update to APEX00003387)
- Sales, with revenue and cost (update to APEX00003308, APEX00003309, APEX00003314, and APEX00025303)

2. Additional information regarding APEX00003387

We have reviewed your questions regarding APEX00003387 and don't believe any additional information or comment on the document is necessary. The document is accurate, and to the extent that CMT had any questions about how it was created CMT had sufficient time to ask those questions. The document was produced on May 17, 2024, over five months before the end of fact discovery. CMT also had many hours of deposition time to ask questions about the document. We note that CMT asked both Mr. Kropfelder and Mr. Weber about the document during their depositions, and during his deposition Mr. Weber confirmed he created it. Based on our review of the deposition transcripts the document was not brought up during either of the 30(b)(6) depositions of Apex, despite both taking place after production of the document. As a result, we believe the case law is clear that CMT had sufficient time to probe any questions it had about the document during fact discovery, and CMT is not able to re-write the case schedule to ask additional questions at this time.

3. Request for documents used in response to Interrogatory 6

Apex specifies the following document for its response to Interrogatory 6, pursuant to FRCP 33(d):

- APEX00003387

Best regards,
Aaron

**Aaron Johnson**
Partner
Womble Bond Dickinson (US) LLP

**d:** 650.687.8426
**e:** Aaron.Johnson@wbd-us.com

50 California Street
Suite 2750
San Francisco, CA 94111

WOMBLE BOND DICKINSON

**womblebonddickinson.com**

---

**From:** Basanta, Mark <MBasanta@haugpartners.com>
**Sent:** Wednesday, March 5, 2025 1:23 PM
**To:** Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>; Woller, Joy <Joy.Woller@wbd-us.com>
**Cc:** Colletti, Robert <RColletti@haugpartners.com>; Ruggeri, Malorie <mruggeri@haugpartners.com>; DeBonis, Caroline <CDeBonis@haugpartners.com>; Joshua B. Durham <jdurham@belldavispitt.com>; Jackson, David A. <David.Jackson@wbd-us.com>; Wildman, Karen <Karen.Wildman@wbd-us.com>
**Subject:** RE: K Holt Errata

**CAUTION! [External to Womble Bond Dickinson]**

---

Thanks for the update Aaron. We look forward to Apex's response early next week.

---

**From:** Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>
**Sent:** Wednesday, March 5, 2025 3:42 PM
**To:** Basanta, Mark <MBasanta@haugpartners.com>; Woller, Joy <Joy.Woller@wbd-us.com>
**Cc:** Colletti, Robert <RColletti@haugpartners.com>; Ruggeri, Malorie <mruggeri@haugpartners.com>; DeBonis, Caroline <CDeBonis@haugpartners.com>; Joshua B. Durham <jdurham@belldavispitt.com>; Jackson, David A. <David.Jackson@wbd-us.com>; Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>; Wildman, Karen <Karen.Wildman@wbd-us.com>
**Subject:** RE: K Holt Errata

**This Message originated outside your organization.**

---

Dear Mark,

We are currently working on a response to the issues you mention below, but we will not be able to have a full response to you by today. We expect to have a response to you by early next week.

Best regards,
Aaron

**Aaron Johnson**
Partner
Womble Bond Dickinson (US) LLP

**d:** 650.687.8426
**m:**
**e:** Aaron.Johnson@wbd-us.com

50 California Street
Suite 2750
San Francisco, CA 94111

**womblebonddickinson.com**

---

**From:** Basanta, Mark <MBasanta@haugpartners.com>
**Sent:** Wednesday, February 26, 2025 1:24 PM
**To:** Woller, Joy <Joy.Woller@wbd-us.com>
**Cc:** Colletti, Robert <RColletti@haugpartners.com>; Ruggeri, Malorie <mruggeri@haugpartners.com>; DeBonis, Caroline <CDeBonis@haugpartners.com>; Joshua B. Durham <jdurham@belldavispitt.com>; Jackson, David A. <David.Jackson@wbd-us.com>; Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>; Wildman, Karen <Karen.Wildman@wbd-us.com>
**Subject:** RE: K Holt Errata

**CAUTION! [External to Womble Bond Dickinson]**

---

Hi Joy,

My earlier email had placeholder production numbers. That citation should have been CMT0014784-962. We expect to be able to serve those documents this week.

