UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:24-CV-00137-TMR-DCK

| | |
|---|---|
| CMT USA, INC. and CMT UTENSILI S.p.A.,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>APEX TOOL GROUP LLC and APEX BRANDS, INC.<br><br>　　Defendants. | **REPLY MEMORANDUM IN SUPPORT OF CMT'S MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF APEX'S PROPOSED EXPERT STEVEN BLEICHER** |

## TABLE OF CONTENTS

I. Introduction ............................................................................................................... 1

II. Argument .................................................................................................................. 1

    A. By Relying Exclusively on Spectrophotometry Data, Mr. Bleicher Exceeded His Expertise and Acted as a Color Scientist ......................................... 1

    B. Each of Mr. Bleicher's Opinions on Color Are Based on Irrelevant Colors ........... 4

    C. Apex Does Not Defend Mr. Bleicher's Consumer-Confusion Opinions, but Silently Revises Them to Pertain to "Ordinary Observers" ................................... 7

    D. Apex Misrepresents Dr. Wyble's Testimony and Mr. Bleicher Was Unqualified to Understand Dr. Wyble's Methodologies, Much Less Critique Them ............................................................... 8

    E. This *Daubert* Motion Remains a Live Dispute ....................................................... 10

III. Conclusion ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Amorgianos v. Amtrak*,
    303 F.3d 256, 267 (2d Cir. 2002) ...................................................................................... 3

*Bodner v. Thunderbird Prods. Corp.*,
    2023 U.S. App. LEXIS 3185 (11th Cir. 2023) ................................................................... 9

*McClain v. Metabolife Int'l, Inc.*,
    401 F.3d 1233, 1245 (11th Cir. 2005) ............................................................................... 3

*Nease v. Ford Motor Co.*,
    848 F.3d 219, 232 (4th Cir. 2017) ..................................................................................... 9

*Weems Indus., Inc. v. Teknor Apex Co.*,
    757 F. Supp. 3d 854, 906 (N.D. Iowa 2024) ............................................................. 3, 4, 9

**Rules**

Fed. R. Evid. 804 ............................................................................................................... 10

## I. Introduction

Mr. Bleicher's reliance on spectrophotometry data—and nothing else—took him out of his lane as an artist and put him in the lane of a scientist. But Mr. Bleicher had no qualifications in color science, and Apex does not dispute that. CMT, relying on the testimony of an actual color scientist, demonstrated that Mr. Bleicher made serious methodological errors in interpreting the spectrophotometry data, which resulted in him analyzing colors that neither party uses on its saw blades. In other words, Mr. Bleicher's opinions are based on wrong and irrelevant colors.

Unable to defend Mr. Bleicher's actual work on the merits, Apex covertly revises two of Mr. Bleicher's primary affirmative opinions. Apex deletes the term "spectrophotometer readings" from one opinion and replaces "consumer" with "ordinary observer" in another. But even those improper substantive edits cannot save Mr. Bleicher's work. A plain reading of his report shows that he testified as a scientist (using spectrophotometer readings), beyond his qualifications, and that he testified on consumer confusion, again beyond his qualifications. And Apex does not at all defend the last of Mr. Bleicher's primary affirmative opinions because it cannot. Whether any third party saw blade is "closer" in color to CMT's orange than Apex's orange is, is not relevant to any issue in this case.

For the reasons set out in CMT's opening brief and below, Mr. Bleicher (or any proposed substitute) should not be permitted to testify at trial.

## II. Argument

### A. By Relying Exclusively on Spectrophotometry Data, Mr. Bleicher Exceeded His Expertise and Acted as a Color Scientist

Apex's claim that "none of Professor Bleicher's opinions rely on him being a color scientist" (Dkt. 241 (Apex's opposition brief) at 7) is just untrue. As CMT's motion makes clear, and Apex did not dispute, "Mr. Bleicher relied on the Apex Color Data, ***and only the Apex Color***

***Data***, to form his affirmative opinions." Dkt. 217 (CMT's opening brief) at 3 (emphasis added). The Apex Color Data is spectrophotometry data and the interpretation of such data "is the domain of color scientists, not artists." Dkt. 217 at 5; *see also* Dkt. 218-18 (Bleicher Tr.) at 25:23-26:8. By relying on only spectrophotometry data, as opposed to, for example, physical saw blades, Mr. Bleicher put himself in the role of a color scientist.

