IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:24-CV-137-TMR-DCK

| | |
|---|---|
| CMT USA, INC., and<br>CMT UTENSILI S.P.A.,<br><br>    Plaintiffs,<br><br>v.<br><br>APEX TOOL GROUP LLC, and<br>APEX BRANDS, INC.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion To Compel Plaintiffs To Provide A Competent 30(b)(6) Witness or Supplemental Answer To Interrogatory 13 For Information Relating To Enforcement Activity" (Document No. 110) filed on October 30, 2024; Plaintiffs' "Motion To Compel Defendants To Produce Third-Party Communications" (Document No. 114) filed on October 31, 2024; and "CMT's Motion To Sanction Apex's Failure To Complete And Correct Its Incomplete And Erroneous Response To Interrogatory No. 6" (Document No. 204) filed on May 21, 2025.

These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and are ripe for disposition. Having carefully considered the motions and the record, the undersigned will <u>grant</u> Defendants' motion and <u>deny</u> Plaintiffs' motions.

**STANDARD OF REVIEW**

Rule 26 of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative

> access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1). The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1945). However, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed.R.Civ.P. 26(c)(1).

Whether to grant or deny a motion to compel is generally left within a district court's broad discretion. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (denial of motions to compel reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting District Court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

## DISCUSSION

### A. "Defendants' Motion To Compel Plaintiffs…" (Document No. 110)

Defendants seek to compel Plaintiffs "to remedy the deficiencies in both their answer to Apex's Interrogatory No. 13 and their refusal to produce a 30(b)(6) witness competent to testify on Topic 27 in the notice of deposition of Plaintiffs." (Document No. 110, p. 1). Interrogatory No. 13 states: "[i]dentify all of CMT's enforcement of its claimed rights in the color orange as used on saw blades in the United States"; and Topic 27 sought testimony addressing: "CMT's decisions to enforce or not enforce rights in the CMT Orange Trade Dress against third parties from 2013 to the present, including, but not limited to, phone calls, letters, oppositions,

cancellations, lawsuits, complaints, and any other actions." (Document Nos. 111-2, p. 3 and 124-5, p. 7).

Defendants contend that both of these discovery requests "relate to a single issue: the amount of enforcement activity, if any, Plaintiffs engaged in relating to their alleged rights in the color orange on circular saw blades prior to Plaintiffs' initial cease-and-desist letter to Apex." (Document Nos. 110, p. 1; 123-1, p. 1).[1] Plaintiffs sent an "initial cease-and-desist letter to Apex" on November 5, 2021, (the "November 2021 Letter"). (Document Nos. 111, p. 1, 123-1, p. 1). Defendants request that the "Court compel Plaintiffs to provide either (1) a 30(b)(6) witness who can testify as to Plaintiffs' relevant enforcement activity prior to the letter, or (2) supplement their response to Interrogatory 13 to verify that they are not aware of any other enforcement activity prior to the letter." (Document No. 110, p. 1).

Defendants note that Plaintiffs designated Marcello Tommassini to testify on Topic 27, but that Mr. Tommassini repeatedly testified, "███████████████████" and "███████████████," in response to multiple questions about enforcement action prior to the November 2021 Letter. (Document Nos. 111, p. 4; 123-1, p. 4) (citing Document No. 111-3, pp. 7-9). Defendants assert that "Plaintiffs have refused to make available a witness more knowledgeable about such enforcement activity." (Document Nos. 111, p. 5; 123-1, p. 5).

In support of their motion, Defendants further contend that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."

---

[1] The undersigned finds that Defendants have generously applied redactions to their briefing despite the Court's direction that "[r]edactions should be applied only as necessary." (Document No. 121, p. 3); see also (Document Nos. 111 and 123-1). For example, Defendants seem to have redacted use of the word "enforcement," even though the underlying "…Motion To Compel…" (Document No. 110) and the docket description of that motion state that the discovery dispute involves "information relating to enforcement activity." See also (Document Nos. 123-3, p. 3; 124; and 124-5 p. 7) (failing to seal or redact "enforcement"). The undersigned, throughout this Order, will respectfully decline to adopt redactions that are found to be inconsistent with other filings, excessive, and/or otherwise unnecessary.

