UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 24-CV-00137-TMR-DCK

| | |
|---|---|
| **CMT USA, INC. AND CMT UTENSILI S.P.A.,**<br><br>Plaintiffs,<br><br>v.<br><br>**APEX TOOL GROUP LLC AND APEX BRANDS, INC.,**<br><br>Defendants. | **OPINION & ORDER** |

Dated: December 18, 2025

Edward B. Davis and Joshua B. Durham, Bell, Davis & Pitt PA, of Charlotte, N.C., Edgar H. Haug, Robert E. Colletti and Mark Basanta, Haug Partners LLP, of New York, N.Y., for plaintiffs CMT USA, Inc. and CMT Utensili S.p.A.

Jason M. Sneed and Megan E. Sneed, Sneed PLLC, of Davidson, N.C., Michael J. McCue, Aaron D. Johnson, David A. Jackson and Joy T.A. Woller, Womble Bond Dickinson (US) LLP, of San Francisco, CA, for defendants Apex Tool Group LLC and Apex Brands, Inc.

TIMOTHY M. REIF, Judge, United States Court of International Trade, Sitting by Designation:

CMT USA, Inc. and CMT Utensili S.p.A. (collectively, "plaintiffs," or "CMT")

bring the instant action against Apex Tool Group LLC and Apex Brands, Inc.

(collectively, "defendants," or "Apex"), alleging: (1) trademark infringement in

violation of the Lanham Act, 15 U.S.C. § 1051, et seq.; (2) common law trademark

infringement; (3) unfair competition in violation of the Lanham Act; (4) common law unfair competition; (5) trademark dilution in violation of the Lanham Act; and (6) trademark dilution in violation of New York law.  *See* Second Am. Compl., ECF No. 37.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"), plaintiffs move for partial summary judgment as to Counts I and II of the Second Amended Complaint, defendants' First, Second and Fourth Counterclaims and defendants' First, Third and Fourth Affirmative Defenses.  Pls.' Mot. for Summ. J. of Trademark Infringement ("Pls. Mot."), ECF No. 157; Mem. in Supp. of CMT's Mot. for Summ. J. of Trademark Infringement ("Pls. Br."), ECF No. 159; Reply Mem. in Supp. of CMT's Mot. for Summ. J. of Trademark Judgment ("Pls. Reply Br."), ECF No. 185.

Defendants cross-move for partial summary judgment on their cancellation counterclaims and on Counts I, II, III and VI of the Second Amended Complaint. Defs.' Mot. for Partial Summ. J. ("Defs. Mot."), ECF No. 161; Defs.' Mem. in Supp. of Defs.' Mot. for Partial Summ. J. ("Defs. Br."), ECF No. 164; Defs.' Reply in Supp. of Defs.' Mot. for Partial Summ. J. ("Defs. Reply Br."), ECF No. 189.

For the reasons discussed below, the court grants in part and denies in part plaintiffs' motion for partial summary judgment and grants in part and denies in part defendants' cross-motion for partial summary judgment.

# BACKGROUND

## I.     Parties in the instant action

CMT Utensili, S.p.A. ("CMT Utensili") is an Italian manufacturer and seller of circular woodworking saw blades and router bits, among other offerings.  Second Am. Compl. ¶¶ 3, 23.  CMT USA, Inc. ("CMT USA") is a North Carolina-based, wholly-owned subsidiary of CMT Utensili.  Second Am. Compl. ¶¶ 2, 4.

Apex Tool Group LLC is a North Carolina-based limited liability company that also offers circular woodworking saw blades.  Second Am. Compl. ¶¶ 6, 32; Defs.' First Am. Answer and Countercls. ("Am. Answer") ¶¶ 6, 32, ECF No. 42. Apex Brands, Inc. is the intellectual property entity of Apex Tool Group LLC. Second Am. Compl. ¶ 7; Am. Answer ¶ 7.  Apex Brands, Inc. is the owner of the trademark registration for the Crescent brand of saw blades at issue here.  Second Am. Compl. ¶ 7; Am. Answer ¶ 7.

## II.    Factual background

CMT owns a trademark registration for "the color orange as applied to . . . [c]ircular blades for power saws for cutting wood."[1]  Registration No. 3,038,625 ("'625 Registration"); *see also* Second Am. Compl. ¶ 23.  The '625 Registration, registered in 2006, provides that the "mark is the color orange, which covers the surface of the power saw blade."  '625 Registration.  Below is an image of a CMT

---

[1] CMT owns a similar registered trademark for the color orange as applied to "[p]ower tool accessories, namely router bits."  *See* Registration No. 2,705,624; Second Am. Compl. ¶ 23.

circular woodworking saw blade with the orange trade dress ("CMT Orange Trade Dress") applied.



Second Am. Compl. ¶ 13.  CMT has used orange on its saw blades for at least 24 years.  *See* Pls. Br. at 1; Defs. Mem. Opp'n to Pls.' Mot. for Partial Summ. J. on Claims I and II and Defs.' Affirmative Defenses ("Defs. Resp. Br.") at 5, ECF No. 179.

The following is an image of one of Apex's circular saw blades offered under its Crescent brand.



Second Am. Compl. ¶ 33.  Defendants describe the color of the Crescent saw blades as "'rawhide' (a reddish-orange color)" and assert that they have used rawhide since 2017.  Countercls. ¶ 16, ECF No. 42.

CMT sent cease and desist letters to Apex on November 5, 2021, November 19, 2021, and December 22, 2021.  Second Am. Compl. ¶ 40.  Apex refused to stop offering the orange Crescent saw blades following its receipt of the letters.  *Id.* ¶ 41; Am. Answer ¶ 41.

## III.  Procedural history

On August 24, 2023, plaintiffs filed their complaint.  Compl., ECF No. 1.  On August 29, 2023, plaintiffs amended their complaint for the first time.  Am. Compl., ECF No. 10.  On December 20, 2023, plaintiffs amended their complaint for the second time.  Second Am. Compl.

On January 3, 2024, defendants filed their answer.  Defs.' Answer and Countercls., ECF No. 38.  On January 23, 2024, defendants amended their answer. Am. Answer.

On February 5, 2024, plaintiffs filed their answer to defendants' counterclaims.  Pls.' Answer to Defs.' Countercls., ECF No. 45.

On April 2, 2025, plaintiffs moved for partial summary judgment, *see* Pls. Mot., and defendants cross-moved for partial summary judgment, *see* Defs. Mot.

