# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Case No. 3:24-CV-00137-TMR-DCK

CMT USA, INC. and CMT UTENSILI S.p.A.,

      Plaintiffs,

      v.

APEX TOOL GROUP LLC and APEX
BRANDS, INC.

      Defendants.

**CMT'S OBJECTIONS TO
MAGISTRATE JUDGE KEESLER'S
MARCH 5, 2026 ORDER (Dkt. 334)**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................................................................ ii

I.      BACKGROUND ........................................................................................................... 1

II.     LEGAL ARGUMENT .................................................................................................. 3

III.    THE ORDER IS CONTRARY TO LAW ................................................................... 6

IV.     THE ORDER CREATES SIGNIFICANT AND UNFAIR PREJUDICE ........................... 8

V.      CONCLUSION ............................................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**

*City of Metropolis v. Honeywell Int'l, Inc.*,
 2026 WL 632265 (S.D. Ill. Mar. 6, 2026) ........................................................................... 2

*Dunkin' Donuts Inc. v. N.A.S.T., Inc.*,
 2005 U.S. Dist. LEXIS 16703 (N.D. Ill. Aug. 10, 2005) ..................................................... 3

*J.F. v. Abbott Lab'ys, Inc.*,
 2017 WL 992781 (S.D. Ill. Mar. 15, 2017) ......................................................................... 4

*Johnson v. Air & Liquid Sys., Corp.*,
 2020 WL 13605308 (E.D. Va. Mar. 27, 2020) ..................................................................... 6

*Medpace, Inc. v. Biothera, Inc.*,
 2014 WL 1045960 (S.D. Ohio Mar. 17, 2014) ..................................................................... 5

*Nuwer v. FSA US, LLC*,
 2023 WL 4364029 (S.D. Fl. June 9, 2023) ....................................................................... 5, 9

*Shipp v. Arnold*,
 2019 WL 4040597 (W.D. Ark. Aug. 27, 2019) ..................................................................... 4

*Southern States Rack and Fixture, Inc. v. Sherwin-Williams, Co.*,
 318 F.3d 592 (4th Cir. 2003) ......................................................................................... 6, 7

*Stratton v. Thompson/Center Arms, Inc.*,
 608 F. Supp. 3d 1079 (D. Utah 2022) ............................................................................. 4, 5

*United States for the Use & Benefit of Agate Steel, Inc. v. Jaynes Corp.*,
 2015 WL 1546717 (D. Nev. Apr. 6, 2015) ....................................................................... 4, 5

**Rules**

Fed. R. Civ. P. 26 .................................................................................................... passim

Fed. R. Civ. P. 37(c) ...................................................................................................... 4

Fed. R. Civ. P. 72(a) ...................................................................................................... 3

Pursuant to Federal Rule of Civil Procedure 72(a), Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A. (collectively "Plaintiffs" or "CMT") respectfully object to Magistrate Judge Keesler's March 5, 2026 Order (Dkt. 334) (the "Order"). Plaintiffs object out of an abundance of caution because the Rule 72 deadline precedes Defendants' deadline to serve their substitute expert report.[1] As a result, Plaintiffs must raise their concerns without the benefit of reviewing the substitute expert's report.[2] Plaintiffs therefore submit this objection to preserve its rights and to ensure that the scope of any substitute report is defined before additional expert discovery proceeds.

## I.      BACKGROUND

Defendants' color expert, Professor Steven Bleicher, passed away on March 11, 2025. CMT does not—and has never—disputed that Apex is entitled to a substitute expert. Rather, consistent with well-established case law, CMT requested reasonable limitations to ensure that Apex's substitute expert cannot materially expand or change the opinions Mr. Bleicher previously disclosed, especially since the case is fully prepared for trial. The purpose of a substitute expert is *replacement*, not *revision*, and the death of Defendants' expert does not provide an opportunity to change, strengthen, or improve previously disclosed testing or opinions, particularly in a way that forces Plaintiffs to revisit responses and readjust its case.

On March 5, 2026, Judge Keesler issued an Order permitting Apex to designate a substitute expert and limiting that expert to the "same topics" as Professor Bleicher's report, as proposed by

---

[1] Pursuant to the Order, Defendants' substitute expert will issue a report by March 27, 2026; Plaintiffs will serve a rebuttal report by April 22, 2026; and expert depositions must be completed by May 12, 2026.

