| | |
|---|---|
| CMT USA, INC. and CMT UTENSILI S.P.A.,<br><br>Plaintiffs,<br><br>v.<br><br>APEX TOOL GROUP LLC and APEX BRANDS, INC.,<br><br>Defendants. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE KEESLER'S MARCH 5, 2026 ORDER (ECF No. 334)** |

Defendants Apex Tool Group LLC and Apex Brands, Inc. ("Apex") hereby file this opposition to Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A. ("CMT") objections under Rule 72(a) to the Magistrate Judge's March 5, 2026 Order granting leave to designate a substitute color expert following the sudden death of Apex's timely disclosed expert, Professor Steven Bleicher (ECF No. 334, the "Order").

The Order should be upheld because CMT's Rule 72 Objection (ECF No. 335, the "Objection") does not identify any error—let alone a clear one—in Magistrate Judge Keesler's Order. Instead, it repackages the same arguments CMT raised in opposing Apex's motion to substitute and that Magistrate Judge Keesler expressly considered and rejected. As the Order stated, the issue of allowing Apex to serve a substitute expert report limited to the same topics of Professor Bleicher's report "does not . . . present a particularly close call" (Order at 3), and there is no case law or other authority cited within the Objection that changes that conclusion.

CMT's supplemental brief (ECF No. 338, the "Supplemental Objection") likewise does not cite to case law showing clear error in the Order, and the complaints contained within the Supplemental Objection (*e.g.*, that Dr. Shamey uses "new analyses," "new methodologies," and

"new data") have previously been rejected by courts in the Fourth Circuit. *See, e.g., Johnson v. Air & Liquid Sys. Corp.*, 2020 WL 13605308, at *2 (E.D. Va. March 27, 2020) and *Johnson v. Air & Liquid Sys. Corp.*, Case No. 4:18-cv-132, ECF No. 462 (E.D. Va. Sept. 29, 2022) (holding that the concern for a supplemental expert report after an expert's death is only "previously undisclosed opinions," not different methodologies for reaching a similar opinion. The later *Johnson* order confirms that substitute reports may be "more detailed," use "different terms," rely on additional materials, and still comply so long as the expert addresses the same ultimate opinions rather than raising new topics.)

Rule 72(a) does not permit a party to relitigate a discovery ruling simply because it disagrees with the outcome. Because the Order faithfully applies controlling Fourth Circuit law and rests well within Magistrate Judge Keesler's broad discretion over non dispositive matters, it should be upheld.

## I. BACKGROUND

### A. Apex's Color Expert Professor Bleicher

This case focuses on the claims from CMT that its alleged trademark rights in a trade dress that consists in part of the color orange as applied to the entire surface of circular saw blades (the "CMT Orange Trade Dress") was allegedly infringed by Apex's use of a trade dress consisting of designs with the colors white, black, and the red-orange color "Rawhide" (the "Crescent Trade Dress") on their circular saw blades. ECF No. 37, ¶ 1. Apex engaged a color expert, Professor Steven Bleicher, to review and provide his analysis on several issues relating to color in the case, including analyzing the differences in color between Rawhide and the CMT Orange color used on CMT's saw blades, analyzing the color of third party saw blades, opining on how the blades' colors will be viewed by consumers, and rebutting the opinions of CMT's color expert. ECF No. 215-1, ¶ 3.

Apex disclosed Professor Bleicher and his initial report in a timely manner, on November 22, 2024, and timely served his rebuttal report on December 20, 2024 (collectively, the "Bleicher Reports"). *Id.*, ¶ 4. Professor Bleicher was timely deposed by CMT on February 28, 2025. *Id.*

**B.      Professor Bleicher's Unanticipated Passing and Apex's Attempt to Substitute a New Color Expert**

On Friday, April 25, 2025, Apex was informed that Professor Bleicher had unexpectedly passed away. *Id.*, ¶ 5. On May 5, 2025, Apex informed CMT of Professor Bleicher's death and let CMT know that Apex was "discussing options for how to replace his testimony." *Id.*, ¶ 6. The following week, Apex informed CMT that they "plan[ned] to replace his testimony by designating an alternative color expert." *Id.* After some back-and-forth, the parties agreed to meet and confer on the issues on May 22, 2025. *Id.*

During the May 22 meet and confer videoconference, CMT's counsel said that they needed more time to decide whether they would consent to a motion for the designation of an alternative color expert. *Id.*, ¶ 7. After the call, both parties sent confirming emails summarizing the points discussed on the call, with Apex reiterating that the substitute expert for Professor Bleicher (1) will be a color expert, just like Professor Bleicher; (2) will cover the same general topics as Professor Bleicher's report; (3) will not comment on legal theories; and (4) will be made available for depositions after the initial report and rebuttal report. *Id.* at ¶ 8.

CMT's counsel sent an email on May 27, 2025, refusing to consent to Apex's substitution proposal. *Id* at ¶ 9. In the email, CMT said it would only consent to a "one-for-one" replacement of Professor Bleicher, without providing any definition of what that would mean. *Id.* Apex responded on May 28, 2025, with a compromise proposal that attempted to mollify CMT's concerns by further limiting the scope of the substitute expert's opinions, ensuring there would be no new theories or gamesmanship with the replacement expert for Professor Bleicher. *Id.*, ¶ 10.

