**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Case No. 3:24-CV-00137-TMR-DCK**

CMT USA, INC. and CMT UTENSILI S.p.A.,

      Plaintiffs,

      v.

APEX TOOL GROUP LLC and APEX
BRANDS, INC.

      Defendants.

**SUPPLEMENTAL MEMORANDUM**
**IN SUPPORT OF PLAINTIFFS'**
**MOTION TO EXCLUDE THE**
**SECOND MARKSMEN REPORT**
**AND THE THIRD-PARTY SAW**
**BLADES CONTAINED THEREIN**

Pursuant to the Court's May 11, 2026 Order, Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A. (collectively, "CMT") submit this supplement to CMT's Motion in Limine No. 1 (Dkt. 265).

## I.    INTRODUCTION

On March 13, 2026, <u>long</u> after the close of discovery (Dkt. 106), counsel for Apex retained Marksmen Brand Protection Services ("Marksmen") to generate a second "investigative" report, documenting the purchase of 21 additional third-party saw blades in a belated effort to bolster Apex's genericness defense. Ex. A (the "Second Marksmen Report"). Without seeking leave of Court or offering any explanation for the delay, Apex produced this document on April 17, 2026—532 days after the close of fact discovery and 395 days after dispositive motions were filed. Ex. B, at 14. Apex's submission should be excluded as untimely, irrelevant, and prejudicial.

## II.    BACKGROUND

Apex originally retained Marksmen in June 2024—nearly two years ago—to purchase 35 purportedly "orange" third-party saw blades during fact discovery. Dkt. 292-1 (the "First Marksmen Report"). On February 3, 2026, CMT moved *in limine* to exclude that report. Dkt. 293. In response, Apex agreed to remove certain irrelevant saw blades and inadmissible hearsay. Dkt. 317 at 2 n. 1. Well after motions in limine were completed and the pretrial order was filed, Apex commissioned a Second Marksmen Report.  When CMT objected, Apex characterized the Second Marksmen Report as a Rule 26(e) supplement because Apex "was not previously aware of these blades." Ex. B at 12. But that was not accurate because, as Apex immediately conceded, ***more than half*** of the products in the Second Marksmen Report were in commerce *during* fact discovery.[1] Ex. B at 9.

---

[1] On April 22, 2026, Apex produced a redacted version of the Second Marksmen Report. Ex. C. Apex claims that the revised report contains only products that entered the market *after* the close of fact discovery on November 1, 2024. CMT did a cursory review and also found that to be untrue. Ex. B at 3-4 (attaching Ex. D). And products that purportedly entered the market more recently are still untimely and remain irrelevant and prejudicial. More importantly, Rule 26 does not shift the burden to CMT to investigate when each newly identified product first appeared

The parties met and conferred on April 24, 2026. Apex refused to withdraw its production and never articulated any basis constituting good cause for its untimely disclosure. Nor could it. The Second Marksmen Report reflects a deliberate, post-discovery effort to mimic the evidentiary record in *Milwaukee Electric Tool Corp. v. Freud America, Inc.*, where the Trademark Trial and Appeal Board ("TTAB") relied on extensive third-party evidence because of an excessively broad description of the goods and services related to the trademark at issue. *See* 2019 WL 6522400, at *22 (T.T.A.B. Dec. 2, 2019).[2] But the record here is fundamentally different—the goods and services are narrow and Apex's third-parties lack meaningful market share. Moreover, there is no evidence of consumer exposure to the third-party blades that Marksmen was asked to purchase by Apex's counsel. Dkt. 293, at 1-2.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 16 provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The primary consideration in evaluating "good cause" is diligence. *Nguyen v. Jones*, 2020 WL 7264465, at *2 (W.D.N.C. Dec. 9, 2020) (citing *Montgomery v. Anne Arundel County*, 182 Fed. Appx. 156, 162 (4th Cir. 2006)). "The exclusion of untimely evidence is an appropriate sanction and well within the district court's discretion." *Gomez v. Haystax Tech., Inc.*, 761 Fed. Appx. 220, 232 (4th Cir. 2019).

Further, Federal Rule of Civil Procedure 26 requires parties to produce all documents that it may use to "support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(ii). Failure to comply necessitates exclusion "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In the Fourth Circuit, courts apply a five-factor test to determine whether the

---

in commerce. Discovery closed long ago, and CMT is now preparing for trial. Now is not the time for a new round of discovery prompted by Apex's gamesmanship.

[2] The T.T.A.B. held that, because of the way Freud's registrations were written, the genus of goods included any type of saw blade for cutting any type of material that can be used on a power woodworking machine. *Id.* at *9-10.

nondisclosure of evidence is substantially justified or harmless: "(1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony." *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596-97 (4th Cir. 2003). The late-disclosing party bears the burden of establishing these factors. *Id.* at 595.

