|  |  |
|---|---|
| CMT USA, INC. and CMT UTENSILI S.p.A., <br><br> Plaintiffs, <br><br> v. <br><br> APEX TOOL GROUP LLC and APEX BRANDS, INC. <br><br> Defendants. | **SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE NO. 2: TO PRECLUDE TWO DOCUMENTS AND TESTIMONY FROM IAN CUNNINGHAM AND SCOTT BUBLITZ** |

Pursuant to the Court's June 1, 2026 Order, Plaintiffs CMT Utensili, S.p.A. and CMT USA, Inc. (collectively "CMT") submit this supplemental memorandum based on the May 20, 2026 deposition testimony obtained from Apex's substitute color expert, Dr. Renzo Shamey. Dr. Shamey's testimony confirms that the spectrophotometry measurements conducted by Apex employee Scott Bublitz have no bearing on the issues to be decided by the jury and therefore should be excluded as irrelevant and prejudicial under Federal Rules of Evidence 401 and 403.

## I. INTRODUCTION

For the reasons set forth in CMT's opening brief (Dkts. 268, 269), Mr. Bublitz's spectrophotometry testing provides no assistance to a jury in resolving any issue in this case. The testing merely measures a small color sample taken from obscure third-party saw blades and compares that sample to the orange color of a CMT blade. Those third party products are not at issue here, and are manufactured by companies with de minimis or nonexistent sales in the relevant market. More fundamentally, the testing says nothing about how consumers perceive those products. It does not indicate how much of a blade is covered by the measured color, the prominence or placement of the measured color, whether consumers would perceive the measured color as orange, or the overall appearance of the third-party blade. Whether a third-party blade contains some amount of orange that is numerically closer to CMT's claimed color than Apex's has no bearing on the key inquiries in this case: (i) whether consumers are likely to confuse Apex's products with CMT's products, or (ii) whether CMT's registered mark is generic. Accordingly, the testing has no tendency to make any fact of consequence more or less probable and therefore lacks relevance to the issues before the jury.

Moreover, this evidence is particularly misleading because, as presented by Apex and its experts, it creates the false impression that these third-party products make significant use of orange or otherwise share the same visual appearance as CMT's products when, in reality, nearly

all of the products do not.  As a result, the testing invites the jury to draw conclusions that the data cannot support and poses a substantial risk of confusion and unfair prejudice.

## II.    ARGUMENT

Dr. Shamey's testimony highlights the prejudicial nature of Mr. Bublitz's spectrophotometry measurements.  Although Dr. Shamey relied on those measurements in forming his opinions, he admitted that he never inspected the saw blades and did not know what the actual blades looked like.[1]  Ex. A at 68:10-70:15.  As a result, he was unaware that many of the forty-six third-party saw blades included in Mr. Bublitz's analysis are not predominantly orange.  Ex. A at 156:25-159:15.  Instead, many contain only limited "orange" accents on discrete portions of the blade—if the color measured is even considered orange at all.  *See e.g.*, Ex. A at 163:5-19 (testifying that the RIDGID 6.5" blade is copper with brown outer teeth).

Dr. Shamey's testimony underscores the central flaw in Apex's reliance on Mr. Bublitz's measurements.  Detached from the appearance of the actual saw blades, the numerical color data creates the false impression that the tested blades are entirely or substantially orange when they are not.  It likewise risks leading the jury to assume that all of the blades are for cutting wood—or at the very least circular—when they are not.[2]  The measurements, however, convey nothing about the prominence, location, extent, or visual impact of the measured color on the product as a whole.

---

[1] Dr. Shamey likewise did not view or inspect CMT's or Apex's physical blades, despite asking Apex's counsel to do so.  Ex. A at 29:11-32:15.

[2] Dr. Shamey also testified that he relied upon Mr. Bublitz's testing of numerous non-circular blades when forming his opinions.  Ex. A at 68:15-70:15; 166:22-167:3; 201:8-204;19.  Dr. Shamey was unaware that non-circular saw blades are not relevant to the case and was further unaware that Apex had previously agreed to remove non-circular blades from its Marksmen report and hence the case.  Ex. A at 166:22-167:22; Dkt. 317 (Apex's Opp. to CMT's MIL No. 1) at 2 n. 1; Dkt. 312 (Apex's Opp. to CMT's MIL No. 2) at 1-2 (redacting non-circular saw blades from a highly misleading visual chart compiled with Mr. Bublitz's spectrophotometry data).  The fact that Apex's substitute expert relied on saw blades that Apex itself previously agreed to remove from the case further highlights the danger of allowing Mr. Bublitz's measurements.  The measurements include admittedly irrelevant saw blades that can only cause confusion.

They likewise provide no information regarding how consumers encounter or perceive the products in the marketplace.

