CMT USA, INC. and CMT UTENSILI S.P.A.,

      Plaintiffs,

    v.

APEX TOOL GROUP LLC and APEX
BRANDS, INC.,

      Defendants.

**DEFENDANTS' RESPONSE TO
CMT'S SUPPLEMENTAL BRIEF TO
CMT'S MOTION IN LIMINE NO. 2**

Defendants Apex Tool Group LLC and Apex Brands, Inc. ("Apex") respectfully submit this response to CMT's supplemental brief in support of CMT's MIL 2.

CMT's "supplementation" is more of a redo than legitimate argument based on new testimony from Dr. Shamey. Much of it focuses on CMT's belief that the spectrophotometry tests are irrelevant because they involve mere color samples from blades sold by third-parties who may have a small market share, and thus it is unclear how jurors would perceive the blades in the marketplace. Those arguments have already been made not only in the underlying briefing for CMT's MILs 1 and 2, but also during summary judgment. Notably, the Court rejected the same arguments in its summary judgment order, finding that the determination of such issues is "best left to a jury." *See* Dkt. 254, at pp. 16-17. The Court was and remains right. CMT remains free to present evidence to the jury that the third-party blades have varying degrees of orange on them and may have low market shares. As confirmed by many courts, however, that does not make them inadmissible. (*See* Dkt. 317, at pp. 4, 7-8 citing cases).

Relatedly, CMT's supplementation also misrepresents the tests. They are not focused on "obscure third-party saw blades," but instead on any saw blade using colors that could be viewed

1

as similar to the orange color used on CMT's saw blades—including prominent saw blades sold in major stores like Home Depot, and others only sold online.  As such, the tests provide a helpful analysis to the jury regarding the wide swath of similarly saw blades on sale in the U.S. market.

Regarding the accuracy of the spectrophotometry tests, the entirety of Dr. Shamey's testimony, rather than the snippets summarized by CMT, supports Apex's position that the tests are accurate and the type of evidence color experts reasonably rely upon when comparing colors. Specifically, CMT fails to mention that Dr. Shamey confirmed that spectrophotometry testing is used to avoid variability under various subjective conditions, it minimizes perceptual variability, and the light condition used by CMT/Mr. Bublitz (D65 - simulated daylight) is the most typical illumination condition used in any industry for spectrophotometry readings.  (*See* ECF 357-1, Shamey Dep. at pp. 87-90, 100-102).  Consistent with that testimony, CMT's own expert (Dr. Wyble) confirmed that Apex's spectrophotometry readings were accurate and consistent with those he conducted, which is why Dr. Wyble decided to rely upon them (rather than his own) in his report. (*See* Dkt. 250-1, Wyble Depo., at pp: 181-182).[1] Despite multiple submissions to the Court, CMT has still pointed to ***no evidence*** that CMT's spectrophotometry tests were improperly conducted or are otherwise inaccurate, and also cited ***no authority*** that spectrophotometry tests like those taken by Apex are not commonly relied upon by color experts or otherwise should be excluded from trademark cases involving colors.

Indeed, as confirmed by Dr. Shamey, the spectrophotometry tests are designed to minimize the very concerns that CMT has raised - - that various factors such as lighting, background, distance, etc. can impact the way one perceives an object's color:

---

[1] Indeed, one could surmise that Dr. Wyble's own spectrophotometry tests were even less favorable to CMT, which is why he relied on Apex's tests.  As Apex's substitute color expert, Dr. Shamey responded to Dr. Wyble's report relying on those tests.

2

Q. But that's not how they are perceived in the real world; right? They're perceived under lighting conditions, on paper, in photographs, different power sources; correct?

A. No, because the spectrophotometry measurements are based on representations of human perception of color. They include specific light sources. They include the specific sample sizes. So all of these measurement conditions are indicated to avoid such variability amongst experience amongst observers.

….

(*See* Dkt. 357-1, at p. 87:1 – 88:8, further stating, "the spectrophotometry readings are used to avoid variability under subjective conditions. Such as viewing different types of samples in different environments and such. It eliminates the variability associated with visual perceptions. . . . it minimizes issues associated with perceptual variability."). The fact of the matter is that there is no perfect or uniform condition in which the parties' respective sawblades will ever be encountered in the marketplace. The jury should thus be allowed to see the spectrophotometry results when determining whether confusion is likely regardless of various viewing conditions.[2]

To be clear, Apex agrees that the jury should also be allowed to hold and otherwise see up close the parties' actual sawblades (alone and in packaging) to determine for themselves how they look in person. The spectrophotometry tests confirm what their own eyes will show them – the parties' respective colors are perceptually quite distinct and many other companies sell wood cutting and other circular sawblades bearing shades of orange much more similar to that used by CMT.[3] The spectrophotometer readings are only one type of comparison that will be presented to

