CMT USA, INC. and CMT UTENSILI S.p.A.,

     Plaintiffs,

     v.

APEX TOOL GROUP LLC and APEX
BRANDS, INC.

     Defendants.

**JOINT PRETRIAL ORDER**

| | |
|---|---|
| Ward Davis (NC Bar ID 27546)<br>Joshua B. Durham (NC Bar ID 25414)<br>Kevin Roak (NC Bar 57402)<br>**BELL, DAVIS & PITT**<br>227 W. Trade Street, Suite 1800<br>Charlotte, NC 28202<br>(704) 227-0400<br>ward.davis@belldavispitt.com<br>jdurham@belldavispitt.com<br>kroak@bellsavispitt.com<br>-and-<br>Edgar H. Haug (*pro hac vice*)<br>Robert E. Colletti (*pro hac vice*)<br>Kaitlin M. Farrell (*pro hac vice*)<br>Brian E. Auricchio (*pro hac vice*)<br>Malorie Ruggeri (*pro hac vice*)<br>**HAUG PARTNERS LLP**<br>745 Fifth Avenue<br>New York, NY 10151<br>(212) 588-0800<br>ehaug@haugpartners.com<br>rcolletti@haugpartners.com<br>kfarrell@haugpartners.com<br>bauricchio@haugpartners.com<br>mruggeri@haugpartners.com<br><br>ATTORNEYS FOR PLAINTIFFS | John F. Morrow, Jr.<br>Aaron D. Johnson<br>David A. Jackson<br>Joy Tacy Allen Woller<br>**WOMBLE BOND DICKINSON (US) LLP**<br>One West Fourth Street<br>Winston-Salem, NC 27101 and<br>50 California Street, Suite 2750<br>San Francisco, California 94111<br>John.Morrow@wbd-us.com<br>Aaron.Johnson@wbd-us.com<br>David.Jackson@wbd-us.com<br>Joy.Woller@wbd-us.com<br><br>ATTORNEYS FOR DEFENDANTS |

Plaintiffs CMT USA, Inc. and CMT Utensili, S.p.A. (collectively, "Plaintiffs" or "CMT"), and Defendants Apex Tool Group LLC and Apex Brands, Inc. (collectively, "Defendants" or "Apex"), submit this revised joint pretrial order pursuant to this Court's Opinion and Order dated June 8, 2026 ("June 2026 Opinion and Order") (Dkt. 362), this Court's Opinion and Order dated December 18, 2025 ("December 2025 Opinion and Order") (Dkt. 254), the Case Management Plan (Dkt. 68), and Your Honor's Individual Rules and Practices in Civil Cases.

## I.   <u>CAPTION</u>

The full caption is as it appears above.

## II.   <u>TRIAL COUNSEL</u>

### A.   Counsel for Plaintiffs

Edgar H. Haug (*pro hac vice*)
Robert E. Colletti (*pro hac vice*)
Kaitlin M. Farrell (*pro hac vice*)
Brian E. Auricchio (*pro hac vice*)
Malorie Ruggeri (*pro hac vice*)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
Tel. No.: (212) 588-0800
ehaug@haugpartners.com
rcolletti@haugpartners.com
kfarrell@haugpartners.com
bauricchio@haugpartners.com
mruggeri@haugpartners.com

Ward Davis (NC Bar ID 27546)
Joshua B. Durham (NC Bar ID 25414)
Kevin Roak (NC Bar 57402)
**BELL, DAVIS & PITT**
227 W. Trade Street, Suite 1800
Charlotte, NC 28202
(704) 227-0400
ward.davis@belldavispitt.com
jdurham@belldavispitt.com
kroak@bellsavispitt.com

### B.   Counsel for Defendants

John F. Morrow, Jr
Aaron D. Johnson (*pro hac vice*)
David A. Jackson (*pro hac vice*)
Joy Tacy Allen Woller (*pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
One West Fourth Street
Winston-Salem, NC 27101 and
50 California Street, Suite 2750
San Francisco, California 94111

1

John.Morrow@wbd-us.com
Aaron.Johnson@wbd-us.com
David.Jackson@wbd-us.com
Joy.Woller@wbd-us.com

III.    **<u>BASIS OF JURISDICTION</u>**

This Court has subject matter jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331, as Plaintiffs' federal law claims of trademark infringement and unfair competition are brought under the Lanham Act, specifically 15 U.S.C. §§ 1114 and 1125(a). This court has supplemental jurisdiction over Plaintiffs' state law and common law claims pursuant to 28 U.S.C. § 1367. Plaintiffs' state law and common law claims arise from the same operative facts, are subject to identical analytical frameworks, and will be proven by the same evidence; therefore they involve the same case or controversy as Plaintiffs' federal law claims.

Defendants do not dispute that this Court has subject matter jurisdiction over Plaintiffs' federal law claims, and supplemental jurisdiction over Plaintiffs' state law and common law claims. This court has subject matter jurisdiction over Defendants' counterclaim pursuant to 28 U.S.C. § 1331, as Defendants' claim for cancellation of Plaintiffs' registration on the grounds of genericness is brought under the Lanham Act, specifically 15 U.SC. § 1119. This court also has subject matter jurisdiction over Defendants' counter claim pursuant to 28 U.S.C. § 1367(a) because it is so related to Plaintiffs' claims that it forms part of the same case or controversy.

