

Womble Bond Dickinson (US) LLP

50 California Street
Suite 2800
San Francisco, CA  94111

Aaron D. Johnson
Partner
Admitted in New York and California
Direct Dial:  650.687.8426
E-mail:  Aaron.Johnson@wbd-us.com

June 16, 2026

Via ECF

Hon. Timothy M. Reif
U.S. District Court Western District of North Carolina
Charlotte Division
401 West Trade Street, Room 1200
Charlotte, NC 28202

Re: CMT USA, Inc. et al. v. Apex Tool Group LLC et al.
     No. 3:24-cv-00137-TMR-DCK (W.D.N.C.)

Dear Judge Reif:

Defendants write to request the Court's permission to file a short supplemental brief to exclude the report and opinions of Plaintiffs' Expert Russell Winer on his theory of corrective / remedial advertising damages (Dkt. No. 278-1, the "Winer Report").

Defendants previously filed a Motion in Limine to exclude the Winer Report on February 3, 2026. (Dkt. No. 278, the "Motion to Exclude").  That motion requested exclusion of the Winer Report on the basis that the corrective / remedial advertising theory lacked empirical support and employed unreliable methods for calculating damages.  The Court's order of June 8, 2026 (Dkt. No. 362) denied that motion, finding that "Defendants' objections to the Winer Report go to the weight of the report rather than to its admissibility and, therefore, do not constitute an adequate basis for exclusion."  Importantly, Apex's Motion to Exclude was not based on the allegations of harm that Prof. Winer used to justify his corrective / remedial advertising damages opinions, because at the time the Court had not excluded them.

Since the order denying the motion, however, the Court's subsequent rulings have resulted in the exclusion of the substantive allegations of harm or confusion that form the basis for Prof. Winer's corrective advertising damages theory.  As a result, Prof. Winer no longer has a basis for his conclusion that corrective or remedial advertising is needed because the sale of Apex's blades has "harmed the CMT brand."

Specifically, the Winer Report basis its claim for corrective / remedial advertising on Prof. Winer's assertion that "the presence of Apex's allegedly infringing blade has harmed the CMT brand." (Winer Report, p. 36).  Prof. Winer admitted that he does not have any evidence of actual harm to the CMT brand, and his report and theory of damages instead solely relies on evidence provided by others.  (Ex A., the "Winer Depo.", 242:42-243:3).

Prof. Winer did not conduct any survey regarding harm to the CMT Brand; he has no evidence that consumers are less likely to purchase CMT products; he has no evidence consumers

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.



view CMT products as less desirable; and he has no evidence that the value of the CMT brand decreased. (Winer Depo., 243:4-244:4). His entire theory of damages is thus based on the allegations of confusion and similarity made by others.

In particular, the allegations or "evidence" on which the Winer Report relies are:

- The Maronick likelihood of confusion survey, which has now been excluded. (*See* Dkt. 367).

- Allegations of alleged consumer confusion, all of which are based on hearsay or double-hearsay. As the Court is aware, to date CMT has only identified two alleged incidents of confusion in its response to Apex's Interrogatory No. 9 (seeking CMT's knowledge of all instances of confusion). The Court has already ruled that one such incident (the Milosevich trade show incident) is excluded based on hearsay. (*See* Dkt. 362, at pp. 47-48).

- Regarding the second incident identified in CMT's interrogatory response (the Harmco incident), it too is based on hearsay (actually double-hearsay). Specifically, it is based on something a Harmco employee told a CMT employee, Sal Taro, which Mr. Taro then summarized in an email he sent to another CMT employee, Mr. Ricci. (Ex. B, July 19, 2022 Email from Sal Taro). Notably, neither the Harmco employee nor Mr. Taro will be witnesses at trial, and thus there is no witness who has personal knowledge of the alleged incident of confusion. And when asked about the alleged Harmco incident at his deposition, Mr. Ricci (who was CMT's 30(b)(6) witness on the topic of CMT's knowledge of confusion) testified that he could not remember even talking to Mr. Taro about it. (Ex. C, Ricci Dep., at pp. 309-310). Similar to its ruling precluding Mr. Foley from providing hearsay testimony about purported instances of confusion relayed to him by others who are not testifying at trial, the Court should also preclude Professor Winer from relying on such hearsay evidence.

