**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:24-CV-00137-TMR-DCK**

| | |
|---|---|
| CMT USA, INC. and CMT UTENSILI S.p.A., <br><br> Plaintiffs, <br><br> v. <br><br> APEX TOOL GROUP LLC and APEX BRANDS, INC. <br><br> Defendants. | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.     INTRODUCTION .................................................................................................... 1

II.    BACKGROUND ...................................................................................................... 2

       A.     CMT's Motion to Compel Third-Party Communications ...................................... 2

       B.     CMT's Motion for Sanctions Concerning Interrogatory No. 6 ............................. 2

III.   ARGUMENT ........................................................................................................... 3

       A.     Legal Standard ........................................................................................... 3

       B.     Apex's Requested Fee Award is Unreasonable .......................................... 5

              i.     Apex's Billing Entries Include Services For Unrelated Work or
                     Work Outside the Scope of the Court's Award .......................................... 5

              ii.    Apex's Billing Entries Are Excessive and Redundant ............................... 9

IV.    CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Monsanto Co.*,
  2007 WL 1859046 (S.D.W. Va. June 26, 2007)............................................................. 4, 10

*BAM Capital LLC v. Houser Transp., Inc.*,
  2020 WL 97459 (W.D.N.C. Jan. 8, 2020) ........................................................... 3, 4, 5, 12

*Beaumont v. Branch*,
  2024 WL 3742755 (D.S.C. Aug. 9, 2024)...................................................................... 4, 9

*Denton v. Pennymac Loan Servs. LLC*,
  252 F. Supp. 3d 504 (E.D. Va. 2017) ............................................................................ 5, 9

*Gaston v. Lexisnexis Risk Sols., Inc.*,
  2020 WL 4732087 (W.D.N.C. Aug. 14. 2020)............................................................... 3, 4

*Hensley v. Eckerhart,*
  461 U.S. 430 (1983)..................................................................................................... 3, 4, 5

*Velasquez v. Salsa & Beer Rest.*,
  2016 WL 11697110 (E.D.N.C. Oct. 6, 2016) ............................................................... 4, 12

## I.  INTRODUCTION

Defendants Apex Tool Group LLC and Apex Brands, Inc. (collectively, "Defendants" or "Apex") seek an award of $58,053.41 for attorneys' fees and costs incurred in opposing two motions filed by Plaintiffs CMT USA, Inc. and CMT Utensili, S.p.A (collectively, "Plaintiffs" or "CMT"), specifically, (1) CMT's Motion to Compel Defendants to Produce Third-Party Communications (Dkt. 114) and (2) CMT's Motion to Sanction Apex's Failure to Complete and Correct its Response to Interrogatory No. 6 (Dkt. 204).  Although the Court has already determined that Apex is entitled to recover the reasonable attorneys' fees incurred in opposing those motions (Dkts. 246, 368), the amount of any award is subject to the Court's review for reasonableness.

Apex has not met its burden of demonstrating that its requested award is reasonable.  Apex seeks reimbursement for services beyond the scope of the Court's Orders, claims an unreasonable number of hours in opposing CMT's motions, and fails to support justifying its hourly rates.[1] Accordingly, the requested award should be significantly reduced.

Prior to the filing of the instant motion, Apex notified CMT that intended to seek a fee award of $58,053.41, but would accept $55,000 if CMT were to voluntarily agree.  Ex. A at 3.  In response, CMT requested Apex's billing records so that it could evaluate the claimed fees.  Ex. A at 2.  Apex refused stating "[w]e're not going to get bogged down with your team flyspecking our invoices."  Ex. A at 1.  As a result, CMT had no opportunity to assess the reasonableness of the claimed fees and hours spent or to engage in meaningful discussions with Apex regarding an appropriate reimbursement (*see* Dkt. 246).  Instead, CMT had to wait until Apex filed its motion and disclosed its supporting billing records, which revealed an excessive 157 hours allegedly spent

---

[1] CMT only addresses the reasonableness of Apex's requested fee award and so Apex does not later argue waiver, reserves its right to appeal the permissibility of the award.

in opposing two straightforward motions (*see* Dkts. 407-1 through 407-6).

