# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Case No. 3:24-CV-00137-TMR-DCK

CMT USA, INC. and CMT UTENSILI S.p.A.,

    Plaintiffs,

    v.

APEX TOOL GROUP LLC and APEX BRANDS, INC.

    Defendants.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 1

II. APEX IS NOT ENTITLED TO ATTORNEYS' FEES UNDER THE LANHAM
ACT........................................................................................................... 3

    A. Apex is Not the Prevailing Party ............................................... 3

        i. Legal Standard ................................................................ 3

        ii. After Substantial Litigation Efforts CMT Successfully Defended
Against All of Apex's Counterclaims, Resulting in No Material
Alteration of the Parties' Legal Relationship ............................ 5

    B. This Case Is Not Exceptional.................................................... 10

        i. Legal Standard .............................................................. 10

        ii. The Record Demonstrates That CMT's Claims Were Not Frivolous ....... 12

        iii. CMT's Conduct Was Not Unreasonable .................................... 15

            a. CMT's Original Venue Was Proper; Apex Sought Transfer
for Strategic Reasons .................................................... 15

            b. CMT's Conduct During This Litigation Was Not Egregious........ 16

            c. CMT's Conduct During Trial Was Not Egregious........................ 18

            d. The Totality of the Circumstances Further Demonstrates
that CMT's Conduct Was Not Unreasonable .............................. 20

    C. Apex's Motion Fails to Comply with Rule 54 ....................................... 22

III. APEX IS NOT ENTITLED TO FEES; REGARDLESS, ITS FEE REQUEST
MUST BE APPORTIONED TO EXCLUDE FEES FOR ITS UNSUCCESSFUL
COUNTERCLAIMS.......................................................................... 23

IV. CONCLUSION................................................................................. 25

Case 3:24-cv-00137-TMR-DCK   Document 423   Filed 08/12/26   Page 2 of 32

# TABLE OF AUTHORITIES

**Cases**

*Alliance for Good Gov't v. Coalition for Better Gov't*,
919 F.3d 291 (5th Cir. 2019) ...................................................................................... 23

*Braziel v. NOVO Dev. Corp.*,
2019 WL 2745538 (D.S.C. July 1, 2019) ................................................................. 19

*Brown & Pipkins, LLC v. SEIU, Local 32BJ*,
846 F.3d 716 (4th Cir. 2017) ...................................................................................... 22

*CareFirst of Maryland, Inc. v. First Care, P.C.*,
434 F.3d 263 (4th Cir. 2006) ...................................................................................... 14

*Citi Trends Inc. v. Coach, Inc.*,
780 F. App'x 74 (4th Cir. 2019) ................................................................................... 9

*Concordia Pharms., Inc. v. Method Pharms., LLC*,
240 F. Supp. 3d 449 (W.D. Va. 2017) ............................................................. 11, 12

*CRST Van Expedited, Inc. v. E.E.O.C.*,
136 S. Ct. 1642 (2016) ................................................................................................. 5

*Monster Daddy v. Monster Cable Prods, Inc.*,
2014 WL 2780331 (D.S.C. June 19, 2014)......................................................... 12, 23, 24

*Eagle Forum v. Phyllis Schlafy's Am. Eagles*,
498 F. Supp. 1024 (S.D. Ill. 2020).............................................................................. 9

*East Iowa Plastics, Inc. v. PI, Inc.*,
832 F.3d 899 (8th Cir. 2016) ............................................................................... 4, 5, 8

*Exclaim Mktg., LLC v. DirectTV, LLC*,
2015 WL 5725703 (E.D.N.C. Sept. 30, 2015)....................................................... 11, 12

*Express Homebuyers USA, LLC v. WMBH Mktg.*,
343 F. Supp. 3d 562 (E.D. Va. 2018) ..................................................................... 3, 11

*Farrar v. Hobby*,
506 U.S. 103 (1992)...................................................................................................... 3

*Georgia Pac. Consumers Products LP v. von Drehle Corp.*,
781 F.3d 710 (4th Cir. 2015) ................................................................................. 10, 11

*Gracie v. Gracie*,
217 F.3d 1060 (9th Cir. 2000) .................................................................................... 23

*Hayward Industries, Inc. v. Blueworks Corp.*,
  2024 WL 3930968 (W.D.N.C. Aug. 23, 2024)..............................................................9, 10

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
  430 F.3d 1377 (Fed. Cir. 2005)..........................................................................22

*Laschkewitsch v. Legal & Gen. Am., Inc.*,
  2017 WL 4976442 (E.D.N.C. Nov. 1, 2017)....................................................25

*LendingTree, LLC v. Zillow, Inc.*,
  54 F. Supp. 3d 444 (W.D.N.C. 2024) ........................................................11, 12

*Milwaukee Electric Tool Corp. v. Freud*,
  2019 WL 6522400 (T.T.A.B. 2019) .................................................................6, 7, 17

*Octane Fitness, LLC v. ICON Health & Fitness, Inc*,
  572 U.S. 545 (2014)..........................................................................................11

*Propel Peo, Inc. v. Roach* ,
  2022 WL 22887136 (D.S.C. May 4, 2022)..........................................................9

*Royal Palm Props., LLC v. Pink Palm Props., LLC*,
  38 F. 4th 1372 (11th Cir. 2022) ................................................................4, 8, 10

*Rutherford Controls Int'l Corp. v. Alarm Controls Corp.*,
  2010 WL 11566439 (E.D. Va. Aug. 5, 2010)....................................................4

*Sara Lee Corp. v. Kaser-Roth Corp.*,
  81 F.3d 455 (4th Cir. 1996) ..............................................................................14

*Selee Corp. v. McDanel Advanced Ceramic Techs.*, LLC,
  2017 WL 3122565 (W.D.N.C. July, 21, 2017)..............................................11, 12

*Super Duper, Inc. v. Mattel, Inc.*,
  382 F. App'x 308 (4th Cir. 2010) .....................................................................13

*Tao of Sys. Integration v. Analytical Servs. & Materials*,
  412 F. Supp. 2d 571 (E.D. Va. 2006) ........................................................4, 5, 8

*VeriSign, Inc. v. XYZ.com,*
  2018 WL 6257101 (E.D. Va. Nov. 28, 2018)..............................................11, 16

*Verisign, Inc. v. XYZ.COM, LLC*,
  891 F.3d 481 (4th Cir. 2018) .......................................................................11, 12

*Young Design, Inc. v. Teletronics Int'l, Inc*,
  2001 U.S. Dist. LEXIS 21010 (E.D. Va. Nov. 9, 2001)..................................23

Case 3:24-cv-00137-TMR-DCK    Document 423    Filed 08/12/26    Page 4 of 32

**Statutes**

15 U.S.C. § 1117(a) ........................................................................................................... 3

28 U.S.C. § 1404(a) ......................................................................................................... 15

**Rules**

Fed. R. Civ. P. 54(d)(2)(B)(ii) ....................................................................................... 22

Fed. R. Civ. P. 54(d)(2)(B)(ii)(iii) ................................................................................. 22

Fed. R. of Evid. 804 ....................................................................................................... 19

## I.  INTRODUCTION

Apex's request for attorneys' fees (Dkt. 418) should be denied because Apex is not the prevailing party, this is not an exceptional case, and the record provides no basis for an award of attorneys' fees.  The American Rule—the longstanding principle that each party pays its own fees regardless of who wins—governs here.  Fee shifting is the exception, reserved for exceptional cases, not merely cases in which a party successfully defends against an infringement claim.  This case falls nowhere near that narrow category.  Additionally, Apex's motion independently fails because it makes no effort to support or apportion the fee award it seeks to recover.  It is also procedurally deficient.