Thanks,

Mark

---

**From:** Basanta, Mark
**Sent:** Wednesday, February 26, 2025 4:18 PM
**To:** 'Woller, Joy' <Joy.Woller@wbd-us.com>
**Cc:** Colletti, Robert <RColletti@haugpartners.com>; Ruggeri, Malorie <mruggeri@haugpartners.com>; DeBonis, Caroline <CDeBonis@haugpartners.com>; Joshua B. Durham <jdurham@belldavispitt.com>; Jackson, David A. <David.Jackson@wbd-us.com>; Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>; Wildman, Karen <Karen.Wildman@wbd-us.com>
**Subject:** RE: K Holt Errata

Hi Joy,

We're following up on Ms. Holt's deposition and Apex's marketing spend on saw blades that was discussed extensively at the deposition.

As established during the deposition, Apex's representation that it spent [redacted] on marketing its circular saw blades in 2023 is inconsistent with its documented activities. As you know, Apex markets/advertises "through trade shows ... product catalogs, and email campaigns," as well as through its own website and various social media accounts, and by other means. Apex's Resp. to Interrog. 5 (Jan. 17, 2024). As discussed with Ms. Holt, Apex attended over [redacted] trade shows in 2023 alone (Holt Dep. Ex. 7 (APEX00003602)) and produced a 2024 product catalog featuring its saw blades (Holt Dep. Ex. 5). If Ms. Holt had not been as obstructive as she was during her deposition, we would have had time to further explore numerous social media posts by Apex and its influencers in 2023-24 (*e.g.*, Dep. Ex. 46 (APEX00005239); CMT000___–___) and Apex's email campaigns in 2023-24 (*e.g.*, Dep. Ex. 56 (APEX00003266); Dep. Ex. 59 (APEX00003270)). These are just examples, of course. Needless to say, these activities necessarily incurred costs, contradicting Apex's representation that it spent [redacted] marketing/advertising saw blades in 2023 (Dep Ex. 12 (APEX00003387)). There's also good reason to question the accuracy of Apex's 2021 and 2022 numbers. *E.g.*, Weber Tr. 319:7-17 ("When I got involved in 2021 and took [saw blades] over," Apex was "spending [redacted] in marketing money....").

Ms. Holt also mentioned that she didn't include Apex's full 2024 financial results in her analyses because they were not available yet. Given that it is almost March 2025, we trust that Apex now has these figures.

In accordance with FRCP 26(e), CMT requests that Apex promptly update its response to CMT's Interrogatory No. 6 to correct Apex's 2021-23 information and supplement the 2024 information. If Apex is using FRCP 33(d) for any part of its response to Interrogatory 6, Apex must "specify[] the records" that it's relying on such that CMT can "locate and identify them as readily as [Apex] could." To date, Apex has not done so. We also request that Apex similarly correct and supplement APEX00003387, which is materially incorrect and incomplete.

Please provide us the requested updates by March 5, 2025. This information is critical to CMT's case; further delay would be prejudicial.

Thanks,

Mark

---

**From:** Woller, Joy <Joy.Woller@wbd-us.com>
**Sent:** Tuesday, February 18, 2025 11:00 AM
**To:** Colletti, Robert <RColletti@haugpartners.com>; Basanta, Mark <MBasanta@haugpartners.com>; Ruggeri, Malorie <mruggeri@haugpartners.com>
**Cc:** Jackson, David A. <David.Jackson@wbd-us.com>; Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>; Wildman, Karen <Karen.Wildman@wbd-us.com>
**Subject:** K Holt Errata

**This Message originated outside your organization.**

---

Counsel,

Please see the attached errata letter for Ms. Holt.