One of Mr. Bleicher's primary opinions is that "the spectrophotometer readings . . . show" that certain colors are shades of orange.[1] Dkt. 218-14 (Bleicher Op. Report) at 5. In fact, his entire report is based on the use of "readings from a color spectrophotometer" to "review the color differences in a methodical and systematic manner." Dkt. 218-14 at 6. The problem is that Mr. Bleicher was not qualified to conduct any such "review" and was not qualified to render opinions based on spectrophotometry data because he "had no training or experience" in doing so, which again Apex does not dispute. Dkt. 217 at 5; *see also* Dkt. 218-18 at 24:14-16 (Q: "Have you ever analyzed spectrophotometry data before this case?" A: "No"). His qualifications did not equip him to render any opinion based on this data but he did so anyway.

Apex repeatedly cites Mr. Bleicher's book as a qualification, but that book is meaningless here because it is directed to "art and design majors" (Ex. V at p. xv) and, more importantly, it says nothing about spectrophotometry or anything relevant about the science of color (Dkt. 219-1 (Wyble Rebuttal Report) ¶¶ 15-17). Mr. Bleicher confirmed at his deposition that it contains no discussion of spectrophotometry. Dkt. 218-18 at 81:18-82:7. Similarly, Mr. Bleicher's expertise in "color theory, color psychology, and the use of color in product design" are equally meaningless here. *See* Dkt. 241 at 7. Color theory, according to Mr. Bleicher's book, concerns "how colors

---

[1] Troublingly, Apex silently revised the first of Mr. Bleicher's primary opinions to remove any mention of "spectrophotometer readings." *Compare* Dkt. 218-14 at 5 (opinion "(a)") *with* Dkt. 241 at 4 (first paragraph "1)").

[a]re formed and how they might be used together in some harmonious way" (*see* Ex. V at 28), much like color psychology, which seeks an "understanding [of the] complex relationship of color, psyche and emotion," in order to "elicit the specific desired response from the viewer" (Ex. V at 54). The emotional or psychological impact of the color orange has no bearing on Mr. Bleicher's opinions, much less any bearing on trademark infringement or trademark validity.

To be clear, CMT is not arguing that Mr. Bleicher had no expertise at all. Rather, he had no expertise relevant to interpreting the only data source he relied on, namely spectrophotometry data. Apex's argument to the contrary is a strawman that misrepresents CMT's position. *See* Dkt. 241 at 9 ("It is thus flatly incorrect for CMT to claim that Professor Bleicher 'has no qualifications in any relevant field.'"). As CMT stated in its opening brief, "Mr. Bleicher's opinions and testimony, **built on the Apex Color Data**, should be excluded because he has no qualifications in any relevant field." Dkt. 217 at 5 (emphasis added); *see also Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2d Cir. 2002) ("[A]ny step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." (cleaned up)); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1245 (11th Cir. 2005). If Mr. Bleicher had based his opinions on a visual inspection of the saw blades, his opinions would have been grounded on information nearer his actual expertise as an artist and this motion would have been narrower. But he "never personally saw any of the saw blades" at issue. Dkt. 217 at 3. Apex does not dispute this fact and, as a result, Mr. Bleicher had no basis within the scope of his expertise for reaching his conclusions.

Apex's reliance on the *Weems* case is misplaced because it ignores critical context. *See* Dkt. 241 at 8. In *Weems*, Mr. Bleicher testified that the color at issue there, "chartreuse," provides "a utilitarian/functional advantage to water hoses in making them more visible."[2] *Weems Indus.,*

---

[2] Mr. Bleicher did not offer testimony on functionality in this case. Dkt. 218-18 at 51:5-52:7.