3

(Document No. 111, p. 5) (quoting Fed.R.Civ.P. 37(a)(4)). Defendants bolster their position with the following legal authority:

> The party resisting discovery bears the burden of establishing the legitimacy of its incomplete answer or inadequate designated witness. *See Earthkind, LC v. Lebermuth Co. Inc.*, 2021 WL 183413, at *2 (W.D.N.C. Jan. 19, 2021); *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016) ("[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." (quoting *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010))); and Fed. R. Civ. P. 37(a)(1).
>
> A designated 30(b)(6) witness' lack of knowledge on a designated topic, or a refusal to answer questions on a designated topic, is a failure to respond and supplementation can be compelled. *See Berwind Prop. Grp. Inc. v. Envtl. Mgmt. Grp.*, 233 F.R.D. 62, 65 (D. Mass. 2005) (compelling supplementation of incomplete deposition testimony on topics for which designee had no knowledge). . . . If a 30(b)(6) designee cannot produce answers to questions that should reasonably be known by the corporation because of a lack of personal memory, the court can compel the corporation to supplement. *Berwind Prop. Grp. Inc.* 233 F.R.D. at 65.

(Document No. 111, pp. 5-6).

Regarding Plaintiffs' response to Interrogatory No. 13, Defendants contend that "all of the described [enforcement] actions were after the November 2021 Letter." (Document Nos. 111, p. 7; 123-1, p. 7). According to Defendants "[a] clear answer on whether or not there was any enforcement activity before the November 2021 Letter is required." Id.

"Plaintiffs' Opposition To Defendants' Motion To Compel" asserts that "CMT has already provided the requested information, both in detailed deposition testimony and through a comprehensive supplemental interrogatory response." (Document No. 124, p. 1). Plaintiffs argue that "even though Marcello Tommassini was designated for Topic 27, Apex elicited extensive testimony from Lucia Spallacci regarding that same topic." (Document No. 124, p. 2). Plaintiffs

4

acknowledge that Defendants were unwilling to accept Spallacci's testimony as a sufficient response to Topic 27, but contend that "Apex agreed to forgo further Rule 30(b)(6) testimony in favor of an update to Interrogatory 13." Id. (citing Document Nos. 124-1 and Document No. 124-3).

Plaintiffs argue that their supplemented response is adequate and identifies "all of its enforcement actions . . . in detail." (Document No. 124, p. 3) (citing Document No. 111-2, pp. 2-4). Plaintiffs further argue that Defendants' demand that Plaintiffs state that they are "'not aware of any other enforcement activity' is unnecessary and not required by any rule." Id. (citing Document No. 111, p. 7).

The undersigned observes that neither Interrogatory No. 13, nor Deposition Topic No. 27, make any mention of the November 2021 Letter, or *specifically* request that Plaintiffs identify enforcement activity prior to the date of the November 2021 Letter. See (Document No. 111-2, p. 3; Document No. 124-5, p. 7). Rather, the discovery requests more broadly seek information on "all of CMT's enforcement of its claimed rights in the color orange as used on saw blades in the United States," and "CMT's decisions to enforce or not enforce rights in the CMT Orange Trade Dress against third parties from 2013 to the present…." Id.

The undersigned agrees that complete responses to the discovery requests at issue would include enforcement activity prior to 2021. However, it would have been helpful if Defendants were more precise as to the information they were seeking. Plaintiffs *did* provide a response and a supplemental response identifying enforcement activity; however, those responses are not as detailed as Plaintiffs suggest and do not directly address whether there was enforcement activity prior to November 2021. (Document No. 111-2, pp. 3-4). Although Defendants' Interrogatory No. 13 was imprecise, the undersigned is persuaded that the lack of clarity in Plaintiffs'

interrogatory response combined with Mr. Tommassini's inability to provide a definitive answer regarding the timing of enforcement activity during his deposition testimony, support granting Defendants' motion.

This seems like a dispute that counsel for the parties should have been able to resolve months ago. The information Defendants seek regarding enforcement actions, including prior to November 2021, is relevant and proportional to the needs of the case. To date, Plaintiffs' responses, both to Interrogatory No. 13 and during deposition testimony, come across as, at best, incomplete. If Plaintiffs contend that they did not engage in any enforcement prior to November 2021 – of their "claimed rights in the color orange as used on saw blades in the United States" – they should have made that clear many months ago.