## JURISDICTION AND STANDARD OF REVIEW

The court has subject matter jurisdiction over the federal law claims pursuant to 15 U.S.C. § 1125(a) and (c) and 28 U.S.C. § 1331.  The court exercises

supplemental jurisdiction over plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

"Summary judgment is proper when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 522 (4th Cir. 2002) (quoting Fed. R. Civ. P. 56(c)).

"[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Further, a fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

Courts are "required to view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013). To defeat a summary judgment motion, the nonmoving party is required to point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Under this standard, '[t]he mere existence of a scintilla of evidence' is insufficient to withstand an adequately supported summary judgment motion."

*Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 702 (4th Cir. 2023) (alteration in original) (quoting *Anderson*, 477 U.S. at 252).

Finally, "[w]hen cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under [FRCP 56]." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354 (4th Cir. 2011).

## DISCUSSION

### I.    Cancellation

Defendants argue that the court should cancel the '625 Registration "because the CMT Orange Trade Dress[2] is generic."  Defs. Br. at 9.

#### A.    Legal framework

"In any action involving a registered mark the court may . . . order the cancelation of registrations, in whole or in part . . . ."  15 U.S.C. § 1119; *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 155 (2015).  Among other reasons, "a registered mark may be canceled at any time on the grounds that it has

---

[2] As an initial matter, the court notes that the color orange as applied to the CMT saw blades is a trade dress, not a trademark.  The Supreme Court has stated that the "breadth of the definition of marks registrable under [the Lanham Act] . . . has been held to embrace not just word marks . . . and symbol marks, . . . but also 'trade dress'—a category that originally included only the packaging, or 'dressing,' of a product, but in recent years has been expanded . . . to encompass the design of a product."  *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000). More specifically, "[t]he trade dress of a product consists of its 'total image and overall appearance,' including its 'size, shape, *color or color combinations*, texture, graphics, or even particular sales techniques.'"  *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 368 (4th Cir. 1999) (emphasis supplied) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992)).

become generic." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194

(1985).

In light of the fact that "§ 43(a) [of the Lanham Act] provides no basis for

distinguishing between trademark and trade dress," *Two Pesos*, 505 U.S. at 773, the

U.S. Court of Appeals for the Fourth Circuit ("Fourth Circuit") has clarified that

"trademark laws do not protect a generic trade dress." *Ale House Mgmt., Inc. v.*

*Raleigh Ale House, Inc.*, 205 F.3d 137, 142 (4th Cir. 2000); *see also Sunrise Jewelry*

*Mfg. Corp. v. Fred S.A.*, 175 F.3d 1322, 1326 (Fed. Cir. 1999) ("Our review of the

Lanham Act and relevant case law persuades us that the term 'generic name' as

used in 15 U.S.C. § 1064(3), must be read expansively to encompass anything that

has the potential but fails to serve as an indicator of source, such as names, words,

symbols, devices, or trade dress.").  Moreover, it is well-settled that "no special legal

rule prevents color alone from serving as a trademark" or trade dress.  *Qualitex Co.*

*v. Jacobson Prods. Co.*, 514 U.S. 159, 161 (1995).

In determining whether a trade dress is generic, courts consider "whether the

alleged trade dress is a common basic shape or design, unique or unusual in a

particular field, or a mere refinement of a commonly-adopted and well-known form

of ornamentation for a particular class of goods viewed by the public as a dress or

ornamentation for the goods." *Ashley Furniture*, 187 F.3d at 371 (cleaned up)

(quoting *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342, 1344 (C.C.P.A.

1977)); *see also* 1 *McCarthy on Trademarks & Unfair Competition* ("McCarthy") §

8:6.50 (5th ed.) ("As applied to trade dress, 'generic' is used as a synonym for

'common' or 'ordinary.'"). A trade dress "may be deemed generic where it is 'at a minimum, so common in the industry that it cannot be said to identify a particular source.'" *In re Odd Sox LLC*, No. 86297488, 2019 WL 4785719, at *7 (T.T.A.B. Sep. 30, 2019) (quoting *Stuart Spector Designs, Ltd. v. Fender Musical Instruments Corp.*, 94 U.S.P.Q.2d 1549, 1555 (T.T.A.B. 2009)); *Milwaukee Elec. Tool Corp. v. Freud Am., Inc.*, No. 92059637, 2019 WL 6522400, at *8 (T.T.A.B. Dec. 2, 2019).

Finally, the Fourth Circuit has recognized that "summary judgment is appropriate in genericness cases when the evidence 'is so one-sided that one party must prevail as a matter of law.'" *Interprofession du Gruyere v. U.S. Dairy Exp. Council*, 61 F.4th 407, 416-417 (4th Cir. 2023) (quoting *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 542 (4th Cir. 2004)).

### B.    Analysis

The genericness determination involves a two-step inquiry:

> First, what is the genus of goods or services at issue? Second, is the term sought to be registered or retained on the register understood by the relevant public primarily to refer to that genus of goods or services?

*H. Marvin Ginn Corp. v. Internat'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 990 (Fed. Cir. 1986); *see also Snyder's Lance, Inc. v. Frito-Lay North Am., Inc.*, 542 F. Supp. 3d 371, 381-382 (W.D.N.C. 2021).

For the reasons discussed below, the court can determine only: (1) the "genus" prong; and (2) the "relevant public" element of the public perception prong. The "relevant public's" perception is a factual determination of the kind left properly to a jury.

### 1.    Genus

The court concludes that the genus of goods at issue is "circular blades for power saws for cutting wood."

In determining the proper genus, courts "focus[] on the description of [goods or] services set forth in the certificate of registration." *Magic Wand, Inc. v. RDB, Inc.*, 940 F.2d 638, 640 (Fed. Cir. 1991); *see also In re Cordua Rests., Inc.*, 823 F.3d 594, 602 (Fed. Cir. 2016).

The '625 Registration identifies the relevant goods as "circular blades for power saws for cutting wood." '625 Registration. Parties agree that the genus of the goods is limited to "circular saw blades." Defs. Br. at 10; Pls. Reply Br. at 3-4. Parties disagree, however, as to whether the genus should "encompass[] circular saw blades 'as a whole,' rather than just those that cut wood." Pls. Mem. Opp'n to Defs. Mot. for Partial Summ. J. ("Pls. Resp. Br.") at 4, ECF No. 176 (quoting Defs. Br. at 10).