[2] Plaintiffs also file this objection without knowing whether Defendants' original expert, Mr. Bleicher, will be excluded pursuant to Plaintiffs' pending Motion to Exclude (Dkt. 216). If that motion is granted in full, this dispute will be moot because any substitute expert would be improper.

Defendants.[3] Dkt. 334, at 3. Although the Order acknowledges that it contains "minimal analysis," it does not address the specific limitations requested by CMT concerning the permissible scope of a substitute expert's testimony. Instead, the Order focuses on whether Apex may designate a substitute expert at all. But CMT never opposed substitution. *See* Dkt. 242 (CMT's Memorandum in Opposition to Apex's Motion For Leave to Designate a Substitute), at 10.

Moreover, the five topics purporting to limit Apex's substitute expert are extraordinarily broad:

1.  Review the colors used on the CMT Saw Blades, the saw blades using the Crescent Circular Saw Blade Trade Dress, and the Third Party Saw Blades.

2.  Review the results of spectrophotometer readings that have been done on CMT Saw Blades, Crescent Saw Blades, and Third Party Saw Blades, and to provide an analysis of those results.

3.  Analyze how those colors are likely to be viewed by consumers.

4.  Critique the Wyble Report's implication that because both the CMT Orange color used on Plaintiffs' saw blades and the Rawhide color used on Defendants' saw blades could be considered a shade of orange they are the same color or visually similar.

5.  Critique the Wyble Report's use of the raw spectrophotometer data to describe the various colors, without providing a visual reference.

*See* Dkt. 215 (Apex's Motion For Leave to Designate a Substitute Expert), at 2, 7 (referring to the topics identified in Dkt. 215-2) (internal quotations omitted); Dkt. 215-2 (email correspondence discussing substitution), at 3-4. At this level of generality, these "topics" impose no meaningful

---

[3] Pursuant to the Order, Defendants identified Dr. Renzo Shamey as their expert on March 17, 2026. Dr. Shamey has a Ph.D. in color chemistry. In contrast, Mr. Bleicher held a master's degree in fine arts. Dr. Shamey has a technical background in chemistry. Mr. Bleicher's background focused on an aesthetic, design-based approach to color. This is a material shift in expertise and, likely, in corresponding methodology. *See City of Metropolis v. Honeywell Int'l, Inc.*, 2026 WL 632265, at *1 (S.D. Ill. Mar. 6, 2026) (finding a substitute expert's superior credentials to be "highly prejudicial," particularly when the original expert's qualifications were subject to a *Daubert* challenge, and holding that a "substitute expert must have a similar area of expertise to the original expert.").

constraint; they permit Apex to introduce new expert analysis and opinion as long as it can be characterized as falling within these sweeping categories.

Accordingly, Plaintiffs respectfully object because the Order permits Apex to designate a substitute without meaningful limitations on the scope of that expert's opinions, effectively granting Apex an impermissible redo of its prior expert disclosures. As written, the Order permits Defendants' substitute to conduct new analyses, consider additional data, employ new methodologies, offer new opinions as long as they concern the same topics in Professor Bleicher's report, and review the entire evidentiary record (including motions and pretrial submissions which reveal CMT's strategy for presenting evidence and arguments related to color). Dkt. 334, at 3. That limitation is insufficient and contrary to well-established precedent limiting the scope of substitute expert testimony.

## II.    LEGAL ARGUMENT

Federal Rule of Civil Procedure 72(a) permits a party to object to a magistrate judge's order on a non-dispositive matter if that order is "clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a). Here, the Order effectively allows Defendants to evade Federal Rule 26 by submitting an entirely new expert report so long as the opinions fall within the "topics" set forth by Defendants as being addressed by Mr. Bleicher. That is improper. The purpose of Rule 26 is to "pin each expert witness to a defined position known to the adversary in advance of trial." *See, e.g, Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, 2005 U.S. Dist. LEXIS 16703, at *3-6 (N.D. Ill. Aug. 10, 2005) (striking a substitute expert report that "reinvent[ed] the wheel" with "additional factual and proposed evidentiary assertions" and "different opinions," barring defendants from taking advantage of "unfortunate circumstances by subverting the underlying principle of Rule 26(a)(2)(B).") (attached as Exhibit A).