While pointing out the limited number of color experts with legal consulting experience, and the need for a testifying expert to provide testimony based on personal knowledge and experience, in the spirit of compromise Apex proposed requiring the substitute color expert's report and testimony to be restricted to the same five topics in the Bleicher Reports. *Id*. CMT again rejected that proposal, forcing Apex to file a motion for leave to designate a substitute expert. ECF No. 215. CMT opposed Apex's motion, claiming that Apex needed to find a substitute expert with near-identical qualifications[1] who was willing to issue the "same" expert report, based on the same subject matter and same data, as the original.

C.        **The Court Grants Apex Leave to Designate a Substitute Expert**

On March 5, 2026, Magistrate Judge Keesler granted Apex's motion, limiting the expert report to the "same topics as Professor Bleicher's report." ECF No. 334, p. 3. The court explained that "Apex persuasively apply the *Southern State* five-factor test" and that a "resolution of this matter on the merits is more likely to be achieved if Defendants are allowed to present a Substitute Expert to the jury." *Id.* at 2. Magistrate Judge Keesler then addressed CMT's concerns, noting that "any purported prejudice to Plaintiffs may be mitigated by their opportunity to provide a rebuttal report, depose the Substitute Expert, and/or file a motion *in limine*." *Id.* at 3. Finally, Magistrate Judge Keesler adopted Apex's proposed limitation on its substitute expert report to the following topics addressed by Apex's original expert:

1.    Review the colors used on the CMT Saw Blades, the saw blades using the Crescent Circular Saw Blade Trade Dress, and the Third Party Saw Blades.

2.    Review the results of spectrophotometer readings that have been done on CMT Saw Blades, Crescent Saw Blades, and Third Party Saw Blades, and to provide an

---

[1] As the Court can imagine, the field of qualified color experts is narrow. Regardless, in its Rule 72(a) motion CMT did not request the court limit Apex's choice of substitute expert based on his or her qualifications, and thus waived the argument.

analysis of those results.

3. Analyze how those colors are likely to be viewed by consumers.

4. Critique the Wyble Report's implication that because both the CMT Orange color used on Plaintiffs' saw blades and the Rawhide color used on Defendants' saw blades could be considered a shade of orange they are the same color or visually similar.

5. Critique the Wyble Report's use of the raw spectrophotometer data to describe the various colors, without providing a visual reference.

*See* ECF No. 215.

**D.    The Report of Apex's New Expert, Dr. Shamey, Sticks to Those Five Topics and Provides Opinions that are Consistent with those in Professor Bleicher's Report**

Pursuant to the Order, Apex engaged a substitute color expert, Dr. Renzo Shamey. Despite the difficulty in finding a color expert, Apex prioritized finding one with similar qualifications it sought with Prof. Bleicher: an expert in color, who is a professor with experience explaining color concepts, and who has previous experience testifying about color in trademark litigation. *Id.* Pursuant to Fourth Circuit case law and Magistrate Judge Keesler's Order, Apex instructed Dr. Shamey to limit his report to the topics approved within the Order, and to only include his own opinions and their bases in the report, without any reference to Prof. Bleicher's opinions and findings. *See Johnson v. Air & Liquid Sys. Corp.*, 2020 WL 13605308, at *2 (E.D. Va. March 27, 2020); *Haney v. Kavoukjian*, 2022 WL 1439041 at *4 (D.S.C. May 5, 2022).

On March 27, 2026, Apex served Dr. Shamey's substitute expert report. *See* Expert Report of Dr. Renzo Shamey ("Shamey Report"). ECF No. 338-1, p. 1. Dr. Shamey complied with Magistrate Judge Keesler's Order by addressing nothing outside of the authorized five topics. Dr. Shamey also complied with Fourth Circuit law by reaching his own, independent opinions based solely on his (rather than Mr. Bleicher's) knowledge and analysis. More specifically, on each topic

Case 3:24-cv-00137-TMR-DCK    Document 342    Filed 04/15/26    Page 5 of 23

Dr. Shamey's opinions align with those of Professor Bleicher, using Dr. Shamey's own, independent knowledge, background and techniques. *See* Shamey Report, ECF No. 338-1, p. 3; ECF No. 215.

First, consistent with Professor Bleicher, Dr. Shamey explains that the CMT Orange color, the Rawhide color, and numerous third-party saw blade colors can all be described within the broader yellow–orange–red region (i.e., as shades within an "orange" family), but that simply belonging to this broad category does not resolve whether two specific colors are perceptually similar. *See* Shamey Report, ECF No. 338-1, pp. 3–6, 25–29; *see also* Bleicher Opening Report, ECF No. 338-2, pp. 5–7, 8–9.

Second, Dr. Shamey confirms that of the numerous third-party saw blades that use orange-range colors, many of their orange colors are closer to CMT Orange than Rawhide is to CMT Orange—an opinion that matches Professor Bleicher's conclusion that several competitors' oranges sit nearer to CMT's orange than does Apex's Rawhide. *See* Shamey Report, ECF No. 338-1, pp. 3, 27–29; *see also* Bleicher Opening Report, ECF No. 338-2, pp. 6, 9–10.