## IV.    ARGUMENT

Apex's production violates the Court's Scheduling Order. Apex has not provided "good cause" or received the Court's consent. *See* FED. R. CIV. P. 16; *see also* Dkt. 106. Apex's decision to commission a second "investigation" in March 2026—18 months after the close of fact discovery and following CMT's motion *in limine* against the first "investigation*"*—fails to reflect diligence. Further, all the *Southern State* factors weigh in favor of exclusion. The Second Marksmen Report was produced without warning long after fact discovery and only weeks before trial. CMT has no ability to cure the prejudice absent a reopening of discovery, subpoenaing and deposing Marksmen and third parties identified in the report, inspecting products, and revisiting expert discovery and pretrial motions. Allowing the report is fundamentally unfair and would disrupt the trial schedule. Apex offers no legitimate explanation for its delay, particularly where the products at issue could have been identified earlier through reasonable diligence. Finally, according to Apex, the blades are "important" to show genericness and confusion. Ex. B at 12.

Nevertheless, this evidence is irrelevant. Dkt. 293 at 12-14. On genericness, it is well established that the inquiry focuses on whether the color at issue "is understood by the relevant public primarily as a category or type of trade dress for [the] genus of goods." *In re PT Medisafe Techs.*, 134 F.4th 1368, 1372 (Fed. Cir. 2025). In *Milwaukee*, the T.T.A.B accordingly held: "the relevant public for a genericness determination is the purchasing or consuming public for [the

Case 3:24-cv-00137-TMR-DCK    Document 348    Filed 05/18/26    Page 4 of 8

genus of goods]. Here, the relevant public is consumers seeking saw blades for power woodworking machines or for reciprocating power saws"—the exact goods covered by Freud's registrations. 2019 WL 6522400, at *10 (internal citations omitted). As such, where third-party use is offered as evidence of the relevant public's perception, it should be limited to products *within the genus. See id.* at *13-22; *Medisafe,* 134 F.4th at 1373, 1376 (considering evidence of third-party use on chloroprene/neoprene medical examination gloves—the exact genus of goods); *Glover v. Ampak,* 74 F.3d 57, 59 (4th Cir. 1996) (finding that third-party use in the broader knife market was not probative of genericness where the genus was pocket knives). Products *outside* of the genus of goods cannot inform the jury of the relevant public's understanding as to whether a mark is generic *within* the genus of goods.

Here, concrete, fiber cement, and/or metal cutting blades do not bear on whether the relevant public perceive CMT's orange trademark as generic for circular saw blades for cutting wood. Yet the Second Marksmen Report relies on precisely those kinds of unrelated products that are irrelevant, unhelpful to the jury, and prejudicial to CMT as those blades blurs the contours of the proper genus for the proper genericness inquiry in this case.

## V.    CONCLUSION

The Second Marksmen Report suffers the same flaws as its predecessor: it contains irrelevant blades from manufacturers with no U.S. market presence. It is not a proper supplement. It is a new investigation conducted after fact discovery, expert discovery, dispositive briefing, and pretrial submissions. CMT is significantly prejudiced because it cannot conduct the proper discovery to place this evidence in its proper context, which necessarily includes inspecting the blades, deposing the Marksmen investigators, and developing rebuttal evidence. It should be excluded and Apex, who consistently seeks fees against CMT in this case for good faith motion practice, should be sanctioned for the fees involved in this motion.

Dated: May 18, 2026

Respectfully submitted,

/s/ Robert E. Colletti
Edgar H. Haug (*pro hac vice*)
Robert E. Colletti (*pro hac vice*)
Kaitlin M. Farrell (*pro hac vice*)
Brian E. Auricchio (*pro hac vice*)
Malorie Ruggeri (*pro hac vice*)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
ehaug@haugpartners.com
rcolletti@haugpartners.com
kfarrell@haugpartners.com
bauricchio@haugpartners.com
mruggeri@haugpartners.com

/s/ Joshua B. Durham
Ward Davis (NC Bar ID 27546)
Joshua B. Durham (NC Bar ID 25414)
**BELL, DAVIS & PITT**
227 W. Trade Street, Suite 1800
Charlotte, NC 28202
(704) 227-0400
ward.davis@belldavispitt.com
jdurham@belldavispitt.com

*Attorneys for Plaintiffs*
*CMT USA, Inc. and CMT Utensili S.p.A.*

– 5 –

## <u>CERTIFICATE OF USE OF ARTIFICIAL INTELLIGENCE</u>

Pursuant to this Court's order of June 13, 2024 regarding the use of artificial intelligence in court filings, Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A., through their undersigned counsel, hereby certify:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Signed this 18th of May, 2026 in New York, NY.


/s/ Robert E. Colletti
Robert E. Colletti (*pro hac vice*)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
rcolletti@haugpartners.com

*Attorney for Plaintiffs CMT USA, Inc.*
*and CMT Utensili S.p.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF System. Service of same on any counsel of record will be accomplished through the Court's electronic filing system in accordance with Federal Rule of Civil Procedure 5(b)(2)(E).

/s/ Robert E. Colletti
Robert E. Colletti (*pro hac vice*)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
rcolletti@haugpartners.com