For instance, Exhibit 4 of Dr. Shamey's report identifies seven products as having a "small color difference[]" to CMT's orange. Ex. B. But all seven are irrelevant: four are linear, two are primarily black, and one is for cutting metal. *Compare* Ex. B, *with* Ex. A to CMT's MIL No. 2 (Cunningham Color Percent Methodology; APEX00025486) at Examples 9, 46 (primarily black); 36, 37, 38, 41 (linear); and 44 (metal). Presenting only the numerical color measurements invites the jury to conclude that these products are meaningful examples of orange circular saw blades when, in reality, they bear little resemblance to the products at issue. Rule 403 does not permit Apex to use isolated color measurements to obscure those critical distinctions.

Even if Mr. Bublitz's measurements are presented in conjunction with images of the saw blades, the risk of undue prejudice remains. The parties would be required to provide the jury with the context for forty-six different third-party saw blades, nearly all of which are irrelevant to this matter and for which Apex has offered no evidence of demonstrated market share. Such an exercise creates the exact situation that Rule 403 is supposed to prevent. Rather than focusing on how consumers perceive the CMT and Apex saw blades in the marketplace, the jury would be drawn into a lengthy examination of obscure third-party blades divorced from marketplace realities. The result would be substantial risk that the jury assigns undue significance to those products and erroneously concludes that they are relevant to whether CMT's trademark generic.

Moreover, to the extent any of the blades may be relevant, Mr. Bublitz's measurements do not account for the many variables that affect how a color may actually appear to a consumer. Dr. Shamey confirmed that Mr. Bublitz's testing was conducted under only a single set of environmental conditions (simulated daylight) and that the resulting Delta E values could differ

under alternative conditions.  *See, e.g.*, Ex. A at 88:10-90:15 (testifying that Delta E is determined under specific lighting conditions as well as a specific field of view size); 98:18-103:24 (clarifying that Delta E values may change depending on the type of illumination setting and observer function selected and that different light sources may be more appropriate to evaluate color differences for different purposes).  Dr. Shamey further testified that color perception is affected by "a whole host of issues" and that there are "too many variables to list," including lighting conditions, background, surrounding visual clutter, viewing distance, age, gender, and other contextual factors. *See, e.g.*, Ex. A at 73:22-82:18; 91:5-93:7.  Further, Mr. Bublitz's Delta E values are only informative when both blades are viewed under simulated daylight; they provide no insight into color distinctiveness under different lighting conditions—an important consideration here, as Apex's blade may often be viewed by consumers on its own.  And to that point, Dr. Shamey testified that it is "common knowledge" that "human memory of color is quite poor," and stated: "If I am relying on my memory to select a product, my memory is not a good judge of selection. I can go to a store and make [a] mistake."  Ex. A at 151:21-152:23.

Taken together, Apex's own expert's testimony demonstrates that Mr. Bublitz's spectrophotometry testing does not measure how consumers encounter, perceive, remember, or compare saw blade colors in the actual marketplace.  The relevant inquiry in this case is not whether colors can be distinguished by a spectrophotometer under a single set of laboratory conditions, but rather how consumers perceive and recall those colors in the marketplace.  Dr. Shamey's testimony confirms that Mr. Bublitz's measurements do not shed light on that question.

## III.  CONCLUSION

For the foregoing reasons, the Court should exclude Mr. Bublitz's spectrophotometry testing and any opinions or conclusions derived therefrom pursuant to Federal Rules of Evidence 401 and 403.

Dated: June 2, 2026                          Respectfully submitted,

/s/ Robert E. Colletti
Edgar H. Haug (*pro hac vice*)
Robert E. Colletti (*pro hac vice*)
Kaitlin M. Farrell (*pro hac vice*)
Brian E. Auricchio (*pro hac vice*)
Malorie Ruggeri (*pro hac vice*)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
ehaug@haugpartners.com
rcolletti@haugpartners.com
kfarrell@haugpartners.com
bauricchio@haugpartners.com
mruggeri@haugpartners.com

/s/ Joshua B. Durham
Ward Davis (NC Bar ID 27546)
Joshua B. Durham (NC Bar ID 25414)
**BELL, DAVIS & PITT**
227 W. Trade Street, Suite 1800
Charlotte, NC 28202
(704) 227-0400
ward.davis@belldavispitt.com
jdurham@belldavispitt.com

*Attorneys for Plaintiffs*
*CMT USA, Inc. and CMT Utensili S.p.A.*

– 5 –

## <u>CERTIFICATE OF USE OF ARTIFICIAL INTELLIGENCE</u>

Pursuant to this Court's order of June 13, 2024 regarding the use of artificial intelligence in court filings, Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A., through their undersigned counsel, hereby certify:

1.	No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2.	Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Signed this 2nd of June, 2026 in New York, NY.


/s/ Robert E. Colletti
Robert E. Colletti (*pro hac vice*)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
rcolletti@haugpartners.com

*Attorney for Plaintiffs CMT USA, Inc.*
*and CMT Utensili S.p.A.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 2, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF System. Service of same on any counsel of record will be accomplished through the Court's electronic filing system in accordance with Federal Rule of Civil Procedure 5(b)(2)(E).

/s/ Robert E. Colletti
Robert E. Colletti (*pro hac vice*)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
rcolletti@haugpartners.com