---

[2] CMT's argument on this point cuts both ways. Different viewing conditions could conceivably make the parties' blades look more or less similar to one another.
[3] As Apex has made clear to CMT, should the Court grant CMT's MIL 1 (seeking to exclude various third-party orange blades), Apex is amenable to stripping out the spectrophotometry data pertaining to such blades. Apex, however, did not believe doing so was prudent prior to receiving the Court's ruling on MIL 1. Indeed, prior to filing this response, as a compromise and in an effort to streamline trial and reduce work for the Court, Apex proposed that it would forego use at trial of the spectrophotometry tests for the non-party blades if CMT would stipulate to the admissibility of the spectrophotometry tests for the parties'

the jury, but given how the presentation of color might affect other evidence shown to the jury (including the lighting in the courtroom and the color balance of screens and printers), the neutral, scientifically-accurate spectrophotometer readings will be valuable to the jury's understanding of the different colors on the various saw blades.

Finally, while CMT makes much of the fact that Dr. Shamey did not conduct his own spectrophotometry tests or otherwise view or inspect CMT's or Apex's actual blades, Dr. Shamey made it clear that: (a) he was comfortable relying on the tests undertaken by Apex/Mr. Bublitz because Dr. Wyble confirmed they were accurate and he relied upon them; and (b) he did not believe he need to purchase and have physical samples of the parties' blades in order to render his opinions in this case. (Ex. B, Shamey Depo., at pp. 70:16-23; 208:13 – 209:2). Further, CMT surely would have called foul if Dr. Shamey had conducted his own spectrophotometry tests considering that the expert he replaced (Mr. Bleicher) did not. Again, CMT's expert, Dr. Wyble, decided to rely on the spectrophotometry tests in his report, and Dr. Shamey thus relied on those same tests in rebutting Dr. Wyble's opinions.

For these reasons and those discussed in Apex's response to CMT's MIL 1, Apex respectfully submits that the Court should deny CMT's MIL 1 in-full.

---

respective circular woodcutting blades. CMT nevertheless rejected the proposal while at the same time refusing to confirm that Dr. Wyble would not be relying on the spectrophotometry tests that it argues should be excluded from trial. (Ex. A, June 4-5, 2026 Email String). Apex continues to believe that its compromise proposal is more than reasonable.

DATED: June 5, 2026        **WOMBLE BOND DICKINSON (US) LLP**

By: /s/ *John F. Morrow, Jr.*
John F. Morrow, Jr.
Aaron D. Johnson
David A. Jackson
Joy Tacy Allen Woller
One West Fourth Street
Winston-Salem, NC 27101
(336) 721-3600
John.Morrow@wbd-us.com
Aaron.Johnson@wbd-us.com
David.Jackson@wbd-us.com
Joy.Woller@wbd-us.com

Attorneys for Defendants
*Apex Tool Group LLC and Apex Brands, Inc.*

5

## <u>CERTIFICATE OF USE OF ARTIFICIAL INTELLIGENCE</u>

Pursuant to this Court's order of June 13, 2024 regarding the use of artificial intelligence in court filings, Defendants Apex Tool Group LLC and Apex Brands, Inc. hereby certify:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Signed June 5, 2026.

**WOMBLE BOND DICKINSON (US) LLP**

By: /s/ *John F. Morrow, Jr.*
John F. Morrow, Jr.
Aaron D. Johnson
David A. Jackson
Joy Tacy Allen Woller
One West Fourth Street
Winston-Salem, NC 27101
(336) 721-3600

Attorneys for Defendants
Apex *Tool Group LLC and Apex Brands, Inc.*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 5th day of June, 2026, the foregoing DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION IN LIMINE NO. 2 was served via electronic means through CM/ECF on the following counsel of record:

Edward B. Davis (NC Bar ID 27546)
Joshua B. Durham (NC Bar ID 25414)
BELL, DAVIS & PITT
227 W. Trade St., Suite 1800
Charlotte, NC 28202
(704) 227-0400
ward.davis@belldavispitt.com
jdurham@belldavispitt.com

Edgar H. Haug (*pro hac vice*)
Robert E. Colletti (*pro hac vice*)
Malorie Ruggeri (*pro hac vice*)
Brian E. Auricchio (*pro hac vice*)

HAUG PARTNERS LLP
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
ehaug@haugpartners.com
rcolletti@haugpartners.com
mruggeri@haugpartners.com
bauricchio@haugpartners.com

*Attorneys for Plaintiffs CMT USA, Inc.*
*and CMT Utensili S.p.A.*

By: /s/ *John F. Morrow, Jr.*
John F. Morrow, Jr.
Aaron D. Johnson
David A. Jackson
Joy Tacy Allen Woller
One West Fourth Street
Winston-Salem, NC 27101
(336) 721-3600

Attorneys for Defendants
Apex *Tool Group LLC and Apex Brands, Inc.*

7