IV.    **<u>CLAIMS AND DEFENSES</u>**

    A.    **Plaintiffs' Claims to be Tried**

Plaintiffs assert that the following claims remain to be tried:

1. Trademark Infringement Under 15 U.S.C. § 1114.

2. Trademark Infringement Under 15 U.S.C. § 1125(a).

3. Trademark Infringement Under Common Law.

2

4. Unfair Competition Under § 1125(a).

5. Unfair Competition Under Common Law.

**B.      Plaintiffs' Claims Not to be Tried**

Plaintiffs previously asserted the following claim, which was dismissed by the

Court's December 2025 Opinion and Order (Dkt. 254 at 37):

1. Trademark Dilution Under 15 U.S.C. § 1125(c).

Plaintiffs are also not asserting:

2. Trademark Dilution Under N.Y. Gen. Bus. L. §360-1.

**C.      Defendants' Claims to be Tried**

Defendants assert that the following claim remains to be tried:

1. Cancellation of Mark under 15 U.S.C. § 1119, 1064(3) [Genericness].

**D.      Defendants' Claims Not to be Tried**

Defendants previously asserted the following counterclaims and affirmative defenses,

which were dismissed by the Court's Opinion and Order (Dkt. 254 at 19-32):

1. Cancellation of Mark under 15 U.S.C. § 1119, 1064(3) [Functionality].

2. Cancellation of Mark under 15 U.S.C. § 1119, 1064(3) [Fraud on the USPTO].

3. Cancellation of Mark under 15 U.S.C. § 1119, 1064(3) [Abandonment].

4. Affirmative Defense of Unclean Hands.

5. Affirmative Defense of Laches.

6. Affirmative Defense of Waiver.

## V.      <u>LENGTH OF TRIAL</u>

The parties propose 5 days for trial, inclusive of their respective cases-in-chief and any

rebuttal, with the trial time to be divided evenly between the parties.

As detailed in Section XIII C below, the parties note that there are several pending and

fully briefed motions which could alter the time, witnesses, and materials required for trial.

## VI. <u>CONSENT TO MAGISTRATE JUDGE</u>

The parties have not consented to trial by magistrate judge.  *See* Dkt. 33 at 1.

## VII. <u>STIPULATIONS OF FACT AND LAW</u>

The Parties have attached as <u>**Exhibits A and B**</u> their agreements on proposed stipulations of fact and law, respectively.

The parties agree that any stipulated facts may be read into the record at trial.  The parties further agree that, as part of their respective cases in chief or rebuttal cases, they may read into the record any relevant responses to Requests for Admission and interrogatory responses.

## VIII. <u>ANTICIPATED TRIAL WITNESSES</u>

The presentation of evidence will be as follows:

<u>**Plaintiffs' Position**</u>:  CMT will follow the burden of proof: first present its case-in-chief on infringement and damages.  Apex will then present its rebuttal on non-infringement and damages along with its case-in-chief on genericness.  CMT may then present its rebuttal on genericness and if necessary, reply on infringement and damages.  Apex may then present its reply, if necessary, on genericness.  It is CMT's position that each witness who appears live at trial will only testify once. The case will then go to the jury.

CMT intends to present deposition testimony from witnesses who are unavailable to testify live (specifically from four Apex witnesses during its direct case, and two third-party witnesses during its rebuttal case who Apex intends to call during its case in chief).  The combined presentation time for CMT's designations is expected to be less than two hours.

CMT will question Apex's witnesses on infringement and genericness during cross examination.  CMT reserves the right to go beyond the scope of direct examination on cross, as CMT seeks to introduce limited testimony from Apex's witnesses as part of its case in chief.

4

**Defendants' Position**: CMT's revisions to the PTO signal that it intends to call at least 19 witnesses as part of its case-in-chief (including 9 Apex witnesses, several of whom Apex does not intend to call [Messrs. Kropfelder, Smith, Bleicher and Banduch], one of whom has been replaced by another witness because he is dead [Mr. Bleicher] and one of whom CMT moved to exclude [Mr. Banduch]).  Given CMT's apparent intentions, Apex respectfully submits that the Court should adopt the following order given trial is only scheduled for five days with each party splitting the time equally:  CMT will first present its case on infringement, damages and genericness. Apex will then present its case on non-infringement, damages and genericness. The parties will be permitted to cross-examine one another's witnesses on all such issues.  The case will then go to the jury.  Using this sequence, CMT will not call in its case-in-chief Apex witnesses who Apex has confirmed will testify as part of Apex's case, but rather will cross-examine such witnesses after Apex has called them.  And vice versa.

Alternatively, if the Court prefers rebuttals and replies:  CMT will first present its case-in-chief on infringement and damages.  Apex will then present its rebuttal on non-infringement and damages along with its case-in-chief on genericness.  CMT may then present its rebuttal on genericness.  Using this sequence, each party will not call the other party's witnesses as part of their respective cases-in-chief, but rather will cross-examine such witnesses after the opposing party has called them.  The case will then go to the jury.

### A.      Plaintiffs' Witnesses

Plaintiffs may offer some or all of the following witnesses on its case-in-chief, rebuttal, or reply, either in person or by deposition.  Plaintiffs reserve the right not to call any witnesses listed below.  If a below witness is unavailable for trial pursuant to Fed. R. Evid. 804, Plaintiffs reserve the right to designate portions of such witness's deposition testimony to be read into the record at trial subject to Section IX, *infra*.

Plaintiffs provide below a brief, general summary of the subject areas about which each witness is expected to testify. The topics identified are illustrative rather than exhaustive and are not intended to limit any witness's testimony to the specific matters enumerated.

### i.    CMT Fact Witnesses

| Witness No. | Name | Will Call | Deposition May Be Used |
|---|---|---|---|
| 1 | Marcello Tommassini | X | |
| 2 | Lucia Spallacci | X | |
| 3 | Massimo Ricci | X | |
| 4 | Matt Foley[1,2] | X | |

1.    <u>Marcello Tommassini</u>, CEO of CMT Utensili S.p.A.

Mr. Tommassini may provide testimony concerning CMT's business and history; CMT's creation, adoption, marketing, and use of the color orange as part of CMT's business, including on circular woodworking saw blades and other power tool accessories; CMT's decision to register trademarks on the color orange, including on circular woodworking saw blades and other power tool accessories; the strength and recognition of CMT's trademarks in the United States; Apex's

---

[1] Apex's Position regarding Mr. Foley: It is Apex's position that the Court's June 8, 2026 Opinion and Order (Dkt. 362) granting Apex's Motion in Limine No. 11 and Supplemental Motion in Limine No. 11 excludes Mr. Foley's testimony altogether, and not just with respect to actual or purported instances of confusion. Those motions sought to exclude all of Mr. Foley's testimony, as well as the testimony of Mr. Melchiorri, who Mr. Foley is replacing. Specifically, in addition to seeking to exclude Mr. Foley's testimony regarding alleged confusion on the basis of hearsay, Apex also moved to exclude him as a witness because he was not disclosed until after the close of discovery. (*See* Dkt. 284, "Apex now moves in limine to exclude the testimony of these potential witnesses because Messrs. Uballez and Foley were untimely disclosed and their testimony will rely solely on inadmissible hearsay."); (*See also* Dkt. 349).