- Although CMT never identified it in response to Apex's Interrogatory No. 9, Professor Winer also purports to rely on an instance of confusion based on an email from an individual named Brian Ballard (who worked at a retailer, Dana Construction) sent to a former CMT employee named Dustin Melchiorri describing a visit to Lowe's. (Ex. D, Nov. 24, 2021 Email from Brian Ballard to Dustin Melchiorri). Notably, neither Mr. Ballard nor Mr. Melchiorri will be witnesses at trial, and thus there is no witness who has personal knowledge of the alleged incident of confusion or the report of same to CMT. Similar to its ruling precluding Mr. Foley from providing hearsay testimony about purported instances of confusion relayed to him by others who are not testifying at trial, the Court should also preclude Professor Winer from relying on such hearsay evidence.

- Professor Winer also apparently intends to rely on vague and general statements about alleged confusion relayed by Mr. Ricci or Mr. Melchiorri during their depositions, but the entirety of their testimony likewise is based on things people allegedly said to Messrs. Ricci or Melchiorri who will not be witnesses at trial. (Ex. C, Ricci Depo., 190:21-197:6) (Ex. E, Melchiorri Depo., pp. 22-24). These alleged incidents are thus exactly like the



"unquantifiable and verbal out-of-court statements" that CMT employee Mr. Foley intended to testify about until the Court excluded such testimony in its June 8, 2026 Order. (*See* Dkt. 362, at pp. 49-50).

- The Winer Report also bases its claim of "confusion in the marketplace" on David Wyble's conclusion from an analysis of spectrophotometer readings that both parties use a color that could be called orange. (Winer Report at 28-29). The spectrophotometer readings on which Wyble's analysis is based were excluded by the Court. (Dkt. No. 362 at 13).

In his deposition, Prof. Winer stated that his report had no other basis that consumers were confused by Apex's saw blade other than the above items. Winer Depo., 220:2-8 ("Q. Right, well, my point is that what is your basis that consumer confusion exists, and so you mentioned those three -- ·A.· · I went through three. Q.· · Those three, and is there anything else? A.· · No.").

In view of the above, Apex respectfully submits that allowing Professor Winer to provide expert opinions that are based on excluded evidence or hearsay would be extremely prejudicial to Apex, particularly considering that CMT is seeking over $5 million in corrective/remedial advertising damages based on Professor Winer's opinions. The jury is likely to believe that any expert report permitted by the Court has been found to be based on an acceptable foundation, without understanding that an expert report that relies entirely on excluded evidence or hearsay should not be considered.

We appreciate Your Honor's time and consideration of this important issue, and are available to provide any supplemental briefing or clarifications as Your Honor would find helpful.

Best regards,

Womble Bond Dickinson (US) LLP

/s/ *Aaron D. Johnson*
John F. Morrow, Jr.
Aaron D. Johnson
David A. Jackson
Joy Tacy Allen Woller
One West Fourth Street
Winston-Salem, NC 27101
(336) 721-3600
John.Morrow@wbd-us.com
Aaron.Johnson@wbd-us.com
David.Jackson@wbd-us.com
Joy.Woller@wbd-us.com

Attorneys for Defendants
*Apex Tool Group LLC and Apex Brands, Inc.*



## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 16th day of June, 2026, the foregoing document was served via electronic means through CM/ECF on the following counsel of record:

Edward B. Davis (NC Bar ID 27546)
Joshua B. Durham (NC Bar ID 25414)
BELL, DAVIS & PITT
227 W. Trade St., Suite 1800
Charlotte, NC 28202
(704) 227-0400
ward.davis@belldavispitt.com
jdurham@belldavispitt.com

Edgar H. Haug (*pro hac vice*)
Robert E. Colletti (*pro hac vice*)
Malorie Ruggeri (*pro hac vice*)
Brian E. Auricchio (*pro hac vice*)

HAUG PARTNERS LLP
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
ehaug@haugpartners.com
rcolletti@haugpartners.com
mruggeri@haugpartners.com
bauricchio@haugpartners.com

*Attorneys for Plaintiffs CMT USA, Inc.
and CMT Utensili S.p.A.*

/s/ *Aaron D. Johnson*
Aaron D. Johnson

Attorneys for Defendants
*Apex Tool Group LLC and Apex Brands, Inc.*