## II. BACKGROUND

### A. CMT's Motion to Compel Third-Party Communications

CMT moved to compel the production of (i) communications between Apex's litigation counsel (formerly Lewis Roca) and non-party Marksmen Brand Protection Services, along with related documents, and (ii) communications between Apex and/or Lewis Roca and non-party saw blade manufacturers, also with related documents. Dkt. 114. Prior to filing its motion, Apex had confirmed that its counsel had communicated with both Marksmen and non-party saw blade manufacturers, but withheld those communications, asserting work product protection. CMT believed that Apex had waived any work product protection, in part, because Apex had produced the Marksmen Report from its counsel's own litigation file. And CMT believed Apex had no reasonable basis to maintain that communications with non-party saw blade manufacturers were or remained confidential because a non-party had already produced one of those communications to CMT.

The Court denied CMT's motion and awarded Apex's its reasonable attorneys' fees and costs for having to oppose the motion. Dkt. 246 at 20. CMT objected arguing that its motion was substantially justified. Dkt. 247. Judge Reif affirmed the fee award. Dkt. 368.

### B. CMT's Motion for Sanctions Concerning Interrogatory No. 6

CMT moved to sanction Apex for not correcting an incomplete and inaccurate response to Interrogatory No. 6 (Dkt. 204), which asked Apex to "[s]tate by month . . . Defendants' expenditures for each advertising or promotional medium used to promote the Accused [Products]" (Dkt. 205 at 3). Apex had produced a one-page summary document specifically for this litigation, which set forth that Apex's "marketing spend" for its saw blades in 2023 was "$0.0M." Prior to filing its motion, CMT identified substantial evidence demonstrating that Apex's claimed "$0.0M"

marketing spend was inaccurate. *See* Dkt. 205 at 3-5; 6-12. Apex refused to provide any further explanation or produce any further documentation regarding its marketing spend prior to CMT filing its motion. Because fact discovery had closed, the impact on damages, and that Apex had a continuing obligation to supplement an inaccurate discovery response, CMT moved pursuant to Federal Rule of Civil Procedure Rule 37(c)(1).

CMT's motion was denied and the Court held that a "determination as to whether Defendants' evidence and testimony are complete, accurate, and/or credible, should be decided by a jury,"[2] and awarded Apex reasonable attorneys' fees and costs incurred for opposing the motion. Dkt. 246 at 20. CMT objected, arguing that its motion was, at the very least, substantially justified. Dkt. 247. Judge Reif subsequently affirmed. Dkt. 368.

## III. ARGUMENT

### A. Legal Standard

The reasonableness of a fee award is a matter committed to the district court's discretion, and courts routinely reduce fee awards to ensure that only reasonable fees are awarded. *See BAM Capital LLC v. Houser Transp., Inc.*, 2020 WL 97459, at *2 (W.D.N.C. Jan. 8, 2020); *see also Gaston v. Lexisnexis Risk Sols., Inc.*, 2020 WL 4732087, at *2 (W.D.N.C. Aug. 14. 2020); *Hensley v. Eckerhart,* 461 U.S. 430, 433 (1983). "The burden is on the party requesting fees and costs to demonstrate, by clear and convincing evidence, that the fees and costs requested are reasonable." *BAM Capital*, 2020 WL 97459, at *2.

Courts begin their analysis of the reasonableness of attorneys' fees by calculating the

---

[2] CMT addressed this issue at trial through its cross-examination of Mr. Weber. Mr. Weber confirmed that the "$0.0M" figure for "marketing spend by year" for 2023, did not include all categories of marketing spend for Crescent. Dkt. 409 (Day 3 Trial Transcript) at 113:11-116:6. Mr. Weber specifically testified that expenditures for trade shows, which could be substantial, were not included in that figure. Dkt. 409 at 116:4-6.