CMT brought this case in good faith and with ample basis to believe that Apex infringed CMT's incontestable, federally registered trademark rights for the color "orange"—a simple color term allowed and encouraged by the USPTO[1]—as applied to woodworking circular saw blades.  That registration carries a presumption of validity and entitles CMT to enforce its trademark against uses likely to cause confusion.  Apex used a similar shade of orange, in the same manner as CMT, on the very same product.  CMT's infringement claim was therefore grounded in both its federally registered rights and the facts of this case.

Moreover, trademark infringement is determined under a nine-factor likelihood of confusion test, not by any single consideration.  Throughout discovery and trial, CMT presented an abundance of evidence supporting each of those factors.  CMT set forth evidence demonstrating that (i) its mark is strong; (ii) both blades are undisputedly orange; and the parties sell (iii) the same goods, (iv) at the same price, (v) through similar advertising, (vi) in overlapping channels of

---

[1] *See* TMEP § 1202.05(e) (providing that the description of the mark must use "ordinary language" and that identifying a specific shade of color is optional).

trade, (vii) to the same consumers.  And although not required, CMT presented evidence of actual confusion.  CMT was not pursuing speculative or weak claims; it presented ample evidence supporting its position under the full likelihood of confusion framework.

The procedural history further confirms CMT's infringement claim was sufficiently substantial to warrant adjudication on the merits.  Apex never moved to dismiss CMT's case, despite now asserting it "should have never been filed."  The Court denied Apex's motion for summary judgment on non-infringement and twice denied Apex's Rule 50(a) motions on non-infringement at trial.  Those rulings contradict Apex's present attempt to portray CMT's infringement claim as one so objectively deficient that its assertion makes this case exceptional.

Nor does the jury's verdict establish that CMT's claims lacked merit.  In closing Apex incorrectly told the jury—both orally and in a demonstrative—that the Court's actual confusion instruction allowed it to disregard the other eight likelihood of confusion factors and find no likelihood of confusion based only on minimal evidence of actual confusion.  That was not the Court's instruction and in fact, earlier that same day, the Court had expressly rejected that instruction.

The litigation record also cannot be viewed solely through the lens of Apex's successful defense to CMT's infringement claim.  After extensive discovery concerning Apex's counterclaims, the Court subsequently granted CMT summary judgment on three of Apex's four counterclaims, and the jury rejected Apex's remaining genericness counterclaim.  Apex's successful defense against CMT's infringement claim does not, standing alone, make Apex the prevailing party any more than CMT's successful defense against all four of Apex's counterclaims (as well as Apex's affirmative defenses) necessarily makes CMT the prevailing party.

Apex's effort to characterize this case as exceptional is no more persuasive than its

assertion that it is a prevailing party. Apex relies on selective quotations, misrepresentations, material omissions, and an incomplete account of the litigation. Moreover, Apex conveniently ignores its own litigation conduct that contributed to the expense, delay, and complexity of the case. Apex asserts that CMT "ignored" court orders and took unreasonable positions throughout the course of the litigation. As explained below, neither assertion is true. But even if Apex's characterizations were accepted, the conduct they identify falls short of the circumstances necessary to render this case exceptional and justify fee shifting.

Apex's motion requires the Court to accept that CMT pursued meritless claims, acted unreasonably, and manufactured unnecessary disputes, while Apex pursued meritorious claims and acted reasonably throughout. That is not what happened. Apex's motion should be denied. Apex is not a prevailing party. This is not an exceptional case. CMT's infringement claim was reasonable and the case was litigated in good faith. The record does not support a fee award.

## II.     APEX IS NOT ENTITLED TO ATTORNEYS' FEES UNDER THE LANHAM ACT

The Lanham Act does not authorize attorneys' fees because a defendant prevailed in defending a claim. Section 1117(a) provides that fee awards are available where the court, in its discretion, determines that (i) the applicant is a prevailing party and (ii) the case is exceptional. 15 U.S.C. § 1117(a). The American Rule is the starting point and fee awards are for "*rare, extraordinary* cases *when warranted*." *Express Homebuyers USA, LLC v. WMBH Mktg.*, 343 F. Supp. 3d 562, 565 (E.D. Va. 2018) (emphasis added). Apex cannot satisfy these requirements.

### A.     Apex is Not the Prevailing Party

#### i.     Legal Standard

A party prevails only when it obtains relief that "materially alters the legal relationship between the parties by modifying [one party's] behavior in a way that directly benefits the [opposing party]." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). Where the outcome is "mixed,"

*i.e.*, neither party achieved a decisive victory, the court may conclude that neither party prevailed. *See Tao of Sys. Integration v. Analytical Servs. & Materials*, 412 F. Supp. 2d 571, 573 (E.D. Va. 2006); *Rutherford Controls Int'l Corp. v. Alarm Controls Corp.*, 2010 WL 11566439, at \*1 (E.D. Va. Aug. 5, 2010).  A "key factor" for the court to consider in conducting this inquiry is which claims were the subject of the parties' litigation efforts.  *See Tao*, 412 F. Supp. 2d at 574 (collecting cases); *see also Royal Palm Props., LLC v. Pink Palm Props., LLC*, 38 F. 4th 1372, 1380-81 (11th Cir. 2022).

In trademark infringement cases, where each party merely succeeds in defending against the other's claims, courts have found that neither party is the prevailing party because there has been no material change in the parties' legal relationship.  *See Royal Palm*, 38 F. 4th at 1380-81; *see also East Iowa Plastics, Inc. v. PI, Inc.*, 832 F.3d 899, 906-07 (8th Cir. 2016).  The *Royal Palms* decision is directly on point.  There, the parties proceeded to trial on Royal Palm's trademark infringement claim and Pink Palm's invalidity counterclaim.  After a three-day trial, the jury found no infringement but also rejected Pink Palm's challenge to the validity of the mark. Pink Palm, the defendant, subsequently moved for attorneys' fees under the Lanham Act, arguing that it was the prevailing party.  The Eleventh Circuit rejected that argument and explained:

> Pink Palm's argument for why it is entitled to prevailing party status focuses on one thing: its successful defense of Royal Palm's infringement claim. Pink Palm seems to forget, however, that it responded to that infringement claim by asserting five counterclaims against Royal Palm, four of which sought cancellation of Royal Palm's Trademark. While most of those counterclaims were dismissed, one of Pink Palm's cancellation counterclaims and its non-infringement counterclaim proceeded to trial. The issues of Trademark infringement and cancellation were tried over three days, and the jury ultimately found that Pink Palm did not infringe the Trademark and that the Trademark was not invalid. Pink Palm thus successfully defended Royal Palm's infringement claim, and Royal Palm successfully defended Pink Palm's cancellation claim.