Best regards

Joy

**Joy Woller**

She/Her
Partner
Womble Bond Dickinson (US) LLP

**d:** 303.628.9504
**m:**
**e:** Joy.Woller@wbd-us.com

1601 19th Street
Suite 1000
Denver, CO 80202

WOMBLE BOND DICKINSON

**womblebonddickinson.com**

This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

---

This email originates from Haug Partners LLP. It is intended only for the addressee(s) named herein, and may contain confidential and/or legally privileged information. The dissemination, distribution, or copying of this email by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you received this message in error, please promptly notify us at firm@haugpartners.com or (212) 588-0800.

---

This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

# Exhibit G

# Exhibit G

HAUG PARTNERS

Haug Partners LLP
745 Fifth Avenue, 10th Floor
New York, NY 10151
+1.212.588.0800 Main
haugpartners.com

**Mark Basanta**
**mbasanta@haugpartners.com**

March 17, 2025

**<u>Via Email</u>**

Aaron Johnson
**WOMBLE BOND DICKINSON (US) LLP**
50 California Street
Suite 2750
San Francisco, CA 94111
aaron.johnson@wbd-us.com

Re: *CMT USA, Inc. v. Apex Tool Group LLC*,
Case No. 3:24-cv-00137-RJC-DCK (W.D.N.C.)

Dear Aaron:

We write to request a conference with Apex concerning:

1. Streamlining the case for purposes of summary judgment; and
2. The correction and supplementation of Apex's financial information (see our ongoing correspondence, including our email on February 26, 2025 and your email on March 13, 2025).

Please let us know your availability on Tuesday, March 18, 2025 or Wednesday, March 19, 2025 for a call.

## I. Streamlining the Case Ahead of Summary Judgment

In the interests of efficiency, focusing the case, and conserving resources, CMT proposes discussing whether and to what extent the parties will continue pursuing their various claims beyond the summary judgment phase of the case.

## II. Correction and Supplementation of Apex's Financial Information

Thank you for agreeing to supplement Apex's document production to include 2024 financial results. A. Johnson email (Mar. 13, 2025, 5:18 pm). Your suggestion for a mutual exchange on a date certain seems fine to us. Any such exchange, however, would also need to include year-to-date information for 2025. We can work out the details of an exchange in due course.

More pressing, however, is Apex's refusal to correct its demonstrably false statements about 2023 and its failure to provide CMT with "records reflecting advertising expenditures for its

HAUG PARTNERS



CRESCENT® brand saw blades," despite Apex's written commitment that it "will produce" them. Apex's Resp. to Interrog. 6 (Jan. 17, 2024). The document on which Apex rests its entire response to Interrogatory No. 6 (i.e., APEX00003387)—which was created by Apex for this litigation—is inadequate. It does not meet Apex's discovery obligations and fails to fulfill its written commitment to CMT.

Apex characterized our February 26th email as merely asking "questions" and then dismissed the issues we raised as untimely. Our email does not make any suggestion "to re-write the case schedule." A. Johnson email (Mar. 13, 2025, 5:18 pm). Apex's mischaracterizations do not eliminate its ongoing obligations under FRCP 26(e). Our February 26th email provided, among other things, a very straight forward demonstration that Apex's representation about its 2023 marketing spend is plainly false. And now that Apex has updated its response to Interrogatory No. 6, we can state that Apex has also failed to provide CMT with the source materials from which APEX00003387 was derived. There is no legitimate case to make that APEX00003387 "is accurate" or that no "additional information or comment on the document is necessary," as Apex claims. A. Johnson email (Mar. 13, 2025, 5:18 pm).