*Inc. v. Teknor Apex Co.*, 757 F. Supp. 3d 854, 906 (N.D. Iowa 2024). Critically, he did not base his work in *Weems* on numerical color data (called "colorimetric data" in *Weems*) and he did not rebut any color scientist. Instead, the party relying on Mr. Bleicher retained a second expert—one with a Ph.D. "in color chemistry" who qualified as an expert "in the field of color science"—to address the colorimetric data and rebut the other side's color scientist. *Weems*, 757 F. Supp. 3d at 904–05. One of the lessons from *Weems* is that artist-type color experts (like Mr. Bleicher) are <u>not</u> interchangeable with scientist-type color experts (like Dr. Wyble). In other words, *Weems* supports excluding Mr. Bleicher because he came out of his lane as an artist and provided opinions here as though he were a scientist, which he was not.

### B. Each of Mr. Bleicher's Opinions on Color Are Based on Irrelevant Colors

Mr. Bleicher's lack of qualifications, training, and expertise with spectrophotometry data led him to analyze and offer opinions on colors that neither party actually uses on their saw blades. Apex attempts to downplay this as "a lower-order quibble" or "a mere calculation discrepancy," but it is not. *See* Dkt. 241 at 13. The discrepancies are not minor, they are foundational and disqualifying.

Dr. Wyble addressed this head-on and so did CMT in its opening brief. Dkt. 217 at 6-10. The bottom line is that "[w]hile some discrepancy is expected when comparing" Mr. Bleicher's exhibits "with the measured data from a physical blade, the degree of inconsistency here far exceeds expectation." Dkt. 219-1 ¶ 22. Mr. Bleicher may have started with "reliable data directly relevant to the dispute" (*see* Dkt. 241 at 13), but the methodology Mr. Bleicher applied thereafter distorted that data such that the colors Mr. Bleicher "analyzed as being CMT's or Crescent's orange are not their actual colors" and, "[a]s a result, all of the analysis and conclusions drawn therefrom are irrelevant" (Dkt. 219-1 ¶ 20). The colors that Mr. Bleicher analyzed and labeled as CMT's orange or Apex's Rawhide orange were not, in fact, the actual blade colors. This is not a question

of weight for the jury, it is a question of relevance and reliability for the Court.

Dr. Wyble's analysis confirms this point using the objective metric ΔE, which is used to quantify color difference. He found the color Mr. Bleicher analyzed differs from the actual color of Apex saw blades by a whopping ΔE of 21.65. The color he identified for CMT saw blades differs from CMT's actual blade color by a ΔE of 9.79. Dkt. 219-4, Tbl. 2. These differences are well beyond what color normal persons would consider to be the same color. *See* Ex. U at 127:10-128:13. Mr. Bleicher simply did not analyze or offer opinions on the actual CMT or Apex colors. Apex's claim that the color-block exhibits that CMT presented at Mr. Bleicher's deposition "do not indicate any error" (Dkt. 241 at 13) is just attorney argument that cannot overcome Dr. Wyble's testimony. The color-block exhibits were created from the values in Dr. Wyble's report comparing actual saw blade colors to Mr. Bleicher's exhibits. *Compare* Dkt. 218-9 *with* Dkt. 219-4, Tbl. 2. Dr. Wyble's testimony that those comparisons demonstrate the irrelevance of Mr. Bleicher's work is unchallenged by any contrary evidence or scientific authority. *See* Dkt. 217 at 8 (citing Dkt. 219-1 ¶¶ 20-22). Mr. Bleicher's confirmation that each pair of blocks in the color-block exhibits are different colors means conclusively that Dr. Wyble was right in his critique that Mr. Bleicher's opinions pertain to wrong and irrelevant colors. *See* Dkt. 217 at 8-9.