Under the circumstances, Defendants' demand for further information regarding Interrogatory No. 13 and Topic 27, which provides Plaintiffs options, is reasonable. See (Document No. 110, p. 1; Document No. 111, p. 8; Document No. 130, pp. 1-2, 7). Based on the foregoing, the undersigned directs Plaintiffs to supplement their discovery responses on or before **August 12, 2025**, by either: (1) making a Rule 30(b)(6) witness available at a location in the United States who can testify on Plaintiffs' enforcement efforts, if any, that occurred prior to the November 2021 Letter; **or** (2) by supplementing Interrogatory 13 with information regarding Plaintiffs' enforcement activity prior to the November 2021 Letter, or in the alternative, providing a statement confirming that Plaintiffs are not aware of any enforcement activity prior to the November 2021 Letter.

**B. Plaintiffs' "Motion To Compel Defendants…" (Document No. 114)**

Plaintiffs' first pending motion seeks to compel the production of

> (i) all communications between Apex's law firm Lewis Roca Rothgerber Christie LLP ("Lewis Roca") and third-party Marksmen

> Brand Protection ("Marksmen"), along with all related documents and (ii) all communications between Apex and/or Lewis Roca and third-party saw blade manufacturers, along with all related documents.

(Document No. 114, p. 1).

Plaintiffs contend that these requested documents are "responsive to discovery requests served by Plaintiffs" Id. Specifically, Plaintiffs contend that the disputed discovery is "directly responsive to at least CMT's Request for Production (RFP) numbers 30 and 25." (Document No. 115, p. 5); see also (Document No. 115-8, pp. 12-13). Plaintiffs later argue that Lewis Roca's communications with third-party manufacturers are responsive to Requests for Production ("RFPs") 32, 34, and 38. See (Document No. 115, pp. 10-11). RFPs 25 and 30 seek the following information:

> **Production Request No. 25:**
> All documents, communications, and things concerning Plaintiff, Plaintiffs' products, or Plaintiffs' registered Trademark, U.S. Registration No. 3,038,625.
> . . .
>
> **Production Request No. 30:**
> All documents, communications, and things concerning any polls, surveys, market research, focus groups, consumer research, or other research, whether formal or informal, concerning Plaintiffs, Plaintiffs' products, or Plaintiffs' registered Trademark, U.S. Registration No. 3,038,625.

Id.

This discovery dispute is about a 225-page investigative report (the "Marksmen Report"), commissioned by Defendant Apex's law firm Lewis Roca Rothgerber Christie LLP ("Lewis Roca") and prepared by Marksmen Brand Protection ("Marksmen"). (Document No. 115, p. 2). The Marksmen Report "details an extensive global search for orange-colored saw blades and includes records of interactions with sales representatives, the purchase and collection of numerous

saw blades, and describes the processes by which these blades were acquired." Id. Plaintiffs note that Defendant "Apex produced" the Marksmen Report on or about September 20, 2024, after Defendants had represented that document production was complete. Id. See also (Document No. 115, p. 6). Plaintiffs now seek all of Defendants' law firm Lewis Roca's communications and related documents regarding third-party Marksmen.

Plaintiffs argue that Lewis Roca's communications with Marksmen are relevant, responsive, and not work-product protected. (Document No. 115, p. 4). Plaintiffs construe the Marksmen Report as "formal market research" and note that CMT is mentioned *twice* in the 225-page document. (Document No. 115, p. 5) (citing Document No. 117-1, pp. 53 and 159). Moreover, Plaintiffs observe that Defendants did an analysis comparing the color of "certain of the Marksmen blades" "to the color of CMT's saw blades." (Document No. 115, p. 5) (citing Document No. 117-9). Plaintiffs seem to conclude that because the Marksmen Report "analyzes third-party saw blades presently on the market," communications related to the Marksmen Report are relevant and discoverable. (Document No. 115, p. 6).

In addition Plaintiffs argue that Defendants' counsel's communications (and related documents) regarding the Marksmen Report are not protected work product. Id. Plaintiffs suggest that Lewis Roca has waived any protection by failing to provide a privilege log and by producing the Marksmen Report. (Document No. 115, pp. 6-8).[2] Plaintiffs conclude that Lewis Roca should "produce to CMT *all* of its communications with Marksmen, as well as *all* related documents, *without any redactions*." (Document No. 115, p. 9) (emphasis added). Plaintiff presents very similar arguments regarding production of Lewis Roca's alleged communications with third-party manufacturers of saw blades. (Document No. 115, pp. 10-12).