Defendants argue that "[s]aw blades for cutting different materials are not separate product categories, but instead different *species* of the same genus." Defs. Br. at 10. Defendants explain that CMT "sell[s] circular saw blades for cutting materials other than wood, with trade dress identical to the trade dress for the circular saw blades for cutting wood at issue in this case." *Id.* Defendants add that "those saw blades are sold through the same retail outlets and to the same consumers as the wood-cutting saw blades." *Id.* For that reason, defendants propose a genus of "blades for power saws." *Id.* In addition, defendants accuse

plaintiffs of "gaming" the genericness analysis "by selecting an artificially narrow genus" by way of an amendment to the identification of goods in the '625 Registration.  Defs. Reply Br. at 11.

However, plaintiffs' post-publication limitations to the identification of goods for the '625 Registration are non-controversial among parties.

On February 7, 2022, CMT filed with the U.S. Patent and Trademark Office ("USPTO") a Section 7 Request to amend the '625 Registration.[3]  *See* '625 Registration.  CMT requested that the identification of goods be changed from "blades for power saws for cutting wood" to "*circular* blades for power saws for cutting wood."  *Id.* (emphasis supplied).  The identification disputed here, "for cutting wood," predates the Section 7 Request and was undisturbed by it.  *See id.* On August 30, 2022, the USPTO granted the request and issued the updated certificate of registration.[4]  *See id.*

As stated, parties agree that the genus of the goods is limited to "circular saw blades."  Defs. Br. at 10; Pls. Resp. Br. at 4.  And defendants fail to demonstrate that the court should look beyond the identification of goods in the '625

---

[3] Pursuant to 15 U.S.C. § 1057(e), "[u]pon application of the owner and payment of the prescribed fee, the Director for good cause may permit any registration to be amended or to be disclaimed in part: *Provided,* That the amendment or disclaimer does not alter materially the character of the mark."  Such an application is known as a "Section 7 Request."  *Id.*

[4] As stated above, plaintiffs sent cease and desist letters to defendants on November 5, 2021, November 19, 2021, and December 22, 2021.  Second Am. Compl. ¶ 40.

Registration.  Accordingly, the proper genus for the Orange Trade Dress is "circular blades for power saws for cutting wood," as provided in the '625 Registration.

### 2.     Public perception

The court is unable to rule fully on the public perception prong of the genericness inquiry as a result of ongoing and material factual disputes.  However, the court is able to define the "relevant public."

In the context of color trade dress, courts consider "whether the color sought to be . . . retained on the register is understood by the relevant public primarily as a category or type of trade dress for [the] genus of goods."  *In re PT Medisafe Techs.*, 134 F.4th 1368, 1372 (Fed. Cir. 2025) (quoting *Milwaukee*, 2019 WL 6522400, at *9).

The U.S. Court of Appeals for the Federal Circuit has stated that the "relevant public" for purposes of determining public perception encompasses both "actual and potential purchasers of goods or services."  *Loglan Inst. v. Logical Language Grp., Inc.*, 962 F.2d 1038, 1041 (Fed. Cir. 1992) (cleaned up) (quoting *Magic Wand*, 940 F.2d at 641).  Evidence of the relevant public's understanding of the trade dress "may be obtained from any competent source, such as purchaser testimony, consumer surveys, listings in dictionaries, trade journals, newspapers, and other publications."  *In re Merrill Lynch, Pierce, Fenner, and Smith, Inc.*, 828 F.2d 1567, 1570 (Fed. Cir. 1987); *Loglan Inst.*, 962 F.2d at 1041.

In *Milwaukee*, the Trademark Trial and Appeal Board ("TTAB") reasoned as follows:

> Some blades are general-purpose blades for cutting a variety of
> materials whereas other blades are more specialized for cutting only

wood, metal, or concrete. Nevertheless . . . most of these saw blades travel in the same channels of trade and are purchased by the same consumers; therefore, the entire universe of saw blades is relevant for determining consumer perception regarding Freud's marks. That is, the range of available saw blade types affects consumer perception, even if a particular saw blade is not an exact match for a particular tool or a consumer's intended use.

2019 WL 6522400, at *3. The court follows the TTAB in this reasoning, especially given the factual similarities between *Milwaukee* and the instant case. *See id.* Accordingly, the "relevant public" in this case consists of actual and potential consumers of circular saw blades for power saws, regardless of the material to be cut.

With respect to the perception of the relevant public, defendants argue that "[e]ven when all evidence is viewed in a light most favorable to CMT, there is no dispute that the CMT Orange Trade Dress is extremely common in the saw blade industry, since numerous companies use a wide variety of orange shades on their saw blades." Defs. Br. at 11.

By contrast, plaintiffs argue that summary judgment is appropriate in their favor because there is no genuine dispute that the CMT Orange Trade Dress is not generic. *See* Pls. Resp. Br. at 2-10.

However, for the reasons discussed below, a ruling on all aspects of the public perception question would require the court to engage in the kinds of factual determinations that are inappropriate at the summary judgment stage. *See Anderson*, 477 U.S. at 248-249.

The Marksmen Report, a third-party document produced by Marksmen Brand Protection Services ("Marksmen"), purports to provide examples of third-party uses of the color orange on circular saw blades. The report "was prepared at the request and direction" of defendants' counsel. Defs. Br., Ex. C ("Marksmen Report") at APEX00025075; Decl. of Robert E. Colletti, Esq. in Supp. of Pls.' Mem. in Opp'n to Defs.' Mot. for Partial Summ. J. and Mot. to Excl. the Op. and Test. of Dr. Thomas Maronick ("Colletti Opp'n Decl."), Ex. XX at 72:4-14, ECF No. 171. Between June 20, 2024, and June 24, 2024, Marksmen purchased 35 different products from 28 different manufacturers of power tools. Marksmen Report at APEX00025076-9. For several of the products purchased, the Marksmen investigator contacted the customer service lines of the manufacturer and retailers to inquire as to whether the manufacturer offered orange saw blades. *See, e.g.*, *id* at APEX00025079, APEX00025115, APEX00025232, APEX00025238-9, APEX00025292-3.

Defendants assert that "at least 18 other brands of circular saw blades sold in the U.S. use some shade of orange as their dominant color, and of those, nine sell wood-cutting circular saw blades." Defs. Br. at 17. Defendants in their brief highlight from the Marksmen Report five "[r]epresentative samples of . . . third-party brands using orange on circular saw blades for cutting wood in the U.S." Defs. Br. at 3. The following are images of the purportedly representative samples:



| Ridgid | Evolution | Century | Wen | Yolan |

*Id.*; *see also* Marksmen Report at APEX00025084, APEX00025099, APEX00025102, APEX00025111, APEX00025119, APEX00025226; Countercls. ¶ 51 (other set of purported examples of third-party use of the color orange on saw blades).