To minimize prejudice while accommodating unforeseen circumstances, numerous courts have recognized that when an expert becomes unavailable, a substitute expert may not materially alter or expand the opinions previously disclosed. An order permitting a substitute expert to introduce materially different analyses or opinions is, thus, contrary to law because it violates to the disclosure requirements set forth in Federal Rule 26(a)(2) and Rule 37(c). FED. R. CIV. P. 26(a)(2) (governing the proper disclosure of expert testimony); FED. R. CIV. P. 37(c) (prohibiting a party from using information or witnesses not properly disclosed).

There is an extraordinary breadth of authority on the proper scope of substitute expert testimony. Though the precise limitations are fact specific, there are two discernable principles to ensure that substitute experts comply with Federal Rule 26. *First*, "[t]he purpose of a substitute expert's testimony should be to put a party in as good as a position as they were prior to the loss of the original expert, not to designate a superior expert." *Stratton v. Thompson/Center Arms, Inc.*, 608 F. Supp. 3d 1079, 1088 (D. Utah 2022); *see also Shipp v. Arnold*, 2019 WL 4040597, at *2 (W.D. Ark. Aug. 27, 2019) ("The purpose of allowing substitution of an expert is to put the movant in the same position it would have been in but for the need to change experts; it is not an opportunity to designate a 'better' expert who holds differing or more advantageous opinions than the first expert."); *United States for the Use & Benefit of Agate Steel, Inc. v. Jaynes Corp.*, 2015 WL 1546717, at *2 (D. Nev. Apr. 6, 2015) ("The purpose of allowing substitution of an expert is to put the movant in the same position it would have been in but for the need to change experts; it is not an opportunity to designate a better expert."); *J.F. v. Abbott Lab'ys, Inc.*, 2017 WL 992781, at *3 (S.D. Ill. Mar. 15, 2017) ("The unavailability of Dr. Willmore does not, however, grant Abbott *carte blanche* to generate new theories after several years of litigation."). "If a replacement expert uses new methods that the original expert did not use, testimony arising from those methods are

typically precluded" as it "would frustrate the rationale behind allowing a replacement expert and provide a windfall to [the substituting party]." *Stratton*, 608 F. Supp. 3d at 1088.

*Second*, courts consistently hold that a substitute expert may not materially alter the substance of the original expert's opinions. *Id.* ("Substitute experts, while not bound to the testimony of the expert they are replacing, cannot meaningfully change their testimony from that of the previous expert."). Many courts have required substitute experts to provide opinions that are "substantially similar" to those previously disclosed. *United States for the Use & Benefit of Agate Steel, Inc.*, 2015 WL 1546717, at *2 (holding that the substitute expert report "may not provide an opinion that is contrary to or inconsistent with [the original expert]'s opinion" and "it is reasonable to limit the new expert to findings that are substantially similar to those presented by [the original expert]"); *Medpace, Inc. v. Biothera, Inc.*, 2014 WL 1045960, at *4 (S.D. Ohio Mar. 17, 2014) ("While Medpace obviously cannot guarantee that its new expert will adopt all of [the prior expert]'s opinions, or articulate opinions in the same manner, if Medpace insists on proceeding with a new expert, it is reasonable to limit that expert to findings that are 'substantially similar' to those presented in [the prior expert]'s comprehensive reports."); *Nuwer v. FSA US, LLC*, 2023 WL 4364029, at *2 (S.D. Fl. June 9, 2023) ("Dr. Pudleiner's review shall not exceed the scope of the review performed by Dr. Priddy and his conclusions and opinions must be substantially similar to Dr. Priddy's.").

Courts within the Fourth Circuit have recognized that substitution does not permit parties to introduce previously undisclosed opinions. For example, the Eastern District of Virginia has held that substitute experts are limited to the "same opinions" as the original expert; if a substitute expert were to offer *new* "previously undisclosed" opinions, the proponent would need to

separately justify those opinions under the standards governing untimely expert disclosures.[4]

*Johnson v. Air & Liquid Sys., Corp.*, 2020 WL 13605308, at \*2 (E.D. Va. Mar. 27, 2020) ("JCI is not prejudiced in having to respond to a substitute expert because the new expert can only provide the same opinions as were proffered by [the original expert], and JCI has already responded to those opinions."). This decision reinforces the same underlying principle reflected in the broader case law: substitution allows a party to replace a lost expert, but it does not permit the party to materially revise (or upgrade) its previously disclosed opinions. The case law is consistent. Substitution restores the position a party previously occupied; it does not permit the party an impermissible windfall by allowing the party to redo, modify, revise, supplement, or strengthen its expert opinions long after the disclosure deadline has passed and the case is trial-ready.