Third, Dr. Shamey concludes that the difference between CMT Orange and Rawhide is large and readily perceptible to ordinary observers, making the two colors visually distinct. Shamey Report, ECF No. 338-1, pp. 4–5, 25, 28–29. That is consistent with Professor Bleicher's opinion that Rawhide and CMT's orange are "related but visually very different," and that the difference is significant enough that consumers are likely to easily tell them apart. Bleicher Rebuttal Report, ECF No. 338-3, pp. 1–3; *see* Bleicher Opening Report, ECF No. 338-2, pp. 6, 9–10.

Fourth, Dr. Shamey critiques Dr. Wyble's suggestion that CMT Orange and Rawhide are the same or visually similar merely because both can be classified somewhere within an "orange"

spectrum. Shamey Report, ECF No. 338-1, pp. 3, 18–25, 28–29. This tracks Professor Bleicher's rebuttal, which likewise explained that even if both colors could be called shades of orange, that does not make them visually similar, and consumers would not confuse them. Bleicher Rebuttal Report, ECF No. 338-3, pp. 1–3.

Fifth, Dr. Shamey agrees with Professor Bleicher that Dr. Wyble's analysis is unhelpful to the extent it relies on nomenclature and raw measurement tables without clear visual references tied to consumer perception. Shamey Report, ECF No. 338-1, pp. 3, 29; *see also* Bleicher Rebuttal Report, ECF No. 338-3, p. 3 (explaining that a visual exhibit is essential when comparing whether colors within a broad category are close or confusing). Importantly, Dr. Shamey's point is not that Rawhide must be labeled "red" rather than "orange," but that the Rawhide color can reasonably be described within a range between red and orange and, regardless of label, remains measurably and visually distinct from CMT Orange. Shamey Report, ECF No. 338-1, pp. 3–5, 24–25, 28–29.

It is notable that the Shamey Report contains only the five points mentioned above, each of which corresponds to opinions of Prof. Bleicher, and therefore the report is far narrower than allowed by the Court's Order and Fourth Circuit caselaw.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(a), a district court may modify or set aside a magistrate judge's order on a non-dispositive matter only if the order is "clearly erroneous or is contrary to law." This is a highly deferential standard. *Shoop v. Hott*, 2010 WL 5067567, *2 (N.D.W. Va. Dec. 6, 2010).

An order is "clearly erroneous" only when the reviewing court is left with the "definite and firm conviction that a mistake has been committed." *Synergy Inv. Grp. LLC v. Isenberg*, 2009 WL 3381567, at *1 (W.D.N.C. Oct. 16, 2009) (quoting *United States v. U.S. Nat'l Gypsum Co.*, 333

U.S. 364 (1948)). An order is "contrary to law" only if "the magistrate judge failed to apply or misapplied statutes, case law, or procedural rules." *Scott v. Family Dollar Stores, Inc.*, 2017 WL 4084059, at *1 (W.D.N.C. Feb. 9, 2017). Mere disagreement with the magistrate judge's reasoning—or a desire for a different outcome—is insufficient to prevail under Rule 72(a). *See, e.g., DietGoal Innovations LLC v. Wegmans Food Markets, Inc.*, 993 F. Supp. 2d 594, 600 (E.D. Va. 2013) (affirming magistrate judge's order even though "[w]ere this Court to confront these motions de novo, it might very well be inclined to conclude that transfer is appropriate . . . . But the relevant considerations as a whole do not so strongly point towards transfer as to render the Magistrate Judge's Order clearly erroneous.").

Rule 72(a) objections are therefore not an opportunity "for a second bite at the apple," and objections that merely restate arguments already raised and rejected are routinely overruled on that basis alone. *Corpening v. MoneyLion Inc.*, 2020 WL 13882091, at *2 (W.D.N.C. Apr. 22, 2020); *Cadmus v. Williamson*, 2016 WL 1047087, at *2 (W.D. Va. Mar. 10, 2016) (An objecting party "who reiterates his previously-raised arguments will not be given the second bite at the apple he seeks. Instead, his re-filed brief will be treated as a general objection, which has the same effect as a failure to object.").

## III.    ARGUMENT

The Order should be upheld because Magistrate Judge Keesler correctly applied the *Southern States* legal standard and found that Apex should be allowed to use a substitute color expert. Consistent with Fourth Circuit precedent and caselaw, the Order also correctly accepted Apex's proposal to limit its substitute expert to the same topics that were addressed by Professor Bleicher—a narrower limitation than the "same general subject matter" caselaw otherwise requires. CMT does not cite to a single case within the Fourth Circuit that supports its claim for a non-

*Southern States* standard, nor for CMT's made-up "materially altered or expanded" standard. In addition, the Objections cite no new arguments or evidence that were not previously raised and rejected by the Order, and CMT's Rule 72 motion can be rejected on that basis alone. And finally, CMT will not suffer any prejudice—much less substantial or unfair prejudice—because any such prejudice is handily resolved with ordinary discovery mechanisms and the existing case schedule—including CMT's opportunities under the Order to serve a rebuttal report and depose Dr. Shamey.