[2] CMT's position regarding Mr. Foley: Mr. Foley cannot testify regarding the instances of actual confusion identified by the Court in its June 8, 2026 Opinion and Order. However, Mr. Foley is otherwise a properly substituted witness for Dustin Melchiorri pursuant to the pretrial order. Apex originally moved in limine to exclude Mr. Foley when he had been identified only to testifying regarding a single instance of actual confusion (Dkt. 284). Mr. Foley was subsequently substituted for Mr. Melchiorri after Apex's original motion, and Mr. Melchiorri was designated to testify on topics beyond actual confusion. Apex deposed Mr. Foley on May 8, 2026, which cured any potential prejudice resulting from his substitution on those topics. Apex's supplemental briefing was limited to Mr. Foley's testimony regarding instances of actual confusion, not his substitution for Mr. Melchiorri. Dkt. 349 at 2 ("The Court should thus preclude Mr. Foley (or any other CMT witness) from testifying about those purported instances of confusion"); 5 ("For the reasons stated in MIL 11 and this supplement, Apex respectfully requests the Court preclude CMT from using Mr. Foley or any other witness to testify about purported consumer confusion that was not identified in CMT's response to Interrogatory No. 9 or is otherwise based on inadmissible hearsay."); *see* Part VII.A, *infra*.

intent to capitalize on CMT's good will; damages; attempts to license CMT's trademark to Apex; attempts to settle this case; enforcement actions by CMT to protect its trademark rights in the color orange; market awareness of CMT and use of its orange color; and actual and likelihood of confusion, as limited by the Court's June 8, 2026 Opinion and Order.[3, 4]

2. <u>Lucia Spallacci</u>, Head HR & International Trademark Manager of CMT Utensili S.p.A.

Ms. Spallacci may provide testimony regarding the registration, maintenance, and enforcement of CMT's trademarks on the color orange on power tool accessories, including circular woodworking saw blades, as well as the marketing of the CMT brand, including its use of the color orange.

3. <u>Massimo Ricci</u>, President of CMT USA Inc.

Mr. Ricci may provide testimony concerning CMT's business in the United States; CMT's advertising in the United States; consumer recognition of CMT's trademark on the color orange as applied to circular woodworking saw blades; actual and/or likelihood of confusion arising from Apex's circular woodworking saw blades; the channels of trade through which CMT sells its

---

[3] Notwithstanding the Court's June 8, 2026 Opinion and Order precluding Mr. Foley from testifying about purported confusion that is based on hearsay, CMT's summary of testimony to be provided by Messrs. Tommassini and Ricci suggests that CMT intends to have those witnesses testify about purported confusion that is based on hearsay. As the Court is aware, to date CMT has only identified two alleged incidents of confusion in its response to Apex's Interrogatory No. 9 (seeking CMT's knowledge of all instances of confusion). The Court has already ruled that one such incident (the Milosevich trade show incident) is excluded based on hearsay. Regarding the second (the Harmco incident), it too is based on double-hearsay. Specifically, it is based on something a Harmco employee told to a CMT employee, Sal Taro, which Mr. Taro then summarized in an email he sent to Mr. Ricci. Notably, neither the Harmco employee nor Mr. Taro will be witnesses at trial. And when asked about the alleged Harmco incident at his deposition, Mr. Ricci testified that he could not remember even talking to Mr. Taro about it. Similar to its ruling precluding Mr. Foley from providing hearsay testimony about purported instances of confusion relayed to him by others who are not testifying at trial, the Court should also preclude Messrs. Tommassini and Ricci from doing so. Similarly, CMT's witnesses should not be permitted to testify about purported instances of confusion that were never disclosed in response to Apex's Interrogatory No. 9.

[4] It is CMT's position that Apex's FN 3—essentially seeking to exclude an unrelated instance of actual confusion—constitutes an improper motion in limine raised for the first time in the parties' proposed pretrial order. The parties have not briefed whether the Harmco instance of actual confusion constitutes hearsay, and it would be inappropriate to litigate that issue through a footnote in the pretrial order.

7

circular woodworking saw blades; and sales, pricing, and revenue of CMT's orange circular woodworking saw blades in the United States, as limited by the Court's June 8, 2026 Opinion and Order.

### 4. <u>Matt Foley</u>, Regional Manager of CMT USA Inc.[5]

Mr. Foley may provide testimony regarding the sale of CMT, Apex, and other third-party power tool accessories in the United States, including circular woodworking saw blades; the power-tool accessory industry and its consumers; industry trade shows; third-party use of orange on power tool accessories, including circular woodworking saw blades; and actual and/or likelihood of confusion, as limited by the Court's June 8, 2026 Opinion and Order.

It is plaintiffs' position that Mr. Foley is a properly substituted witness for Mr. Melchiorri. When Apex originally moved to preclude Mr. Foley's testimony, on February 3, 2026, Mr. Foley had been disclosed solely to testify regarding a single instance of actual confusion. On March 5, 2026, after the parties submitted motions in limine, CMT informed Apex that Mr. Melchiorri, one of CMT's designated "will call" witnesses was no longer employed by or under the control of CMT. In the same correspondence, CMT advised Apex that it intended to substitute Mr. Foley as a will call witness to testify regarding the same subject matter identified for Mr. Melchiorri. This procedure is expressly permitted by the parties' joint pretrial order (*See* Part VIII.C, *infra*). Apex deposed Mr. Foley on May 8, 2026, which cured any potential prejudice resulting from his