"lodestar" amount, which is determined by multiplying the number hours reasonably expended by a reasonable rate. *Id*. To establish that the requested hourly rates are reasonable, the fee applicant must provide "specific support" of prevailing market rates in the relevant community. *Gaston*, 2020 WL 4732087, at *2. Additionally, "a fee applicant must establish the reasonableness of the hours for which compensation is sought." *Beaumont v. Branch*, 2024 WL 3742755, at *10 (D.S.C. Aug. 9, 2024). "The court must exclude from the fees allowed any hours which are 'excessive, redundant, or otherwise unnecessary' including instances where a case is overstaffed or the billing was not exercised with good judgment." *Velasquez v. Salsa & Beer Rest.*, 2016 WL 11697110, at *3 (E.D.N.C. Oct. 6, 2016) (quoting *Hensley*, 461 U.S. at 434); *Allen v. Monsanto Co.*, 2007 WL 1859046, at *2 (S.D.W. Va. June 26, 2007) ("The Court may pore through the submitted records and subtract item by item those hours believed to be excessive. Alternatively, the Court may reduce the fee award by a percentage as a practical means of trimming fat from a fee application." (internal quotations omitted)). The lodestar rate must then be evaluated in light of the *Johnson* factors, adopted by the Supreme Court:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of professional relationship with the client; and (12) awards in similar cases.

*Gaston*, 2020 WL 4732087, at *2 (citing *Hensley,* 461 U.S. at 430 n. 3 & 434).

As such, "counsel must present records of the time worked on the matter in a format which allows the Court an opportunity to determine if the time was reasonably spent." *BAM Capital*, 2020 WL 97459, at *3; *see also Beaumont*, 2024 WL 3742755, at *10 ("When the documentation

of hours is vague or incomplete, the district court may reduce the award accordingly.").  The practice of block billing—listing multiple tasks within a single time entry without delineating the time spent on each activity—is "problematic because it does not provide the district court with a clear sense of how many hours were performed on a particular task because multiple tasks are lopped into a single block of hours."  *BAM Capital*, 2020 WL 97459, at \*3 (collecting cases); *Denton v. PennyMac Loan Servs. LLC*, 252 F. Supp. 3d 504, 525 (E.D. Va. 2017) ("Because of the obligation to maintain billing records with sufficient detail that the court may review and determine the reasonableness of individual activities, block billing entries are disfavored in attorney's fees award cases.").

### B.  Apex's Requested Fee Award is Unreasonable

Apex has failed to meet its burden of establishing that the requested fee award is reasonable.  In support of its requested award, Apex sets forth a two paragraph "argument," and relies solely on the declaration of its own counsel and accompanying billing records.  None of that demonstrates that Apex's hourly rates or the hours expended are reasonable. In fact, the materials submitted by Apex reveal the opposite.  Here, Apex spent over 150 hours to prepare oppositions to routine motions to compel, which included time from five partners, two associates, and a paralegal.  No reasonable client expects to pay for more than 150 hours (nearly a month of full-time work) to oppose two straightforward discovery motions.  That amount of hours from seven attorneys is reflective of duplication, not a reasonable amount of time.  *See Hensley*, 461 U.S. at 434.

### i.  Apex's Billing Entries Include Services For Unrelated Work or Work Outside the Scope of the Court's Award

Although Apex's billing records do not make clear the precise number of hours it expended in actually opposing these motions, the hours that can be discerned from the records are excessive

and unreasonable. Apex's total request includes numerous billing entries that are either in whole or in-part completely unrelated to the work for which the Court authorized a fee award—the reasonable costs and fees incurred in filing oppositions to CMT's Motions. And notably, while Apex was preparing its opposition to CMT's Motion to Compel, the parties were also actively litigating Apex's own motion to compel (Dkt. 110), along with a corresponding motion to seal (Dkt. 118), resulting in Court orders on both CMT's and Apex's motions to seal dated November 1, 2024 (Dkts. 119, 121), which required redactions to exhibits filed by both parties.[3] As a result, some vague billing entries that appear related, may, upon closer inspection, be attributable to those unrelated matters rather than Apex's oppositions to CMT's motions. Apex is not entitled to those fees.