*Royal Palm*, 38 F. 4th at 1380-81.  The Eleventh Circuit reasoned that each party had "rebuffed"

– 4 –

the other's claim concerning the trademark, and because the resulting judgment "essentially restored the status quo ante," it did not materially alter the parties' legal relationship. *Id.* The court characterized the result as a "legal tie" and held that "neither party has crossed the threshold to prevailing party status." *Id.* The Eleventh Circuit therefore affirmed the district court's denial of costs and fees to the defendant, Pink Palm, as it was not the prevailing party. *Id.*

The Eighth Circuit has reached the same conclusion under materially similar circumstances. *See East Iowa Plastics,* 832 F.3d at 907. Applying the Supreme Court's rule that the "touchstone" of the prevailing-party inquiry must be a "material alteration of the legal relationship between the parties," the court held that no party prevails where the judgment merely restores the status quo ante. *Id.* at 906-07 (quoting *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1646 (2016)). As the court explained, "[w]here the parties achieve a dead heat," neither can be declared the prevailing party. *Id.*

### ii. After Substantial Litigation Efforts CMT Successfully Defended Against All of Apex's Counterclaims, Resulting in No Material Alteration of the Parties' Legal Relationship

Although Apex defended against CMT's trademark infringement claims, that alone does not make Apex the prevailing party. Apex also sought affirmative relief through four counterclaims attempting to cancel CMT's trademark—and lost on every one. Thus, the result was a legal tie: Apex defeated CMT's infringement claims, while CMT preserved its trademark against all of Apex's invalidity challenges. Accordingly, the litigation produced no material change in the parties' legal relationship. Apex nevertheless seeks its fees incurred not only in defending CMT's claims, but also for litigating its own unsuccessful counterclaims attempting to invalidate CMT's trademark.

Apex offers no support for its assertion that CMT's trademark infringement claim was the "crux" of this case (Dkt. 419 at 10), and the record demonstrates otherwise. *See Tao*, 412 F. Supp.

2d at 578 ("Defendants here have completely failed to show how the factual development, depositions, witnesses, exhibits, and other evidentiary materials focused on [plaintiff's] claim as opposed to the [defendant's] counterclaim, and thus why they are the prevailing party."). Apex's characterization disregards the substantial time, effort, and resources required to litigate its four cancellation counterclaims and three affirmative defenses. Each of Apex's counterclaims presented a distinct basis for invalidating CMT's trademark and required separate factual and legal development. *See e.g.*, Dkt. 159 (CMT SJ Memorandum) at 22-25. In contrast, CMT's trademark infringement and unfair competition claims were governed by the same likelihood-of-confusion analysis. Dkt. 370-2 (Joint Stipulations of Law) at No. 12.

The parties devoted substantial fact and expert discovery to Apex's efforts to invalidate CMT's trademark, including written discovery, document productions, and fact and expert depositions. *See e.g.*, Dkts. 159 at 22-25; 176 at 2-10; 185 at 3-16, 15-18 (CMT's SJ Briefings); Dkts. 164 at 9-14; 179 at 3-6, 21-23; 189 at 5-12 (Apex's SJ Briefings); 254 (Opinion & Order) at 7-32. By the close of discovery, CMT had substantial evidence to prove that three of Apex's counterclaims (functionality, fraud, and abandonment) were wholly unsupported. The Court granted CMT summary judgment on those three counterclaims, along with Apex's remaining three affirmative defenses. Dkt. 254 at 19-32. Apex's genericness counterclaim proceeded to trial.

Apex's genericness counterclaim was a central issue in this litigation. It generated substantial discovery and motion practice throughout the case, driven in significant part by Apex's reliance on non-precedential authority. From the outset of this litigation, Apex built its genericness counterclaim around *Milwaukee Electric Tool Corp. v. Freud*, 2019 WL 6522400 (T.T.A.B. 2019), focusing the parties' attention on third-party use of the color orange and seeking to introduce an overly broad amount of evidence of third-party use into the litigation. *See e.g.*, Dkt. 164-10 at 6-

8 (Apex's response to CMT's cease and desist letter) (citing *Milwaukee* as support for its genericness cancellation claim); Dkt. 164 at 3, 11-14 (citing *Milwaukee* for legal support and relying on the Marksmen Report as its corresponding evidence). Apex's production of the Marksmen Report (and the Second Marksmen Report) alone required a substantial amount of discovery, including meet and confers, multiple document productions, a Rule 30(b)(6) deposition of Marksmen, motion practice, non-party subpoenas, depositions of non-parties Century and Evolution, document productions from non-parties Century and Evolution, summary judgment briefings, supplemental notices of authorities, and motions *in limine*. *See*, *e.g.*, Dkt. 97, 104 (Proof of Service of Subpoenas on Century and Evolution); Dkt. 133-3 (Marksmen Tr.); Dkt. 164-2 (Marksmen Report); Dkt. 348-1 (Second Marksmen Report); Dkts. 199, 200 (Supplemental Notices of Authority); Dkts. 266, 317 (CMT Marksmen MIL & Apex Opp'n); Dkts. 345, 348, 354 (filings related to Second Marksmen Report).

Despite extensive reliance on Marksmen, however, Apex knew the defense was flawed. Apex's own billing records reveal that its expert conducted and evaluated a preliminary genericness (or "Teflon") survey before summary judgment briefing—and the results undermined the genericness defense. *See* Dkt. 422-1 at 67-68, 75, 81-83, 86-87, 90, 97-98, 107-110. For example, Apex's billing records indicate that on July 9, 2024, nearly one year before summary judgment and two years before trial, counsel met with Apex's survey expert to discuss "a number of results from Teflon survey that ***do not show genericness***." Dkt. 422-1 at 107 (emphasis added). Similar entries reveal that Apex knew its counterclaim lacked merit, including legal research concerning survey results with a "high initial number" of survey respondents believing that "a mark is a trademark" (*i.e.*, not generic). Dkt. 422-1 at 98. Thus, well before moving for summary judgment, Apex was aware that its own survey evidence cut against its genericness theory. Yet

Apex aggressively pursued that counterclaim through summary judgment and trial (despite having no evidence of public perception of third-party use), generating substantial litigation fees and costs along the way.

Notwithstanding Apex's own survey expert having generated evidence that undermined Apex's genericness defense, Apex now seeks to shift to CMT the cost of litigating that defective counterclaim. Apex did not produce its expert's pilot results or related materials in discovery and the expert did not disclose or mention it during his deposition. CMT's document requests had sought survey evidence (formal or informal) concerning its trademark or products. Ex. A at RFP 30. And in response to CMT's Requests for Admission, Apex represented that it had never conducted any study or analysis as to whether the color orange was generic when used on circular woodcutting blades. Ex. B at RFAs 114, 115. Thus, Apex possessed evidence that cut against genericness, did not disclose it, and proceeded to trial, where the parties devoted significant time to Apex's defense. *See Tao*, 412 F. Supp. 2d at 578 (holding that it is reasonable to deem neither party the prevailing party where "both parties incurred significant costs in order to develop facts that pertain as much to a vigorously prosecuted counterclaim as to the initial claim.").

In sum, CMT successfully defended against all of Apex's counterclaims and the litigation resulted in no material alteration of the parties' legal relationship. To the extent Apex argues that the parties' legal relationship was altered in its favor because CMT cannot again sue Apex for trademark infringement, the same is true for CMT: Apex can no longer seek to invalidate CMT's trademark on grounds of functionality, abandonment, fraud, or genericness. The outcome of the trial returned the parties to the same positions they occupied before the litigation. *See Royal Palm*, 38 F. 4th at 81; *East Iowa Plastics,* 832 F.3d at 907.