If Apex continues to refuse to correct APEX00003387 or continues to withhold the underlying source materials, we will have no choice but to bring this flagrant discovery violation to the Court's attention.

Regards,

*/s/ Mark Basanta*

CC: Counsel of record (via email)

# Exhibit H

Exhibit H

## Wildman, Karen

**From:** Basanta, Mark <MBasanta@haug artners.com>
**Sent:** Wednesday, May 21, 2025 8: 0 AM
**To:** Johnson, Aaron D.
**Cc:** Colletti, Robert; Ruggeri, Malorie; DeBonis, Caroline; Joshua B. Durham; usannah R. Cook; kroak@belldavis itt.com; Woller, Joy; Jackson, David A.; Wildman, Karen
**Subject:** RE: K Holt Errata
**ttac ment :** M. Basanta email ct. 25, 202 , 3. 2 m . d

External (mbasanta@haugpartners.com)

Report This Email FAQ

Hi Aaron,

We're filing a discovery motion today related to Apex's response to Interrogatory 6 and APEX00003387.

Does Apex consent to CMT's request to seal the documents listed below? Apex designated each as confidential or highly confidential under the protective order. Will Apex also consent to CMT's request to seal the memorandum in support of today's motion, excerpts of this email chain, and CMT's March 17, 2025 letter? They contain information from one of more of the below-listed documents. Lastly, will Apex consent to CMT's request to seal the email I sent on October 25, 2024 at 3:42 PM (attached to this email)? There may be some confidential Apex information in that chain, but please let us know if there is not.

1. Walsh Transcript (Sept. 24, 2024)
2. Weber Transcript (Aug. 9, 2024)
3. APEX00002115
4. APEX00003387
5. APEX00003602
6. APEX00008821
7. APEX00016395
8. APEX00016911
9. APEX00022416

Thanks,

Mark

---

**From:** Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>
**Sent:** Wednesday, March 19, 2025 1:58 PM
**To:** Colletti, Robert <RColletti@haugpartners.com>; Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>; Basanta, Mark <MBasanta@haugpartners.com>; Woller, Joy <Joy.Woller@wbd-us.com>
**Cc:** Ruggeri, Malorie <mruggeri@haugpartners.com>; DeBonis, Caroline <CDeBonis@haugpartners.com>; Joshua B. Durham <jdurham@belldavispitt.com>; Jackson, David A. <David.Jackson@wbd-us.com>; Wildman, Karen <Karen.Wildman@wbd-us.com>; Haug, Ed <EHaug@haugpartners.com>
**Subject:** RE: K Holt Errata

**This Message originated outside your organization.**

---

Dear Rob,

2:30 PM Eastern on Thursday works for us.  Can you send around an invite?

Best regards,
Aaron


**Aaron Johnson**
Partner
Womble Bond Dickinson (US) LLP

**d:** 650.687.8426
**m:**
**e:** Aaron.Johnson@wbd-us.com

50 California Street
Suite 2750
San Francisco, CA 94111

**womblebonddickinson.com**


---

**From:** Colletti, Robert <RColletti@haugpartners.com>
**Sent:** Wednesday, March 19, 2025 7:57 AM
**To:** Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>; Basanta, Mark <MBasanta@haugpartners.com>; Woller, Joy <Joy.Woller@wbd-us.com>
**Cc:** Ruggeri, Malorie <mruggeri@haugpartners.com>; DeBonis, Caroline <CDeBonis@haugpartners.com>; Joshua B. Durham <jdurham@belldavispitt.com>; Jackson, David A. <David.Jackson@wbd-us.com>; Wildman, Karen <Karen.Wildman@wbd-us.com>; Haug, Ed <EHaug@haugpartners.com>
**Subject:** RE: K Holt Errata

**CAUTION! [External to Womble Bond Dickinson]**

---

And I should clarify, 2:30 or 3 PM Eastern time.