Apex also omits crucial context about the process Mr. Bleicher used to generate his exhibits. Although Apex claims he used "state-of-the-art software" (Dkt. 241 at 13) to create the color swatches and color wheels, he had never used one of the software programs before (Dkt. 218-18 at 152:9-153:12) and never called any software "state-of-the-art." It is not even clear whether it was Mr. Bleicher or Apex's lawyers that created his swatches. *See* Dkt. 217 at 6 n.4. As for his color wheels, there is nothing "precise[]" about them. Dkt. 241 at 13. Mr. Bleicher first plotted each blade on its own color wheel using one software (called "Atmos"). Dkt. 218-18

– 5 –
Case 3:24-cv-00137-TMR-DCK   Document 244   Filed 06/20/25   Page 8 of 16

at 195:20-196:3.  Then, instead of Atmos creating his combined color wheel (e.g., Exhibit 9)—which would have been "dicey" (Dkt. 218-18 at 196:17-21)—he used a different software (called "Photoshop") to manually superimpose the seven color wheels and to transfer the seven colors to one wheel by hand (Dkt. 218-18 at 192:4-15).  It was a "very complex" and "laborious process." Dkt. 218-18 at 192:14-15.  The resulting color wheel is only "kind of an approximation" of the actual numerical color data.  Dkt. 218-18 at 189:16-23.  He even admitted that the colors on the wheel are "slightly off" from his own color swatches (Dkt. 218-18 at 195:8-15), which is a serious understatement, as Dr. Wyble's analysis shows (*e.g.*, Dkt. 219-4, Tbl. 2).  And, despite having justified misgivings, Mr. Bleicher was pushed to include the color wheel in his report.  Dkt. 218-18 at 197:13-24 ("I kept trying to convince them not to have me do this.  I didn't want to.").

Finally, Apex completely ignores the smoking gun: when CMT showed Mr. Bleicher a physical Apex saw blade for the first time at his deposition, he immediately "exclaimed that the blade 'is not the color that I was given as the Rawhide color.' " Dkt. 217 at 9.  That moment—Apex's own expert conceding that the color on the actual product does not match the color he analyzed—is devastating to his admissibility.  An actual Apex saw blade is definitionally Rawhide orange in color.  If the actual Rawhide orange "is not the color that [he] was given," then he was given—and opined on—the wrong color.  The wrong color is an irrelevant color, and Apex does not argue otherwise.

Each of Mr. Bleicher's opinions on color are based on irrelevant colors, which do not match the actual products, that he derived from data he was unqualified to interpret.  His exhibits are not merely "visual aids."  Dkt. 241 at 14-15.  As a visual artist, he based his opinions on his exhibits, including the erroneous color "swatches" (*see* Dkt. 217 at 6-7), because he had not seen any saw blades until after he finished his reports.  *See* 218-14 at 5 ("After considering the materials listed

above," including his Exhibits 7-9, he "came to the following conclusions:"). His color-based opinions and exhibits should be excluded.

C. **Apex Does Not Defend Mr. Bleicher's Consumer-Confusion Opinions, but Silently Revises Them to Pertain to "Ordinary Observers"**

Apex does not attempt to defend Mr. Bleicher's opinions on consumer confusion because they are indefensible. That alone warrants exclusion. Instead of defending his actual opinions, Apex tries a sleight of hand—its second, in fact. *See* footnote 1, *supra*. In response to CMT pointing out Mr. Bleicher's lack of qualifications to opine on consumer confusion, Apex revised Mr. Bleicher's report to replace the term "consumers" with the term "ordinary observers." *Compare* Dkt. 218-14 at 5 (opinion "(c)") *with* Dkt. 241 at 4 (paragraph "3)"). Mr. Bleicher opined on consumers repeatedly and exclusively and, to remove any doubt, he expressly stated that CMT's orange and Apex's orange "would not be confused by a consumer shopping for saw blades." Dkt. 163-20 at 3. At no point did he refer to "ordinary observers." Apex's revision is not a clarification, it is an improper attempt to substantively rewrite Mr. Bleicher's report. Apex also argues that Mr. Bleicher used the word "consumers" because it is "specific to the issue in this case" (Dkt. 241 at 12), which only proves CMT's point. Mr. Bleicher's opinion is specific to the issue of consumer confusion, on which he is not qualified to opine. His opinions should be excluded.