---

[2] Elsewhere, Plaintiffs have alleged that Defendant Apex produced the Marksmen Report. See (Document No. 115, pp. 2 and 6).

"Defendants' Opposition To Plaintiff's Motion To Compel Attorney Communications" first makes the following point:

> To be clear, Plaintiffs are not requesting documents in the possession of the defendants – Apex. Instead, this entire Motion is to demand defense counsel to turn over – or have logged – its own communications with an investigator and third parties.

(Document No. 127, p. 1). Defendants contend that the "subject documents" have either already been produced prior to the pending motion, or "are not required to be produced because they are not responsive to any proper document request" and/or "are protected attorney work product." Id.

In their factual background, Defendants explain that their counsel, Lewis Roca, and Marksmen had discussions

> that determined the scope of Marksmen's investigation, the conversations naturally included Apex's counsel's thoughts, opinions, and strategies on the case, Apex's defenses, and the best form for an investigation that would assist with those. . . . Apex timely produced the Marksmen Report on September 20, 2024, before the close of discovery. *Id.* Notably, the Marksmen Report is not responsive to, and was not produced in response to, any discovery request directed to Apex. Instead, it was produced as a supplemental initial disclosure of material and witnesses Apex may introduce at trial.
>
> In the course of commissioning and reviewing the Marksmen Report, Apex's counsel sent and received a handful of emails with Marksmen (collectively, the "Marksmen Communications"). These Marksmen Communications were drafted by outside counsel in anticipation of trial, and they contain the opinions and mental impressions of counsel for Apex.

(Document No. 127, p.3) (citing Document No. 127-1).

Defendants go on to assert that even though Defendants knew Plaintiffs were "investigating third party uses of the color orange on saw blades," Plaintiffs never issued discovery requests seeking Defendants' counsel's communications with investigators or other saw blade manufacturers. (Document No. 127, p. 4). However, Defendants note that Marksmen produced

9

Marksmen Communications on October 30, 2024, in response to a subpoena from Plaintiffs. Id. This production contained "minimal redactions covering only the opinions and mental impressions of Apex's counsel (in total, about 5 paragraphs out of hundreds of pages)." (Document No. 127, pp. 4-5) (citing Document No. 127-1, p. 4).

In opposition to Plaintiff's motion to compel third-party communications, Defendants first argue that Plaintiffs' demand is moot as to Marksmen Communications, which were produced with minimal redactions the day before the instant motion was filed. (Document No. 127, p. 7).

Second, Defendants argue that even if the Marksmen Communications had not already been produced, such documents are not responsive to any of Plaintiff's RFPs, and therefore, the motion should be denied. (Document No. 127, pp. 7-8) (citing Fed.R.Civ.P. 34 and 37(a)(3)). Defendants note that Plaintiff's RFPs "do not ask for documents concerning third parties" and "do not ask for documents concerning investigations about third parties." (Document No. 127, p. 8) (citing RFPs 26 and 30); see also (Document No. 127, p. 12) (citing RFPs 32, 34, and 38) ("requests seek 'all documents' 'relating to' Plaintiffs' entire litigation against Apex . . . Apex objected to each request as overly broad").

In their third main argument opposing the motion to compel, Defendants assert that the Third-Party Manufacturer Communications are also not responsive to any RFP served by Plaintiffs. (Document No. 127, p. 11). Defendants note that the Third-Party Manufacturer Communications sought by Plaintiffs "consist entirely of communications between Apex's outside counsel and third party companies." (Document No. 127, p. 11). Defendants then re-assert "[t]o be clear, these are not documents created by or in the possession of Apex itself." Id.

Fourth, and finally, Defendants argue that the "Third Party Manufacturer Communications are opinion work-product and therefore immune from discovery." (Document No. 127, p. 13).