Plaintiffs launch a series of objections to defendants' samples. Plaintiffs object that "there is a genuine dispute—even among Apex personnel—whether [the Ridgid blade] is orange in color." Pls. Resp. Br. at 6-7. In support of this objection, plaintiffs cite the deposition testimony of Scott Bublitz, Senior Manager of Industrial Design at Apex, in which Mr. Bublitz states that the "Ridgid 6.5 Product" is not orange. *See* Colletti Opp'n Decl., Ex. KK at 64:10-65:17.

The court declines to resolve the dispute as to the color of the relevant Ridgid saw blade. Doing so would require the court to engage in a contested factual determination, which would be inappropriate at the summary judgment stage. *See* *Anderson*, 477 U.S. at 249. The same is true for the other third-party saw blades in the Marksmen Report and defendants' subsequent distillation of that report. *See* Defs. Reply Br., Ex. A.

In the absence of agreement as to the validity and truthfulness of the Marksmen Report, *see* Pls. Resp. Br. at 6, the court would be required to examine

and scrutinize each saw blade to determine whether: (1) it is in fact orange; and (2) the effect or lack thereof on relevant public perception. Such a thoroughgoing, fact-intensive task is best left to a jury. *See Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); *see also Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 959 (4th Cir. 2022) ("Ordinarily in the summary judgment context, the court 'cannot weigh the evidence or make credibility determinations.'" (citation omitted)).

Plaintiffs argue also that "even if there was indisputable evidence that . . . Century, Wen, and Yolan use orange in some relevant way—which there is not—each of their uses would be 'inconsequential' and could not render CMT's Orange Mark generic." Pls. Resp. Br. at 8 (citation omitted). Plaintiffs explain that "Apex's own analysis found that orange covers only 34.4% of one side of Century's blade . . . 21.48% of one side of Wen's blade . . . and 39.4% of Yolan's blade." *Id.* at 7. Plaintiffs make a similar percentages-based argument with respect to the market share of defendants' "other proffered blades." *Id.* at 8.

The court is not able to continue this inquiry either. As with the question of whether third-party saw blades are in fact orange, divining the relationship between the proportion of orange on a third-party saw blade and the perception of the relevant public would require factual determinations best left to a jury. *See Anderson*, 477 U.S. at 249. The same is true of assessing market share. *See Milwaukee*, 2019 WL 6522400, at *22 ("A finding of genericness does not require

assigning numerical values to quantify competitive use, so long as the evidence indicates sufficient consumer exposure to the goods bearing competitive use of the designation (here, a color) at issue.").

For their part, defendants draw an analogy between the instant case and *Milwaukee*, a case in which the TTAB concluded that the "color red as applied to substantially the entire surface of cutting tools" was generic. *See* Defs. Br. at 12-14; *Milwaukee*, 2019 WL 6522400, at *1. However, important evidentiary differences prevent the court from reaching a similar conclusion of genericness.

In determining that "the color red applied to saw blades" was generic, the TTAB considered: (1) "[e]xtensive catalog and sales evidence" of both parties' use of the color red on tools and accessories over the course of decades; (2) 12 examples of third-party circular saw blades "colored red, in whole or in significant part"; (3) 20 examples of third-party red reciprocal saw blades; (4) 12 examples of third-party red jigsaw and sabre saw blades; (5) seven examples of third-party red hole saws; and (6) two examples of third-party "trademark registrations for marks comprising images of red saw blades." *Milwaukee*, 2019 WL 6522400, at *12-21. The TTAB explained that "the evidence establishes that a considerable number of third parties advertise or sell red saw blades and that red saw blades of various types are widely available to consumers through a variety of sources, such as retail stores, tool catalogs, and manufacturer or retail websites." *Id.* at *22.

Parties in the instant case have failed to proffer a similarly fulsome and undisputed body of evidence that would allow the court to rule on genericness one

way or another.  Much of the evidence proffered is indicative of what an *employee or retained expert* might think about whether the Crescent or third-party saw blades are orange, but it does not establish definitively the perception of the relevant public.  *See, e.g.*, Decl. of Robert E. Colletti, Esq. in Supp. of Pls.' Mot. for Summ. J. of Trademark Infringement ("Colletti Supp. Decl."), Ex. A (deposition of CEO of CMT Utensili), ECF No. 150; *id.*, Ex. B (deposition of president of CMT USA); *id.*, Exs. F, L, M, N, O, P, Q, R, S (expert reports and depositions in which parties' employees and retained experts opine on the color of the saw blades).  The rest of the evidence is directed to other issues that are not relevant to the genericness inquiry, such as the alleged likelihood of confusion between CMT and Apex saw blades or the alleged harm to the CMT brand.  *See, e.g.*, *id.*, Exs. C, D, E, T, Y.

Such ambiguity is fatal not only to defendants' summary judgment motion, but to plaintiffs' as well.  The determination of the *Milwaukee* TTAB was based upon overwhelming and undisputed evidence that was dispositive of genericness.  *See Milwaukee*, 2019 WL 6522400, at *21.  Without similarly "one-sided" evidence, it would be improper for this court to weigh evidence and grant either parties' motion for summary judgment.  *See Interprofession du Gruyere*, 61 F.4th at 416 (recognizing that "summary judgment is appropriate in genericness cases when the evidence 'is so one-sided that one party must prevail as a matter of law'" (citation omitted)).

For these reasons, the court denies defendants' cross-motion for partial summary judgment as to defendants' counterclaims for cancellation of the '625

Registration on a genericness theory (Third Counterclaim) and plaintiffs' claims for trademark infringement (Counts I-III) *as well as* plaintiffs' motion for partial summary judgment as to plaintiffs' trademark infringement claims (Counts I-II). Ruling on the infringement claims would require the court to determine whether CMT "owns a valid mark," *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012), which would in turn implicate defendants' genericness defense to the infringement claims.  *See* Defs. Resp. Br. at 3-6.  That genericness defense is based on the same reasoning as the genericness theory for the cancellation counterclaim, which, as stated above, a jury should analyze.  *Compare id. with* Defs. Br. at 9-14.

## II.   Functionality

The court concludes that defendants fail to establish their cancellation counterclaim on a functionality theory.

In their first counterclaim, defendants argue that "[t]he use of orange on sawblades is functional, and as such, orange on sawblades as a single unitary color is not eligible for trademark protection."  Countercls. ¶ 59.  Defendants explain that "[t]he use of orange on saw blades serves a utilitarian function by, among other things, ensuring that the blades are highly visible, helping users avoid injury."  *Id*. ¶ 56.