## III.     THE ORDER IS CONTRARY TO LAW

Respectfully, the Order does not address the proper scope of a substitute expert's testimony. Rather than address the limitations required when a party seeks to replace a deceased expert, Judge Keesler applies the five-factor test from *Southern States Rack and Fixture, Inc. v. Sherwin-Williams, Co.* as the appropriate standard of review. 318 F.3d 592, 595 (4th Cir. 2003). *Southern States*, however, addresses whether a late disclosure should be permitted, not the issue raised by Plaintiffs here: the permissible scope of the substitute expert's opinions once substitution is allowed. In other words, the *Southern States* factors determine whether a substitute expert is justified; they do not determine whether a substitute expert may generate new analyses and

---

[4] Apex's reliance on *Johnson* is misplaced. Dkt. 243 (Defendants' Reply in Support of Defendants' Motion for Leave to Designate a Substitute Expert), at 13. In *Johnson*, the court did not suggest that a substitute expert may reach new conclusions; it held the opposite—expressly limiting the substitute to the "same opinions" and finding no prejudice precisely because those opinions had already been disclosed under Rule 26 by the original expert. The subsequent scheduling of a replacement report and rebuttal reflects ordinary disclosure procedure, not an invitation to alter the substance of those opinions. Apex's attempt to extract a contrary rule from a routine scheduling order disregards the court's holding. Notably, Apex has repeatedly invoked *Johnson* throughout this dispute and CMT has previously corrected this misreading. *See* Dkt. 215-2.

opinions that were never disclosed by the original expert.[5] The Order contains no analysis of the case law governing substitute experts, does not explain why limiting the substitute expert to the same general topics is sufficient to prevent an impermissible windfall or post-deadline redo of expert opinions, and does not address the safeguards Plaintiffs proposed to ensure that the substitute expert merely replaces, rather than improves upon, Professor Bleicher's opinions.

The Order imposes a single limitation on Apex's substitute expert: the substitute expert must address the same topics as Professor Bleicher. Dkt. 334, at 3; *see supra* Section I (listing the topics). This limitation is insufficient and contrary to the law. Under the Order, Apex's substitute expert is entitled to conduct new analyses, apply new methodologies, rely on new data, and offer new opinions—as long as those opinions concern that same general subject matter.

The concern created by the Order is not merely theoretical. Professor Bleicher relied on limited materials and analyses in forming his opinions. For example, Professor Bleicher based his opinions, in part, on electronic color swatches provided by counsel and never examined the physical saw blades at issue in the litigation. Dkt. 218-18 (Bleicher Tr.), at 62:5-7. But Professor Bleicher testified that those electronic swatches did not match the color of the physical blades. Dkt. 218-18, at 262:9-263:7. Professor Bleicher also relied on spectrophotometer readings, despite having no prior experience interpreting such data. Dkt. 218-18, at 24:14-20.

Under the Order, Apex could replace Professor Bleicher with a new expert who actually tests the physical saw blades using his own spectrophotometer, conducts color measurements under controlled conditions, or performs additional analyses designed to quantify visual distinctions between the saw blades. A substitute expert could also rely on new physical samples or additional third-party blades that were never part of Professor Bleicher's analysis. In fact, it

---

[5] Consistent with its position, CMT did not conduct a *Southern States* analysis because CMT acknowledged that Apex is entitled to a substitute expert.

seems unlikely that Defendants' new color expert, Dr. Shamey, will adopt any aspect of Mr. Bleicher's report, as Dr. Shamey has a more technical background and will likely reframe Mr. Bleicher's largely aesthetic analysis through a scientific lens. Even though such work would fundamentally expand and strengthen Professor Bleicher's opinions, it would be proper under the Order because it concerns the same general subject matter—whether the blades are different shades of orange. That approach defeats the very purpose of limiting substitute experts and gives Defendants an opportunity to materially alter their case. Professor Bleicher's death is an undeniable tragedy. But the Order creates the precise opportunity for a "do-over" that courts routinely prohibit when permitting substitute experts. *See supra* Section II.