### A. Magistrate Judge Keesler's Order Is Not Contrary to Law or Clearly Erroneous.[2]

Motions to designate a substitute expert witnesses after the disclosure and report deadlines have passed are typically handled under the late disclosure analysis of Federal Rule of Civil Procedure 37(c)(1), which states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 (4th Cir. 2003). However, "[t]he Federal Rules of Civil Procedure do not expressly dictate the standard a court should use to assess a motion to substitute an expert." *Nuwer v. FSA US, LLC*, No. 20-60432-CIV, 2023 WL 4364029, at *1 (S.D. Fla. June 9, 2023) (citing *Kaepplinger v. Michelotti,* 2021 WL 263312, at * 2 (N.D. Ill. Jun. 25, 2021)).

The Fourth Circuit applies the "*Southern States*" five-factor test to determine whether a late disclosure, such as a motion to substitute an alternative expert upon an expert's death, is permissible under Rule 37. *Id.* at 597. The Fourth Circuit has held that when determining whether an expert opinion should be allowed to be designated after the expert disclosure deadline, a court

---

[2] CMT does not allege that any portion of Magistrate Judge Keesler's Order is "clearly erroneous." CMT has therefore waived any objections to Apex's substitute expert, or to Magistrate Judge Keesler's Order, on those grounds.

"should be guided by" the following factors: "(1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony." *Id*. Importantly, "[d]eath of an expert witness falls squarely within the category of circumstances that substantially justifies replacement, where the only question regarding justification is whether the party waited too long to notify the court of the need for a new expert." *Haney v. Kavoukjian*, 2022 WL 1439041 at *4 (D.S.C. May 5, 2022).

When applying this five-factor test to a recent request to designate a substitute expert after the initial expert's death, the Eastern District of Virginia granted the request because: (1) the surprise was equal to both parties; (2) any surprise was minimal because due to a stay of the deadlines there was no current trial date set; (3) there was no disruption to the trial because no trial date was set; (4) the failure to designate earlier was "not seriously contested" since the cause was an unexpected death; and (5) the testimony of the substituted expert was important since it was intended to rebut the testimony of the opposing party's expert. *Johnson v. Air & Liquid Sys., Corp.*, 2020 WL 13605308, at *2 (E.D. Va. Mar. 27, 2020). As a result, the court granted the motion for leave to designate a substitute expert and gave the parties 90 days from the date of the order for the expert to be designated, a new expert report and rebuttal reports to be served, and any depositions be taken. *Id.* at *3.

Here, in circumstances substantially similar to *Johnson*, the Order correctly held that the *Southern States* five factors also support granting Apex's motion for leave to designate a substitute expert: The surprise was unforeseeable to both parties; the surprise can be cured through rebuttal reports and deposition of the substitute expert; the substitute expert is important to rebut CMT's

expert; while there is trial date set, there was not when Apex filed its motion for a substitute expert, any delay in Apex obtaining a substitute expert has been entirely caused by CMT, and ample time remains before trial.

Magistrate Judge Keesler expressly analyzed Apex's motion under Federal Rule of Civil Procedure 37(c)(1) and the *Southern States* five factor test. Magistrate Judge Keesler found Apex's showing under the Southern States factors "persuasive" and concluded that allowing substitution would promote resolution of the case on the merits while any potential prejudice could be mitigated through rebuttal reports, depositions, and motions in limine. None of those findings is clearly erroneous.

First, the Order correctly recognizes that the death of Professor Bleicher was unforeseen and affected both sides equally. Apex disclosed the death promptly and sought leave to substitute without delay. CMT does not identify any evidence suggesting gamesmanship or tactical delay.

Second, Magistrate Judge Keesler expressly noted that CMT retains the full panoply of protections afforded by the Rules—a rebuttal expert report, deposition, and/or a motion in limine. That finding alone defeats any claim of clear error. Courts routinely hold that where expert discovery can be reopened in an orderly manner, substitution does not result in cognizable prejudice. *See Haney v. Kavoukjian*, 2022 WL 1439041, at *2 (D.S.C. May 5, 2022).

Third, the Order does not give Apex unfettered latitude such that its substitute expert's opinion would "disrupt the trial." It expressly limits the substitute expert's report to the same topics addressed by Professor Bleicher, precisely as Apex proposed.

And finally, Magistrate Judge Keesler expressly stated that the issue did not present a "particularly close call," and issued the Order promptly so that discovery could proceed efficiently. That exercise of discretion—especially in a case where the trial date remains months away—is well

within the bounds Rule 72(a) protects from second guessing.

Because Magistrate Judge Keesler's Order is neither contrary to law nor clearly erroneous, CMT's Rule 72(a) motion should be denied.

### B. Apex's Substitute Expert Was Correctly Permitted to Opine on the Same Topics as Professor Bleicher.

While Apex agrees that Dr. Shamey should be restricted in his report to only providing opinions on the same topics as were covered by Professor Bleicher, Dr. Shamey should be allowed to author his own report on those topics. As stated by a case relied upon by CMT, "[A]lthough the substitute expert's testimony and report are generally restricted to the same subject matter as the prior expert, the substitute is not normally required to simply adopt the prior expert's conclusions verbatim . . . . Rather, the substitute expert should have the opportunity to express his opinions in his own language after reviewing the evidence and performing whatever tests prior experts on both sides were allowed to perform." *Lincoln Nat'l Life Ins. Co.*, 2010 WL 3892860, at *3 (cleaned up). Indeed, courts within the Fourth Circuit commonly and appropriately permit substitute experts to utilize their own methodology and analysis, only limited to the same topics or subject matter as the original expert. *See, e.g.*, *Haney v. Kavoukjian*, 2022 WL 1439041, at *1 (D.S.C. May 5, 2022) (imposing no limit on the substitute expert where the offering party agreed that his testimony would "cover the same general subject matter" as the original expert); *Johnson v. Air & Liquid Sys., Corp.*, 2020 WL 13605308, at **2, 3 (E.D. Va. March 27, 2020).