---

[5] It is Apex's position that CMT's designation of Mr. Foley to testify regarding actual and/or likelihood of confusion improperly attempts to circumvent the Court's June 8, 2026 Opinion and Order (Dkt. 362) granting Apex's Motion in Limine No. 11 and Supplemental Motion in Limine No. 11. Apex further believes that such Order excludes Mr. Foley's testimony altogether, and not just with respect to actual or purported instances of confusion. Those motions sought to exclude all of Mr. Foley's testimony, as well as the testimony of Mr. Melchiorri, who Mr. Foley is replacing. Specifically, in addition to seeking to exclude Mr. Foley's testimony regarding alleged confusion on the basis of hearsay, Apex also moved to exclude him as a witness because he was not disclosed until after the close of discovery. (*See* Dkt. 284, "Apex now moves in limine to exclude the testimony of these potential witnesses because Messrs. Uballez and Foley were untimely disclosed and their testimony will rely solely on inadmissible hearsay."); (*See also* Dkt. 349).

substitution on those topics originally designated for Mr. Melchiorri, and Apex did not move to preclude Mr. Foley from serving as a substitute witness in its supplemental brief to its MIL No. 11. While the Court's June 8, 2026 Opinion and Order limits Mr. Foley's testimony regarding instances of actual confusion, he may nevertheless still testify on the topics originally identified for Mr. Melchiorri and now set forth above.

### ii. Third-Party Witnesses

| Witness No. | Name | Will Call | Deposition May Be Used |
|---|---|---|---|
| 1 | Kurt Tachick | | X |
| 2 | Jeremy Esch | | X |

1. <u>Kurt Tachick</u>, Century Drill & Tool

Kurt Tachick is the CEO of Century Drill & Tool ("Century"). He may provide testimony regarding Century's use of the color orange on circular saw blades, whether Century uses orange as a source identifier, whether Century uses orange in a generic manner, and Century's products, sales, and market share.

2. <u>Jeremy Esch</u>, Evolution Power Tools

Jeremy Esch is the Vice President of Finance and Operations at Evolution Power Tools ("Evolution"). He may provide testimony concerning Evolution's use of the color orange on circular saw blades, how Evolution uses orange on its circular saw blades, the types of saw blades Evolution sells and their specific applications, and Evolution's sales and market-share.

### iii. CMT Expert Witnesses

| Witness No. | Name | Will Call | Deposition May Be Used |
|---|---|---|---|
| 1 | David R. Wyble | X | |
| 2 | Thomas J. Maronick | X | |
| 3 | Jon-Reid Henz | X | |
| 4 | Russell Winer | X | |

9

1.  <u>David R. Wyble</u>, Ph.D.

Dr. Wyble is a color scientist and the President of Avian Rochester, LLC, a company which specializes in performing color measurement services.  Dr. Wyble has over twenty-five years of experience in color measurement and color science, as well as a Master's Degree in color science and a Ph.D. in color measurement.  Dr. Wyble may testify as to his opinions and support therefore, set forth in his expert reports and depositions, as limited by the Court's June 8, 2026 Opinion and Order.

2.  <u>Thomas J. Maronick</u>, DBA, J.D.

Dr. Maronick is an Emeritus Professor of Marketing in the School of Business and Economics at Towson University.  He served as the Director of Impact Evaluation in the Bureau of Consumer Protection at the Federal Trade Commission (FTC) from 1980 through 1997, or in other words, the in-house marketing expert, and since 1997 he has served as an expert witness in federal and state court cases involving trademarks, advertising, and competition matters.  Dr. Maronick may testify in response to Professor Franklyn, as limited by the Court's June 12, 2026 Opinion and Order (Dkt. 267).

3.  <u>Jon-Reid Henz</u>

Mr. Henz is a consultant that has significant experience in analyses of economic issues across a broad range of commercial and intellectual property matters, and as such, will testify on behalf of Global Business Experts Group (GBX).  Mr. Henz may testify as to his opinions and support therefore, set forth in his expert reports and depositions, as limited by the Court's June 8,

2026 Opinion and Order.[6, 7]

    4.  <u>Russell Winer, Ph.D</u>.

Dr. Winer is the William Joyce Professor of Marketing emeritus at the Stern School of Business at New York University with over thirty years of experience in branding and marketing. Dr. Winer has served as an expert witness in many cases involving brands, consumer confusion, and trademark infringement. Dr. Winer may testify as to his opinions and support therefore, set forth in his expert reports and depositions, as limited by the Court's June 8, 2026 Opinion and Order.

    **iv.    Apex Witnesses CMT Intends to Call as Part of Its Case-in-Chief**

CMT intends to call the following Apex witnesses as part of its case-in-chief. CMT reserves the right to modify the list below if Apex changes its position regarding whether a witness will appear live at trial.

| Witness No. | Name | Live | By Deposition[8] |
|---|---|---|---|

---

[6] CMT does not intend for Mr. Henz to testify regarding reasonable royalties.

[7] CMT's revisions to the PTO suggest that notwithstanding the Court's June 8, 2026 Opinion and Order, CMT intends to have witnesses including Mr. Henz (CMT's damages expert) provide testimony and opinions regarding unjust enrichment damages. Apex believes that the Court's June 8, 2026 Opinion and Order (Dkt. 362) granting in-part Apex's Motion in Limine No. 6 allow Mr. Henz to provide testimony and opinions only on lost profits and precludes him offering any testimony or opinions regarding reasonable royalties or unjust enrichment. Notably, Mr. Henz's unjust enrichment opinions are based entirely on Apex's alleged failure to pay a reasonable royalty. His report states: (a) "I have also been asked to analyze Apex's unjust enrichment from the alleged infringement of the CMT Orange Mark. One measure of unjust enrichment is to determine the amount of unpaid royalties from the unlicensed use of the CMT Orange Mark. In other words, Apex is alleged to have been unjustly enriched by avoiding an expense (i.e., a royalty payment to CMT) required to utilize the color orange on its circular sawblades for woodworking. In order to determine the amount of this unjust enrichment, one must first determine the appropriate royalty rate and royalty base for such a license that would have been entered into, but for the alleged infringement of the CMT Orange Mark."; and (b) "It is also my opinion that damages under CMT's claims for unjust enrichment is approximately $1.5 million because Apex failed to pay a royalty to CMT for its utilization of the CMT Orange Mark." Given that CMT's unjust enrichment damages are clearly and unequivocally based on the excluded reasonable royalty opinions, CMT should be precluded from offering testimony or opinions regarding unjust enrichment from Mr. Henz or anyone else. (*See* Dkt. 362, The court grants defendants' sixth motion in limine to the extent that it seeks ***the exclusion of the calculation of reasonable royalties in the Henz Report and related opinions and testimony from Mr. Henz***.") (emphasis added).