Below are some billing entries from Apex's invoices that include entirely unrelated or irrelevant services (services reflecting work clearly outside the scope of the Court's Order are highlighted in yellow, while services potentially reflecting unrelated work are highlighted in blue):

| 10/31/2024 | Megan Sneed | Receiving and reviewing notices concerning motion to compel, obtaining and reviewing motion to compel (sealed and unsealed) and accompanying documents, corresponding with A. Johnson concerning motion to seal, preparing for and participating in conference with D. Jackson and A. Johnson, reviewing motion to compel filed by Plaintiffs along with correspondence and filings pertaining to motion to seal, corresponding with A. Johnson concerning motion to compel. | 2.00 | $370.00 | $740.00 |
| 10/31/2024 | Jason Sneed | Reviewing motion to compel and counter-motion to compel; reviewing motion to seal from CMT; conference about and correspondence with co-counsel regarding NCWD practices on motion to seal; conference call with opposing counsel, Mr. Durham | 1.30 | $565.00 | $734.50 |

---

[3] It is unclear whether Apex is entitled to recover fees for the time spent on motions to seal or redactions as the Court's Order was specific to the fees incurred only in filing Dkts. 127 and 231, (Apex's oppositions). *See* Dkt. 246 at 20.

| 11/01/24 | A. Johnson | Review court order granting motion to seal, and reviewing order requirements for redacted versions; correspondence with local counsel re recommendations for how to comply with order given that exhibits were designated as confidential by opposing counsel | 0.38 | 176.46 |
|---|---|---|---|---|
| 11/01/24 | K. Wildman | Review Court Order re Motion to Compel testimony issued; confer with D. Jackson re same; assist with finalization of Supplemental Disclosure; arrange service re same | 0.66 | 191.55 |
| 11/04/24 | D. Jackson | Conference call with Mr. B. Rufener re responses to motion to compel field by CMT, preparation of expert reports, and case management plan and litigation strategy | 0.57 | 220.81 |
| 11/05/24 | J. Woller | Continue working on various discovery related matters, including conferral with Mr. A Johnson and Mr. D Jackson regarding all outstanding issues, including Mr. S Bublitz and Marksmen depositions, experts, summary judgment planning and other outstanding items | 1.51 | 590.33 |
| 11/05/24 | D. Jackson | Conference with Mr. A. Johnson and Ms. J. Woller re response to CMT's motion to compel, preparation of expert reports, preparation of motion for summary judgment, and litigation strategy | 1.23 | 478.41 |
| 11/05/24 | A. Johnson | Internal discussion with Mr. D. Jackson and Ms. J. Woller re status of discovery, strategy moving forward, and upcoming tasks for this week and schedule for completing them | 1.42 | 661.71 |
| 11/05/24 | A. Johnson | Internal discussion re planning for reply brief in support of motion to compel; find and assign associate for completion | 0.28 | 132.34 |
| 11/07/24 | A. Johnson | Correspondence with opposing counsel re status of our redactions of documents in support of the motion to compel, and status of their redactions for our motion to compel | 0.19 | 88.23 |
| 11/08/24 | A. Johnson | Review proposed redactions from opposing counsel; internal discussion with Mr. D. Jackson and Ms. J. Woller re strategy for responding to the proposed redactions | 0.75 | 352.91 |
| 11/08/24 | A. Johnson | Finalize redacted documents for filing; draft notice of filing of redacted documents; review and file documents as required by the Court in order to have publicly-filed documents | 0.94 | 441.14 |