The cases Apex cites are distinguishable on their facts. Apex cites *Citi Trends, Inc. v.*

*Coach, Inc*. for the broad proposition that a "judgment that permanently bars the plaintiff from reasserting its trademark claims against the defendant confers prevailing party status on the defendant." Dkt. 419 at 10. But that case resolved on a motion to dismiss—***before*** the defendant had asserted counterclaims—not after a full litigation and jury trial that involved extensive litigation of a defendant's counterclaims. *Citi Trends*, 780 F. App'x 74, 78-79 (4th Cir. 2019). Apex also relies on dicta, as the Fourth Circuit never actually determined which party was the prevailing party. *Id.* at 79. Apex's reliance on *Eagle Forum v. Phyllis Schlafy's Am. Eagles* is also misplaced. Dkt. 419 at 10. In this non-binding case, the defendant's counterclaims were dismissed at the pleading stage and the defendant prevailed at summary judgment. *Eagle Forum*, 498 F. Supp. 3d 1024, 1035 (S.D. Ill. 2020). Thus, there was no trial and the defendant's counterclaims were dismissed at the outset. *Id.* at 1033. The parties sought ***no discovery*** on those counterclaims, nor did they spend substantial time litigating them.

Apex later cites *Propel Peo, Inc. v. Roach* as support for the proposition that even where a defendant loses on counterclaims, it may still prevail when the plaintiff's claims form the central basis of the case. Dkt. 419 at 10. But in *Propel*, the plaintiff asserted eighteen claims total, eight of which went to trial, including defamation, breach of contract, and tortious interference. *Propel*, 2022 WL 22887136, at *6-7 (D.S.C. May 4, 2022). Defendant prevailed on five of plaintiff's claims at trial (and ten claims prior to trial on motions to dismiss and summary judgment), as well as two of his four counterclaims at trial, one of which was a "central issue in the case" for which he was awarded $12,375 in damages. *Id.* at *7. Defendant's significant victories at summary judgment and at trial materially altered the parties relationship, particularly when considered along with the damages defendant was awarded on his counterclaim. Apex similarly cites *Hayward Industries, Inc. v. Blueworks Corp.*, characterizing *Hayward* as "finding plaintiff the prevailing

party even though the defendant won several claims in the litigation." Dkt. 419 a 10.  But Apex's characterization omits the critical fact that the plaintiff obtained an eight-figure judgment. *Hayward,* 2024 WL 3930968, at \*4 (W.D.N.C. Aug. 23, 2024).  The court expressly emphasized that the judgment "materially altered the relationship between the parties by requiring the Defendants to pay damages to Plaintiff." *Id.*   The court therefore rejected the defendant's contention that there was no clear winner, and thus, no prevailing party, distinguishing cases such as *Royal Palm* where neither party could claim a clear victory.  *Id.*

Apex's cited cases do not support Apex's positions.  They underscore that prevailing-party status depends on the specific circumstances of the case.  *Royal Palm*, by contrast, is directly analogous. There, as here, the plaintiff's infringement claim and the defendant's invalidity claim proceeded to trial, each was a central issue in the case, and each party successfully defended against the other's claims.  As such, neither party was the prevailing party because the litigation resulted in no material alteration of the parties' legal relationship.  The Court should reach the same conclusion here.

**B.    This Case Is Not Exceptional**

**i.    Legal Standard**

A case is "exceptional" when a court "determines, in light of the totality of the circumstances, that (1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable; (2) the non-prevailing party has litigated the case in an unreasonable manner; or (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence." *Georgia Pac. Consumers Products LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir. 2015) (internal citations omitted).  A prevailing party must prove that its case is exceptional by a preponderance of the evidence.  *Verisign, Inc. v. XYZ.COM, LLC*, 891 F.3d 481, 483-84 (4th

Cir. 2018).

A claim is frivolous or objectively unreasonably where no reasonable litigant could believe the argument or defense would succeed—a claim that merely proves unsuccessful is not a basis for awarding fees. *See Selee Corp. v. McDanel Advanced Ceramic Techs.*, LLC, 2017 WL 3122565, at \*4 (W.D.N.C. July, 21, 2017); *VeriSign, Inc. v. XYZ.com,* 2018 WL 6257101, at \*1 (E.D. Va. Nov. 28, 2018). "A claim may not properly be deemed groundless where a party has made a sufficient evidentiary showing to forestall summary judgment and has presented sufficient evidence at trial to prevent the entry of judgment against him as a matter of law." *LendingTree, LLC v. Zillow, Inc.*, 54 F. Supp. 3d 444, 459 (W.D.N.C. 2014) (internal quotations omitted); *Concordia Pharms., Inc. v. Method Pharms., LLC*, 240 F. Supp. 3d 449, 459 (W.D. Va. 2017); *Exclaim Mktg., LLC v. DirectTV, LLC*, 2015 WL 5725703, at \*7 (E.D.N.C. Sept. 30, 2015).

Moreover, it is a "rare case" in which a party's unreasonable conduct is "exceptional" to justify an award of attorneys' fees. *See Octane Fitness*, *LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 546 (2014). "Typically, this prong is satisfied where the non-prevailing party engages in some form of 'egregious behavior' in litigating a case." *Concordia,* 240 F. Supp. 3d at 459. A case should not be deemed exceptional based on isolated portions of the record or discrete litigation conduct that may have been unreasonable. *See Express Homebuyers*, 343 F. Supp. 3d at 567; *also Exclaim Mktg.,* 2015 WL 5725703, at \*8 ("Although DirecTV highlights some questionable discovery conduct on the part of Exclaim, there is no evidence that the case as whole was litigated unreasonably."). Whether a party's conduct was unreasonable must be assessed under the "totality of the circumstances" (*Georgia Pacific*, F.3d at 721; *Octane Fitness*, 572 U.S. at 554) and "if Plaintiff's actions were responsive to the Defendants, then Defendants' actions must be considered for purposes of determining Plaintiff's reasonableness." *VeriSign,* 2018 WL 6257101, at \*2.

Courts do not rely on prior awards of attorneys' fees as a basis for finding that party litigated unreasonable overall. *See Monster Daddy v. Monster Cable Prods. Inc.,* 2014 WL 2780331, at \*5 (D.S.C. June 19, 2014); *see also Selee Corp.*, 2017 WL 3122565, at \*4.

Where a party's conduct is neither frivolous nor unreasonable, there is no need to deter parties with reasonable claims from litigating those claims. *See Verisign*, 2018 WL 6257101, at \*2.

### ii. The Record Demonstrates That CMT's Claims Were Not Frivolous

The record overwhelmingly demonstrates that CMT's claims were well-founded. Apex's efforts to defeat CMT's claims at each stage of this litigation were unsuccessful. First, Apex considered and decided not to file a motion to dismiss.[2] *See* Dkt. 422-1 at 3-5 (spending roughly 25 hours researching, preparing, and discussing a potential motion to dismiss). Apex moved for summary judgment on non-infringement; the Court denied that motion. Dkt 164 at 1; Dkt. 254. Apex twice sought judgment as a matter of law under Rule 50(a) on the same non-infringement theory during trial, and the Court twice rejected those arguments. Dkt. 408 (Trial Tr. Vol. II) at 143:22-144:3; Dkt. 409 (Trial Tr. Vol. III) at 200:5-7, 202:15-17. If CMT's claims were meritless, as Apex now suggests, they would not have survived Apex's repeated challenges. Instead, these rulings confirm that CMT's claims were well-founded. *See LendingTree,* 54 F. Supp. 3d at 45; *Concordia Pharms.*, 240 F. Supp. 3d at 459 (declining to find defendant's claims frivolous where they survived plaintiff's dispositive motions both at the summary judgment stage and at the close of defendants' evidence); *Exclaim Mktg.*, 2015 WL 572570, at \*8.