---

**From:** Colletti, Robert <RColletti@haugpartners.com>
**Sent:** Wednesday, March 19, 2025 10:56 AM
**To:** Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>; Basanta, Mark <MBasanta@haugpartners.com>; Woller, Joy <Joy.Woller@wbd-us.com>
**Cc:** Ruggeri, Malorie <mruggeri@haugpartners.com>; DeBonis, Caroline <CDeBonis@haugpartners.com>; Joshua B. Durham <jdurham@belldavispitt.com>; Jackson, David A. <David.Jackson@wbd-us.com>; Wildman, Karen <Karen.Wildman@wbd-us.com>; Haug, Ed <EHaug@haugpartners.com>
**Subject:** RE: K Holt Errata

Aaron,

We propose 2:30 PM or 3 PM tomorrow, March 20.



Case 3:24-cv-00137-TMR-DCK Document 231-7 Filed 06/04/25 Page 3 of 10

Thanks,
Rob

---

**From:** Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>
**Sent:** Tuesday, March 18, 2025 9:44 PM
**To:** Basanta, Mark <MBasanta@haugpartners.com>; Woller, Joy <Joy.Woller@wbd-us.com>
**Cc:** Colletti, Robert <RColletti@haugpartners.com>; Ruggeri, Malorie <mruggeri@haugpartners.com>; DeBonis, Caroline <CDeBonis@haugpartners.com>; Joshua B. Durham <jdurham@belldavispitt.com>; Jackson, David A. <David.Jackson@wbd-us.com>; Wildman, Karen <Karen.Wildman@wbd-us.com>
**Subject:** RE: K Holt Errata

**This Message originated outside your organization.**

---

Dear Mark,

We are generally available on Wednesday and Thursday for a call – when are some times that work for you those days?

Best regards,
Aaron


**Aaron Johnson**
Partner
Womble Bond Dickinson (US) LLP

**d:** 650.687.8426
**m:**
**e:** Aaron.Johnson@wbd-us.com

50 California Street
Suite 2750
San Francisco, CA 94111

WOMBLE BOND DICKINSON

**womblebonddickinson.com**


---

**From:** Basanta, Mark <MBasanta@haugpartners.com>
**Sent:** Monday, March 17, 2025 3:05 PM
**To:** Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>; Woller, Joy <Joy.Woller@wbd-us.com>
**Cc:** Colletti, Robert <RColletti@haugpartners.com>; Ruggeri, Malorie <mruggeri@haugpartners.com>; DeBonis, Caroline <CDeBonis@haugpartners.com>; Joshua B. Durham <jdurham@belldavispitt.com>; Jackson, David A. <David.Jackson@wbd-us.com>; Wildman, Karen <Karen.Wildman@wbd-us.com>
**Subject:** RE: K Holt Errata

**CAUTION! [External to Womble Bond Dickinson]**

---

Hi Aaron,

Please see the attached letter.

Thanks,

Mark

---

**From:** Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>
**Sent:** Thursday, March 13, 2025 5:18 PM
**To:** Basanta, Mark <MBasanta@haugpartners.com>; Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>; Woller, Joy <Joy.Woller@wbd-us.com>
**Cc:** Colletti, Robert <RColletti@haugpartners.com>; Ruggeri, Malorie <mruggeri@haugpartners.com>; DeBonis, Caroline <CDeBonis@haugpartners.com>; Joshua B. Durham <jdurham@belldavispitt.com>; Jackson, David A. <David.Jackson@wbd-us.com>; Wildman, Karen <Karen.Wildman@wbd-us.com>
**Subject:** RE: K Holt Errata

**This Message originated outside your organization.**

---

Dear Mark,

Regarding the issues from your email:

1. Supplementation for 2024

Apex agrees to supplement its discovery responses for the 2024 calendar year, as applicable. Since both parties have obligations to supplement their discovery and neither party has supplemented for the complete 2024 year, we propose that the parties agree on a date to mutually exchange documents with the supplemental information. Our proposal is for that date to be two months before the start of trial, to enable both sides' experts sufficient time to review and analyze the supplemental information.