Whether Mr. Bleicher was formally "offered to opine on consumer confusion" is beside the point. Dkt. 241 at 12. It could hardly be more clear that he did, in fact, opine on consumer confusion without the requisite qualifications. Apex's post-hoc attempt to rehabilitate/revise Mr. Bleicher's reports should also be rejected for the same reasons that Mr. Bleicher's narrowed opinion from his deposition should be rejected. *See* Dkt. 217 at 12. Most importantly, even if he was qualified to speak on consumer confusion, his opinion remains inadmissibly irrelevant because the orange colors on which Mr. Bleicher based his opinion do not match the actual colors of either

party's saw blade.  *See* Part II.B, *supra*.

Apex also does not defend Mr. Bleicher's opinions related to trademarks.  Instead, Apex makes the semantic argument that his statements on trademarks are just "background statements" and not "opinions."  Dkt. 241 at 11-12.  However Apex labels them, the topics of trademark rights and trademark applications are far outside his expertise, and Apex does not even suggest otherwise.  Hence, he is not qualified to testify in front of the jury on those topics and he should be excluded from doing so.  Dkt. 217 at 12-14.

### D. Apex Misrepresents Dr. Wyble's Testimony and Mr. Bleicher Was Unqualified to Understand Dr. Wyble's Methodologies, Much Less Critique Them

Apex falsely claims that Dr. Wyble "admitted" that Mr. Bublitz's spectrophotometry readings "were correct."  Dkt. 241 at 13.  What Dr. Wyble said was that the "experimental procedures" Mr. Bublitz used "w[ere] generally correct" and that his own readings for CMT and Apex saw blades "aligned with [Mr.] Bublitz's numbers."  Ex. U at 180:17-182:23.  But Dr. Wyble never had access to any of the other saw blades that Mr. Bublitz measured, as Apex well knows, so he could not have measured their colors in order to assess whether they were correct.  *See* Ex. U at 182:25-183:5.

Apex also misleadingly claims that "CMT's own color expert agreed" with Mr. Bleicher's three primary affirmative opinions.  Dkt. 241 at 8 n.2.  Mr. Bleicher's first opinion is about CMT, Apex, and more than 40 other saw blade manufacturers.  Dr. Wyble did not opine on the color of any saw blades except those made by CMT and Apex.  And Dr. Wyble's work does not mention consumers at all (Ex. U at 87:6-88:10), unlike Mr. Bleicher third primary opinion.  As for Mr. Bleicher's second primary opinion, that some colors are "closer to" CMT's orange than Apex's orange is (Dkt. 218-14 at 5), Apex never disputes that this opinion is irrelevant (*see* Dkt. 217 at 10), so whether Dr. Wyble agrees or not is likewise irrelevant.  Relatedly, while Apex argues

that "there is nothing wrong with . . . the methodology" used to compile Mr. Bleicher's Exhibit 7 (Dkt. 241 at 14), Mr. Bleicher himself confirmed that he employed "no methodology" in creating it (Dkt. 218-18 at 167:7-15). Having "no methodology" is not a reliable approach. *Nease v. Ford Motor Co.*, 848 F.3d 219, 232 (4th Cir. 2017) (finding that an expert's opinion was unreliable under *Daubert* where he did "not employ a particular methodology"); *Bodner v. Thunderbird Prods. Corp.*, 2023 U.S. App. LEXIS 3185, at *8 (11th Cir. 2023) (affirming exclusion of an expert's report because it "reflected no methodology at all—let alone a 'widely accepted methodology'— connecting the facts or data he considered to his opinions"). As such, his testimony about some colors being "closer to" CMT's orange and his Exhibit 7 should be excluded. Dkt. 217 at 10.