Defendants note that "[t]o be considered attorney work product, a document must have been "prepared by an attorney in contemplation of litigation which set[s] forth the attorney's theory of the case and his litigation strategy." (Document No. 127, p. 13) (quoting <u>Hanson v. U.S. Agency for Int'l Dev.</u>, 372 F.3d 286, 292 (4th Cir. 2004). Defendants argue that the "Third-Party Manufacturer Communications include opinions and discussion, by counsel, in communications with third-party saw blade manufacturers for the purpose of investigating Apex's defenses—again, inarguably in anticipation of trial." (Document No. 127, p. 14). Defendants contend that there has been no waiver of the work-product protection of these documents. <u>Id.</u>

In addition, Defendants seek an award of costs and reasonable expenses incurred in opposing the instant motion. (Document No. 127, pp. 15-17).

"Plaintiffs' Reply…" argues that Lewis Roca's communications with Marksmen are relevant, responsive, and not work-product protected. (Document No. 133, p. 2). First, Plaintiffs assert that Defendants' claim that the Marksmen Communications "have already been produced' is "demonstrably false." (Document No. 133, p. 2) (citing Document No. 127, p. 7). Then, in the next sentence, Plaintiffs acknowledge that the Marksmen Communications actually were produced but suggest that Defendants statements about that production were misleading because they omitted information about who produced the Marksmen Communications. <u>Id.</u> Plaintiffs conclude their first argument by asserting that "CMT has not received a complete production from Marksmen . . . Marksmen has yet to supplement its production." (Document No. 133 p. 4).

Next, Plaintiffs argue that communications with Marksmen (and other related documents) it seeks by the instant motion *are* responsive to RFPs No. 25 and 30. (Document No. 133, pp. 4-5). According to Plaintiffs, "the Marksmen Report, the surrounding communications, and all related documents fall squarely within a reasonable reading of RFP Nos. 30 and 25" because

11

Defendants "admit[] that the Marksmen investigation allegedly supports its position that 'third-party use of the color orange on saw blades' may weaken any trademark right CMT has in the color orange." (Document No. 133, p. 5). Regardless of responsiveness, Plaintiffs allege that "Lewis Roca invited discovery into the Marksmen Report by producing it in the first place." Id.

Plaintiffs' third argument asserts that the redactions of the Marksmen Communications produced by Marksmen are improper; moreover, the instant motion seeks "documents **from Lewis Roca**, not Marksmen." Id. Plaintiffs ask the Court not to accept "Lewis Roca's assertions about opinion work product," and instead, to grant its motion or "conduct an in camera review of the requested documents." (Document No. 133, p. 6).

Fourth, Plaintiffs contend that "Lewis Roca's voluntary production of the Marksmen Report waived any claim of work product protection over related materials." (Document No. 133, p. 6). Plaintiffs seem to suggest that because the parties expect the Marksmen Report to be mentioned during a trial, *Defendants* should be compelled to produce all of the communications that *Lewis Roca* had with *Marksmen*, including allegedly privileged communications and all related documents. (Document No. 133, pp. 6-7).

Finally, Plaintiffs argue that Lewis Roca's communications with Third-Party Manufacturers are also "relevant, responsive, and not work-product protected." (Document No. 133, p. 7). Plaintiffs contend that Lewis Roca's communications with Third-Party Manufacturers are responsive to at least RFP Nos. 32, 34, and 38. (Document No. 133, pp. 7-8) (citing Document No. 115, p. 10-11). Plaintiffs further contend that they are "not seeking 'all documents' by this motion, but simply a discrete subset of documents that Lewis Roca[ ] seemingly has already found (or easily could search for) and can produce with minimal burden." (Document No. 133, p. 8).

Plaintiffs also assert that Defendants do not dispute that they did not intend to limit the future disposition of allegedly protected communications, and therefore, have waived work product protections "by not limiting the third parties in their further use of communications." (Document No. 133, p. 9) (citing <u>In re Doe</u>, 662 F.2d 1073, 1081 (4th Cir. 1981)).

Based on the foregoing, Plaintiffs conclude that the Court should "grant CMT's motion in full and compel the production of all correspondence between Lewis Roca and Marksmen (and all related documents), as well as all correspondence between Apex and/or Lewis Roca and third-party saw blade manufacturers (and all related documents)." (Document No. 133, p. 10).