Plaintiffs argue that summary judgment is appropriate in their favor because Apex has conceded that the CMT Orange Trade Dress is not functional.  Pls. Br. at 23.  Plaintiffs explain that "[b]y obtaining the '625 Registration, CMT has already proven that its Orange Mark is not functional, and Apex cannot rebut the

presumption of validity." *Id.* In support, plaintiffs insist that "Apex's Rule 30(b)(6) designee explicitly admitted" that the color of the coating is not functional, that "Apex's other fact witnesses" and "Apex's experts agreed" and that "Apex's witnesses also confirmed that circular woodworking saw blades come in a rainbow of different colors." *Id.* at 23-24.

In response, defendants argue that "[t]here are genuine issues of material fact with respect to the functionality of the CMT Orange Trade Dress" and that "[t]his factual dispute cannot be resolved at the summary judgment stage, as it hinges on the credibility and weight of the conflicting testimony regarding the color's function." Defs. Resp. Br. at 21-22. Defendants explain that "Apex has produced evidence in the record showing that the use of a highly visible orange color on saw blades provides a safety benefit in construction settings." *Id.* at 22 (citing *id.*, Ex. B., Ex. 18 at 86:25-87:16; *id.*, Ex. 19 at 47:198-48:17). And, according to defendants, "functionality can be found when a trade dress is more attractive to consumers." *Id.*

The Supreme Court has stated that "[i]n general terms, a product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Qualitex*, 514 U.S. at 165 (alteration in original) (internal quotation marks omitted) (quoting *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 850 n.10 (1982)); *see also Tools USA & Equip. Co. v. Champ Frame Straightening*

*Equip., Inc.*, 87 F.3d 654, 657 (4th Cir. 1996).  "The non-functionality requirement

for . . . trade dress protection 'prevents trademark law, which seeks to promote

competition by protecting a firm's reputation, from instead inhibiting legitimate

competition by allowing a producer to control a useful product feature.'"  *Tools USA*,

87 F.3d at 658 (quoting *Qualitex*, 514 U.S. at 164).  Finally, "if multiple other colors

can serve the same purpose, that weighs against a finding of functionality."

*SafeRack, LLC v. Bullard Co.*, 350 F. Supp. 3d 438, 453 (D.S.C. 2018), *report and*

*recommendation adopted*, No. 2:17-CV-1613-RMG, 2019 WL 460699 (D.S.C. Feb. 5,

2019); *accord Moldex-Metric,Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 887 (9th Cir.

2018).

    Plaintiffs cite to the deposition of Apex's Rule 30(b)(6) designee,[5] in which he

affirms that Apex's brand guidelines do not "speak to the use of the color [rawhide

orange] as a safety feature" and that "blades that are not orange" are no less

dangerous than orange saw blades.  Colletti Supp. Decl., Ex. P at 90:5-91:4.  Such

statements are echoed by other witnesses and experts of Apex.

    Ryan Kropfelder, Senior Product Manager for Apex Tool Group, LLC, stated

that "after a brief skim" of the Crescent brand guidelines, he "[did] not see anything

regarding rawhide in association with safety."  *Id.*, Ex. N at 77:8-20.  And when

---

[5] FRCP 30(b)(6) ("Rule 30(b)(6)") provides that a subpoenaed organization "must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify."  In this case, Apex selected Brendan Walsh, Director of Product Management for the Crescent brand.  Colletti Supp. Decl. at ¶ 18.

asked if there is "any functional advantage of using the rawhide color on Crescent's saw blades," Mr. Kropfelder answered that "[t]here is advantages [sic] to the coating material, composition of the coating, but not in relation to the color." *Id.* at 203:16-20. Curtis Weber, Vice President of the Crescent Tools Brand, stated that he is "not aware of any" "studies or tests that show that the color orange improves the performance of saw blades" and noted that he has seen a myriad other colors applied to the saw blades of other brands. *Id.*, Ex. Q at 158:20-159:18.

Apex's experts made similar statements. *See e.g.*, *id.*, Ex. Y at 3 (stating that anti-sticking functionalities are "related to the technical capacities of the blade rather than the color orange" and that "third-party market reports for the wood-cutting circular saw blade industry do not refer to color as a market segment"). In one exchange, Apex's industry expert stated the following:

Q.      All right. Are there any technical reasons why a blade must be a specific color?

A.      Technical reasons, no.

Q.      Are there any industry safety requirements that require that a blade must be a certain color?

A.      No.

Q.      And you're well aware that there are blades on the market with different colors, right?

A.      That is correct.

*Id.*, Ex. R at 121:25-122:8.

Elsewhere in Mr. Walsh's testimony, he touted the "inherent qualities of safety with the orange." *See id.*, Ex. P at 87:4-16. Mr. Walsh explained that "[i]n a job site, [orange is] very visible, people are aware of the saw blade which is dangerous. So that's an advantage." *Id.* at 84:14-16. However, Mr. Walsh agreed later that other manufacturers use colors like red, yellow and silver in saw blades and that safety was not discussed as a reason for selecting rawhide. *See id.* 89-90. And in Mr. Weber's testimony, he argued that the "bright orange color" of the Crescent tools are useful in situations in which "users lose their tools inside a bag and the orange helps create a contrast against the dark tool versus the interior of the bag." *Id.*, Ex. Q at 47:18-48:2. But defendants have not introduced a reason that this finding of functionality is tied inherently to the color orange.

Accordingly, defendants have failed to demonstrate that there is a genuine dispute of material fact as to the alleged functionality of the CMT Orange Trade Dress. Several of Apex's officials and experts agree that the color orange as applied to saw blades is nonfunctional, and defendants fail to support with facts or law the notion that "functionality can be found when a trade dress is more attractive to consumers." Defs. Resp. Br. at 22.

The court grants plaintiffs' motion for partial summary judgment as to defendants' first counterclaim.

## III.   Fraud and Unclean Hands

The court concludes that defendants fail to establish their cancellation counterclaim on a fraud theory and their unclean hands affirmative defense.

The Lanham Act authorizes courts to cancel a trademark or trade dress registration that was obtained fraudulently.  *See* 15 U.S.C. § 1064(3).  To prevail on a fraud theory, a party "must prove by clear and convincing evidence that [the trade dress holder] 'knowingly made false, material representations of fact' and intended to deceive the [USPTO]."  *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 420 (4th Cir. 1998) (alteration omitted) (quoting *Metro Traffic Control, Inc. v. Shadow Network Inc.*, 104 F.3d 336, 340 (Fed. Cir. 1997)).  As a result, courts have recognized that "[a] party seeking cancellation of a trademark registration for fraudulent procurement bears a heavy burden of proof."  *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009).