## IV.    THE ORDER CREATES SIGNIFICANT AND UNFAIR PREJUDICE

Plaintiffs will suffer substantial prejudice if Defendants are permitted to exceed the proper scope of substitution. The Order effectively permits Defendants to cure identified deficiencies in their original expert disclosure—deficiencies that Plaintiffs have already detailed in their *Daubert* motion against Mr. Bleicher—by introducing a new, more qualified expert who has the benefit of reviewing the full record, including the report and deposition of Plaintiffs' color expert, Dr. Wyble, and incorporating that information in *an opening report*. Dr. Shamey also has the benefit of reviewing deposition designations intended for trial and other pretrial submissions, enabling him to tailor a revised analysis. It would also force Plaintiffs to respond to new opinions, methodologies, and areas of expertise not disclosed during the original expert period, effectively reopening expert discovery. That not only requires the deposition of Dr. Shamey, but will also likely require a second deposition of Dr. Wyble, along with rebuttal reports, additional motion practice, and revisions to trial preparations. As discussed, Courts routinely reject such attempts to revise expert opinions through substitution because doing so would undermine the orderly disclosure process established by Rule 26.

Finally, without objecting, CMT risks waiving its challenge to the permissible scope of the substitute expert's report, rendering a motion *in limine* an inappropriate vehicle to address these issues. Under the Order, CMT's motion *in limine* would necessarily be confined to whether Apex's substitute expert offers opinions outside of the topics addressed by Professor Bleicher. But, as discussed above, CMT's concerns extend beyond the topics addressed by Professor Bleicher to the permissible scope of the report itself. Additionally, it is more efficient to resolve this issue now, before the substitute report is served and additional discovery proceeds, than wait until expert discovery is re-completed to file a motion *in limine*. *See, e.g., Nuwer,* 2023 WL 4364029, at *2 ("Additionally, ruling on Plaintiffs' motion now will give [the substitute expert] advance notice of the restrictions.").

## V.     CONCLUSION

For the foregoing reasons, CMT respectfully requests that the Court clarify that any substitute expert designated by Defendants testify only to opinions that are substantially similar to those disclosed in Professor Bleicher's report and not introduce materially new opinions, analyses, or testing. Such a limitation would permit Defendants to replace their expert while preserving the disclosure framework established by Rule 26, adhere to the principles applied by courts addressing expert substitution, and avoid undue prejudice to CMT.

Plaintiffs also request that the Court expedite its review of this dispute. Without guidance from the Court before the substitute report is served, the parties will proceed into a new round of expert discovery, only to later litigate whether the report exceeded its proper bounds. If Defendants are permitted to serve an expanded report and Plaintiffs must respond, the resulting depositions, rebuttal reports, motion practice, and renewed trial preparations will impose significant and avoidable burdens on both the parties and the Court. By contrast, resolving the permissible scope

of substitution now ensures that any forthcoming report is properly confined from the outset, preserves the integrity of Rule 26, and avoids the need to unwind or relitigate expert issues later in the case.

Dated: March 19, 2026

Respectfully submitted,

*/s/ Joshua B. Durham*
Ward Davis (NC Bar ID 27546)
Joshua B. Durham (NC Bar ID 25414)
**BELL, DAVIS & PITT**
227 W. Trade Street, Suite 1800
Charlotte, NC 28202
(704) 227-0400
ward.davis@belldavispitt.com
jdurham@belldavispitt.com

/s/ Robert E. Colletti
Edgar H. Haug (*pro hac vice*)
Robert E. Colletti (*pro hac vice*)
Brian E. Auricchio (*pro hac vice*)
Malorie Ruggeri (*pro hac vice*)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
ehaug@haugpartners.com
rcolletti@haugpartners.com
bauricchio@haugpartners.com
mruggeri@haugpartners.com

*Attorneys for Plaintiffs*
*CMT USA, Inc. and CMT Utensili S.p.A.*

– 11 –

# <u>CERTIFICATE OF USE OF ARTIFICIAL INTELLIGENCE</u>

Pursuant to this Court's order of June 13, 2024 regarding the use of artificial intelligence in court filings, Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A., through their undersigned counsel, hereby certify:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Signed this 19th of March, 2026 in New York, NY.


/s/ Robert E. Colletti
Robert E. Colletti (*pro hac vice*)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
rcolletti@haugpartners.com

*Attorney for Plaintiffs CMT USA, Inc.*
*and CMT Utensili S.p.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 19, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF System.  Service of same on any counsel of record will be accomplished through the Court's electronic filing system in accordance with Federal Rule of Civil Procedure 5(b)(2)(E).

*/s/ Joshua B. Durham*
Joshua B. Durham