Here, Dr. Shamey properly prepared his own report on the same topics as covered by Mr. Bleicher— removing any prejudice or surprise to CMT while ensuring that Dr. Shamey is testifying on the basis of his own knowledge and belief. Again, the Rule 702 standard requires the substitute expert to conduct his own analysis and testing and not simply demonstrate "unblinking reliance" on a prior expert's opinions, even if the conclusions are the same or similar. *Funderburk v. S.C.*

*Elec. & Gas Co.*, 395 F. Supp. 3d 695, 719 (D.S.C. 2019) (quoting *In re TMI Litig.*, 193 F.3d 613, 716 (3d Cir. 1999), *amended,* 199 F.3d 158 (3d Cir. 2000)); *Mooring Capital Fund, LLC v. Knight*, 388 F. App'x 814, 820 (10th Cir. 2010) ("An expert is not entitled to testify to opinions that rely on the opinion of another expert, simply because the other is an expert.").

This complies with Fourth Circuit precedent. For example, the court in *Johnson v. Air & Liquid Sys., Corp.* did not require the substitute expert to have identical opinions or methodology with the replaced expert. While that court held that "the new expert can only provide the same opinions as were proffered" by the original expert, the subsequent orders show that the *Johnson* court did not mean that the new report's opinions had to be identical. *See Johnson v. Air & Liquid Sys., Corp.*, 2020 WL 13605308, at **2, 3 (E.D. Va. March 27, 2020). Instead, the subsequent history of the case, wherein the court denied a motion to strike the substitute expert and report, provides the explanation. *See Johnson v. Air & Liquid Sys., Corp.*, Case No. 4:18-cv-l32, ECF No. 462 (E.D. Va. September 29, 2022) (attached as Exhibit 1). That opinion shows that the Court did not exclude or even limit the expert's opinion even though the court found that the substitute expert's report was not the same as the original. *Id.* (finding that the substitute expert report was in "different terms," was "more detailed," did not address all points in the previous report, relied on a "more extensive list of reliance materials," and relied on "more specific opinions on applicability of chemical regulations."). However, because the expert opinion addressed the same *ultimate* opinion as the original, it conformed to the court's "same opinion" limitation. *Id.* Therefore, the court's "same opinion" limitation simply meant the substitute expert could not opine on newly raised *topics*. *Id.* Such a limitation is practically identical to the "topic" limitation suggested by Apex and imposed by Magistrate Judge Keesler in the Order.

### C. Magistrate Judge Keesler's Order Cannot Be Contrary to a Made-Up Law.

Rather than the well-known *Southern States* factors, CMT constructs an entirely new test

that has never been employed in the Fourth Circuit. Specifically, citing to out-of-circuit opinions, CMT contends that "a substitute expert may not materially alter or expand the opinions previously disclosed." *See* ECF No. 335, at p. 4.[3] But as discussed above, courts within the Fourth Circuit only require that a substitute expert opine on the same general topics or subject matter as the original expert. *See Haney v. Kavoukjian*, 2022 WL 1439041, at *1 (D.S.C. May 5, 2022).

Moreover, even the out-of-circuit cases cited by CMT do not support its alleged "materially altered or expanded test." *Dunkin' Donuts Inc. v. N.A.S.T., Inc.* excluded a substitute expert report not simply because the substitute expert report was altered or expanded, but because it was "an entirely new [expert report]" that discussed different conclusions from the original. 2005 U.S. Dist. LEXIS 16703, at *2 (N.D. Ill. Aug. 10, 2005). This is entirely consistent with *Johnson*'s requirement that "the new expert can only provide the same opinions as were proffered"—referring to the overall topic or ultimate opinion of the expert's report, not each and every individual aspect, analysis, method, diagram, and chart. *See id.*; *see also J.F. by Sifuentes v. Abbott Lab'ys, Inc.*, No. 14-cv-847-NJR-SCW, 2017 WL 992781, at *3 (S.D. Ill. Mar. 15, 2017) ("The substitute expert ... will be required to provide a report and testimony that adheres to the **subjects and theories** covered by Dr. Willmore.") (emphasis added).

Based on the above, although Dr. Shamey's new expert report should be (and is) limited to the same topics covered by Professor Bleicher's report, Dr. Shamey still needs to be able to use his own methodologies and language to express his opinions, background, and reasoning; otherwise it would not be his report. *See Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, 2010 WL 3892860, at *3. All of CMT's cited cases are entirely consistent with this whole-opinion—or

---

[3] CMT does cite to *Johnson v. Air & Liquid Sys.* from the Eastern District of Virginia for this position, but as explained above CMT misstates the actual holding of that case.