[8] During cross examination, CMT intends to question Apex's live witnesses on infringement and genericness for purposes of its case in chief.

| | | | |
|---|---|---|---|
| 1 | Steven Bleicher | | X |
| 2 | Leslie Banduch | | X |
| 3 | Ryan Kropfelder | | X |
| 4 | Ray Smith | | X |

**B.      Defendants' Witnesses**

Defendants may offer some or all of the following witnesses either in person or by deposition.  Defendants reserve the right not to call any witnesses listed below.  If a below witness is unavailable for trial pursuant to Fed. R. Evid. 804, Defendants reserves the right to designate portions of such witness's deposition testimony to be read into the record at trial subject to Part IX, *infra*.

Defendants provide below a brief, general summary of the subject areas about which each witness is expected to testify.  The topics identified are illustrative rather than exhaustive and are not intended to limit any witness's testimony to the specific matters enumerated.

**i.       Apex Fact Witnesses**

| Witness No. | Name | Live | Deposition May Be Used |
|---|---|---|---|
| 1 | Ian Cunningham | X | |
| 2 | Curtis Weber | X | |
| 3 | Scott Bublitz | may call | |
| 4 | Michael Preus | X | |
| 5 | Brendan Walsh | X | |

1.  Ian Cunningham, Vice President of Design, Apex Tool Group

Mr. Cunningham may testify regarding Apex's selection of the color scheme for its CRESCENT brand of tools including the history of that brand, Apex's design of its CRESCENT brand circular saw blades, and the U.S. market for circular saw blades, including the purchases

and authenticity of such blades,[9] as limited by the Court's June 2026 Opinion and Order.[10]

    2.   <u>Curtis Weber</u>, former Vice President of Marketing for the CRESCENT brand, Apex Tool Group

Mr. Weber may testify regarding Apex's selection of the color scheme for its CRESCENT brand of tools including the history of that brand, Apex's design of its CRESCENT brand circular saw blades, the U.S. market for circular saw blades, and Apex's sales, marketing, and advertising for the CRESCENT brand, including circular saw blades.

    3.   <u>Scott Bublitz</u>, Senior Manager of Design, Apex Tool Group[11]

Mr. Bublitz may testify regarding the U.S. market for circular sawblades, including

---

[9] CMT objects to Apex's newly added reference to "the U.S. market for circular sawblades" in the subject matter descriptions for all of its fact witnesses. Apex never disclosed any of these five witnesses in its Supplemental Initial Disclosures as having knowledge or information regarding the U.S. market for circular sawblades. To the contrary, Apex specifically identified a different witness who may have information relevant to the U.S. market for circular sawblades and/or the Marksmen Report, specifically, Marksmen's corporate representative and/or custodians of records for Marksmen (Ms. Porscha Imperial), and Apex has listed Ms. Imperial as a will call witness. Apex is improperly expanding the scope of the testimony of its fact witnesses through the Joint Pretrial Order to encompass subjects never disclosed, and therefore, never explored, with these witnesses during discovery. The newly added subject matter was not identified for any of these witnesses in the original Pretrial Order and appears to have been added only in response to the Court's recent rulings and Apex's withdrawal of its industry expert. The challenged witnesses are design, marketing, and branding personnel, not industry experts competent to testify about the U.S. market for circular saw blades.

[10] Both parties included language making it clear that the topics or anticipated testimony listed in the Pre-Trial Order were general and not exhaustive. (*See* Sections VIII A and B above, ("Plaintiffs/Defendants provide below a brief, general summary of the subject areas about which each witness is expected to testify. The topics identified are illustrative rather than exhaustive and are not intended to limit any witness's testimony to the specific matters enumerated."). Regardless, Apex is not offering these witnesses to testify about the Marksmen report or non-party blades purchased by Marksmen. Rather, these witnesses may testify generally about the market for circular sawblades based on their experiences in working in that industry and in the broader power tool accessory business for several years. There is no surprise or prejudice here as each of them were timely identified as potential witnesses during discovery and in fact were deposed about their work and knowledge about circular sawblades and the industry (and CMT had every opportunity to pose additional questions to those witnesses about the U.S. market for circular sawblades). Moreover, because CMT's 30(b)(6) deposition notice did not include the U.S. market for circular sawblades (or similar) as a topic, Apex was not required to designate a specific witness or witnesses to testify about it.

[11] CMT's position: It is unclear which blades Apex contends Messrs. Cunningham or Bublitz can authenticate. Mr. Bublitz testified that the blades he tested were shipped to him and Mr. Cunningham from Apex's counsel. To the extent either witness is aware of the blades it is only because they tested the blades, which have now been excluded by the Court's June 8, 2026 Opinion and Order. Apex's position: Apex does not plan to offer Messrs. Cunningham or Bublitz to testify about spectrophotometry tests performed on any third-party blades, as such tests were excluded by the Court. Apex, however, reserves the right to question those witnesses about blades of which they are aware and have purchased.

purchases and the authenticity of such blades, and Apex's design of its CRESCENT branded circular saw blades, as limited by the Court's June 2026 Opinion and Order.

4. <u>Michael Preus</u>, former Director of Global Marketing and Senior Director of Global Marketing for Power Tool Accessories, Apex Tool Group

Mr. Preus may testify regarding Apex's design of its CRESCENT branded circular saw blades including the history of that brand, and the U.S. market for circular sawblades. Mr. Preus may also testify with respect to sales, marketing, and advertising for the CRESCENT brand, including CRESCENT branded circular saw blades.