| Date | Name | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 11/13/24 | A. Johnson | Internal strategy call with Mr. D. Jackson and Ms. J. Woller re moving forward with responses to motion to compel and expert disclosure strategy | 0.66 | | 308.80 |
| 06/04/25 | K. Wildman | Confer with D. Jackson re Order staying proceeding; discuss Response to Motion for Sanctions and exhibits; gather and work with exhibits; revise Unopposed motion to file under seal | 7.00 | | 1,925.00 |
| 05/22/2025 | Jason Sneed | Reviewing opposing counsel correspondence to Court regarding motion for sanctions and motion to seal; receiving and reviewing D. Taylor correspondence regarding non-compliance with local rules by opposing counsel; conference calls with Mr. Jackson; reviewing and approving of correspondence to Judge Keesler; conference call with opposing counsel on meet-and-confer obligations; additional conference calls and working on motion to continue or stay action | 1.80 | $580.00 | $1,044.00 |
| 05/22/2025 | Megan Sneed | Receiving and reviewing correspondence concerning expert, meet-and-confer issues, and court-filed documents concerning motion for sanctions and related motion to seal. | 1.00 | $395.00 | $395.00 |
| 06/04/2025 | Jason Sneed | Reviewing ORDER of Judge Reif suspending trial and all related deadlines pending summary judgment resolution; corresponding with co-counsel regarding same; reviewing and editing / approving of correspondence to Judge Keesler's chambers; reviewing co-counsel and opposing counsel correspondence | 0.80 | $580.00 | $464.00 |
| 06/04/2025 | Megan Sneed | Receiving and reviewing CM/ECF notice concerning stay of proceedings, reviewing correspondence among counsel as to stay, reviewing inquiry and draft email from D. Jackson concerning clarification, revising draft email, corresponding further with D. Jackson, finalizing and sending email to Court concerning request for clarification, receiving and responding to email from Court concerning clarification, reviewing correspondence concerning motion to seal and documents related thereto, briefly reviewing CM/ECF notices related to Apex response brief. | 1.00 | $395.00 | $395.00 |

Dkts. 407-1 at 2-3, 5-6, 9; 407-2 at 3; 407-5 at 4; 407-6 at 2.  The above entries are those that CMT could identify as relating to, or potentially relating to, matters outside the scope of the Court's fee award.  Their inclusion calls into question the accuracy and reliability of Apex's billing records, as a whole, and whether additional entries likewise reflect work unrelated to the motions at issue.

And that CMT was required to undertake this exercise before the Court—spending time and effort parsing Apex's billings records to determine which services were actually related to the motions at issue—highlights the inadequacy of Apex's fee request, its failure to satisfy its burden of demonstrating the reasonableness of the requested award, and why Apex should have provided its billing records to CMT in advance of filing this motion.

Moreover, as shown above, Apex's billing entries often include multiple tasks within a single time entry, making it difficult to determine first, how much time counsel actually spent on any particular task and second, whether the time allocated to that task was reasonable. *Denton v. Pennymac Loan Servs. LLC*, 252 F. Supp. 3d 504, 525 (E.D. Va. 2017) ("Because the entry does not attribute times to each activity listed, it is unclear how much time was spent researching for the complaint versus how much time was spent on the related activity, which the Court is unable to review for reasonableness."). This practice is especially problematic here, where Apex's entries combine services related to the oppositions at issue with unrelated work. Because Apex fails to distinguish between these tasks or allocate time between them, neither CMT nor the Court, is able to determine how much of the claimed time was expended on relevant work.

### ii. Apex's Billing Entries Are Excessive and Redundant

In addition to the unrelated hours above, the remaining hours claimed are unreasonable given the simplicity of the issues and the number of attorneys involved, resulting in duplication of effort and time. First, the legal issues and subject matter of the motions—two specific discovery issues—were discrete. At times, Apex had three partners, two associates, and a paralegal from Womble Bond Dickinson as well as two partners from Sneed PLLC (local counsel) working on Apex's oppositions, with the work between them often significantly overlapping. *See Beaumont*, 2024 WL 3742755, at *12 (finding that a "routine and straightforward motion to compel for a breach of contract dispute," for instance, does not warrant "excessive research" or "effort by three

skilled attorneys" and "weigh[ed] in favor of the court's downward adjustment of the lodestar amount"); *see also Allen,* 2007 WL 1859046, at *2 ("In sum, the records indicate a significant overlap in services, with multiple lawyers spending full days to review Defendants' removal papers and research 28 U.S.C. § 1447 . . . the Court finds it appropriate to reduce the requested fee by 66% . . . [the] records suggest that too many lawyers were used for routine procedural legal work, which resulted in excessive and duplicative work."). While Apex's billing records do not permit a precise determination of the number of duplicative hours, it is clear from certain descriptions that there was a duplication of effort.