Apex argues that "the merits were one sided" (Dkt. 419 at 3), but its reasons rest largely on inaccurate characterizations of the record, and more importantly, have little to do with the actual merits of CMT claims. First, the colors of the parties' blades are not "distinctly different" (Dkt.

---

[2] Apex instead filed a motion for a more definite statement, which the Court denied. *See* Dkt. 34.

Case 3:24-cv-00137-TMR-DCK    Document 423    Filed 08/12/26    Page 17 of 32

419 at 3).  There is extensive testimony in the record—most of which is from Apex's own witnesses and internal documents—stating that Apex's blades are orange.[3] *See e.g.*, Dkt. 159 at 6-7 (identifying and attaching Apex internal documents and testimony referring to Apex's blade as orange); Dkt. 411-2 (Dr. Wyble's trial demonstratives) at 11-13 (summarizing Apex testimony and internal documents referring to rawhide as orange); Dkt. 408 at 179:16-24 (Cunningham); Dkt. 409 at 103:8-13 (Weber).  Likewise, the fact that the parties' respective brand names appear on the blades and their packaging does not preclude a likelihood of confusion.  After sale and once the blades are in use, those brand identifiers are no longer visible, and the Court expressly held that post-sale confusion is actionable.  *See e.g.*, PTX-064; PTX-144; PTX-149; Dkt. 414 (Trial Tr. Vol. I) at 175:24-176:19 (Foley); Dkt. 408 at 180:7-14 (Cunningham); Dkt. 362 (Opinion & Order) at 25-26.  Nevertheless, these arguments relate only to one factor, similarity of the marks, and there is no basis to conclude that the jury found the parties' products dissimilar or to know what weight, if any, the jury assigned that factor in reaching its determination.  And here, since the parties sell directly competitive products, the degree of similarity required to prove a likelihood of confusion is lessened anyway.  Dkt. 410 (Trial Tr. Vol. IV) at 181:5-7 (Jury Instruction No. 20).

Apex's next four assertions, (b) through (e), relate solely to actual confusion—a single factor in the nine-factor likelihood of confusion analysis—and evidence of which, whether it be survey or anecdotal, is ***not required*** to establish a likelihood of confusion.[4]  Accordingly, CMT

---

[3] Throughout this litigation, Apex has repeatedly portrayed CMT as seeking to "monopolize" every shade of orange.  *See e.g.*, Dkt. 422 at ¶ 11.  That characterization is both inaccurate and irrelevant. The USPTO granted CMT a trademark on the color "orange" as applied to circular power saw blades for cutting wood; to the extent Apex disagrees with the scope of that registration, its dispute is with the USPTO, not CMT.  This criticism is particularly misplaced considering Apex itself owns a trademark covering simply the color orange.  *See* Ex. C.

[4] *Super Duper, Inc. v. Mattel, Inc.*, 382 F. App'x 308, 313 (4th Cir. 2010) ("While it is true that a lack of evidence of actual confusion may create a strong inference of no likelihood of confusion, the absence of such proof does not preclude a party from proving a likelihood of confusion based

was not required to present "non-hearsay evidence of actual confusion,"—even though it did (Dkt. 408 at 173:15-175:12, 198:3-199:8 (Foley))— a "non-CMT witness to testify about purported confusion," or survey evidence, and the alleged absence of such evidence would not bear on the merits of CMT's claims. None of these enumerated reasons demonstrates that CMT's claims were meritless. Rather, each pertains solely to actual confusion—a single factor that, while important, was not required for CMT to establish trademark infringement. *See* Part I, *supra*. CMT provided substantial evidence addressing each of the remaining factors during both summary judgment (Dkt. 159 at 11-22) and trial.[5] Apex cannot characterize as "exceptional" CMT's purported failure to present evidence of a factor that CMT was not required to prove—particularly where, in any event, CMT did present evidence of actual confusion.

Apex's listing of these issues is consistent with Apex's overemphasis of the actual-confusion factor throughout trial, which culminated in Apex's closing argument that significantly

---

on a compilation of other evidence. It is, after all, well established that no likelihood of confusion is required to prove a case of trademark infringement."); *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 269 (4th Cir. 2006) ("[P]roof of actual confusion is not necessary to show a likelihood of confusion . . . ."); *Sara Lee Corp. v. Kaser-Roth Corp.,* 81 F.3d 455, 463 (4th Cir. 1996) ("[E]vidence of actual confusion is unnecessary.").

[5] For instance: (i) strength of the mark: PTX-01; PTX-05; PTX-15 through PTX-35; PTX-036; PTX-038; PTX-042; PTX-050; PTX-055; PTX-063; PTX-038; PTX-100; PTX-108; PTX-109; Dkt. 414 at 70-141 (Tommassini); Dkt. 409 at 26-59 (Spallacci); (ii) similarity of the marks: part II.B.ii, *supra.*; PTX-158; PTX-160: PTX-161; PTX-163; PTX-165; PTX-166; PTX-168; PTX-169; PTX-171; (iii) similarity of the goods: Dkt. 370-1 (Joint Stipulations of Fact) ¶ 14; PTX-151; PTX-153; PTX-155; PTX-156; PTX-157; Dkt. 414 at 144-202 (Foley); Dkt. 414 at 204-247 (Ricci); Dkt. 414 at 70-141 (Tommassini); (iv) channels of trade: Dkt. 370-1 ¶¶ 15-19; Dkt. 408 at 141:22-142:25 (Apex's Response to IROG 5); Dkt. 414 at 204-247 (Ricci); (v) similarity of advertising: PTX-015; PTX-038 through PTX-042; PTX-045; PTX-046; PTX-049; PTX-050; PTX-052; PTX-055; PTX-056; PTX-057; PTX-058; PTX-064; PTX-144; PTX-147; PTX-149; PTX-155; Dkt. 414 at 204-247 (Ricci); (vi) intent: Dkt. 370-1 ¶¶ 7, 9-13; DTX-1296; DTX-1314; PTX-160: PTX-161; PTX-171; Dkt. 408 at 143:8-17 (Apex's Response to IROG 14); Dkt. 408 at 138:18-140:13 (Apex's Responses to RFAs 166, 167, 180); (vii) actual confusion: Dkt. 414 at 144-202 (Foley); Dkt. 414 at 204-247 (Ricci); (viii) quality: Dkt. 414 at 144-202 (Foley); Dkt. 414 at 204-247 (Ricci); (ix) sophistication: Dkt. 414 at 144-202 (Foley); Dkt. 414 at 204-247 (Ricci).