As part of this, we'd expect that CMT would supplement the following documents through the end of 2024:
- Sales, with revenue and cost information (update to CMT0014539 and CMT0012993 with all the same columns as in the "All Sales" and "Foglio1" tabs)
- Both Plaintiffs' Income Statements and P&L Statements for 2024, in the same format as CMT0013431

And Apex would agree to supplement the following documents through the end of 2024:
- Marketing spend and headcount (update to APEX00003387)
- Sales, with revenue and cost (update to APEX00003308, APEX00003309, APEX00003314, and APEX00025303)

2. Additional information regarding APEX00003387

We have reviewed your questions regarding APEX00003387 and don't believe any additional information or comment on the document is necessary. The document is accurate, and to the extent that CMT had any questions about how it was created CMT had sufficient time to ask those questions. The document was produced on May 17, 2024, over five months before the end of fact discovery. CMT also had many hours of deposition time to ask questions about the document. We note that CMT asked both Mr. Kropfelder and Mr. Weber about the document during their depositions, and during his deposition Mr. Weber confirmed he created it. Based on our review of the deposition transcripts the document was not brought up during either of the 30(b)(6) depositions of Apex, despite both taking place after production of the document. As a result, we believe the case law is clear that CMT had

sufficient time to probe any questions it had about the document during fact discovery, and CMT is not able to re-write the case schedule to ask additional questions at this time.

3. Request for documents used in response to Interrogatory 6

Apex specifies the following document for its response to Interrogatory 6, pursuant to FRCP 33(d):

- APEX00003387

Best regards,
Aaron

**Aaron Johnson**
Partner
Womble Bond Dickinson (US) LLP

**d:** 650.687.8426
**m:**
**e:** Aaron.Johnson@wbd-us.com

50 California Street
Suite 2750
San Francisco, CA 94111

WOMBLE BOND DICKINSON

**womblebonddickinson.com**

---

**From:** Basanta, Mark <MBasanta@haugpartners.com>
**Sent:** Wednesday, March 5, 2025 1:23 PM
**To:** Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>; Woller, Joy <Joy.Woller@wbd-us.com>
**Cc:** Colletti, Robert <RColletti@haugpartners.com>; Ruggeri, Malorie <mruggeri@haugpartners.com>; DeBonis, Caroline <CDeBonis@haugpartners.com>; Joshua B. Durham <jdurham@belldavispitt.com>; Jackson, David A. <David.Jackson@wbd-us.com>; Wildman, Karen <Karen.Wildman@wbd-us.com>
**Subject:** RE: K Holt Errata

**CAUTION! [External to Womble Bond Dickinson]**

---

Thanks for the update Aaron. We look forward to Apex's response early next week.

---

**From:** Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>
**Sent:** Wednesday, March 5, 2025 3:42 PM
**To:** Basanta, Mark <MBasanta@haugpartners.com>; Woller, Joy <Joy.Woller@wbd-us.com>
**Cc:** Colletti, Robert <RColletti@haugpartners.com>; Ruggeri, Malorie <mruggeri@haugpartners.com>; DeBonis, Caroline <CDeBonis@haugpartners.com>; Joshua B. Durham <jdurham@belldavispitt.com>; Jackson, David A. <David.Jackson@wbd-us.com>; Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>; Wildman, Karen <Karen.Wildman@wbd-us.com>
**Subject:** RE: K Holt Errata

**This Message originated outside your organization.**

Dear Mark,

We are currently working on a response to the issues you mention below, but we will not be able to have a full response to you by today. We expect to have a response to you by early next week.