According to Apex, Mr. Bleicher purports to rebut (i) an "implication" that allegedly arises from Dr. Wyble analysis of spectrophotometry data, and (ii) Dr. Wyble's "use of raw spectrophotometer data to describe the various colors without providing a visual reference." Dkt. 241 at 10; *see also* Dkt. 163-20. As discussed above, Mr. Bleicher was not a color scientist because he "had no training or experience . . . in interpreting spectrophotometry data," which Apex does not dispute. Dkt. 217 at 5. Those same lack of qualifications also mean that he is not qualified to rebut an expert color scientist opining on spectrophotometry data, as Dr. Wyble is. One of the lessons from *Weems* is that artist-type color experts (like Mr. Bleicher) are <u>not</u> interchangeable with scientist-type color experts (like Dr. Wyble). *Weems*, 757 F. Supp. 3d at 904–06.

Moreover, the suggestion that Dr. Wyble lacked "a visual reference" is contradicted by the record. Dr. Wyble's visual references were actual CMT and Apex saw blades (*see* Ex. U at 181:20-182:23; Dkt. 151-6 (Wyble Op. Report) ¶ 71), which, ironically, is more than Mr. Bleicher had. And Apex can rest assured that there will be numerous visual references to both parties' saw blades at trial, including during Dr. Wyble's testimony.

### E. This *Daubert* Motion Remains a Live Dispute

Apex argues that CMT's *Daubert* motion was "moot-on-arrival" because of Mr. Bleicher's passing. Dkt. 241 at 16. That argument is specious. While of course Mr. Bleicher "will not be appearing at trial" (Dkt. 241 at 16), that does not mean "that he will not be testifying at trial" (Dkt. 241 at 3). Apex acknowledges that it "w[ill] seek to introduce Professor Bleicher's testimony at trial" under certain conditions. Dkt. 241 at 3 n.1. That alone defeats Apex's mootness argument. Moreover, CMT can also use Mr. Bleicher's testimony because the Federal Rules permit, among other things, admitting testimony given at a "lawful deposition" in the event of a witness's death. Fed. R. Evid. 804. Unless Mr. Bleicher is excluded, his work will remain part of the case. Thus, this motion is not moot.

### III. Conclusion

For the reasons set out above and in CMT's opening brief, CMT respectfully requests that the Court exclude all of Mr. Bleicher's affirmative opinions, testimony, and work product, as well as his rebuttal opinions and testimony concerning Dr. Wyble.

Respectfully submitted, this 20th day of June, 2025.

/s/ Joshua B. Durham
Joshua B. Durham, N.C. State Bar No. 25414
Edward B. Davis, N.C. State Bar No. 27546
BELL, DAVIS & PITT, P.A.
227 W. Trade Street, Suite 1800
Charlotte, NC 28202
Phone: (704) 227-0400
Email: jdurham@belldavispitt.com
ward.davis@belldavispitt.com

/s/ Robert E. Colletti
Edgar H. Haug (admitted pro hac)
Robert E. Colletti (admitted pro hac)
Mark Basanta (admitted pro hac)
HAUG PARTNERS LLP
745 Fifth Avenue

New York, NY 10151
Phone: (212) 588-0800
Email: ehaug@haugpartners.com
 rcolletti@haugpartners.com
 mbasanta@haugpartners.com

*Attorneys for Plaintiffs*
*CMT USA, Inc. and CMT Utensili S.p.A*

## CERTIFICATE OF USE OF ARTIFICIAL INTELLIGENCE

Pursuant to this Court's order of June 20, 2024 regarding the use of artificial intelligence in court filings, Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A., through their undersigned counsel, hereby certify:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Signed this 20th of June, 2025 in New York, NY.


/s/ *Robert E. Colletti*
Robert E. Colletti (*pro hac vice*)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
rcolletti@haugpartners.com

*Attorney for Plaintiffs CMT USA, Inc.*
*and CMT Utensili S.p.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. Service of same on any counsel of record will be accomplished through the Court's electronic filing system in accordance with F.R.C.P. 5(b)(2)(E).

/s/ Joshua B. Durham