The undersigned is not persuaded that the information Plaintiffs seek to compel here is responsive to Requests for Production Nos. 25 and 30, or any other discovery requests that have been identified to the Court. <u>See</u> (Document No. 115-8, pp. 12-13). Plaintiffs seek to compel the production of "third-party communications" about the Marksmen Report that "details an extensive global search for orange-colored saw blades." (Document No. 115, p. 2). Such third-party communications regarding a global search for orange saw blades is not information that is responsive to Requests for Production seeking "documents, communications, and things, concerning *Plaintiff*, *Plaintiffs*' products, or *Plaintiffs'* registered Trademark." (Document No. 115-8, pp. 12-13) (emphasis added).

It seems to be undisputed that the Marksmen Report addresses *other* orange-colored saw blades in the market – not CMT's orange-colored saw blades. As noted above, Plaintiffs acknowledge that the lengthy report only mentions CMT twice. (Document No. 115, p. 5). The undersigned notes that those two (2) mentions seem to simply be quoting responses made by other entities to an inquiry about whether they carried orange-colored saw blades. <u>See</u> (Document No. 117-1, pp. 53 and 159) ("we [do] not [have] any saw blades in the orange color. the saw blades in

the orange color are CMT tools trademark" and "Angie told us that all of the blades from Craftsman are silver and that they do not have any orange ones. Angie told us there is a brand called CMT which has orange saw blades and that might be what we are looking for."). Plaintiffs, who attached the Marksmen Report to their motion, do not allege there is any other discussion, or any analysis, of CMT's products in the Marksmen Report. See (Document Nos. 115-1 and 117-1).

Even if the Court construes the requested information as responsive to Plaintiffs' Requests for Production served on Defendants, the undersigned is still not convinced that Defendants can or should be required to provide their counsel's communications with third parties, especially where such communications purportedly relate to legal strategies and preparation for litigation. Finally, the undersigned is not persuaded that the information Plaintiffs seek is sufficiently relevant and proportional to the needs of this case to support their motion. Plaintiffs already have the Marksmen Report, and apparently, most of the communications they seek.

In short, the undersigned finds Defendants arguments most persuasive and will respectfully deny Plaintiffs' "Motion To Compel Defendants To Produce Third-Party Communications" (Document No. 114).

### C. "CMT's Motion To Sanction Apex…" (Document No. 204)

Plaintiff CMT's second pending motion seeks sanctions against Defendant Apex pursuant to Fed.R.Civ.P. 37(c)(1) based on an alleged violation of Fed.R.Civ.P. 26(e). (Document No. 204). Rule 26(e) provides:

> **(1) *In General.*** A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:

> **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing;

Fed.R.Civ.P. 26(e).

Plaintiffs contend that Defendants refuse "to supplement a demonstrably inaccurate and incomplete interrogatory response" in which "Apex claimed it spent ▮▮▮▮▮▮ marketing the accused products in 2023." (Document No. 205, p. 1; Document No. 213, p. 1). Plaintiffs further contend that "Apex's advertising expenditures directly contribute to CMT's calculation of remedial advertising damages." Id. (citing Document No. 151-5, p. 45-46). According to Plaintiffs, "it cannot be true that Apex spent ▮▮▮▮▮▮ on advertising in 2023." (Document No. 205, p. 2; Document No. 213, p. 2).

"Following the close of discovery, CMT raised with Apex the contradiction between its extensive marketing and advertising activities in 2023 and its reported ▮▮▮▮▮▮ spent." (Document No. 205, p. 4; Document No. 213, p. 4). Apparently, Defendants confirmed to Plaintiffs that the information was "accurate" and then "declined to provide any further clarity, and refused to update APEX00003387 or provide any underlying data." (Document No. 205, p. 5; Document No. 213, p. 5).

In support of the motion for sanctions, Plaintiffs argue that "a party must supplement an interrogatory response 'in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect.'" Id. (quoting Fed.R.Civ.P. 26(e)(1)(A)). Plaintiffs note that a court may impose "appropriate sanctions" if a party fails to supplement as required. Id. (citing Fed.R.Civ.P. 37(c)(1)). Here, Plaintiffs allege that "Apex was an exhibitor at as many as ▮▮ U.S. trade shows in 2023" and that "[t]rade shows are expensive undertakings." (Document No.

15

205, p. 6; Document No. 213, p. 6) (citing Document No. 202-3). Plaintiffs conclude that Defendants' "failure to account for these costs in its interrogatory response renders the response incorrect and incomplete." Id.