In their second counterclaim, defendants argue that "[i]n its submissions seeking federal registration of the [CMT Orange Trade Dress], CMT made incomplete, misleading and fraudulent assertions that it knew to be false and with intent to deceive the USPTO."  Countercls. ¶ 63.

On May 21, 1999, CMT filed an application seeking to register the CMT Orange Trade Dress.  *Id.* ¶ 20; Answer to Countercls. ¶ 20.  On February 7, 2000, the USPTO issued an office action refusing CMT's application on multiple grounds.  *See* Countercls., Ex. 1.  The USPTO stated that "[a]lthough the examining attorney has refused registration, [CMT] may respond to the refusal to register by submitting evidence and arguments in support of registration."  *Id.* at 2.  The USPTO continued that CMT "must provide . . . information to permit the examining attorney to reach an informed judgment concerning the registrability of the

proposed mark." *Id.* Among other things, the USPTO requested that CMT "establish that the proposed mark has become distinctive of the goods, that is, that it has acquired distinctiveness as a source indicator." *Id.*

In its July 24, 2000 response, CMT attached a copy of a federal district court judgment rendered in connection with a trademark owned by CMT on "orange color on router bits." *Id.*, Ex. 2 at 3, 6-7. The jury in that action determined that the router bits trademark was nonfunctional and had acquired a secondary meaning. *Id.* at 8-9. The USPTO then rejected the judgment as "insufficient to establish that consumers perceive[d] the color orange as a source indicator for the applicant's goods." *Id.*, Ex. 3 at 2.

Defendants object to the fact that CMT's response involved an argument that the judgment "is binding on the Examining Attorney and the Board" because "the issues which [were] present in the . . . application concerning the color orange on blades for power saws . . . were properly and completely addressed by the jury and the Court in th[e] related District Court action." *Id.*, Ex. 4 at 3 (citing T.B.M.P. § 510.02(a)). Defendants argue that the TTAB document that CMT cited in support, T.B.M.P. § 510.02(a), "outlines procedures for suspending USPTO proceedings when a federal civil action is pending which would be dispositive of issues in the USPTO proceeding" and that "CMT's application involved no issue of suspension." Countercls. ¶¶ 37-38.

However, defendants' argument is unavailing. Even assuming that CMT did misstate the T.B.M.P. provision to the USPTO, such a misstatement would

constitute a legal error rather than a "knowingly made[,] false, material representation[] of fact' . . . intended to deceive the [USPTO]." *Resorts of Pinehurst,* 148 F.3d at 420. The same is true of CMT's refusal of the USPTO's request for information as to "whether competitors produce the goods in the identified color and in colors other than the identified color." Countercls., Ex. 1 at 2.

In its July 24, 2000 response, CMT stated that "any response to these [competitor] inquiries is unnecessary in view of the relevant court findings discussed above . . . and also in view of the remarks herein and of record." *Id.*, Ex. 2 at 5.

Defendants characterize this refusal to provide competitor information as an intentional withholding of "crucial information from the USPTO." Defs. Resp. Br. at 23. But, however misguided, CMT's response is a statement of law, specifically that the attached judgment on the router bits trademark would obviate the need for information on competitors. *See* Countercls., Ex. 2 at 5.

Accordingly, defendants fail to establish that CMT "'knowingly made false, material representations of fact' and intended to deceive the [USPTO]." *Resorts of Pinehurst,* 148 F.3d at 420; *see also Smith Int'l, Inc. v. Olin Corp.*, 209 U.S.P.Q. 1033, 1044 (T.T.A.B. 1981) ("[T]he very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party."). Defendants' unclean hands affirmative defense is based on the same theory, *see* Defs. Resp. Br. at 23, and fails for the same reasons.

In light of the foregoing, the court grants plaintiffs' motion for partial summary judgment as to defendants' second counterclaim and first affirmative defense.

## IV.    Abandonment

The court concludes that defendants fail to establish their cancellation counterclaim on an abandonment theory.

In its fourth counterclaim, defendants argue that "CMT has abandoned any rights it may have had" in the CMT Orange Trade Dress because "for a period of at least three consecutive years prior to the date it filed its Complaint against Apex, CMT did not sell or offer for sale monochromatic orange woodworking sawblades." Countercls. ¶ 76, 80.  Defendants allege that "CMT's lack of intent to resume use of the [Orange Trade Dress] is indicated, in part, by its multi-decade practice of offering for sale products which are not monochromatically orange." *Id.* ¶ 78.

Pursuant to 15 U.S.C. § 1127, a trademark or trade dress "shall be deemed to be 'abandoned' if either of the following occurs:"

> (1) When its use has been discontinued with intent not to resume such use.  Intent not to resume may be inferred from circumstances.  Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

> (2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark.  Purchaser motivation shall not be a test for determining abandonment under this paragraph.

Defendants raise only the first abandonment theory in the pleadings, so the court will decline to consider the second theory. *See George & Co. LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 401 (4th Cir. 2009) ("The ultimate burden of proof remains always on the party claiming a mark has been abandoned.").

Plaintiffs argue that "CMT has consistently and without interruption used its Orange Mark since 1997." Pls. Br. at 24. Plaintiffs argue also that "[t]here is no requirement that CMT use its [Orange Trade Dress] without additional elements, and any such requirement would be commercially impracticable, given how saw blades are often sold without packaging." *Id.* (cleaned up).

Defendants do not respond to these arguments in their briefing and thereby concede them. Defs. Resp. Br. at 21; *see Jimoh v. Charlotte-Mecklenburg Hous. P'ship, Inc.*, No. 3:08-CV-495-RJC-DCK, 2010 WL 1924480, at *3 (W.D.N.C. May 12, 2010), *aff'd*, 428 F. App'x 241 (4th Cir. 2011) ("Against . . . well-reasoned arguments for summary judgment, the [non-moving party's] failure to respond amounts to an effective waiver of [those] claims."). Instead, defendants raise a new abandonment theory based upon the alleged genericness of the CMT Orange Trade Dress. *See* Defs. Resp. Br. at 21 (claiming that "there is significant evidence in the record that CMT's two decades of no enforcement . . . have resulted in the use of orange on saw blades becoming generic").