4925-0885-8267.5
Defendants' Response to Plaintiffs' Objections
to Magistrate Judge Keesler's March 5, 2026 Order

Case 3:24-cv-00137-TMR-DCK    Document 342    Filed 04/15/26    3:24-cv-00137-DCK Page 14 of 23

14

"topic"—limitation proposed by Apex, contained within the Order, and followed by Dr. Shamey's report. *See Stratton v. Thompson/Center Arms, Inc.*, 608 F. Supp. 3d 1079, 1088 (D. Utah 2022) ("[A] party is not meaningfully prejudiced by an opinion that merely departs from the general scheme [of the original expert] or only expands the scope."); *Shipp v. Arnold*, 2019 WL 4040597, at *2 (W.D. Ark. Aug. 27, 2019) (holding that while a substitute expert's opinion should be "substantively similar and cannot be contrary to or inconsistent" with the former expert's opinions, it "need not be identical."); *United States for the Use & Benefit of Agate Steel, Inc. v. Jaynes Corp.*, 2015 WL 1546717, at *2 (D. Nev. Apr. 6, 2015) ("The Court agrees with American Steel that it is not appropriate in this case to mandate that the new expert "rubber-stamp" the expert report previously provided. Nonetheless, the new expert report may not provide an opinion that is contrary to or inconsistent with Mr. Hafeez's opinion").

Pivoting from its improper "materially altered or expanded" test, CMT next argues that "courts have required substitute experts to provide opinions that are 'substantially similar' to those previously disclosed." Objection at 5. CMT again cites only out-of-circuit district court cases for this premise. Even if it was the proper test within the Fourth Circuit (it is not), these cases do not support CMT's claim that "substantially similar" is equivalent to "materially altered or expanded." For example, in *United States for the Use & Benefit of Agate Steel, Inc.*, the court required the substitute opinion to be "substantially similar" but more specifically noted that the opinion could not be "contrary to or inconsistent with" the original opinion, and that the new expert's "findings" must be "substantially similar" to the original. 2015 WL 1546717, at *2. The court did not require the substitute expert provide an opinion that was not "materially altered or expanded" from the original. *Id.*; *see also Nuwer v. FSA US, LLC*, 2023 WL 4364029, at *2 (S.D. Fl. June 9, 2023). Dr. Shamey's report also comply with this out-of-circuit standard, because the report reaches

conclusions that are substantially similar to and consistent with those from the Bleicher Report. *See* Section I.D., *supra*.

And in *Medpace, Inc. v. Biothera, Inc.*, 2014 WL 1045960, at *4 (S.D. Ohio Mar. 17, 2014), the holding was based on different facts, since there the original expert was still available to testify but there were disputes regarding whether he had a conflict. *Id.* at *3. However, even there the court held that the substitute expert report was only limited to "findings that are 'substantially similar' to those presented in [the prior expert]'s comprehensive reports." *Id*. At *4. A standard which Dr. Shamey's report meets. Therefore, none of those cases supports CMT's argument that a substitute expert's opinion cannot "materially alter or expand the opinions previously disclosed."

### D.     Dr. Shamey's Expert Report Is Proper Under Fourth Circuit Caselaw

The complaints raised by CMT in its Supplemental Objection tack right alongside the complaints raised—and rejected—in *Johnson*. CMT repeatedly asserts that Dr. Shamey "reinvent[s] the wheel" through "new analyses," "new methodologies," and "new data" (ECF No. 338 at 3–8), but that is not the legal standard and it is not what Magistrate Judge Keesler ordered. The Order limits Apex's substitute expert to the same five *topics*—not to the same vocabulary, diagrams, methodology, or the same level of scientific explanation. And *Johnson* forecloses CMT's core argument: it recognizes that the problem is only "previously undisclosed opinions," not additional support for already-disclosed, topic-limited opinions, or different methodologies for reaching those opinions. *Johnson v. Air & Liquid Sys. Corp.*, 2020 WL 13605308, at *2 (E.D. Va. March 27, 2020). The later *Johnson* order confirms what CMT omits—substitute reports may be "more detailed," use "different terms," rely on additional materials, and still comply so long as the expert addresses the same ultimate opinions rather than raising new topics. *See Johnson v. Air & Liquid Sys. Corp.*, Case No. 4:18-cv-132, ECF No. 462 (E.D. Va. Sept. 29, 2022). That is exactly what happened here. Dr. Shamey expressly acknowledges the substitute posture and the Court's

4925-0885-8267.5

five-topic limitation, and he then addresses—and only addresses—those five topics, including whether CMT Orange and Rawhide may be described within a broad "orange" family, whether third-party oranges are closer to CMT than Rawhide is, and whether Rawhide and CMT Orange are visually distinct to ordinary observers. Shamey Report, ECF No. 338-1, pp. 3–5, 28–29.

CMT's real complaint is that Dr. Shamey explains the same, permitted opinions using accepted color-science tools (e.g., $\Delta E00$) rather than the more qualitative presentation of an art-and-design expert. But that is not a Rule 72 problem; it is a merits disagreement that CMT can explore in deposition and address, if it chooses, through a targeted motion in limine or *Daubert* briefing—exactly as Magistrate Judge Keesler anticipated when he found any potential prejudice could be mitigated through ordinary expert discovery. ECF No. 334 at 3. And as Apex has previously explained, given the small number of qualified color experts, it was not possible to find an individual who was an exact match for Professor Bleicher.