5. <u>Brendan Walsh</u>, Director of CRESCENT Brand, Apex Tool Group

Mr. Walsh may testify regarding Apex's design of its CRESCENT branded circular saw blades including the history of that brand, and the U.S. market for circular sawblades. Mr. Walsh may also testify with respect to sales, marketing, and advertising for the CRESCENT brand, including CRESCENT branded circular saw blades.

### ii.     Third-Party Witnesses

| Witness No. | Name | Live | Deposition May Be Used |
|---|---|---|---|
| 1 | Porscha Imperial | X | |
| 2 | Jeremy Esch | | X |
| 3 | Kurt Tachick | | X |
| 4 | Matthew King | | X |

1. <u>Porscha Imperial</u>, Marksmen Brand Protection Services

Porscha Imperial is an Investigations Manager at Marksmen Brand Protection Services ("Marksmen"). She may provide testimony concerning the Marksmen Reports and Marksmen's purchase of saw blades, as limited by the Court's June 2026 Opinion and Order.

2. <u>Jeremy Esch</u>, Evolution Power Tools

Jeremy Esch is the Vice President of Finance and Operations at Evolution Power Tools ("Evolution"). He may provide testimony concerning Evolution's use of the color orange on

circular saw blades, and the use of the color orange on circular saw blades.

3.  <u>Kurt Tachick</u>, Century Drill & Tool

Kurt Tachick is the CEO of Century Drill & Tool ("Century").  He may provide testimony regarding Century's use of the color orange on circular saw blades, and the use of the color orange on circular saw blades.

4.  <u>Matthew King</u>, Contractor Supply

Mr. King is the President of Contractor Supply.  He may provide testimony regarding lack of consumer confusion despite Contractor Supply selling circular woodcutting blades made by both CMT and Apex, as limited by the Court's June 8, 2026 Opinion and Order.

### iii.    Expert Witnesses

| Witness No. | Name | Live | Deposition May Be Used |
|---|---|---|---|
| 1 | Prof. David Franklyn | X | |
| 2 | Krista F. Holt | X | |
| 3 | Dr. Renzo Shamey | X | |
| 4 | Steven Bleicher | | X (may call) |

1.  <u>Prof. David Franklyn</u>.

Prof. Franklyn is a professor at the Arizona State University Sandra Day O'Connor College of Law and Executive Director of the McCarthy Institute at the Arizona State University Sandra Day O'Connor College of Law.  Professor Franklyn may testify as to his opinions and support therefore, set forth in his expert reports and depositions.

2.  <u>Krista F. Holt</u>

Ms. Holt is the managing director at Econ One Research, Inc., a research and consulting firm with experience in a wide variety of practice areas, including damages, intellectual property, and valuation.  Prior to becoming Managing Director at Econ One, Ms. Holt was the President and Chief Executive Officer of GreatBridge Consulting.  Ms. Holt may testify as to her opinions and

support therefore, set forth in her expert report and deposition.

       3.  <u>Dr. Renzo Shamey</u>

Dr. Shamey is a color expert and scientist who received a Bachelor of Science in Textile Chemistry Engineering and a Master of Sciences in Dyeing and Finishing and a Ph.D. in Colour Chemistry.  He currently serves as the Ciba Professor of Textile Chemistry and a Full Professor in the TECS Department at North Carolina State University.  Dr. Shamey may testify as to his opinions and support therefore set forth in his expert reports and depositions, as limited by the Court's June 8, 2026 Opinion and Order.

       4.  <u>Steven Bleicher</u>

Professor Bleicher is a color expert, and may testify as to his opinions and support therefore set forth in his expert reports and depositions, as limited by the Court's June 8, 2026 Opinion and Order

**C.      Agreed Upon Procedures for Witnesses**

With the exceptions noted above, any witness not listed in the Sections above will be precluded from testifying absent good cause.

Any witness who appears at trial shall testify live.  The parties may not present or play the deposition testimony of any witness who testifies at trial live, except for impeachment purposes.

If a witness becomes unavailable for trial, the parties agree to promptly notify the other parties and supplement their witness list.

Each party will provide the other party with a list, in order of presentation, of witnesses it intends to call live on direct examination (including any additional witnesses to be called by adverse direct examination) by 6:00 p.m. the night before those witnesses are intended to testify in Court.  This list must also include those witnesses who are to be called by designation.  This list is the anticipated order of the proof, but if there will be adjustment to the order for that particular

16

day, the other side must be timely informed.

**D.    Impeachment with Prior Inconsistent Testimony**

Subject to individual objections asserted by the parties, the parties agree that the Court may allow the use of deposition testimony and other prior sworn testimony for impeachment purposes.

**E.    Objections to Expert Testimony**

The parties' experts should not testify beyond the scope of their expert reports or in a manner that is inconsistent with the Court's rulings, including the June 8, 2026 Opinion and Order and the June 12, 2026 Opinion and Order.  The parties reserve the right to object to an expert's testimony that is outside the scope of their expert report or inconsistent with the Court's rulings.

**IX.    <u>DESIGNATIONS OF DEPOSITION TESTIMONY</u>**

The parties reserve the right to amend the deposition designations set forth in **<u>Exhibits C and D</u>** in view of the Court's recent rulings (June 8, 2026 Opinion and Order and the June 12, 2026 Opinion and Order). The Parties shall work together to promptly revise those designations, resolve any disagreements, and exchange proposed deposition testimony transcripts to be played at trial by June 19, 2026.  To the extent that any objection to that testimony remains, the objections will be presented to the Court prior to their use.

For designations with unresolved objections, the party calling the witness by deposition shall, not later than two (2) calendar days before the witness is to be called at trial via deposition, submit to the Court, on behalf of the parties: (i) a copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and pending objections; and (ii) a cover letter identifying the pending objections as well as a brief indication (i.e. no more than one sentence per objection) of the basis for the objection and the offering party's response to it.  Failure to comply with these procedures, absent an agreement by the parties or approval by the Court, will result in waiver of the use of the deposition testimony. All irrelevant

17

and redundant material, including colloquy between counsel, objections, and foreign language questions and answers, will be eliminated when the deposition is read or viewed at trial.