Regarding CMT's Motion to Compel, there are fifteen billing entries, totaling 11.5 hours, from three different partners and an associate concerning exclusively Apex's review of the confidentiality of the documents filed with CMT's Motion to Compel. Dkt. 407-1 at 3-7, 9. For example:

- 11/06/24, J. Woller, "Consider confidential protections for Marksmen report in light of court order mandating redactions. Confer with Ms. M. Larson re same." Dkt. 407-1 at 4.
- 11/06/24, M. Larson, "Review and analyze documents for redactions and confer with J. Woller and A. Johnson re de-designating confidential documents." Dkt. 407-1 at 5.
- 11/08/24, A. Johnson, "Review redactions in documents from Marksmen." Dkt. 407-1 at 6.
- 11/08/24, D. Jackson, "Review emails from Ms. K. Yamane re proposed redactions to Marksmen documents and confer with Mr. A. Johnson re same and follow up recommendations for final redactions and response to CMT's motion to seal." Dkt. 406-1 at 7.

CMT attached only three exhibits under seal to its Motion to Compel, all of which were produced by Apex (the Marksmen Report, Cunningham's Color Percentage Methodology work, and the chain of custody document for the Marksmen blades). *See* Dkt. 116 (CMT's Motion to Seal Exs. A, I, and J). There is no reasonable explanation as to why three partners and one associate required over ten hours to review Apex's own documents for confidentiality and redactions. Unless,

however, some of these entries relate to the then ongoing discovery dispute concerning the production and confidentiality of documents from non-party Marksmen, which would fall outside of the scope of the Court's Order, and therefore should be removed from Apex's requested award.[4] Likewise, Megan Sneed and Jason Sneed, two local counsel partners, each have a billing entry dated October 31, 2024, in which they both reviewed CMT's motion to compel, reviewed CMT's motion to seal, engaged in correspondence regarding the motion to seal, and conferenced and corresponded with Womble, Bond, Dickinson—an unnecessary duplication of efforts by local counsel. Dkt. 407-2 at 3.

With respect to CMT's Motion for Sanctions, Apex's billing records reflect substantial overlap among the work performed by partners A. Johnson and D. Jackson and associate C. Underwood.  For example all three attorneys appear to have devoted significant, and in some instances, excessive, time to researching, drafting, and revising the Motion for Sanctions (Dkt. 407-4; 407-5)—C. Underwood alone spent a total of 41.3 hours solely on researching and drafting the motion.  Dkt. 407-4 at 8, 9; Dkt. 407-5 at 2, 3.  Taking a full week to prepare a straightforward opposition consisting primarily of background facts (the introduction and background sections combined comprise seven out of twenty pages) and routine analyses under *Southern States* and the applicable Federal Rules is excessive for any attorney.

---

[4] The Court's Order granting CMT's Motion to Seal (Dkt. 116) required CMT to file redacted versions of its exhibits to the Motion to Compel by <u>November 8, 2024</u>. Dkt. 119. CMT complied. Dkt. 122. Apex's billing records indicate that it was reviewing and redacting "Marksmen documents" for confidentiality and privilege issues on dates after November 8, 2024. *See e.g.*, Dkt. 407-1 at 7 (11/10/2024, A. Johnson, "Correspondence with Marksmen's counsel re potential for additional production); Dkt. 407-1 at 9 (11/13/2024, A. Johnson, "Review Marksmen document for privilege issues and redactions");  Dkt. 407-1 at 9 (11/13/2024, A. Johnson, "Redact work-product material from Marksmen documents"); Dkt. 407-1 at 9 ("Collect and review additional Marksmen documents attached as extra documents to the Marksmen Report; internal discussion re: reviewing and producing such documents").