– 14 –

misrepresented the Court's jury instruction on actual confusion—both orally and in its demonstratives—by telling the jury it could disregard the other eight likelihood of confusion factors when making its determination:

> Here's an instruction you've already heard, but I want you—I want to emphasize it. "The absence of more than a few instances of actual confusion over a substantial period of time creates a strong inference that there is no likelihood of confusion. *You may conclude that there is no likelihood of confusion if, for example, the instances of actual confusion were rare and infrequent as compared to the opportunities for confusion to arise*." Hundreds of thousands of opportunities.

Dkt. 410 at 212:17-25 (emphasis added); *compare*, Dkt. 410 at 182:24-185:14 (the Court's jury instruction). Apex's misrepresentation is particularly troubling as the Court expressly rejected the inclusion of that language earlier that morning. Dkt. 410 at 14:19-15:13 ("I am not inclined to include the sentence 'you may conclude.' So I'm rejecting that proposal by defendants . . . .").

Apex cites **no caselaw** supporting the unfounded proposition that the time for a jury to reach its verdict is in any way relevant to whether a case is "exceptional."[6] Indeed, the jury rejected Apex's genericness defense in that same time. The timing of the jury's deliberation does not mean CMT's claims were meritless; rather, it may reflect the effect of Apex's misrepresentation regarding the Court's jury instruction, "particularly during," in Apex's own words, "a phase as important as closing arguments" (Dkt. 419 at 6).

### iii. CMT's Conduct Was Not Unreasonable

#### a. CMT's Original Venue Was Proper; Apex Sought Transfer for Strategic Reasons

It was neither "curious" nor unreasonable for CMT to initially file this action in the Southern District of New York. Dkt. 419 at 3, 12. To the contrary, the case was transferred

---

[6] The cases Apex cites regarding deliberation time did not involve exceptional case determinations and do not support an inference of CMT's claims being frivolous or unreasonable.

pursuant to 28 U.S.C. § 1404(a), which applies when venue is proper in the transferor court, confirming that CMT's original choice of forum was entirely reasonable. Under § 1404(a), transfer is warranted only "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Although Apex attempts to characterize its transfer motion as a routine request grounded in convenience, its own billing records tell a different story, namely that Apex was forum shopping. For example, months before filing its motion to transfer, Apex recorded the following billing entries: "Research potential counterclaims available against CMT's trade dress claims and ***compare second and fourth circuits for potential strategic advantage***." Dkt. 422-1 at 3 (9/14/23, D. Jackson (emphasis added)); (9/9/2023, C. Underwood, "Research comparing Fourth and Second Circuits for differences in damages and legal tests for color trade dress infringement; draft memo detailing the same"); (9/14/2023, M. McCue, "Review and analyze research on counterclaims and a comparison of 2nd Circuit and 4th Circuit law on trade dress.").

CMT's selection of a concededly proper forum provides no basis for finding this case exceptional, particularly where the record shows that it was Apex—not CMT—that sought a different forum based on perceived strategic advantages in the governing law.

### b. CMT's Conduct During This Litigation Was Not Egregious

Apex cherry picks isolated instances from the course of this litigation to portray CMT's conduct as unreasonable. In doing so, Apex mischaracterizes the record and ignores its own actions, which "must be considered" in any fair assessment of the parties' conduct throughout the litigation. *See VeriSign*, 2018 WL 6257101, at *2.

As to CMT's conduct, CMT did not refuse to (i) consent to a substitute expert; (ii) provide information on relevant enforcement activities; or (iii) provide information and documents regarding related products. Dkt. 419 at 8-9. Regarding substitution, CMT's position was that Apex was using substitution as an opportunity to retain a more qualified expert. This was made

clear through the parties' correspondence and CMT's opposition to Apex's motion to substitute. *See e.g.*, Dkt. 242 at 3 ("CMT would have consented to substitution if Apex offered reasonable assurances that it was not attempting to gain a strategic advantage."). Moreover, CMT had no further information regarding enforcement efforts prior to 2021, as it told Apex repeatedly before it filed its motion, and as was reflected in CMT's updated interrogatory response. Ex. D at 5. Lastly, Apex was seeking information related to a broad range of products, "products similar to" circular saw blades for cutting wood, relying on *Milwaukee*. Dkt. 85 at 9. The Court held this request to be overly broad, and further found defendants reliance on *Milwaukee* to be "misplaced," stating "[t]he undersigned finds that the trademark registration at issue in  Milwaukee Elec. Tool Corp. involved a significantly broader spectrum of products than the products covered by the registration at issue here." Dkt. 85 at 14. The Court therefore did not compel discovery on "similar" products as Apex requested, but rather discovery related only to saw blades for power tools. Dkt. 85 at 14. Apex's characterization of the Court as granting this motion in "large part" is an overstatement, much less a sound basis for finding this case exceptional.

CMT likewise did not "force" Apex to obtain a protective order precluding the deposition of Apex's CEO (Dkt. 419 at 7). Apex chose to seek a protective order after unreasonably refusing to produce its CEO for deposition, despite its own witness's testimony that the CEO was the sole person responsible for Apex's decision to remain in the saw blade business despite its unprofitability. *See* Dkt. 94-3 (Weber Tr.) at 320:10-321:2. Though Apex omitted this directive from its summary of the Court's order (Dkt. 419 at 7), the Court also directed that "[i]f, after the completion of the other discovery, Plaintiffs contend that Roberts has unique and/or specialized knowledge that is relevant and proportional to the needs of this case – that they could not explore with other deponents – counsel for the parties shall meet and confer in a good faith attempt to agree

to terms for a limited deposition of Roberts." Dkt. 120 at 8. CMT was clearly unable to explore Mr. Robert's rationale for staying in the saw blade business with other deponents. Yet, Apex refused to meet and confer with CMT in good faith. *See* Part II.B.iii.d., *infra*.

### c. CMT's Conduct During Trial Was Not Egregious

CMT did not "ignore" court orders or act egregiously as Apex suggests. Rather, CMT complied with the Federal Rules of Evidence and the Court's directives. Apex's attempt to recast CMT's advocacy does not change the record or establish the type of exceptional behavior that warrants fee shifting.

First, CMT did not attempt to introduce "testimony regarding spectrophotometer readings" as Apex claims. Dkt. 419 at 3-4. Dr. Wyble relied on *two* spectrophotometer readings produced by Apex, which he independently confirmed through his own testing. When Apex objected to a demonstrative containing those data points, CMT removed that slide. During Dr. Wyble's direct examination, he was questioned about his independent testing of the parties' blade, to which Apex objected. Dkt. 408 at 85:5-25. The parties approached the bench and moved on. Dkt. 408:86:1-11. This is not egregious conduct. Apex first placed the spectrophotometry values at issue in an effort to quantify the difference between the orange shades on certain blades. Apex's refusal to acknowledge that its blade was orange—despite the testimony of every single one of its witnesses necessitated the color analyses in the first place.[7]

Second, Apex mischaracterizes CMT's treatment of Mr. King's declaration. Dkt. 419 at 4. CMT did not seek to introduce excluded testimony. It sought to test the credibility and expose the unreliability of Apex's anecdotal evidence of no actual confusion. Dkt. 409 at 6:24-7:25. Apex

---

[7] Dr. Renzo Shamey was Apex's substitute color expert. Despite substantial motion practice concerning his substitution, expert discovery, and a deposition requiring travel, Apex did not call Dr. Shamey at trial and their trial witnesses acknowledged Apex's blades as being orange.

played Mr. King's deposition testimony at trial, in which he testified he knew of no consumer confusion (the same opinion offered in Mr. King's excluded declaration). *See* Dkt. 273-4 (King Decl.) at ¶ 10 ("Contractor Tool Supply is not aware of any instances of consumer confusion between CMT saw blades and Crescent saw blades."). CMT sought to impeach that testimony based on the declaration's preparation, its false statements, and Mr. King's bias, but the Court did not permit it. That effort to test the credibility of Apex's evidence is not "egregious" conduct.