Best regards,
Aaron

**Aaron Johnson**
Partner
Womble Bond Dickinson (US) LLP

**d:** 650.687.8426
**m:**
**e:** Aaron.Johnson@wbd-us.com

50 California Street
Suite 2750
San Francisco, CA 94111

WOMBLE BOND DICKINSON

**womblebonddickinson.com**

**From:** Basanta, Mark <MBasanta@haugpartners.com>
**Sent:** Wednesday, February 26, 2025 1:24 PM
**To:** Woller, Joy <Joy.Woller@wbd-us.com>
**Cc:** Colletti, Robert <RColletti@haugpartners.com>; Ruggeri, Malorie <mruggeri@haugpartners.com>; DeBonis, Caroline <CDeBonis@haugpartners.com>; Joshua B. Durham <jdurham@belldavispitt.com>; Jackson, David A. <David.Jackson@wbd-us.com>; Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>; Wildman, Karen <Karen.Wildman@wbd-us.com>
**Subject:** RE: K Holt Errata

**CAUTION! [External to Womble Bond Dickinson]**

Hi Joy,

My earlier email had placeholder production numbers. That citation should have been CMT0014784-962. We expect to be able to serve those documents this week.

Thanks,

Mark

**From:** Basanta, Mark
**Sent:** Wednesday, February 26, 2025 4:18 PM
**To:** 'Woller, Joy' <Joy.Woller@wbd-us.com>
**Cc:** Colletti, Robert <RColletti@haugpartners.com>; Ruggeri, Malorie <mruggeri@haugpartners.com>; DeBonis, Caroline <CDeBonis@haugpartners.com>; Joshua B. Durham <jdurham@belldavispitt.com>; Jackson, David A.

<David.Jackson@wbd-us.com>; Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>; Wildman, Karen <Karen.Wildman@wbd-us.com>
**Subject:** RE: K Holt Errata

Hi Joy,

We're following up on Ms. Holt's deposition and Apex's marketing spend on saw blades that was discussed extensively at the deposition.

As established during the deposition, Apex's representation that it spent [redacted] on marketing its circular saw blades in 2023 is inconsistent with its documented activities. As you know, Apex markets/advertises "through trade shows ... product catalogs, and email campaigns," as well as through its own website and various social media accounts, and by other means. Apex's Resp. to Interrog. 5 (Jan. 17, 2024). As discussed with Ms. Holt, Apex attended over [redacted] trade shows in 2023 alone (Holt Dep. Ex. 7 (APEX00003602)) and produced a 2024 product catalog featuring its saw blades (Holt Dep. Ex. 5). If Ms. Holt had not been as obstructive as she was during her deposition, we would have had time to further explore numerous social media posts by Apex and its influencers in 2023-24 (*e.g.*, Dep. Ex. 46 (APEX00005239); CMT000___–___) and Apex's email campaigns in 2023-24 (*e.g.*, Dep. Ex. 56 (APEX00003266); Dep. Ex. 59 (APEX00003270)). These are just examples, of course. Needless to say, these activities necessarily incurred costs, contradicting Apex's representation that it spent [redacted] marketing/advertising saw blades in 2023 (Dep Ex. 12 (APEX00003387)). There's also good reason to question the accuracy of Apex's 2021 and 2022 numbers. *E.g.*, Weber Tr. 319:7-17 ("When I got involved in 2021 and took [saw blades] over," Apex was "spending [redacted] in marketing money....").

Ms. Holt also mentioned that she didn't include Apex's full 2024 financial results in her analyses because they were not available yet. Given that it is almost March 2025, we trust that Apex now has these figures.

In accordance with FRCP 26(e), CMT requests that Apex promptly update its response to CMT's Interrogatory No. 6 to correct Apex's 2021-23 information and supplement the 2024 information. If Apex is using FRCP 33(d) for any part of its response to Interrogatory 6, Apex must "specify[] the records" that it's relying on such that CMT can "locate and identify them as readily as [Apex] could." To date, Apex has not done so. We also request that Apex similarly correct and supplement APEX00003387, which is materially incorrect and incomplete.