In addition, Plaintiffs allege that Defendants: formed and deployed a marketing team to promote the accused products in 2023, and heavily advertised through social media platforms, its website, product catalogs and an email campaign. (Document No. 205, pp. 6-7; Document No. 213 pp. 6-7).

Next, Plaintiffs re-assert that Defendants' marketing expenditures in 2023 could not have been ███████; moreover, Plaintiffs suggest that Defendants' expenditures in 2021 and 2022 have been underreported. (Document No. 205, p. 11; Document No. 213, p. 11). Based on its arguments and evidence, Plaintiffs conclude that this Court should:

> (i) order that, for purposes of this case, it is established that Apex's advertising expenditures for saw blades was ███████ in 2021, was ███████ in 2022, and was ███████ in 2023; (ii) award CMT its expenses incurred investigating this matter and bringing this motion, including attorney's fees; and (iii) inform the jury that the Court found that Apex wrongly underreported its marketing and advertising expenses to CMT and, as a consequence, the Court had to correct those expense figures.

(Document No. 205, p. 12; Document No. 213, p. 12).

"Defendants' Opposition To Plaintiffs' Motion For Sanctions" begins by emphasizing that Plaintiffs' motion failed to cite "**a single case that supports granting its requested remedy**." (Document No. 231, p. 1).

> CMT cites to no court that imposed discovery sanctions where an alleged failure to supplement was "shown" through the adverse party disagreeing with a document's numbers or based on inferences and conjecture. CMT cites to no court that has imposed discovery sanctions for an alleged failure to supplement where the moving party had all the relevant documents and information nearly a full year before filing its motion. And CMT cites to no court imposing

> the drastic sanctions that CMT requests—namely, fabricating the numbers it would prefer to use, as opposed to the actual, reality-based numbers.

(Document No. 231, p. 2)

Defendants note that the motion for sanctions addresses a financial document ("the Advertising Expenditures Document") that Defendants produced in response to Plaintiffs' Interrogatory No. 6 on May 17, 2024, long before the close of discovery on November 1, 2024. (Document No. 231, pp. 2-3). Defendants further note:

> On February 26, 2025, over three months after the close of fact discovery and over nine months after the relevant documents were produced, CMT sent an email to Apex's counsel that raised, for the first time, its questions about Apex's ▓▓▓▓▓▓ in advertising expenditures for 2023. *Id.* ¶ 14 and Exhibit F. In response to that email, Apex committed to supplementing the advertising expenditures information for the 2024 year at the same time as CMT supplemented its financial information for 2024, and confirmed that the Advertising Expenditures Document was correct. *Id.*, ¶ 15.

(Document No. 231, p. 6; Document No. 235, p. 6).

According to Defendants, the parties held a conference on or about March 20, 2025, and Defendant "Apex reiterated that the [Advertising Expenditures Document] did not need to be corrected, and that if CMT had questions about the numbers in the document it should have addressed those questions during the many hours of deposition time it had with Apex's fact witnesses." (Document No. 231, p. 7). Defendants contend that the parties did not discuss sanctions, and that Plaintiffs filed the instant motion for sanctions two months later, on May 21, 2025, without conferring with them about the motion. Id.

Defendants' brief concisely summarizes their arguments in opposition as follows:

> The Motion fails on multiple grounds. First, sanctions under Rule 37(c) are not granted when parties have disagreements about timely-produced information. Second, Apex did not violate Rule 26(e) because there is no additional information responsive to

17

> CMT's request. Third, CMT cannot show that Apex's alleged failure is not harmless or substantially justified where CMT waited nearly a year to raise a factual dispute with a document produced in May 2024. Fourth, CMT's requested sanctions are not supported by any empirical evidence, are not supported by the record, and go far beyond any sanctions CMT could be entitled to. And finally, CMT did not properly meet and confer pursuant to Local Rule 7.1(b).

(Document No. 231, p. 8).

Defendants suggest that Plaintiffs should have filed, if any motion, a motion to compel. (Document No. 231, p. 9-10; Document No. 235, pp. 9-10) (citing W.C. Eng., Inc. v. Rummel, Klepper & Kahl, LLP, 2020 WL 534532, at *12 (W.D.Va. Feb. 3, 2020) ("Defendants should have challenged this asserted privilege through a motion to compel during discovery pursuant to Rule 37(a)(1), rather than ask the Court now to impose the more draconian remedy of a discovery sanction pursuant to Rule 37(c).").