The court declines to consider defendants' new theory because it was not raised in the pleadings. *See* Countercls. ¶¶ 73-82; *see La Michoacana Nat., LLC v. Maestre*, No. 317CV00727RJCDCK, 2021 WL 4073292, at *11 (W.D.N.C. Sep. 7,

2021) (noting that "[c]ourts in this circuit have excluded new legal theories espoused for the first time on summary judgment" and not included in any pleading). Accordingly, the court grants plaintiffs' motion for partial summary judgment as to defendants' fourth counterclaim.

## V.   Laches

The court concludes that defendants fail to establish their affirmative defense of laches.

"In a trademark case, courts may apply the doctrine of estoppel by laches to deny relief to a plaintiff who, though having knowledge of an infringement, has, to the detriment of the defendant, unreasonably delayed in seeking redress." *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 461 (4th Cir. 1996).

The Fourth Circuit has stated that, in determining the laches question, courts should consider:

> (1) whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user was unduly prejudiced by the owner's delay.

*Brittingham v. Jenkins*, 914 F.2d 447, 456 (4th Cir. 1990); *What-A-Burger of Va., Inc. v. Whataburger, Inc. of Corpus Christi, Tex.*, 357 F.3d 441, 448-449 (4th Cir. 2004).  The Fourth Circuit has cautioned that "the key question, for purposes of estoppel by laches, is not simply whether there has been some delay, but whether that delay was *unreasonable*." *What-A-Burger*, 367 F.3d at 449.

In the instant case, plaintiffs sent cease and desist letters to defendants on November 5, 2021, November 19, 2021, and December 22, 2021.  Second Am. Compl.

¶ 40.  Parties agree that these letters mark the starting point for measuring the delay.  *See* Am. Answer at 10-11; Pls. Br. at 25; Defs. Resp. Br. at 22-23.

On or about May 2023, Apex began to sell orange Crescent saw blades in Menards, the same chain of home improvement stores that carries CMT saw blades. Am. Answer ¶¶ 43-44; Countercls. ¶ 52.  On August 24, 2023, plaintiffs filed their complaint.  *See* Compl.

Defendants argue that the "Second Amended Complaint is barred in whole or in part by the doctrine of laches" because "CMT inexcusably delayed bringing this action by over 20 months after Apex's response to CMT's last [cease and desist] letter."  Am. Answer at 10.

"[I]t is the equitable defense of laches, not a statute of limitations that is the measure for unreasonable delay in Lanham Act cases."  4 McCarthy § 31:34.  That said, "[b]ecause the federal Lanham Act has no statute of limitations, courts use the most analogous state statute of limitations as a measure of what constitutes an unreasonable delay to determine a defense of laches."  *Id.*; *see also Reed v. United Transp. Union*, 488 U.S. 319, 334 (1989) (acknowledging the "well-established rule that statutes of limitations for federal causes of action not supplied with their own limitations periods will be borrowed from state law").

The instant action was filed originally in the U.S. District Court for the Southern District of New York and was transferred later to this Court.  *See* Compl.; Mem. Op'n & Order, ECF No. 44.  However, the court need not determine which is the applicable state statute of limitations because a 20-month delay is far short of

the statutes of limitations for both New York (six years) and North Carolina (four

years). *See Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, 897

F.3d 413, 419 (2d Cir. 2018) (holding that the New York six-year statute of

limitations for fraud claims applies to guide a presumption of laches in a trademark

infringement action); *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 796-

797 (4th Cir. 2001) (affirming the borrowing of the North Carolina four-year statute

of limitations provided in the North Carolina Unfair Trade Practices Act in a

trademark infringement action).

Defendants' affirmative defense of laches fails. *See High Volatage Beverages,*

*LLC v. Coca-Cola Co.*, No. 3:08CV367, 2011 WL 831523, at *4 (W.D.N.C. Mar. 3,

2011) (defendant failed to establish laches where "the period of delay for laches

purposes [was] at most 16 months, well within the applicable limitations period of

four years for infringement claims"). In reaching this conclusion, the court is

mindful that defendants were on notice starting in November 2021 of plaintiffs'

position due to the cease and desist letters.

The court grants plaintiffs' motion for partial summary judgment as to

defendants' affirmative defense of laches.

## VI.   Waiver

The court concludes that defendants fail to establish their affirmative defense

of waiver.

Defendants allege that "CMT waived its right to bring this lawsuit after 20 months of inaction and through its failure to object to Apex's position that the matter had been closed." Am. Answer at 10.

Plaintiffs argue that the Lanham Act "does not recognize a waiver defense to infringement." Pls. Br. at 25 (citing 15 U.S.C. § 1115(b)).

Defendants do not respond to plaintiffs' argument and argue instead that the waiver defense survives because it is predicated on the same conduct that undergirds the laches defense. Defs. Resp. Br. at 23.

Given that the laches defense fails and defendants' "failure to respond" to plaintiffs' waiver-related arguments "amounts to an effective waiver" of its affirmative defense, *Jimoh*, 2010 WL 1924480, at *3, the court grants plaintiffs' motion for partial summary judgment as to defendants' affirmative defense of waiver.

## VII.  Trademark dilution

Defendants request also summary judgment on plaintiffs' federal trademark dilution claim (Count VI). *See* Defs. Mot.; *see also* Second Am. Compl. at 16-17. By contrast, plaintiffs argue that there is a genuine dispute of material fact such that summary judgment is inappropriate. Pls. Resp. Br. at 26.

The court concludes that the CMT Orange Trade Dress is not eligible for federal trademark dilution protection.

Pursuant to federal anti-dilution law,

[T]he owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against

> another person who, at any time after the owner's mark has become
> famous, commences use of a mark or trade name in commerce that is
> likely to cause dilution by blurring or dilution by tarnishment of the
> famous mark, regardless of the presence or absence of actual or likely
> confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1).

Because defendants challenge only the purported fame of the CMT Orange

Trade Dress, *see* Defs. Br. at 28, the court will confine its analysis to that threshold

issue.

A trademark or trade dress is famous "if it is widely recognized by the

general consuming public of the United States as a designation of source of the

goods . . . of the mark's owner."  15 U.S.C.  § 1125(c)(2)(A).  The Fourth Circuit has

stated that "a mark must be truly prominent and renowned to be granted the

extraordinary scope of exclusive rights created by the Federal Antidilution Act."

*Rosetta Stone*, 676 F.3d at 171 (quoting 4 McCarthy § 24:104); *LBLA Beauty, LLC v.*

*11177753 Can. Corp.*, No. 1:23-CV-665 (RDA/LRV), 2024 WL 555888, at *5 (E.D.