CMT's Rule 26 rhetoric fares no better. It seizes on a single line to insinuate that Dr. Shamey did not review Professor Bleicher's work and therefore somehow violated Rule 26(a)(2). ECF No. 338 at 3 & n.2. That insinuation is misleading on its face. Dr. Shamey explains the substitute nature of his engagement, identifies the materials he reviewed, and candidly notes limitations on what he could independently reproduce. Shamey Report, ECF No. 338-1, pp. 3–4, 9. Rule 26 requires disclosure of the facts or data "considered" and the bases for the opinions offered; it does not compel a substitute expert to parrot a deceased expert's report, cite it as "reliance material" in a particular format, or handicap himself by refusing to use standard scientific tools. CMT is effectively asking for an expert who did nothing new and conducted no independent analysis—an outcome that would gut Rule 702's requirement that a testifying expert apply his own knowledge and methods.

Magistrate Judge Keesler's Order properly imposed topic limits, and Dr. Shamey stayed within them; any remaining quarrel is for ordinary expert discovery and evidentiary motions, not Rule 72 second-guessing.

### E. CMT's Remaining Objections Do Not Provide a Basis for Rule 72 Relief

#### 1. The Order Does Not Permit an Improper "Do-Over"

CMT again repeatedly mischaracterizes the substitution as an attempt to gain a strategic advantage or obtain a "better" expert. Magistrate Judge Keesler expressly rejected that premise, crediting Apex's showing that substitution is sought solely because Professor Bleicher passed away, not because Apex was dissatisfied with his opinions. Critically, the Order does not reset the expert process or give Apex a blank slate. To the contrary, it imposes an express and enforceable limitation: the substitute expert's report must be confined to the same topics addressed in Professor Bleicher's report. That limitation directly forecloses the very "do over" CMT hypothesizes.

CMT's disagreement with the Magistrate Judge's assessment of Apex's intent or the sufficiency of those safeguards is not a basis for Rule 72 relief. Rule 72(a) does not permit a district court to reweigh credibility or second guess a magistrate judge's reasoned judgment call on discovery management.

#### 2. Magistrate Judge Keesler Was Not Required to Resolve *Daubert* Issues First

CMT also again argues that the Magistrate Judge should have deferred ruling on substitution until after resolving CMT's Daubert challenges to Professor Bleicher. The Order correctly declined to do so. Nothing in Rule 37, Rule 702, or Fourth Circuit precedent requires a court to adjudicate the admissibility of a deceased expert's testimony as a prerequisite to allowing substitution. To the contrary, courts routinely permit substitution first and allow the opposing party to raise Daubert challenges—if appropriate—once the substitute expert's opinions are disclosed.

Magistrate Judge Keesler expressly noted that any residual concerns could be addressed through rebuttal reports, depositions, and motions in limine, preserving CMT's full ability to challenge admissibility. CMT's preferred sequencing is a matter of litigation strategy, not law, and the Magistrate Judge's refusal to adopt it is neither erroneous nor unlawful.

### 3. CMT Seeks Restrictions Beyond What the Law Requires—and Beyond What the Order Requires

Although CMT's objections do not expressly request the Court to limit Apex's substitute expert to the same qualifications as Professor Bleicher, CMT's objections continue to press for limitations that go well beyond governing law—most notably, that the substitute expert *should* mirror Professor Bleicher's qualifications precisely and must offer the same conclusions, not merely address the same subject matter or topics.

Magistrate Judge Keesler properly rejected that position. The Order requires topic level parity, which is the controlling standard applied by courts addressing substitution after an expert's death. It does not require an "exact clone" of the deceased expert or compel a substitute to adopt conclusions wholesale without exercising independent judgment—requirements that would conflict with Rule 702 and basic principles of expert testimony.

Importantly, the Order strikes a balance: it prevents Apex from expanding the scope of topics opined on by its expert while still permitting the new expert to offer opinions based on his personal knowledge, expertise and analysis. As shown by the new report and explained in Section I(D) above, that is what Dr. Shamey has done. CMT's effort to impose stricter, extra textual limitations is an argument about what the law should be, not evidence that Magistrate Judge Keesler misapplied the law.

To the extent that CMT raises complaints about the qualifications of Apex's substitute expert—while never asking the court for relief on that basis—Apex's substitute expert, Dr. Shamey,

shares a large number of credentials and experience with Professor Bleicher. Both experts: (1) have been college professors who taught on the subject of color; (2) have experience testifying as color experts in legal proceedings; (3) are published authors on color; (4) have both been involved with the Inter-Society Color Council (ISCC); and (5) both were or are personally familiar with CMT's own color expert, Dr. Wyble. *See* Shamey Report, ECF No. 338-1.

### 4. Magistrate Judge Keesler Correctly Found No Unfair Prejudice

Finally, CMT asserts that it would suffer prejudice if the court does not utilize CMT's made-up law governing the scope of substitute expert opinions and testimony. But Magistrate Judge Keesler squarely addressed—and rejected—that claim, finding that any potential prejudice is mitigated by ordinary discovery mechanisms and the existing case schedule. And, as explained CMT's "materially altered" standard is inapplicable.