If a party opts to introduce deposition testimony by video, the opposing party's counter designations of that same witness's deposition testimony must also be presented by video at the same time. Prior testimony designation excerpts will be played in the order they are found in the transcript. When such excerpts are introduced, all admissible counter designation excerpts whether offered by video or by transcript will be introduced at the time the testimony is offered, subject to the resolution of any objections to the designated or counter-designated testimony. When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations and counter-designations that will be read or played.

For those witnesses whose prior deposition testimony will be read or played to the jury, the parties or the Court shall be permitted to make brief transition statements to introduce the witnesses and their role in the litigation. Transition statements, however, shall not include argument or any commentary on the evidence.

Any party may use deposition testimony that is designated or counter-designated by either party at any time (including testimony that the opposing party had designated or counter-designated and then subsequently dropped), to the same effect as if that party had initially designated the testimony as its own, subject to all objections.

### A. Plaintiffs' Designations

Plaintiffs reserve the right not to offer any designated testimony, to use only parts of such testimony, or to use additional deposition testimony, not identified below, for purposes of impeachment or rebuttal.

Plaintiffs reserve the right to use deposition testimony in any manner authorized by the

18

Federal Rules of Evidence and the Federal Rules of Civil Procedure, including for impeachment purposes at any stage of the trial.

The deposition testimony excerpts to potentially be introduced by Plaintiffs are listed on **Exhibit C**, attached.

### B.      Defendants' Designations

Defendants reserve the right not to offer any designated testimony, to use only parts of such testimony, or to use additional deposition testimony, not identified below, for purposes of impeachment or rebuttal.

Defendants reserve the right to use deposition testimony in any manner authorized by the Federal Rules of Evidence and the Federal Rules of Civil Procedure, including for impeachment purposes at any stage of the trial.

The deposition testimony excerpts to potentially be introduced by Defendants are listed on **Exhibit D[12]**, attached.

### X.      **EXHIBIT LISTS**

The parties have met and conferred to identify a limited number of exhibits that they know will be used at trial (e.g., opening statements, direct examination, closing statements) and will continue to attempt to resolve evidentiary objections to those exhibits before trial.  To the extent that any objection to those exhibits remain, the objections will be presented to the Court prior to the exhibits' use.

To the extent either party wishes to reference an exhibit during opening that has any unresolved objections, such exhibit(s) shall be disclosed to the other side by no later than 1:00 p.m.

---

[12] Exhibits C and D are the same Exhibits filed with the Court with the original draft Joint PreTrial Order. The parties intend to reduce the designations for trial and will not offer deposition testimony for witnesses now appearing live. The parties intend to raise the issue of deposition designations with the Court at the PreTrial Conference.

19

two days before trial is set to commence. The parties shall then meet and confer in an attempt to resolve objections by 3:00 p.m. that same day. If any intended exhibits change after the deadline, the party intending to use a new exhibit will promptly notify the opposing party of the change(s); the opposing party will promptly notify the party of any objections to the new exhibit(s). To the extent there are any unresolved objections after the meet and confer, these objections will be presented to the Court as soon as possible before trial commences.

### A.     Plaintiffs' Exhibits

A list of Plaintiffs' exhibits, other than those to be used for rebuttal or impeachment purposes is attached as **<u>Exhibit E</u>**. All listed exhibits may be admitted into evidence unless an unresolved objection is specifically noted by Defendants in the columns adjacent to the listed exhibit and corresponding evidentiary support proposed by Plaintiffs. Plaintiffs reserve the right not to introduce any of the exhibits listed, to introduce only parts of those exhibits, and to introduce additional exhibits, which cannot be identified until the time of trial, for impeachment or rebuttal purposes, or which are further deemed necessary by any future discovery. In the event Plaintiffs wish to use at trial any document which is not included on the parties' exhibit lists and/or the joint exhibit list prepared by the parties (collectively the "Exhibit List"), such document shall not be deemed inadmissible simply because it was not included on the Exhibit Lists provided the document was earlier produced to Defendants during discovery or was identified as being relied upon by any expert witness providing testimony in the case.

The parties supplemented their respective Exhibit Lists on February 3, 2026, the deadline for the pretrial order. Plaintiffs reserve all rights to object to these exhibits on any and all grounds.

### B.     Defendants' Exhibits

A list of Defendants' exhibits, other than those to be used for rebuttal or impeachment purposes is attached as **<u>Exhibit F</u>**. All listed exhibits may be admitted into evidence unless an

unresolved objection is specifically noted by Plaintiffs in the columns adjacent to the listed exhibit and corresponding evidentiary support proposed by Defendants. Defendants reserve the right not to introduce any of the exhibits listed, to introduce only parts of those exhibits, and to introduce additional exhibits, which cannot be identified until the time of trial, for impeachment or rebuttal purposes, or which are further deemed necessary by any future discovery. In the event Defendants wish to use at trial any document which is not included on the parties' exhibit lists and/or the joint exhibit list prepared by the parties (collectively the "Exhibit List"), such document shall not be deemed inadmissible simply because it was not included on the Exhibit Lists provided the document was earlier produced to Plaintiffs during discovery or was identified as being relied upon by any expert witness providing testimony in the case.

The parties supplemented their respective Exhibit Lists on February 3, 2026, the deadline for the pretrial order. Defendants reserve all rights to object to these exhibits on any and all grounds.

### C. Admission of Trial Exhibits

All exhibits listed on each party's exhibit list to which there are no unresolved objection are admissible for all purposes at trial and are admitted into evidence at the time offered by either party. Notwithstanding the previous sentence, a party may raise a relevance objection to any exhibit at the time the exhibit is offered for admission or used at trial, provided that exhibit is being offered for a purpose not previously disclosed in the parties' pretrial exhibit objections and responses thereto. No exhibit to which an objection is noted will be admitted unless offered into evidence through a witness, who must at least be shown the exhibit. At some point before completion of the witness' testimony, any party that has used an exhibit with the witness to which an objection has been noted and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence, by exhibit number. Exhibits to which there is an unresolved

21

objection may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence or the Court has otherwise approved of publication. Once admitted, counsel may publish exhibits to the jury without requesting to do so. Prior to the use of any impeachment evidence that is not admitted and/or admissible, the offering party shall approach the Court for approval prior to publishing or displaying it to the jury.