Compounding the issue, Apex did not provide any support for the reasonableness of its hourly rates, as required by Fourth Circuit case law. The only support Apex offers is its own counsel's contention that "those rates were reasonable for the work performed, the experience of the professionals involved, and the nature of the issues presented." Dkt. 407 (Jackson Decl.) at ¶ 25. This does not constitute the "specific evidence" of "prevailing market rates" required by law— such as affidavits from disinterested counsel, a survey of prevailing market rates, or evidence of awards in similar cases. *See BAM Capital*, 2020 WL 97459, at \*3 (holding that counsel's unsupported assertion that its hourly rates reflected prevailing market rates was insufficient for the court to establish that those rates were reasonable); *Velasquez*, 2016 WL 11697110, at \*4 (finding that plaintiff failed to show her hourly rate was reasonable where counsel's declaration did not provide evidence of the prevailing rate in the district for the type of work counsel performed). Accordingly, Apex has failed to provide any evidence demonstrating that its hourly rates reflect prevailing market rates, and the Court cannot presume the reasonableness of Apex's rates.

## IV. CONCLUSION

Not only has Apex failed to meet its burden of demonstrating that its requested award is reasonable, Apex's support for its "award" plainly demonstrates that the award is unreasonable. It provided no evidence, support, or analysis to substantiate its request, much less a meaningful argument addressing the reasonableness of the award. Apex merely presented its billing records, which it refused to disclose to CMT in advance of filing its motion. As a result, CMT was required to undertake a close examination of Apex's billing entries and now litigate issues that should have been resolved or addressed in Apex's opening brief. Apex seeks reimbursement for services beyond the scope of the Court's Orders, and claims an unreasonable number of hours in opposing CMT's motions. Accordingly, the Court should significantly reduce the requested award.

Dated: July 22, 2026

Respectfully submitted,

/s/ Robert E. Colletti
Edgar H. Haug (*pro hac vice*)
Robert E. Colletti (*pro hac vice*)
Kaitlin M. Farrell (*pro hac vice*)
Brian E. Auricchio (*pro hac vice*)
Malorie Ruggeri (*pro hac vice*)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
ehaug@haugpartners.com
rcolletti@haugpartners.com
kfarrell@haugpartners.com
bauricchio@haugpartners.com
mruggeri@haugpartners.com

Joshua B. Durham (NC Bar ID 25414)
Kevin Roak (NC Bar ID 57402)
**BELL, DAVIS & PITT**
227 W. Trade Street, Suite 1800
Charlotte, NC 28202
(704) 227-0400
jdurham@belldavispitt.com
kroak@ belldavispitt.com

*Attorneys for Plaintiffs*
*CMT USA, Inc. and CMT Utensili S.p.A.*

## CERTIFICATE OF USE OF ARTIFICIAL INTELLIGENCE

Pursuant to this Court's order of June 13, 2024 regarding the use of artificial intelligence in court filings, Plaintiffs CMT USA, Inc. and CMT Utensili S.p.A., through their undersigned counsel, hereby certify:

1.      No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2.      Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Signed this 22nd of July, 2022 in New York, NY.


/s/ Robert E. Colletti
Robert E. Colletti (*pro hac vice*)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
rcolletti@haugpartners.com

*Attorney for Plaintiffs CMT USA, Inc.*
*and CMT Utensili S.p.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF System.  Service of same on any counsel of record will be accomplished through the Court's electronic filing system in accordance with Federal Rule of Civil Procedure 5(b)(2)(E).

/s/ Joshua B. Durham
Joshua B. Durham (NC Bar ID 25414)
**BELL, DAVIS & PITT**
227 W. Trade Street, Suite 1800
Charlotte, NC 28202
(704) 227-0400
jdurham@belldavispitt.com