Third, CMT was entitled to designate Mr. Banduch's testimony. The Court had not excluded that testimony prior to trial and CMT reasonably understood it was entitled to designate and use his testimony under Federal Rule of Evidence 804. *See Braziel v. NOVO Dev. Corp.*, 2019 WL 2745538, at *2 (D.S.C. July 1, 2019). Apex knew Mr. Banduch's testimony supported CMT's case and would harm its position—otherwise, it would not have fought so vigorously to keep out the testimony of its own industry expert. Among other things, Mr. Banduch testified that: (i) "its possible that the likelihood of confusion could exist;" and (ii) "a knowledgeable consumer could make a quick purchasing decision and buy the wrong blade," especially "if you're accustomed to only ever seeing one orange blade and now there are two." Dkt. 274-5 (Banduch Tr.) at 205:13-206:23; 211:9-212:4. This testimony would have undermined Apex's argument that CMT could not present a non-CMT witness to testify regarding confusion.

Fourth, regarding reasonably royalty, CMT did not want to waive the possibility for a reasonable royalty award as Apex's ***own expert*** relied on a reasonably royalty analysis and set forth an affirmative reasonable royalty amount—which were not excluded by the Court. The only reasonable royalty "evidence" that was excluded prior to trial, was Mr. Henz's calculation, not the category of damages in general. Dkt. 362 at 31-32. Once the Court clarified its ruling at trial, CMT revised its opening demonstratives.

Finally, Apex is hardly in a position to accuse CMT of misrepresenting the record when Apex itself made significant, material misrepresentations to the jury regarding the Court's instruction on actual confusion during its closing statement. *See* Part II.B.ii, *supra.* Responding to Apex's argument, it is permissible for CMT to make statements in its closing argument that Apex was the wrongdoer. Apex takes an unduly literal reading of the statements regarding CMT's cease and desist letters in an effort to bolster its position. Apex did not literally ignore CMT's letters, which Apex clarified during its closing statement. Dkt. 410 at 220:1-13. Apex "ignored" CMT's letters in that it did not change its design or color—a fact the parties jointly stipulated to (Dkt. 370-1 at ¶¶12-13)—or do anything to suggest compromise with CMT.

### d. The Totality of the Circumstances Further Demonstrates that CMT's Conduct Was Not Unreasonable

Lastly, CMT's conduct must be assessed under the totality of the circumstances of this case, including Apex's conduct. From the outset, Apex demonstrated little regard for the merits of this case or its efficient resolution. In an early email, Apex proposed an insincere "resolution" allowing it to use up to 20% more orange on its saw blades than it was already using. Ex. E at 1. Apex subsequently failed to timely produce documents, withheld highly relevant information, repeatedly delayed the case, and missed Court ordered deadlines. For instance, Apex initially produced only eight emails while representing that it had produced all responsive emails. Ex. F at 2-3. During the first two depositions of Apex fact witnesses, however, a substantial number of additional emails were uncovered and Apex subsequently produced them. Ex. F at 8. CMT was unable to question the witnesses about their emails during their depositions and the parties ultimately had to stipulate to their authenticity to avoid re-deposing the same witnesses. Ex. G. Approximately two weeks before the close of fact discovery and on the eve of a deposition, Apex produced, for the first time, documents relating to the witnesses' spectrophotometry testing, as well as the Marksmen Report,

necessitating an extension of the fact discovery deadline for further discovery and depositions related to these documents. Dkt. 105 (Joint Motion to Extend Case Deadlines) at 2 n. 3. Apex also took several unreasonable positions during pretrial proceedings, including missing multiple Court-ordered deadlines (Ex. H at 10-11; 3-4)—despite having requested the extension that resulted in those deadlines (Ex. H at 16-17)—and refusing to agree to a mutual exchange of pretrial documents (Ex. H at 7-9). Apex also filed **eleven** motions *in limine*, five of which were fully denied and four denied in part. *See* Dkts 260-264, 275, 278, 280, 282-84; Dkt. 362 at 2.

Most egregious, in the weeks before trial, Apex disclosed that it had long before (by January 2025) discontinued manufacturing its accused saw blades. Ex. I. But Apex refused to provide any additional information or documents concerning that decision. CMT had to seek relief from the Court (Dkt. 359), resulting in Apex being ordered to produce a supplemental interrogatory response (subsequently served as "Defendants' Response to Unserved and Unnumbered Supplemental Interrogatory Per June 8, 2026 Court Order (Ex. I)), discontinuation documents, and a witness for deposition.[8] *See* 6/8/2026 Text-Only Order. These documents revealed that Apex was considering exiting the saw blade industry as early as August 2024 (Ex. I)—precisely when CMT was seeking to depose Apex's CEO to understand his rationale for Apex's continued presence in the saw blade industry. Had Apex timely disclosed its plans to stop manufacturing its accused blades—or permitted CMT to take Mr. Robert's deposition—the course of this litigation could have been materially different.

CMT did not create unnecessary discovery disputes; rather, Apex's incomplete productions, delayed disclosures, and intentional withholding of information did. The most recent

---

[8] Due to the lateness of Apex's disclosure, CMT was required to prepare for and take a Rule 30(b)(6) deposition just three days before trial, on June 19, 2026.

example Apex cites as evidence of "CMT's unreasonable litigation approach" (Dkt. 419 at 2 n. 2) illustrates why CMT's actions cannot be viewed in isolation or apart from the totality of the circumstances. Apex claims it needed an extension to file this motion because of issues with its billing records following its merger with Lewis Roca—a merger that occurred at least eighteen months ago. Ex. J. And Apex had more than a month after the verdict to prepare its motion. Apex omitted two significant facts from its account of the events. *See* Dkt. 419 at 2 n. 2. Apex waited until 6:45 p.m. the evening before the deadline to request an extension (Ex. K at 2), only to file its billing records on time. These facts underscore how unnecessary and suspect the requested extension was in the first place.

### C. Apex's Motion Fails to Comply with Rule 54

In any event, Apex's motion is procedurally deficient. Rule 54(d)(2)(B) requires a fee motion to "specify the judgment . . . entitling the movant to an award" and to "state the amount sought or provide a fair estimate." Fed. R. Civ. P. 54(d)(2)(B)(ii), (iii). Apex fails the first requirement entirely: neither its Motion nor its accompanying memorandum identifies the judgment purportedly entitling Apex to fees. That omission alone warrants denial. *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1386 (Fed. Cir. 2005) (reversing § 285 fee award for failure to comply with Rule 54(d)(2)(B)); *Brown & Pipkins, LLC v. SEIU, Local 32BJ*, 846 F.3d 716, 731 (4th Cir. 2017).