Please provide us the requested updates by March 5, 2025. This information is critical to CMT's case; further delay would be prejudicial.

Thanks,

Mark

---

**From:** Woller, Joy <Joy.Woller@wbd-us.com>
**Sent:** Tuesday, February 18, 2025 11:00 AM
**To:** Colletti, Robert <RColletti@haugpartners.com>; Basanta, Mark <MBasanta@haugpartners.com>; Ruggeri, Malorie <mruggeri@haugpartners.com>
**Cc:** Jackson, David A. <David.Jackson@wbd-us.com>; Johnson, Aaron D. <Aaron.Johnson@wbd-us.com>; Wildman, Karen <Karen.Wildman@wbd-us.com>
**Subject:** K Holt Errata

**This Message originated outside your organization.**

---

Counsel,

Please see the attached errata letter for Ms. Holt.

Best regards

Joy

**Joy Woller**
She/Her
Partner
Womble Bond Dickinson (US) LLP

**d:** 303.628.9504
**m:**
**e:** Joy.Woller@wbd-us.com

1601 19th Street
Suite 1000
Denver, CO 80202

**womblebonddickinson.com**

This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

---

This email originates from Haug Partners LLP. It is intended only for the addressee(s) named herein, and may contain confidential and/or legally privileged information. The dissemination, distribution, or copying of this email by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you received this message in error, please promptly notify us at firm@haugpartners.com or (212) 588-0800.

---

This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.
This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

# Exhibit 2

# Exhibit 2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:24-CV-00137-TMR-DCK

CMT USA, Inc. and CMT Utensili S.p.A.,

Plaintiffs,

v.

Apex Tool Group LLC and Apex Brands, Inc.,

Defendants.

**DECLARATION OF CURTIS WEBER**

I, Curtis Weber, affirm under penalty of perjury under the laws of the United States as follows:

1. I am over the age of 18, have personal knowledge as to the statements that follow, and would be competent to testify on all matters stated herein.

2. I am the former Vice President of Marketing for the CRESCENT brand of products at Apex Tool Group, LLC ("Apex"), a position I held from August 2021 through May 2024. My responsibilities in that role included developing strategies and tactics for CRESCENT brand marketing, product management, channel marketing, trade marketing, category management, and demand creation.

3. I left Apex in June 2024.

4. During my time at Apex I was familiar with the CRESCENT line of products at Apex and was involved in all marketing activities for the entire CRESCENT line of products in my role as Vice President of Marketing for the CRESCENT brand.

5. On or around January 12, 2024 I created a document titled "Saw blade information for CMT Case." I created this document as part of the captioned lawsuit filed by CMT USA, Inc. and

CMT Utensili S.p.a. That document included saw blades advertising spend by year, which was estimated at [redacted] in 2021, [redacted] in 2022, and [redacted] in 2023. Those numbers encompassed advertising spend for the entire line of CRESCENT saw blades and was not limited to circular saw blades for cutting wood, which represents a subset of the saw blades sold under the CRESCENT brand. Apex did not limit or designate its advertising spend based on the type of material designed to be cut by the different saw blades Apex sold.

6. I was deposed in connection with this lawsuit on or around August 9, 2024. During that deposition I was presented with the "Saw blade information for CMT Case" document I created and answered a number of questions related to that document.

7. I confirm that the saw blades advertising spend by year for 2021, 2022, and 2023 set forth in the "Saw blade information for CMT Case" document was correct to the best of my knowledge when I created it in January 2024, and I maintain that the information set forth in that document is correct to the best of my knowledge.

8. If asked to testify at trial in this case, I am prepared to testify that the saw blades advertising spend by year for 2021, 2022, and 2023 set forth in the "Saw blade information for CMT Case" document was and remains correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: June 4, 2025

DocuSigned by:

/s/ D9B1761B4E434B1...

Declarant