Defendants note that instead of arguing that "Apex has failed to provide information in response to Interrogatory 6," "CMT claims that Apex has provided incorrect information that it believes is contradicted by alleged evidence." (Document No. 231, p. 11). Moreover, "CMT had ample opportunity to question Apex's many witnesses about those numbers, but it chose not to." (Document No. 231, p. 12). According to Defendants, "there a host of justifications and reasons that could explain" the accuracy of the information it has provided in response to Interrogatory No. 6. Id.

Defendants also persuasively assert that Plaintiffs' motion presents a factual dispute, and that Plaintiffs fail to cite a "court that imposed sanctions for failure to supplement where the parties dispute the facts in contention." Id. Moreover, this factual dispute can be cured when "CMT can present its estimations at trial and can cross examine Apex's witnesses as to the veracity of the

18

produced advertising expenditures and allow the jury to make an informed decision based on all evidence and testimony presented to it." (Document No. 231, p. 16).

In reply, Plaintiffs vehemently express their continuing disbelief as to the accuracy of Defendants' response to Interrogatory No. 6. (Document No. 236). Plaintiffs contend that they have an "avalanche of contradictory evidence" and suggest that based on their briefs this Court should weigh that evidence, find that Defendant's Vice President of Marketing is not credible, and issue sanctions. Id. See also (Document No. 231, p. 5).

Plaintiffs also argue that:

> Court rules—and common sense—do not allow presenting known falsehoods to a jury. Without Court intervention, Apex's discovery violation will go uncorrected and CMT will be forced to try this case using false information (i.e., Apex's advertising spend for 2021-2023).

(Document No. 236, p. 15).

Plaintiffs conclude that Defendants' argument that this "purely factual dispute" "should be presented at trial" to a jury "is sophistry." Id. (quoting Document No. 231, p. 10).

The undersigned respectfully disagrees with Plaintiffs' position. By the instant motion, Plaintiffs are asking the Court to resolve a factual dispute about evidence in this case. Specifically, Plaintiffs seek an order that: (1) determines Defendants' "advertising expenditures for saw blades" – to a precise dollar amount – for the years 2021, 2022, and 2023; (2) awards Plaintiffs fees and expenses; and (3) issues instructions that will be directed at a jury regarding a finding of fact that Defendants inaccurately reported advertising expenses. (Document No. 205, p. 12).

As Defendants noted, Plaintiffs do not provide any caselaw supporting the requested relief. Plaintiffs do cite to Fed.R.Civ.P. 26(e) and 37(c)(1); however, the undersigned is not persuaded that Defendants have committed a discovery violation that requires sanctions pursuant to those

19

Case 3:24-cv-00137-TMR-DCK    Document 246    Filed 07/29/25    Page 19 of 20

Rules. Defendants insist that they have properly responded to Interrogatory No. 6, and that their response is complete and accurate. Contrary to Plaintiffs' position, the undersigned finds that a determination as to whether Defendants' evidence and testimony are complete, accurate, and/or credible, should be decided by a jury.

In short, the undersigned finds Defendants' arguments to be most compelling.

**IT IS, THEREFORE, ORDERED** that "Defendants' Motion To Compel Plaintiffs To Provide A Competent 30(b)(6) Witness Or Supplemental Answer To Interrogatory 13 For Information Relating To Enforcement Activity" (Document No. 110) is **GRANTED**. Plaintiff shall supplement their discovery responses to Interrogatory No. 13 and Topic 27, as described herein, on or before **August 12, 2025**.

**IT IS FURTHER ORDERED** that Plaintiffs' "Motion To Compel Defendants To Produce Third-Party Communications" (Document No. 114) is **DENIED**.

**IT IS FURTHER ORDERED** that "CMT's Motion To Sanction Apex's Failure To Complete And Correct Its Incomplete And Erroneous Response To Interrogatory No. 6" (Document No. 204) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs shall reimburse Defendants for their reasonable costs and fees, pursuant to Fed.R.Civ.P. 37(a)(5)(B), incurred in filing Document Nos. 127 and 231. If counsel are unable to reach an agreement on appropriate reimbursement, Defendants may file a motion seeking such relief.

**SO ORDERED**.

Signed: July 29, 2025

David C. Keesler
United States Magistrate Judge