Va. Feb. 12, 2024).  In other words, federal law "extends dilution protection only to

those whose mark is a household name."  *Rosetta Stone*, 676 F.3d at 171 (cleaned

up) (quoting *Nissan Motor Co. v. Nissan Comput. Corp.*, 378 F.3d 1002, 1011 (9th

Cir. 2004)); *see also Under Armour, Inc. v. Exclusive Innovations, Inc.*, No. SAG-20-

03427, 2021 WL 2042320, at *4 (D. Md. May 21, 2021) ("Under Armour's marks are

famous in the United States due to its national advertising, celebrity sponsorships,

and the number of in person and online retail locations."); 3 McCarthy § 24:104

("Famous marks are those in the category of widely well-known marks familiar to

*nearly everyone* in the United States." (emphasis supplied) (internal quotation marks omitted)).

Courts have determined that "[f]ame in a 'niche' market" is insufficient to support a claim under federal anti-dilution law. *See Field of Screams, LLC v. Olney Boys & Girls Cmty. Sports Ass'n*, No. CIV.A. DKC 10-0327, 2011 WL 890501, at *9 (D. Md. Mar. 14, 2011); *see also* 3 McCarthy § 24:105 ("A mark that is well-known only in a local geographical territory or in a local product or service line clearly cannot qualify for the extraordinary scope of protection granted by the federal anti-dilution statute.").

Defendants argue that the court "should grant Apex summary judgment on CMT's . . . dilution claim because CMT will not be able to establish that the CMT Orange Trade Dress is famous." Defs. Br. at 28. Defendants cite the following deposition testimony of Marcello Tommassini, CEO of CMT Utensili:

> Q. Do you believe that the name CMT is well known among the general consuming public of the United States?
>
> A. I think it's known just by people who do woodworking.
>
> Q. Do you believe that CMT's mark for the color orange on circular woodworking blades is well known among the general consuming public of the United States?
>
> A. I think it's known by all those who work with wood.
>
> Q. So not the general consuming public?
>
> A. If they're not involved in woodworking, probably not.

Defs. Br., Ex. X at 76:2-17.

Plaintiffs do not dispute Mr. Tommassini's testimony but respond instead that defendants' "proffer of an *Eveready* survey, which presupposes a mark has top-of-mind awareness, contradicts its argument that CMT's Orange [Trade Dress] is not famous." Pls. Resp. Br. at 2.

The *Eveready*[6] survey format "has become a standard and widely accepted survey format for testing to shed light on whether confusion is likely or not" in the context of trademark infringement and unfair competition claims. 5 McCarthy § 32:174; *Combe Inc. v. Dr. August Wolff GMBH & Co. KG Arzneimittel*, 851 F. App'x. 357, 366 (4th Cir. 2021). Relevant to the instant case, "the 'Eveready' survey format does not inform survey respondents what the senior mark is, but assumes that they are aware of the mark from their prior experience." 5 McCarthy § 32:174.

Plaintiffs cite to the expert report of defendants' witness David Franklyn regarding his use of *Eveready surveys*. *See* Pls. Resp. Br. at 26. Mr. Franklyn stated that he utilized an *Eveready* survey to "assess consumer perceptions relevant to likelihood of confusion in this case." Colletti Supp. Decl., Ex. V at 4. Mr. Franklyn explained that "*Eveready* surveys are advisable where the senior mark is commercially strong enough to be readily accessible in memory with 'top of mind' (unaided) awareness." *Id.*

However, courts in other circuits have rejected the argument that *Eveready* surveys are "inappropriate where a mark is not widely known or recognized." *See*

---

[6] Named for the survey format first approved by the U.S. Court of Appeals for the Seventh Circuit in *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366 (7th Cir. 1976).

*Limited v. Macy's Merch. Grp. Inc.*, No. 15-CV-3645 KMW, 2016 WL 4094913, at *10 (S.D.N.Y. 2016), *aff'd sub nom. Joules Ltd. v. Macy's Merch. Grp., Inc.*, 695 F. App'x 633 (2d Cir. 2017); *WIZKIDS / NECA, LLC v. TIII Ventures, LLC*, No. 17-CV-2400 (RA), 2019 WL 1454666, at *12 (S.D.N.Y. Mar. 31, 2019); *C.V. v. Casa Azul Spirits, LLC*, No. CV H-22-2972, 2023 WL 7284182, at *5 (S.D. Tex. Nov. 3, 2023); *see also* 5 McCarthy § 32:174 (noting that "the courts have rejected such a restriction on use of an *Eveready* survey"). Given the unresolved dispute regarding the appropriate use of the *Eveready* survey format, the court declines to conclude that Mr. Franklyn's use of that survey format contradicts inherently defendants' argument that the CMT Orange Trade Dress is not famous.

Moreover, as stated, the "top-of-mind" language used typically in the context of *Eveready* surveying is not synonymous inherently with the "truly prominent and renowned" and "household name" language used in the fame inquiry. *Rosetta Stone*, 676 F.3d at 171. A trademark or trade dress may be "top-of-mind" for a certain group, but not "widely recognized by the general consuming public of the United States as a designation of source of the goods . . . of the mark's owner." 15 U.S.C. § 1125(c)(2)(A).

For these reasons, there is no genuine dispute as to Mr. Tommassini's testimony regarding the fame of the CMT Orange Trade Dress. Even when viewing the undisputed facts in the light most favorable to plaintiffs, the non-moving parties, the court concludes that the CMT Orange Trade Dress is not sufficiently famous for federal dilution protections to apply.

Accordingly, the court grants defendants' motion for summary judgment as to plaintiffs' federal trademark dilution claim (Count VI).

**CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that plaintiffs' motion for summary judgment is **GRANTED** in part and **DENIED** in part; it is further

**ORDERED** that defendants' motion for partial summary judgment is **GRANTED** in part and **DENIED** in part; it is further

**ORDERED** that the Court's stay order at ECF No. 228 is lifted; it is further

**ORDERED** that parties shall submit a joint pretrial order and other required pretrial filings within 30 days of the entry of this Opinion & Order.

The Clerk of the Court is respectfully directed to terminate the open motions at ECF Nos. 157 and 161.

**SO ORDERED.**


Dated: December 18, 2025    /s/ Timothy M. Reif
New York, New York     United States Court of International Trade
            *Sitting by Designation*
            United States District Court for the
            Western District of North Carolina