Magistrate Judge Keesler's finding is well supported. CMT may serve a rebuttal report, may depose Dr. Shamey, and may file a motion in limine. Courts consistently hold that where these safeguards exist, substitution following an expert's death does not constitute cognizable prejudice.

## IV. APEX SHOULD BE GRANTED ATTORNEYS' FEES AND COSTS

Apex requests the Court grant its attorneys' fees and costs in responding to the Objections, as well as any other relief the court finds appropriate. District courts "have routinely awarded attorneys' fees pursuant to Federal Rule of Civil Procedure 37 for fees incurred in responding to a Rule 72(a) objection." *Blair v. CBE Grp., Inc.*, 2014 WL 4658731, at *2 (S.D. Cal. Sept. 17, 2014). Indeed, courts within at least the Ninth Circuit, Sixth Circuit, Seventh Circuit, and Tenth Circuit automatically award costs and attorneys' fees to the prevailing party when responding to Rule 72(a) discovery objections. *See, e.g.*, *Lawson v. Spirit Aerosystems, Inc.*, 2021 WL 4844058, at *6-7 (D. Kan. Oct. 18, 2021); *Marrocco v. Hill*, 291 F.R.D. 586, 590 (D. Nev. 2013) (holding "reasonable fees incurred in responding to a Rule 72(a) objection are recoverable under Rule 37(a)(5)(A)");

*MAS, Inc. v. Nocheck, LLC*, 2011 WL 1135367, at \*5 (E.D. Mich. Mar. 28, 2011) (granting the plaintiff's unopposed request for attorneys' fees incurred in responding to the defendant's Rule 72(a) objection because "such fees and costs were 'incurred in making the motion'" under Rule 37); *Catapult Commc'ns Corp. v. Foster*, 2009 WL 2707040, \*2 (N.D. Ill. Aug.25, 2009) (holding that "under Rule 37, the fees incurred in responding to Defendant's motion for reconsideration are compensable").

Here, CMT's arguments were either restated versions of arguments previously rejected by the Order (arguments that Magistrate Judge Keesler did not believe "present a particularly close call") or based on an inapplicable legal standard. CMT then forced Apex to respond to supplemental briefing that relied entirely on this improper legal standard, while presenting no new cases or legal discussion. As a result, CMT's objections are not substantially justified and provide yet another example of CMT's vexatious litigation tactics that needlessly waste Court and party resources. Apex therefore respectfully requests that the Court grant Apex's reasonable attorneys' fees and costs incurred in responding to CMT's Rule 72(a) objections.

DATED: April 15, 2026                                  **WOMBLE BOND DICKINSON (US) LLP**


By: /s/ *Aaron Johnson*
John F. Morrow, Jr.
Aaron D. Johnson
David A. Jackson
Joy Tacy Allen Woller
**WOMBLE BOND DICKINSON (US) LLP**
One West Fourth Street
Winston-Salem, NC 27101
(336) 721-3600
John.Morrow@wbd-us.com
Aaron.Johnson@wbd-us.com
David.Jackson@wbd-us.com
Joy.Woller@wbd-us.com

Attorneys for Defendants
Apex *Tool Group LLC and Apex Brands, Inc.*

## <u>CERTIFICATE OF USE OF ARTIFICIAL INTELLIGENCE</u>

Pursuant to this Court's order of June 13, 2024 regarding the use of artificial intelligence in court filings, Defendants Apex Tool Group LLC and Apex Brands, Inc. hereby certify:

1.     No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexus, FastCase, and Bloomberg;

2.     Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Signed April 15, 2026.

**WOMBLE BOND DICKINSON (US) LLP**

By: /s/ *Aaron Johnson*
John F. Morrow, Jr.
Aaron D. Johnson
David A. Jackson
Joy Tacy Allen Woller
**WOMBLE BOND DICKINSON (US) LLP**
One West Fourth Street
Winston-Salem, NC 27101
(336) 721-3600
John.Morrow@wbd-us.com
Aaron.Johnson@wbd-us.com
David.Jackson@wbd-us.com
Joy.Woller@wbd-us.com

Attorneys for Defendants
Apex *Tool Group LLC and Apex Brands, Inc.*

# <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this the 15th day of April, 2026, the foregoing Defendants' Response to Plaintiffs' Objections to Magistrate Judge Keesler's March 5, 2026 Order (ECF No. 334) was served via electronic means through CM/ECF on the following counsel of record:

Edward B. Davis (NC Bar ID 27546)
Joshua B. Durham (NC Bar ID 25414)
BELL, DAVIS & PITT
227 W. Trade St., Suite 1800
Charlotte, NC 28202
(704) 227-0400
ward.davis@belldavispitt.com
jdurham@belldavispitt.com

Edgar H. Haug (*pro hac vice*)
Robert E. Colletti (*pro hac vice*)
Malorie Ruggeri (*pro hac vice*)
Brian E. Auricchio (*pro hac vice*)

HAUG PARTNERS LLP
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
ehaug@haugpartners.com
rcolletti@haugpartners.com
mruggeri@haugpartners.com
bauricchio@haugpartners.com

*Attorneys for CMT USA, Inc.*
*and CMT Utensili S.p.A.*

/s/ *Aaron Johnson*