### D. Demonstrative Exhibits

The parties will exchange demonstratives to be used in opening statements by no later than 1:00 p.m. one day before trial is set to commence. The parties will provide any objections to such demonstratives by 3:00 p.m., unless otherwise agreed to by the parties. The parties shall meet and confer in an attempt to resolve those objections by 3:30 p.m. that same day. If any demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s). To the extent there are any unresolved issues after the meet and confer, these issues will be presented to the Court as soon as possible before trial commences.

A party will provide demonstrative exhibits to be used in connection with direct examination by 7:00 p.m. the night before their intended use, and objections will be provided no later than 8:00 p.m. the night before their intended use. The parties shall meet and confer in an attempt to resolve those objections by 8:30 p.m. that same night. If any demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s). To the extent there are any unresolved issues after the meet and confer, these issues will be presented to the Court the following morning.

A party will provide demonstrative exhibits to be used in connection with closing arguments by 7:00 p.m. the night before closing, and objections will be provided no later than 8:00 p.m. the night before closing. The parties shall meet and confer in an attempt to resolve those objections by 8:30 p.m. that same night. If any demonstratives change after the deadline, the party

intending to use the demonstrative will promptly notify the opposing party of the change(s). To the extent there are any unresolved issues after the meet and confer, these issues will be presented to the Court the following morning.

The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF form. However, for video or animations, the party seeking to use the demonstrative will provide it to the other side via email and/or sharefile link. For any irregular sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as a PDF or JPEG copy of 8.5" x 11".

This provision does not apply to demonstratives created during testimony, which do not need to be provided to the other side in advance of their use. In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.

If good faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall bring its objections to the Court's attention prior to the opening statements or prior to the applicable witness being called to the witness stand. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objections to the exhibit.

## XI.  STATEMENT OF DAMAGES

### A.  Damages Claimed

Plaintiffs seek damages pursuant to 15 U.S.C. § 1117, including an award for lost profits from sales at two overlapping retailers where CMT and Apex sold competing products; unjust enrichment in the form of royalties that Apex avoided paying by infringing CMT's trademark;[13]

---

[13] Per Footnote ___ above, Apex believes that unjust enrichment damages have been excluded from the case.

23

and the costs of a remedial advertising campaign designed to correct consumer misimpressions caused by Apex's advertising and marketing of its orange-colored circular woodworking sawblades under the Crescent Tools brand.  Plaintiffs seek an award of treble damages under 15 U.S.C. § 1117 as Plaintiffs assert Defendants' alleged infringement was willful.  Defendants deny that they have infringed, much less willfully.  Both parties seek an award of attorneys' fees under 15 U.S.C. § 1117 as they believe this is an exceptional case.

### B.	Other Relief Sought

Plaintiffs seek injunctive relief under 15 U.S.C. § 1116.  Plaintiffs seek other and further relief as this Court deems just and proper.

Defendants seek cancellation of Plaintiffs' U.S. trademark registration No. 3,038,625.

## XII.	UNANIMOUS VERDICT

The parties do not consent to a less than unanimous verdict.

## XIII.	OTHER MATTERS TO BE ADDRESSED

### A.	Motions for Judgement as a Matter of Law

The parties agree that motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) will be presented and argued at breaks to avoid any use of the allotted trial time.

### B.	Jury Notes

The parties agree that the jurors should be permitted to take handwritten notes during the presentations of parties on a notebook provided by the Court, and that jurors be permitted to bring these handwritten notes into the deliberation room.  The parties further propose that the jurors be instructed not to share the notebooks with each other (though they can discuss the contents of their notes) and that the notebooks be collected and destroyed after the verdict without review by the parties or the Court.

Dated: June 15, 2026

| | |
|---|---|
| **BELL, DAVIS & PITT** | **SNEED PLLC** |
| s/ Robert E. Colletti | s/ John F. Morrow, Jr. |

| | |
|---|---|
| Ward Davis (NC Bar ID 27546) | John F. Morrow, Jr |
| Joshua B. Durham (NC Bar ID 25414) | Aaron D. Johnson |
| Kevin Roak (NC Bar 57402) | David A. Jackson |
| **BELL, DAVIS & PITT** | Joy Tacy Allen Woller |
| 227 W. Trade Street, Suite 1800 | **WOMBLE BOND DICKINSON (US) LLP** |
| Charlotte, NC 28202 | One West Fourth Street |
| (704) 227-0400 | Winston-Salem, NC 27101 and |
| ward.davis@belldavispitt.com | 50 California Street, Suite 2750 |
| jdurham@belldavispitt.com | San Francisco, California 94111 |
| kroak@belldavispitt.com | John.Morrow@wbd-us.com |
| | Aaron.Johnson@wbd-us.com |
| -and- | David.Jackson@wbd-us.com |
| | Joy.Woller@wbd-us.com |
| Edgar H. Haug (*pro hac vice*) | |
| Robert E. Colletti (*pro hac vice*) | ATTORNEYS FOR DEFENDANTS |
| Kaitlin M. Farrell (*pro hac vice*) | APEX TOOL GROUP LLC and APEX |
| Brian E. Auricchio (*pro hac vice*) | BRANDS, INC. |
| Malorie Ruggeri (*pro hac vice*) | |
| **HAUG PARTNERS LLP** | |
| 745 Fifth Avenue | |
| New York, NY 10151 | |
| (212) 588-0800 | |
| ehaug@haugpartners.com | |
| rcolletti@haugpartners.com | |
| kfarrell@haugpartners.com | |
| bauricchio@haugpartners.com | |
| mruggeri@haugpartners.com | |
| | |
| ATTORNEYS FOR PLAINTIFFS | |
| CMT USA, INC. and CMT UTENSILI | |
| S.p.A., | |

25