Apex's motion is independently deficient because the Motion itself neither states the amount of fees sought nor provides a fair estimate, as Rule 54(d)(2)(B)(iii) expressly requires. Dkt. 418. Apex cannot cure that omission by supplying the required information only in its memorandum or a supporting declaration; the Rule requires the *motion* to contain it. *See Brown & Pipkins*, 846 F.3d at 731 (holding that a party waived its fee request by failing to comply with Rule 54(d)'s motion requirement notwithstanding briefing elsewhere). Apex's fee request could be

denied on these procedural grounds alone.

### III. APEX IS NOT ENTITLED TO FEES; REGARDLESS, ITS FEE REQUEST MUST BE APPORTIONED TO EXCLUDE FEES FOR ITS UNSUCCESSFUL COUNTERCLAIMS

Apex is not entitled to fees because it is not the prevailing party and the reasonableness of its fees should not be addressed. But even assuming otherwise, Apex cannot recover fees incurred pursuing claims on which it did not prevail, especially where three of its four counterclaims were dismissed on summary judgment.

The general rule is that a fee award under the Lanham Act is limited to fees attributable to the claims on which a party prevailed; declining to apportion fees is the exception, not the rule. *See Monster Daddy*, 2014 WL 2780331, at \*10-11; *see also* Ex. L (*Young Design, Inc. v. Teletronics Int'l, Inc*, 2001 U.S. Dist. LEXIS 21010, at \*8 (E.D. Va. Nov. 9, 2001)) ("Even if costs were to be awarded, plaintiff has failed to separate the costs incurred solely in connection with pursuing the copyright claim from the costs incurred with respect to its other four claims or the defense of defendant's six counterclaims in the affidavits submitted to this Court . . . . In the related context of attorneys' fees . . . it has even been suggested that inadequate documentation justifies denying a fee altogether."); 5 McCarthy on Trademarks & Unfair Competition § 30:103. Further, the "'impossibility of making an exact apportionment does not relieve the district court of its duty to make some attempt to adjust the fee award in an effort to reflect apportionment. In other words, apportionment or an attempt at apportionment is required unless the court finds the claims are so inextricably intertwined that even an estimated adjustment would be meaningless.'" *Monster Daddy*, 2014 WL 2780331, at \*11 (quoting *Gracie v. Gracie*, 217 F.3d 1060, 1069-70 (9th Cir. 2000)); *see also Alliance for Good v. Coalition for Better*, 919 F.3d 291, 297 (5th Cir. 2019).

Here, apportionment is warranted. Apex's unsuccessful counterclaims—especially its genericness defense—were a significant part of the litigation. *See* Part II.A.ii, *supra.* Apex's

functionality, fraud, and abandonment counterclaims remained at issue through summary judgment, while genericness proceeded through trial.  Each counterclaim required different legal standards and facts unrelated to CMT's trademark infringement and unfair competition claims. For example, Apex's functionality counterclaim required evidence concerning whether color was essential to the product's use or purpose; its fraud counterclaim required evidence concerning representations made to the USPTO; and its genericness counterclaim turned on the relevant public's perception of the mark.  CMT's and Apex's claims are not intertwined and the parties would not have expended time and incurred additional fees and costs but for Apex's counterclaims.

Apex makes no attempt to apportion its fees.  It provides no accounting, summary chart, or other basis for the Court to determine what portion of its request relates to claims on which it prevailed.  Instead, Apex simply declares that "all claims and counterclaims in this litigation were inextricably interwoven."  *See* Dkt. 419 at 19.  That is not sufficient.

The case Apex relies on does not justify its approach. In *Monster Daddy*—which CMT cites above—the court did apportion fees and reduce the overall fee award based on successful versus unsuccessful claims.  *Monster Daddy*, 2014 WL 2780331, at *11 ("The instant request raises some apportionment issues because ultimately, the Court will need to subtract some incurred fees associated with the [unsuccessful] Lanham Act claims.").[9]  The fee applicant submitted "summary charts" and "prorate[d] entries based on the hours billed on various aspects of the case," which helped the court to determine the fees attributable to the successful claim.  *Id.* at 37-38. Apex did nothing to that effect.  In the other case Apex cites as support, *Laschkewitsch v. Legal & Gen. Am., Inc.* (Dkt. 419 at 19), the court found the claims to be intertwined because the same

---

[9] The same apportionment principles apply to Lanhan Act and non-Lanham Act claims as they do for successful and unsuccessful claims brought under the Lanham Act. 5 *McCarthy on Trademarks & Unfair Competition* § 30:103; *Alliance for Good Gov't*, 919 F.3d at 297.

alleged fraudulent conduct "permeated all claims, counterclaims, and defenses" (such as breach of contract, fraud, declaratory judgment based on fraudulent conduct).  2017 WL 4976442, at *1 (E.D.N.C. Nov. 1, 2017).   Here, by contrast, Apex's counterclaims required distinct legal issues, factual inquiries, and litigation efforts from CMT's likelihood of confusion claim.  At a minimum, Apex's request should be apportioned and reduced but given Apex's failure to make any effort at apportionment, the Court can deny the request.  *See generally Fair Hous. Council v. Landow*, 999 F.2d 92, 97 (4th Cir. 1993) (completely denying a motion for attorneys fees under the Civil Rights Attorney's Fees Award Act, in part because the fee applicant "failed to specifically allocate the amount of fees attributable to the distinct claims on which it prevailed," "admonish[ing] all parties that a blind adherence to this [common core of facts] argument runs the risk of incurring a complete denial of fees").

## IV.    CONCLUSION

Apex's request for attorneys' fees should be denied in its entirety.  Apex is not the prevailing party: it lost on all four of its invalidity counterclaims and its affirmative defenses, which consumed a substantial portion of this litigation, particularly its genericness counterclaim, which proceeded to trial.  Nor is this an exceptional case: CMT's claims were well-founded, as demonstrated by the course of this litigation, and CMT litigated them reasonably throughout.  The discovery disputes and trial objections Apex identifies are routine features of litigation, not evidence of unreasonable or egregious conduct that warrants an exceptional case award.  Any attempt to portray CMT's conduct as otherwise, mischaracterizes the record and ignores the context in which those disputes arose.  CMT did not act unreasonably and there is no conduct to deter.  Apex's fee request fails at every level and should be denied in its entirety.

Dated: August 12, 2026

Respectfully submitted,

/s/ Robert E. Colletti
Edgar H. Haug (*pro hac vice*)
Robert E. Colletti (*pro hac vice*)
Kaitlin M. Farrell (*pro hac vice*)
Brian E. Auricchio (*pro hac vice*)
Malorie Ruggeri (*pro hac vice*)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
ehaug@haugpartners.com
rcolletti@haugpartners.com
kfarrell@haugpartners.com
bauricchio@haugpartners.com
mruggeri@haugpartners.com

Joshua B. Durham (NC Bar ID 25414)
Kevin Roak (NC Bar ID 57402)
**BELL, DAVIS & PITT**
227 W. Trade Street, Suite 1800
Charlotte, NC 28202
(704) 227-0400
jdurham@belldavispitt.com
kroak@ belldavispitt.com

*Attorneys for Plaintiffs*
*CMT USA, Inc. and CMT Utensili S.p.A.*

– 26 –

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 12, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF System.  Service of same on any counsel of record will be accomplished through the Court's electronic filing system in accordance with Federal Rule of Civil Procedure 5(b)(2)(E).

/s/ Robert E. Colletti
Robert E. Colletti (*pro hac vice*)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800
rcolletti@haugpartners.com